UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MMR CONSTRUCTORS, INC.                                    CIVIL ACTION

VERSUS

JB GROUP OF LA, LLC, ET AL.                               NO. 22-00267-BAJ-RLB

**RULING AND ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING STATUS CONFERENCE TO DETERMINE DATE OF PRELIMINARY INJUNCTION HEARING**

In this action, Plaintiff MMR Constructors, Inc. ("MMR") seeks damages and injunctive relief against JB Group of LA, LLC *d/b/a* Infrastructure Solutions Group ("ISG") and former MMR employee David Heroman. (Doc. 1). Now before the Court is MMR's **Motion For Temporary Restraining Order And To Set Preliminary Injunction Hearing (Doc. 2)**, seeking immediate injunctive relief prohibiting Defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information. For reasons to follow, MMR's Motion will be granted and a temporary restraining order (TRO) will be issued. Further, the Court will set a telephone status conference for Wednesday, April 27, 2022 at 3:30 p.m. to determine a date for a preliminary injunction hearing and to discuss what discovery will be allowed prior to any such hearing.

I.  BACKGROUND

   A. Allegations

For present purposes the Court accepts as true the following allegations set forth in MMR's verified Complaint (Doc. 1):

MMR and ISG are competitors in the telecommunications market. (Doc. 1 at ¶¶ 15, 25). Each provides electrical and instrumentation services to clients in Louisiana and further afield. (*See id.*).

MMR is based in Baton Rouge, Louisiana, and is now one of the largest electrical and instrumentation contractors in the United States, providing services to public and private customers. (*Id.* at ¶ 1). To develop and maintain customer relationships, MMR researches customer needs, develops marketing strategies, creates financial forecasts and business forecasts, and develops proprietary pricing structures and estimating tools. (*Id.* at ¶ 16). These efforts, which are dependent on the accumulation, application, and secrecy of MMR's confidential business information, are crucial to MMR's success in the competitive market. (*Id.*). Thus, MMR's confidential information—and particularly its customer lists and customer pricing information (including costs and labor rates)—has substantial value to MMR.

MMR's competitive position depends on protecting its confidential business information, and MMR takes various steps to keep its information out of its competitors' hands. (*Id.* at ¶ 17). Among other things, MMR requires its employees to sign and agree to various employment policies and procedures designed to protect the confidentiality of its information. (*Id.* at ¶ 18). MMR requires employees to sign and acknowledge its Business Code of Ethics, which requires employees to "protect not only the assets of MMR, but also its clients, vendors, suppliers and other third parties[,]" including "tangible assets and intangible assets, such as confidential and proprietary information." (*Id.*). MMR also requires employees to sign and

2

acknowledge its Rules of Conduct, which prohibits employees from "Theft or unauthorized removal of any property belonging to (i) MMR, (ii) the workplace, (iii) the job site, (iv) fellow employees, or (v) clients, contractors, suppliers, or vendors of MMR." (*Id.*). Further, MMR requires employees to sign and abide by its "Employer Loyalty/Confidentiality/Trade Secrets/Conflict of Interest Agreement." (*Id.*). Through this agreement, employees agree that:

> [d]uring and after the term of his employment, the EMPLOYEE agrees to hold as confidential all knowledge and information he has acquired in connection with his/her employment with MMR, and which is not otherwise generally available to the public or third parties, including but not limited to customer lists, financial information, pricing information, marketing material, technical data, drawings, memoranda, notes, programs, electronic gear, personnel records, policies, other items, and papers and reproductions (all of which is deemed "Confidential" and a trade secret) thereof relating the business of MMR.

(*Id.*).

Defendant ISG is based in Gonzalez, Louisiana, and also provides industrial electrical and instrumentation services to public and private customers. (*Id.* at ¶ 24). ISG was *not* always a direct competitor of MMR, but that changed in July 2021 when ISG recruited long-term MMR Project Manager Jason Yates *away* from MMR to join ISG in a "key management role, with an ownership stake in the company [ISG]." (*Id.* at 26). Since landing Yates, ISG has successfully recruited *five* additional employees away from MMR: Travis Dardenne, Walter Huffman, Tiffany Medine, Kasey Kraft, and, most recently, Defendant David Heroman. (*Id.* at ¶¶ 27-28).

In addition to targeting MMR's personnel, ISG has endeavored to obtain MMR's confidential and proprietary information. MMR first learned of these efforts in late March 2022, when it caught former MMR Project Engineer (and current ISG

employee) Kasey Kraft transferring documents from his MMR work computer to an external storage device. (*Id.* at ¶ 32). When confronted about the file transfer, Kraft initially claimed that he was merely transferring personal information, not MMR's trade secrets and confidential business information. (*Id.*). MMR's own review of the external storage device showed otherwise: "Kraft had attempted to steal trade secrets but was thwarted when caught in the act." (*Id.*).

