UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MMR CONSTRUCTORS, INC., | CIV. NO. 22-267 |
| Plaintiff, | |
| | JUDGE BRIAN A. JACKSON |
| VERSUS | |
| | |
| JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP, DAVID HEROMAN, and KASEY KRAFT. | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| Defendants. | |

**STATUS REPORT**

**A.    JURISDICTION**

What is the basis for the jurisdiction of the Court?

The Court has subject matter under 28 U.S.C. § 1331 based on Plaintiff's claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1125 *et seq.*, and under 28 U.S.C. § 1367 for the remaining claims that are part of the same case and controversy as the DTSA claims.

**B.    BRIEF EXPLANATION OF THE CASE**

1. Plaintiff claims:

MMR started from a single office in Baton Rouge and, through substantial investments and experience, has grown into one of the largest electrical and instrumentation contractors in the United States. This lawsuit exposes, and seeks to stop, an orchestrated effort by Defendant JB Group of LA, LLC d/b/a Infrastructure Solutions Group ("ISG") to steal MMR's trade secrets in order to unfairly compete in the highly competitive market in which MMR has spent years become a market leader.

Revised: 6/22/2016

Each project MMR wins can generate millions of dollars in revenue. Since recruiting and offering an ownership stake to a former MMR employee, ISG has sought to penetrate the market for these projects by, in large, replicating MMR. ISG has poached MMR employees who themselves gained valuable know-how across various sectors of MMR's business, from project controls and human resources to operations and business development.

While MMR had worries about fair competition as employees left to join ISG, these concerns came to head this Spring. ISG poached Defendant Kasey Kraft in March 2022, and on his last day of employment, the former employee was caught attempting to transfer a significant amount of MMR's trade secrets and confidential business information to an external hard drive. MMR initially believed Kraft had been thwarted in his attempts at stealing that information, but Kraft was able to successfully remove, retain, and disclose trade secrets to ISG, allowing ISG to receive a highly valuable, yet unfair, competitive advantage.

Despite Kraft being caught in the act, this did not prevent ISG, this did not prevent ISG from continuing to target MMR's employees and trade secrets. The hiring of Defendant David Heroman was the latest iteration. Heroman resigned unexpectedly from MMR on April 8, 2022 — just days after his colleague was caught attempting to steal trade secrets — to work for ISG. Given the recent history with employee poaching and potential misappropriation, MMR hired an expert forensic examiner to assess whether there was any evidence of theft on Heroman's MMR-issued work computer. The results of that forensic analysis were staggering. Heroman plugged in at least *14 external storage devices* just prior to his resignation and transferred nearly 1,500 files to these devices, the vast majority of which contain MMR's trade secrets and confidential business information. Included were customer and contact lists; an "Estimating" folder that contained

MMR's estimating tools and customer-related bids for 2020 and 2021; a "Price Lists" folder that included customer-specific pricing; and numerous documents relating to MMR employees and staffing strategy. He even transferred a file entitled "Master Job Sheet - BIBLE (ORLANDO).xlsx," as well as numerous documents relating to customer-specific projects within MMR active or prospective pipeline. To make matters worse, Heroman tried to hide his tracks by returning four of the external storage devices he used in March and April, with a substantial amount of evidence deleted. Fortunately, computer forensics, coupled with MMR's internal data loss prevention software, allowed MMR to uncover the trade secrets and confidential business information that have been misappropriated, as well as the missing external storage device that were not returned.

ISG has improper access to a library of MMR's trade secrets and confidential business information and has used that stolen information to compete unfairly. Indeed, MMR learned just last week that ISG's CEO and partial owner likewise kept an external hard drive full MMR information and brought that information with him to ISG in 2021. ISG's disregard for fair business practices is allowing ISG to profit unjustly and threatens to continue to cause damages to MMR.

MMR has thus asserted claims under the DTSA, Louisiana Uniform Trade Secret Act, Louisiana Unfair Trade Practices Act, and for civil conspiracy, unjust enrichment, and breach of fiduciary duty/duty of loyalty.

2.     Defendant claims:

<u>ISG's Claims and Defenses</u>

No Non-competition or Non-Solicitation Agreements are at issue in this case. Notwithstanding the absence of such convents, JB Group of LA, LLC D/B/A Infrastructure Solutions Group ("ISG") has not poached or recruited any MMR employees. ISG was founded by Shawn Breeland and Jason Yates in 2019. At this time, Yates was employed at MMR. Yates' supervisors, co-workers, MMR stockholders, and MMR's corporate counsel were aware and openly discussed Yates' involvement with ISG. Moreover, on numerous occasions MMR assisted Yates with ISG related business which included using MMR estimating tools (which are frequently shared outside of MMR) to assist ISG in its bidding of jobs. Additionally, MMR permitted its in-house counsel to review and advise on ISG's contracts. At no time during his 20+ years of employment with MMR did Yates or ISG perform any work in competition with MMR.