Unfortunately for MMR, it was not so lucky when former MMR Project Manager (and current ISG employee) David Heroman abruptly resigned just days later, on April 8, 2022. Following his resignation, MMR engaged a third-party computer forensics firm to determine what, if any, trade secrets Defendant Heroman took with him. (*Id.* at ¶ 36). 38. The forensic analysis revealed that in the month before his resignation, Heroman downloaded over 1,500 files from MMR's systems to several electronic storage devices and personal Google Drive account. (*Id.* at ¶ 38).[1] Included among these are hundreds of files believed to contain MMR's trade secrets and confidential business information, specifically including MMR's "confidential bids, pricing, and estimating tools." (*Id.* at ¶ 43; *see generally id.* at ¶¶ 40-58). "Taken together, the misappropriated information essentially provides [ISG] with the blueprints to replicate MMR's business, without investing any of the substantial time, money, effort, and manpower needed to create the information," with potentially "devastating" consequences to MMR. (*Id.* at ¶ 59).

---

[1] In total, the initial forensic analysis identified 14 external storage devices that were plugged into Heroman's work computer during the March-April, 2022 timeframe. Among these, only 4 external storage devices have since been returned to MMR. (*Id.* at ¶ 39).

B. **Procedural History**

On April 25, 2022, MMR initiated this action against ISG and Heroman, seeking damages and temporary and permanent injunctive relief prohibiting Defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information. (Doc. 1). Most relevant here, MMR's verified Complaint alleges that Defendants' usurpation of its trade secrets and confidential business information violates the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), and its Louisiana counterpart, the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, *et seq.* ("LUTSA").

Minutes after filing its verified Complaint, MMR filed the instant **Motion For Temporary Restraining Order And To Set Preliminary Injunction Hearing (Doc. 2)**. MMR also filed a Motion for Expedited Discovery (Doc. 3), requesting the opportunity to conduct a forensic analysis of ISG's computers prior to a preliminary injunction hearing, to determine whether (and how far) its trade secrets and confidential business information may have spread.

II. **ANALYSIS**

A. **Standard**

Federal Rule of Civil Procedure ("Rule") 65(b) sets forth what requirements must be met before the Court may issue a TRO.

> *(1) Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

5

>  (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
>
>  *(2) Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record.

Fed. R. Civ. P. 65(b)(1)-(2). Additionally, the party requesting the TRO must provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

### B. Discussion

#### i. MMR has satisfied the procedural requirements for obtaining a TRO

As an initial matter, the Court finds that MMR has satisfied the procedural requirements for obtaining a TRO. Specifically: (1) MMR has submitted a verified complaint establishing a substantial likelihood of immediate and irreparable injury if injunctive relief is not granted (for reasons explained below), (*see* Doc. 1 at pp. 27-30); (2) MMR's counsel has submitted a detailed certification establishing that he has undertaken reasonable efforts to provide copies of the verified Complaint and the Motion for Temporary Restraining Order to MMR through its registered agent, as well as through MMR's member-manager Jason Yates, and to Defendant Heroman personally, (Doc. 2-2); and (3) the Court is satisfied that MMR's proposed security of $1,000.00 is sufficient to protect Defendants' interests during the pendency of the TRO, in the event the Court ultimately determines that the TRO was improperly issued (*see* Doc. 2-3 at 3).

### ii. MMR has satisfied the substantive requirements for obtaining a TRO

A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, requiring that movant establish the same four elements for obtaining a preliminary injunction: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *See Garza v. Starr Cty.*, 309 F. Supp. 3d 454, 456 (S.D. Tex. 2018) (Crane, J.) (quotation marks and citations omitted). The Court examines each element in turn.

### a. Likelihood of success on the merits

To establish a likelihood of success on the merits, a plaintiff "need not show that success is an absolute certainty. He need only make a showing the probability of her prevailing is better than fifty percent." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). For reasons set forth below, MMR has satisfied its burden for its claims under the DTSA and the LUTSA because MMR's verified Complaint shows that ISG and Heroman misappropriated MMR's trade secrets.

The DTSA states that an "owner of a trade secret that is misappropriated may bring a civil action" in federal court "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b). The DTSA defines "misappropriation" as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was

7

acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who," among other things, "used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5)(A)-(B). Under the DTSA, prohibited "misappropriation" includes the acquisition of a trade secret by improper means, as well as its use or disclosure. *See id.* at § 1839(5)(A)-(B). The DTSA defines "improper means" as including "theft bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Id. at § 1839(6)(A). Significantly, "the definitional sections of the DTSA and [the LUTSA] are very similar." *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2017 WL 3721543, at *2 (E.D. La. Aug. 29, 2017) (comparing 18 U.S.C. §§ 1836, 1839, with LUTSA § 1).