After Yates resigned from MMR in July 2021, MMR employees started to reach out to Yates and ISG seeking employment. During this time MMR was hemorrhaging from employee resignations as over 75 employees resigned from MMR in the past year. Of the 75 employees, only a handful were hired by ISG. None of the MMR employees that quit MMR were subject to employment or non-competition agreements. Accordingly, MMR cannot stop prevent, or seek to punish ISG for offering employment to anyone ISG chooses, including former MMR employees. But this is exactly what MMR seeks to do through this litigation. MMR's failure to implement non-competition/non-solicitation agreements is the real issue here, and it seeks to back door such restrictions by use of this lawsuit to intimidate, not only ISG and its former employees, but its currently employees as well.

It is MMR that cannot compete fairly and its use of fear and intimidation to stop the resignations of its employees is one of the many reasons employees are choosing to leave.

Contrary to the artfully worded allegations that misrepresent MMR's protection of its "trade secrets" the truth it that MMR does nothing to safeguard or protect any of its company information. The facts will show that no confidential, let alone, trade secrets exist in this case. MMR provided its employees with an overly broad and generic "trade secrets" policy. MMR provided no other information or training to its employees to identify what information MMR guarded as a trade secret.

Many employees who left MMR left with MMR information because MMR had no onboarding or offboarding protection measures in place to protect any of its information. Because MMR never requested the employee to delete or return any information, including populated e-mails on their cellphone, many MMR employees who left MMR left with populated e-mails on their cell phones containing the very information MMR seeks to claim as a "trade secret." MMR knew that its employees utilized external devices due to a lack of storage capacity on the MMR provided computers and laptops to perform their work. At no time did MMR request the return of any of those devices upon an employee's separation. Often, when MMR employees were provided with new computers, MMR did not seek or even request the return of the old computer which contained the very information MMR claims are trade secrets.

MMR did nothing to identify valuable information or institute policies or procedures to notify its employees of the information they could share within the company versus outside of the company. The facts will show that the very information MMR claims are trade secrets were openly shared by MMR outside of MMR. Upon information and belief, many of the documents that MMR

asserts are trade secrets were shared outside of the company without non-disclosures or other protective measures. Moreover, the information MMR claims are trade secrets are resources used and shared industry wide, many of which can be found by a simple Google search.

Notwithstanding the foregoing, ISG does not want or need any information tied in any way to MMR, trade secret or not. ISG has at the outset of this litigation cooperated, agreed to a preliminary injunction and forensic protocol to identify, and return any MMR information. At the time of the filing of this litigation and entry of the preliminary injunction, ISG has not successfully bid against MMR. ISG and its employees look forward to fairly competing.

<u>David Heroman's and Kasey Kraft's Claims and Defenses:</u>

David Heroman ("Heroman") was employed by MMR until he resigned on April 8, 2022. Kasey Kraft ("Kraft") was employed by MMR until March 31, 2022. All information and documents received by Heroman and Kraft were received for legitimate purposes while Heroman and Kraft were employed by MMR. Heroman and Kraft did not use any improper means to acquire MMR's "trade secrets," and Heroman and Kraft have not used or disclosed any of MMR's "trade secrets."

The information and documents claimed by Plaintiff in its Complaint are not trade secrets under either DTSA, the Louisiana Uniform Trade Secrets Act, La. R.S. § 51:1431, et seq. ("LUTSA") or the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401 et seq. ("LUTPA"). The information is either generally known in the industry or may be readily ascertainable through proper means. Plaintiff has also not taken reasonable measures to keep the information secret. Plaintiff has also claimed that certain information is its confidential or trade secret information, when that information is actually Heroman's and Kraft's memory, general knowledge or skill

gained during their careers. Heroman and Kraft had no non-compete, non-solicitation of customers/clients or non-solicitation of fellow employees agreements restricting their right to compete with MMR after they left MMR's employment. Therefore, Heroman and Kraft have not engaged in any unlawful competition or false, misleading or deceptive practices which would constitute a violation of LUTPA.

Heroman has agreed to have his personal devices (including his cell phone, iPad and family computer) and his ISG work computer imaged and searched for any MMR confidential information and "trade secrets" pursuant to the Forensic Protocol entered in this case. (Doc. 26). Heroman has also agreed to delete any files that the parties agree (or the Court orders, if the parties cannot agree) are MMR's confidential information or trade secrets.

Heroman has stipulated to a preliminary injunction (Doc. 23) in this case, because even if he does possess MMR's confidential information or "trade secrets," he has no plans to use that information, especially while working for ISG, and always intended to either return or delete any such information, and will do so in connection with the Forensic Protocol. Likewise, Kraft has no plans to use MMR's confidential information or "trade secrets" and will consent to reasonable measures to return or delete any such information he possesses. Plaintiff has suffered no injuries or damages as a result of Heroman's or Kraft's actions.