The DTSA, moreover, defines a "trade secret" as:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if — (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily available through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. §1839(3). And, again, the LUTSA defines the term "Trade Secret" similarly. La. R.S. 53:1431(4).

The allegations of MMR's verified Complaint, accepted as true, establish that Defendant Heroman's actions shortly before leaving MMR qualify as a

8

"misappropriation" that was achieved through "improper means." Specifically, with knowledge that MMR's customer pricing, financial, estimating, and employee information was confidential and not to be disseminated other than to authorized employees of MMR, Heroman transferred this information to external storage devices and to his personal cloud-based storage account and then took steps to hide this activity. *See AUA Private Equity Partners, LLC v. Soto*, No. 17-8035, 2018 WL 1684339, at *7 (S.D.N.Y. Apr. 5, 2018) (explaining that, like here, improper acquisition through downloading information establishes liability and collecting cases where "[m]isappropriation by acquisition has been found under other state UTSAs in similar circumstances"). Further, Heroman—now an ISG employee—maintains dominion and control over this information, making it highly likely that MMR's trade secrets and confidential information will be transmitted to ISG.

Additionally, the misappropriated information qualifies as trade secret under the DTSA and LUTSA. The copied files and folders identified through MMR's third-party forensic investigation contain highly sensitive business information that is not generally known and gives MMR a competitive edge. Further, MMR took reasonable efforts to maintain the secrecy of this information by requiring employees to sign agreements and acknowledging policies protecting the confidentiality of the information; by limiting employee access to certain confidential business information and password protecting that information; and by monitoring transfer of confidential information through data loss prevention software. *See* Unif. Trade Secrets Act § 1(4)(ii) cmts. (drafters of Uniform Trade Secret Act, on which the LUTSA is based,

9

explain that "reasonable efforts to maintain secrecy" may include advising employees of the existence of a trade secret or limiting access to a trade secret on a "need to know basis").

Finally, MMR's efforts to maintain the confidentiality of this information gives it "independent economic value." A direct competitor would benefit greatly if it had access to the information that Heroman allegedly misappropriated, particularly with respect to customer-specific pricing information and estimating tools.

In sum, MMR has carried its burden of establishing a high likelihood of success on the merits of its DTSA and LUTSA claims because Heroman misappropriated, by improper means, MMR's information and data, which qualify as trade secrets.

### b. Likelihood of irreparable injury

MMR has also carried its burden of showing that it has suffered, and will continue to suffer, irreparable harm if the requested relief is not granted. Irreparable injury is harm that "cannot be undone through monetary damages" — that is, harm for which money damages are inadequate or for which money damages are "especially difficult" to compute. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989).

The U.S. Fifth Circuit Court of Appeals instructs that irreparable harm can be established where "the rights are economic, but because of their nature or the circumstances of the case, establishment of the dollar value of the loss is especially difficult or speculative." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,

10

760 F.2d 618, 630 n. 12 (5th Cir. 1985) (*citing State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).

Both the United States Congress and the Louisiana legislature recognize that irreparable injury arises from the misappropriation of trade secrets. It is clear under the DTSA and LUTSA, that even the threat of misappropriation may be enjoined. 18 U.S.C. § 1836 (b)(3)(A)(i); La. R.S. § 51:1432(A).

Accordingly, to satisfy the irreparable injury element, MMR need only show that the ""defendant possesses the trade secrets and is in a position to use them." *Lifesize, Inc. v. Chimene*, No. 1:16-cv-1109-RP, 2017 WL 8751921, at *1 (W.D. Tex. Apr. 27, 2017).[2].

Here, MMR has established that it faces a substantial threat and actual irreparable harm if the Court does not enter a temporary restraining order. Heroman improperly took and retained MMR's trade secrets, at the very least, on external storage devices and through a cloud-based storage platform, shortly before

---

[2] *See also Newsouth Commc'ns Corp. v. Universal Tel. Co.*, No. 02-2722, 2002 WL 31246558, at *21 (E.D. La. Oct. 4, 2002) (citing *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191–92 (5th Cir. 1984) and *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982)) (recognizing that using or disclosing even one trade secret to a competitor of the employee's former employer may create a substantial threat of irreparable injury); *Picker Int'l, Inc. v. Blanton*, 756 F. Supp. 971, 983 (N.D. Tex. 1990) (injunctive relief is the "only way use of the [trade] secret by the former employee can be prevented"); *Computer Mgmt. Assistance v. Robert F. deCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000); *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)); *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) (when, as in this action, "trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable"); *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 757 (S.D. Tex. 2009) ("The use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm." (citing *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 280 (E.D.N.Y. 2002); *Ecolab Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991)).

terminating his employment. ISG is now in a position to use the trade secrets to MMR's detriment. With MMR's trade secrets and proprietary information readily accessible, ISG and Heroman can unfairly compete against and harm MMR, resulting in injuries that will prove difficult to measure with monetary precision.