Heroman and Kraft did not conspire with each or with ISG to misappropriate MMR's information and/or unlawfully compete against MMR. Heroman and Kraft simply left their former jobs at MMR to work at ISG, and Heroman and Kraft did not even know each other until they both started work at ISG.

Heroman and Kraft did not owe a fiduciary duty to Plaintiff, and did not breach any duties they did owe, such as duties of fidelity and loyalty (which such duties did not arise to the level of a fiduciary duty).

**C.     PENDING MOTIONS**

List any pending motion(s), the date filed, and the basis of the motion(s):

There are no pending motions, but Plaintiff intends to file a motion to amend/supplement the forensic protocol, and preliminary injunction.

Plaintiff has alleged that Heroman and Kraft executed a Dispute Resolution Agreement, but failed to attached those agreements to its Complaint. Upon receiving the agreements, and to the extent that any claims in this lawsuit are subject to arbitration, Heroman and Kraft may file a motion to compel arbitration and/or motion to dismiss.

**D.     ISSUES**

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

The principle legal issues surround the required elements of Plaintiff's trade secret claim, including whether the information is a trade secret, whether there was a misappropriation by acquisition, disclosure, and/or use and whether damages resulted therefrom.

**E.     DAMAGES**

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

    1.     Plaintiff's calculation of damages:

Plaintiff has not been able to calculate its damages and will retain an expert to assist with that calculation, but the categories of damages that Plaintiff seeks are: compensatory damages, lost profits, ill-gotten gains, treble damages, investigative/forensic costs, and attorneys' fees.

    2.    Defendant's calculation of offset and/or plaintiff's damages:

ISG:

ISG has not unjustly profited due to any alleged trade secrets nor has MMR been damaged in anyway. In fact, to date, the only project that both ISG and MMR placed a bid on, MMR won the bid and was awarded the contract. ISG is a small business, and the majority of its business is related to department of transportation work. However, a very small amount of its business (under 15%) includes some electrical and instrumentation (E&I) work such as underground fiberoptic wiring. However, only approximately 1% of that work is the same type of E&I worked performed by MMR.

Heroman and Kraft:

Heroman and Kraft have not unjustly profited due to any actions alleged by Plaintiff, and Plaintiff has not suffered any damages due to Heroman's and Kraft's actions.

**F.    SERVICE:**

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue:

There are no unresolved issues regarding waiver or service of process, personal jurisdiction, or venue.

**G.    DISCOVERY**

10

1.   Initial Disclosures:

    A.   Have the initial disclosures required under FRCP 26(a)(1) been completed?

        [ ] YES    [X] NO

In accordance with Local Rule 26(b), the parties shall provide their initial disclosures to the opposing party no later than 7 days before the date of the scheduling conference, unless a party objects to initial disclosures during the FRCP 26(f) conference and states the objection below.

    B.   Do any parties object to initial disclosures?

        [ ] YES    [X] NO

For any party who answered *yes*, please explain your reasons for objecting.

2.   Briefly describe any discovery that has been completed or is in progress:

    By plaintiff(s):

There is a forensic protocol in place regarding the forensic examinations. Further, Plaintiff has taken a limited deposition of Jason Yates, and received responses to its expedited interrogatories and requests for production.

    By defendant(s):

Defendants have not yet embarked in discovery but has cooperated with Plaintiff by agreeing to forensic examinations of relevant devices, responding to discovery requests, and providing employees for depositions.

3.   Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery.

The parties will seek a protective order, as the claims and discovery will require the disclosure of confidential business information.

4. Discovery from experts:

Identify the subject matter(s) as to which expert testimony will be offered:

By plaintiff(s): Computer forensics and damages.

By defendant(s): Computer forensics and damages.

## H. PROPOSED SCHEDULING ORDER

1. If the parties propose an alternative timeframe for exchanging initial disclosures, please provide that proposed deadline:

Plaintiff has proposed August 1, 2022. Defendants Heroman and Kraft request that the current deadline (June 30, 2022) be maintained which is seven (7) days prior to the scheduling conference, because the Plaintiff has noticed a limited deposition on July 6, 2022.

2. Recommended deadlines to join other parties or to amend the pleadings:

Plaintiff has proposed September 1, 2022, and ISG has proposed November 1, 2022. Defendants Heroman and Kraft propose that the deadline to join other parties be September 1, 2022, and that the deadline to amend the pleadings, except to join other parties, be November 1, 2022.

3. Filing all discovery motions and completing all discovery except experts:

**July 7, 2023**.

4. Disclosure of identities and resumés of expert witnesses (if appropriate, you may suggest different dates for disclosure of experts in different subject matters):

Plaintiff(s): **April 7, 2023**.

Defendant(s): **May 7, 2023**.

12

5.     Exchange of expert reports:

         Plaintiff(s): **August 7, 2023**

         Defendant(s): **September 7, 2023**.

6.     Completion of discovery from experts: **September 30, 2023**.

7.     Filing dispositive motions and Daubert motions: **November 15, 2023.**

8.     All remaining deadlines and the pre-trial conference and trial date will be included in the initial scheduling order. The deadlines will be determined based on the presiding judge's schedule, within the following general parameters.[1] The parties should not provide any proposed dates for these remaining deadlines.

     a.     Deadline to file pre-trial order (approximately 16 weeks after dispositive motion deadline).

     b.     Deadline to file motions in limine (approximately 20-22 weeks after dispositive motion deadline).

     c.     Deadline to file an affidavit of settlement efforts (approximately 22-24 weeks after dispositive motion deadline).

     d.     Deadline to submit joint jury instructions, voir dire, verdict forms, and trial briefs to the presiding judge (approximately 25-27 weeks after dispositive motion deadline).

---

[1] The date ranges provided for the new deadlines, pre-trial conference, and trial date are a general guideline only. The actual dates may vary depending on the complexity of a particular case. All requests for subsequent changes to the deadlines set in the scheduling order under number 7 must be by motion directed to the presiding judge.

      e.      Pre-trial conference date (approximately 18-20 weeks after dispositive motion deadline).

      f.      Trial date (approximately 27-29 weeks after dispositive motion deadline).

9. If the general outline of proposed deadlines does not fit the circumstances of your particular case, please provide a proposed joint schedule of deadlines which is more appropriate for your case.

**I.  TRIAL**

1. Has a demand for trial by jury been made?

[X] YES     [ ] NO

2. Estimate the number of days that trial will require.

Plaintiff has estimated 10 days. Defendants Heroman and Kraft estimate that, based upon the current parties and claims, that 5 days is sufficient for trial.

**J.  OTHER MATTERS**

Are there any specific problems the parties wish to address at the scheduling conference?

[ ] YES     [X] NO

    i.    If the answer is *yes*, please explain:

    ii.    If the answer is *no*, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? **CHECK "NO" IF YOU HAVE NOT SUBMITTED JOINT PROPOSED DEADLINES.**

[ ] YES     [X] NO

#100482394v2

**K.    SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case to date.

The parties have not engaged in settlement discussions.

2. Do the parties wish to have a settlement conference:

[ X ]  YES     [ ] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

After the conclusion of expert discovery.

**L.    CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge. Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ]  YES    [X ] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the <u>attached form</u> to indicate your consent.**

Report dated:  <u>June 23, 2022</u>

#100482394v2

Attorney(s) for Plaintiff(s)[3] or Pro Se Plaintiff

---

[3] See L.R. 11(a) regarding Signing of Pleadings, Motions and Other Papers and L.R. 5(f) regarding Certificate of Service.

#100482394v2

# NOTICE OF RIGHT TO CONSENT TO DISPOSITION OF
# CIVIL CASE BY A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of 28 U.S.C. 636(c), you are hereby notified that all of the parties in this civil case may consent to allow a United States Magistrate Judge of this district court to conduct any and all proceedings, including trial of the case and entry of a final judgment.

You may consent by signing the form contained within the status report, or you may use the attached form at any later stage of the proceedings should you decide at that time to proceed before the United States Magistrate Judge. A copy of a consent form is enclosed and is also available from the clerk of court. In the event all parties consent to proceed before the Magistrate Judge, the signed consent form must be filed with the court electronically, but ONLY AFTER **ALL** PARTIES HAVE SIGNED THE FORM.

You should be aware that your decision to consent, or not to consent, to the disposition of your case before a United States Magistrate Judge is entirely voluntary. Either the district judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in doing so, shall also advise the parties that they are free to withhold consent without adverse consequences.

Please note that the parties may appeal the magistrate judge's decision directly to the court of appeals in the same manner as an appeal from any other judgment of the district court.

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PLAINTIFF** | **CIVIL ACTION** |
| **VERSUS** | |
| **DEFENDANT** | **NO.** |

**CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of 28 U.S.C. 636(c), the parties to the above captioned civil proceeding hereby waive their right to proceed before a United States District Judge and consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including but not limited to the trial of the case, and order the entry of judgment in the case.

The parties are aware that in accordance with 28 U.S.C. 636(c)(3), any aggrieved party may appeal from the judgment directly to the United States Court of Appeals for the Fifth Circuit in the same manner as an appeal from any other judgment of the district court.

| Date | Party Represented | Pro Se or Atty. Name | Pro Se or Atty. Signature |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

x