### c. Balance of harms

MMR seeks narrowly tailored relief designed to protect its legitimate business interests and to ensure misappropriated information cannot be used further to unfairly compete. If the Court does not intervene, MMR stands to lose its valuable trade secrets, confidential business information, and intellectual property to ISG. In contrast, ISG and Heroman will suffer no undue hardship, as they merely need to comply with their legal and contractual obligations not to disclose MMR's confidential information and to comply with trade secret law. *See Dish Network L.L.C. v. Ramirez*, No. 15-04712, 2016 WL 3092184, at *7 (N.D. Cal. Jun. 2, 2016) (balance of hardships tips in favor of plaintiff seeking injunction when it would "do no more than require Defendant to comply with federal and state laws"). Thus, the Court finds that the equities favor issuing the requested relief.

### d. Public interest

Finally, enjoining ISG and Heroman from using MMR's trade secrets will not disserve the public interest. Instead, the requested relief will promote fair competition, ethical behavior, honest work, and innovation. *Bank of Am., N.A. v. Lee*, No. 08–5546, 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008) (finding that public interest is served by enabling the protection of trade secrets).

12

III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that MMR's **Motion For Temporary Restraining Order And To Set Preliminary Injunction Hearing (Doc. 2)** be and is hereby **GRANTED**, and that a temporary restraining order be and is hereby **ENTERED, ENJOINING AND PROHIBITING** Defendants JB Group of LA, LLC d/b/a Infrastructure Solutions Group ("ISG") and David Heroman, and those persons or entities in active concert or participation with them, from:

1. Disclosing, disseminating, or using MMR's trade secrets and confidential business information, including, but not limited to, all files (and the information contained therein) that reside on any electronic storage device, cloud-based file repository or file-sharing account, and/or email account used by Mr. Heroman, or any other former MMR employee that now works for ISG, during their employment with MMR or in their possession, custody, or control during his employment with MMR or in his possession, custody, or control;

2. Accessing, studying, copying, or taking notes about MMR's trade secrets and confidential business information, including, but not limited to, all files (and the information contained therein) that reside on any electronic storage device, cloud-based file repository or file-sharing account, and/or email account used by Mr. Heroman, or any other former MMR employee that now works for ISG, during their employment with MMR or in their possession, custody, or control;

3. Destroying, altering, erasing, secreting, or failing to preserve any and all of MMR's trade secrets, business materials, property, proprietary information, confidential information, and/or any and all record or documents that may be relevant to this lawsuit; wherever located, and in whatever form, including but not limited to any document, email, report, software, files, electronic data, tangible evidence, financial records, and any and all communications between Heroman and any employee, member, investor, or consultant of ISG and its parent companies, subsidiaries and affiliates;

4. Failing to return the information and external storage devices identified in the verified Complaint (Doc. 1), and any other documents/devices that contain MMR's confidential business information.

**IT IS FURTHER ORDERED** that the issuance of this temporary restraining order be and is hereby conditioned upon MMR promptly furnishing **ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS** in security, and that MMR, through its counsel, be and is hereby authorized to deposit into the Registry of the Court, associated with the above captioned matter, the sum of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS, pending further orders of this Court.

**IT IS FURTHER ORDERED** that this temporary restraining order, unless extended for good cause and/or by the agreement by the parties, shall **EXPIRE** by its terms fourteen days from the date and hour of its issuance.

**IT IS FURTHER ORDERED** that MMR's counsel shall (1) immediately provide notice of this Order to Defendants and/or Defendants' counsel; and (2)

therewith, shall provide Defendants and/or Defendants' counsel copies of this Order; and (3) not later than April 27, 2022 at 11:00 a.m., shall file a certification into the record setting forth what efforts have been made to provide notice and copies of this Order to Defendants and/or Defendants' counsel.

**IT IS FURTHER ORDERED** that a telephone status conference be and is hereby **SET** for Wednesday, April 27, 2022 at 3:30 p.m. for the purpose of selecting a date for a preliminary injunction hearing, and to discuss MMR's Motion for Expedited Discovery (Doc. 3) in advance of said hearing. Dial-in instructions will be provided to counsel prior to the status conference. **Plaintiff's counsel shall provide notice of the telephone conference and the dial-in information to Defendants and/or Defendants' counsel.**

Baton Rouge, Louisiana, this 26th day of April, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA