UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.,** | **CIVIL ACTION NO.: 22-CV-267** |
| Plaintiff, | |
| VERSUS | JUDGE BRIAN A. JACKSON |
| **JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP and DAVID HEROMAN and KASEY KRAFT,** | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| Defendants. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP'S MEMORANDUM IN SUPPORT OF MOTION FOR SPECIFIC IDENTIFICATION OF PLAINTIFF MMR'S ALLEGED "TRADE SECRETS" AND TO STAY FURTHER DISCOVERY BY MMR AND THE FORENSIC PROTOCOL UNTIL MMR DOES SO**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, JB Group of LA, LLC d/b/a Infrastructure Solutions Group ("ISG"), which respectfully requests that this Court order Plaintiff, MMR Constructors, Inc. ("MMR"), to specifically identify and narrow its alleged "trade secrets" and to stay further discovery by MMR and the Forensic Protocol until MMR does so.

**I.   BACKGROUND**

On April 25, 2022, MMR, a large electrical and instrumentation contractor, filed Verified Complaint for Damages, Temporary Restraining Order, and Injunctive Relief [R. 1], alleging that Defendants ISG, David Heroman ("Heroman"), and Kasey Kraft ("Kraft") (collectively, "Defendants") "stole" MMR's trades secrets and confidential business information, asserting claims under the Defend Trade Secrets Act, 18 U.S.C. § 1125 et seq. ("DTSA"), the Louisiana

1

Uniform Trade Secrets Act, La. Rev. Stat. 51:1431 *et seq.* ("LUTSA"), the Louisiana Unfair Trade Practice Act, La. Rev. Stat. 51:1401 et seq. ("LUTPA"), and various business tort-based causes of action under Louisiana law. [R. 1 (Original Complaint) and R. 29 (Amended Complaint)]. There are no non-competition or non-solicitation agreements, nor any other employment restrictions, at issue in this case. *Id.*

With nothing to hide and in an effort to avoid protracted litigation, Defendants agreed to enter into a Temporary Restraining Order ("TRO") [R. 12] and later a Preliminary Injunction [R. 21]. The parties further agreed to a Forensic Protocol [R. 22] to preserve and govern the search for MMR's purported "trade secret" materials on the devices owned by ISG, and some of its employees. ISG hired Lee Whitfield with 337 Forensics to conduct the preservation and searches on behalf of ISG. MMR hired LCG Forensics to conduct searches on behalf of MMR. ISG's forensic examiner, imaged and preserved the devices and accounts of ISG, Heroman, Kraft, and Travis Dardenne. MMR then amended the Forensic Protocol to include the devices and accounts of non-defendants, Jason Yates and Michael Lowe. ISG's expert has imaged and preserved those accounts and devices as well. All together ISG's forensic examiner has several terabytes of information to search. Over the last several months the parties and their experts have held numerous discussions on how to most efficiently and effectively conduct the searches. The wide-sweeping preserving and imaging of the devices and systems pursuant to the Forensic Protocol is still underway, and ISG's forensic examiner believes that the forensic reports will likely be completed in the near future.

MMR also requested certain limited depositions outside of the orderly normal course of discovery, ostensibly under the guise of needing to identify the potential locations to be searched

under the Forensic Protocol. For example, MMR secured the early depositions of Heroman and Kraft under the express agreement that the depositions would be:

> Plaintiff MMR Constructors, Inc. ("MMR"), by and through their undersigned counsel, will take the deposition of [Heroman and Kraft], **for limited purposes of identification of storage devices he plugged into an MMR computer, the identification of storage devices which were in his possession** after his employment with MMR ended and which may have contained MMR's confidential information and trade secrets, the **identification of cloud-based file storing/sharing accounts** that he had access to from February 2022 to the present (including any Google Drive, iCloud, OneDrive, DropBox accounts), and the **identity of any ISG or personal computers and/or computing networks** on which [Heroman and Kraft] stored, to which [Heroman and Kraft] transferred, and/or from which [Heroman and Kraft] accessed any MMR documents[.]
> *See* Exhibit 1, Notices of Deposition of Heroman and Kraft. (emphasis added).

Additionally, ISG agreed to the depositions of Jason Yates and Michael Lowe for the limited purpose of "the forensic examinations and preliminary injunction." *See* Exhibit 2, Notices of Deposition of Jason Yates and Mike Lowe. Yet, having secured the depositions under false pretenses, the actual depositions went *well* beyond what MMR agreed, turning into litigation by ambush. By way of example only: MMR's attorney questioned Kasey Kraft: "While you were an MMR employee, you didn't share any estimates with any competitors of MMR, correct?" This line of questions, along with many others, drew objections from counsel as being completely outside of the agreed upon scope. *See* Exhibit 3, excerpts of Kasey Kraft's deposition transcript. The deposition of Jason Yates was also way outside of the agreed upon scope with MMR's attorney questioning Yates about ISG's relationship with unrelated vendors and ISG's investors. *See* Exhibit 4, excerpts of Jason Yate's deposition transcript.

In the meantime, ISG has repeatedly and reasonably requested since the outset that—as required by controlling law—MMR identify *with specificity* its purported "trade secrets" (as MMR only broadly referenced the alleged trade secrets in its Complaint [R. 1] and Amended Complaint [R. 29]). In a discovery telephone call, MMR's counsel acknowledged that ISG was entitled to a

specific list of trade secrets and agreed to provide same. On July 29, 2022, ISG issued written discovery again requesting that MMR specifically identify its purported trade secrets. MMR's responses to ISG's discovery were due Monday, August 29, 2022.

On Friday, August 26, 2022, MMR's counsel requested a two-week extension to respond to the discovery due the next business day, stating: "We are still in the process of gathering responsive documents. And many of the requests we will not be able to fully respond to before we receive and review the forensic reports." *See* Exhibit 5, correspondence between counsel in this matter. Undersigned counsel responded stating that ISG was not opposed to providing the two-week extension, but requested that MMR "identify the discovery requests that MMR believes the forensic report is necessary in order for MMR to fully respond" to ISG's discovery requests. *Id*. Undersigned counsel again reiterated ISG's position that, under controlling law, MMR must first more specifically identify its "trade secret" materials and ISG's unwillingness "to proceed with the production of the forensic reports or additional depositions until MMR has done so." *Id*.

On Monday, August 29, 2022, MMR's counsel and the Undersigned Counsel for ISG participated in a call in an attempt to resolve this impasse. During the call, MMR's counsel asserted that *any and all* documents in the possession of Defendants are MMR's confidential information and trade secret materials. MMR's counsel further stated that he needed the device reports from the forensic examiner to properly identify MMR's trade secret materials. ISG maintains that MMR's position is contrary to the law in this district and that MMR must be required to more specifically describe its "trade secret" materials beyond its current references to broad categories or folders.

Up until this point, ISG has been exceptionally cooperative by agreeing to the TRO, Preliminary Injunction, Forensic Protocol and multiple "pre-discovery limited" depositions.

4

However, what has become apparent is that MMR has a theory in search of a case and, if discovery is to continue, MMR must first *specifically* identify its trade secrets in compliance with the DTSA and LUTSA so that MMR is not allowed to conduct a widesweeping fishing expedition and then tailor its identification of trade secret materials to the discovery responses it receives.

Accordingly, ISG requests that this Court issue an Order requiring MMR to specifically identify and narrow its trade secrets, in compliance with controlling law, and stay further discovery by MMR and the Forensic Protocol until MMR has done so.

## II.  LAW AND ANALYSIS

### A. PLAINTIFF'S BURDEN TO SPECIFICALLY IDENTIFY TRADE SECRET MATERIALS

To plead a plausible claim under the DTSA, MMR must allege that: "(1) it owns a trade secret; (2) the trade secret was misappropriated by the defendant; and (3) the trade secret is related to a product or service used or intended for use in interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). To assert a valid claim under the LUTSA, MMR must establish "(a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation." La. Rev. Stat. 51:1431 et seq. The DTSA defines the term "trade secret" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). LUTSA's definition of trade secret is similar. La. Rev. Stat. § 51:1431(4) ("'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

MMR bears the burden of "identif[ing] the trade secrets" and "showing that they exist." *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019) (citing *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. 16-8962, 2018 WL 3197696, at 14 (C.D. Cal. June 25, 2018)); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 655 (9th Cir. 2020). Moreover, MMR must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *InteliClear*, 978 F.3d at 658 (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998)).

This requires that MMR "clearly refer to tangible trade secret material" rather than a "system which potentially qualifies for trade secret protection." *Id*. "[C]atchall" phrases or mere "categories" of trade secrets are inadequate. *Id*. Further, MMR may not "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information." *InteliClear*, 978 F.3d at 658 (citing *X6D Ltd. v. Li-Tek Corps.*, No. 10-2327, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012)). Moreover, "where a plaintiff only cites general categories of information, but never singles out any particular trade secret, explaining how it

created and safeguarded that particular bit of information, the lack of particularity renders it unlikely to succeed on its trade secrets misappropriation claim." *PrimeSource Bldg. Prod., Inc. v. Huttig Bldg. Prod., Inc.*, No. 16 CV 11390, 2017 WL 7795125, at *15 (N.D. Ill. Dec. 9, 2017), supplemented *sub nom*.

To the extent that MMR relies on such general categories of information, it must "separate the trade secrets from other information" and cannot simply "identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002.)  Under both the DTSA and LUTSA, misappropriation "does not include reverse engineering, independent derivation, or any other lawful means of acquisition."  *Sapienza v. Trahan*, No. 16-CV-01701, 2017 WL 6012658, at *8 (W.D. La. Oct. 23, 2017).

### B. MMR CONTINUES TO FAIL TO PROPERLY SPECIFICALLY IDENTIFY ITS TRADE SECRET MATERIALS

In its original complaint [R. 1], MMR alleged that Heroman transferred nearly 1,500 files to storage devices, "the vast majority of which contain MMR's trade secrets and confidential business information."  MMR identifies generally folders accessed by Heroman, but not specific trade secret material.  In fact, MMR identifies only one document accessed by Heroman entitled "Master Job Sheet – BIBLE (ORLANDO).xlsx," which MMR only describes as a "veritable bible for completing work according to MMR's standards."

MMR alleges that the files contain "highly valuable trade secrets and confidential business information, including operational information regarding work performed for MMR customers; proposals and draft proposals to actual and prospective customers; MMR pricing information and price lists, including customer specific price books and information about year-over-year trends in MMR's pricing; product descriptions and specifications; data concerning MMR's new hires and

7

employees, including employee pay information and employee, training materials; and MMR's projections regarding each ongoing and prospective project in the Orlando area."

MMR's overly broad categories of purported trade secret material do not comply with the requirements of DTSA and LUTSA, as interpreted under case law.  The requirement that a plaintiff describe a trade secret's subject matter with "sufficient particularity" is intended to "prevent[s] a plaintiff from taking unfair advantage of the [Uniform Trade Secrets Act] and proceeding on a flimsy basis at the outset of a litigation only to tailor its identification of trade secrets to the discovery it receives." *Source Prod. & Equip. Co*. 2019 WL 4752058, at *5 (internal citations and quotations omitted) (emphasis added).  MMR is not entitled to conduct discovery and gather facts necessary to cure defects in a pleading.  *See, e.g.*, *Patterson v. Novartis Pharms. Corp*., 451 F. App'x 495, 498 (6th Cir. 2011).  These pleading requirements are imposed to prevent a plaintiff from using the trade secret law unfairly by proceeding on a specious claim at the start of the litigation only to adapt its identification of trade secrets in response to discovery it receives. *Source Prod. & Equip. Co.* 2019 WL 4752058, at *5 (citing *Yeiser Research & Dev. LLC v. Teknor Apex Co*., 281 F. Supp. 3d 1021, 1044 (S.D. Cal. 2017)). That is exactly what MMR is trying to do in this case.

At the outset of the litigation, MMR provided search terms that ISG's forensic examiner would use to search within Heroman's personal and ISG devices, Kraft's ISG devices, Travis Dardenne's ISG devices and ISG's servers and systems.  Despite the vagueness of MMR's Complaint and generalized identification of claimed trade secrets, ISG agreed to this protocol as ISG felt the request was at least tangentially related to the allegations against its employees, Heroman and Kraft.  Since this time, ISG has continued to cooperate with MMR's push to expand

8

the discovery portion of this matter, without MMR's reciprocal efforts to specifically identify the alleged trade secret material.

For example, MMR has become convinced of a vast conspiracy theory wherein ISG is recruiting MMR employees to steal MMR trade secret materials. In reality, MMR's failure to implement the most basic procedures for document use or exit interviews in its offices has created a situation wherein MMR allowed employees to leave with MMR materials. These MMR employees did not "take" or "steal" the documents and they typically were not even aware that they still retained them, especially since MMR never inquired into same. MMR never implemented any use or control policies related to documents that remained on ex-employees' thumb drives, hard drives, and cell phones when their employment ended with MMR. MMR's failures have evolved into conspiracies that every ex-employee is a bad actor by simply being in possession of any MMR material, trade secret or not.

Upon this revelation, MMR has pressed to expand this matter to search the personal and ISG devices of every ex-MMR employee employed by ISG. Until this week, ISG has been exceedingly accommodating and allowed four (4) "pre-discovery limited" depositions of its employees. Moreover, ISG voluntarily added the personal and ISG devices of former MMR employees Jason Yates and Mike Lowe. However, every time ISG gives an inch, MMR takes a mile. The depositions of the ISG employees were intended to be limited in scope to the Forensic Protocol and the identification of possible locations of MMR materials. MMR went far beyond the scope of these express, agreed-upon, limitations in each deposition as previously discussed above.

Thereafter, MMR pushed for the "limited" depositions of additional non-party ISG employees attempting to get multiple bites at the apple for each person and expand these

proceedings even further. *See* Exhibit 6, correspondence between counsel in this matter related to additional depositions.

MMR is trying to make discovery a one-way fishing expedition, obtaining discovery by ambush by misrepresenting the scope of the depositions, and constantly enlarging the scope of the discovery to which Defendants are subject—all while MMR delays providing its own discovery responses and avoids providing any specifics as to what its trade secrets are or what the additional ex-MMR employees are alleged to have in their possession.

Due to MMR's complete lack of document control, it is likely that the ex-MMR employees themselves do not know what MMR documents they may have unintentionally retained. The reason MMR has not specified its alleged trade secret materials is because it does not know its own trade secrets, nor has it done anything to protect any potential trade secrets. Instead, MMR has tried to cast a net broadly enough in the hope of finding something later in discovery. This is exactly what MMR is not permitted to do under the law.

MMR does not have the right to cherry pick what its trade secret materials may be only after it has discovered what information and documents those ex-MMR employees may have retained. MMR must know and identify what it considers its trade secrets before such discovery is performed to prevent such actions. ISG is not asking the Court to wholesale restrict MMR from obtaining discovery from these ex-employees, in an orderly fashion, in the normal course (subject to the Rules of Civil Procedure). It is merely requesting that MMR be required to detail its alleged trade secret materials outside of this information so that it is not corrupted by MMR's after-the-fact knowledge and so that it is not permitted to engage in litigation by ambush. MMR is welcome to argue that any piece of retained MMR information or document is a trade secret material in this case, but MMR should be required to first specify the materials independently.

### C. MMR MUST PROVIDE A DEFINITIVE STATEMENT OF ITS TRADE SECRETS

The Eastern District of Louisiana along with other courts adjudicating cases involving alleged trade secrets have issued Identification or Narrowing Orders at the outset of litigation as an aid to management of the case and discovery in trade secret cases. *See SMH Enterprise, LLC v. Krispy Krunchy Foods, LLC*, No. 20-02970-SSV-DPC (E.D. La. Dec. 11, 2020), at EFC No. 27; *Source Prod. & Equip. Co. v. Schehr*, No. 16-17528 (E.D. La. Feb. 8, 2019), at ECF No. 132.[1]

An Identification or Narrowing Order requires that the plaintiff identify, *with reasonable particularity*, the information which it claims constitutes trade secret(s), including as much detail as possible in that disclosure (*i.e.,* a specific description of each alleged trade secret specifying, on an individual basis for each such alleged trade secret, the exact identity, scope, boundaries, constitutive elements, and content of each alleged trade secret, including any asserted combinations). This Identification requires more than a broad identification of the categories within which the trade secret information may fall, such as that set forth in the publicly available Amended Complaint, and requires more than generalized descriptions, such as formulas, plans, or drawings.[2] The requirement of reasonable particularity also serves to limit the permissible scope

---

[1] *See also Zenimax Media, Inc. v. Oculus VR, LLC*, 166 F. Supp. 3d 697, 703 (N.D. Tex. 2015) (court issued Identification Order in misappropriation of intellectual property case involving virtual-reality headset); *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687-P, 2013 WL 9554563, at *5 (N.D. Tex. Jun. 5, 2013) (court issued Identification Order in misappropriation case involving medical billing platform). For additional cases requiring plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue, *see*, *e.g., Arconic, Inc.v. Novelis, Inc*., CV 17-1434, 2020 WL 7247112, at *1 (W.D. Pa. Dec. 9, 2020); *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662-MN-SRF, 2019 WL 563900, at *1 (D. Del. Feb. 4, 2019), opinion adopted, No. CV 16-662 (MN), 2019 WL 9514501 (D. Del. Apr. 23, 2019); *United Servs. Auto. Ass'n v. Mitek Sys., Inc*., 289 F.R.D. 244 (W.D. Tex. 2013), *aff'd,* 2013 WL 1867417 (W.D. Tex. Apr. 24, 2013); *Switch Commc'ns Group v. Ballard*, No. 2:11–cv–00285, 2012 WL 2342929 (D. Nev. June 19, 2012); *Powerweb Energy v. Hubbell Lighting, Inc.,* No. 3:12–cv–220, 2012 WL 3113162 (D. Conn. July 31, 2012); *Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S*.A., Inc., No. 3:08–cv–539, 2009 WL 4429156 (W.D.N.C. Nov. 25, 2009); *DeRubeis v. Witten Techs., Inc*., 244 F.R.D. 676 (N.D. Ga. 2007); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001).

[2] *See DeRubeis*, 244 F.R.D. at 679 (stating that generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed is insufficient, as such disclosures only reveal the end results of, or functions performed by, the claimed trade secrets); *Switch*, 2012 WL 2342929 at *5 (identifying various concepts, elements, or components that make up designs insufficient without specific description of what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate

of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade.[3]

ISG's request is consistent with this Court's reasoning in *American Biocarbon, LLC v. Keating*, No. CV 20-00259-BAJ-EWD, 2020 WL 7264459 (M.D. La. Dec. 10, 2020). In *American Biocarbon,* this Court held that, despite the DTSA's broad definition, plaintiffs pursuing DTSA claims must put a finer point on their allegations. "Specifically, to allege a trade secret, the plaintiff must 'describe with subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Id.* At *4 (citing *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)); *accord, Universal Processing LLC v. Weile Zhuang*, No. 17-cv-10210, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018) (citing authorities). In *American Biocarbon*, this Court dismissed the plaintiff's claim because the "plaintiff's conclusory allegations fell well short of the particularity standard necessary to separate its alleged trade secret(s) from matters of general knowledge…" 2020 WL 7264459, at *5.

For the reasons espoused herein, ISG respectfully requests that the Court issue an Order for the Identification and Narrowing of MMR's trade secrets and a stay of further discovery by MMR and the forensic protocol until MMR complies with the Order.

---

in unique combination); *Ikon,* 2009 WL 4429156, at *3 n.3 (holding that lengthy, descriptive, but non-specific, paragraphs are insufficient).

[3] *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002) (noting that 43-page description of software package insufficient because it failed to separate the trade secrets from the other information that goes into the software package that are known to the trade).

**WHEREFORE,** ISG respectfully requests that this Court order Plaintiff, MMR, to specifically identify and narrow its trade secrets and to stay further discovery by MMR and the Forensic Protocol until MMR does so.

                                      Respectfully submitted:

**DUNLAP FIORE LLC**

/s/ Jennifer A. Fiore
Jennifer A. Fiore (Bar # 28038)
Erin G. Fonacier (Bar # 33861)
6700 Jefferson Hwy, Building #2
Baton Rouge, LA 70808
Telephone: 225-282-0660
Facsimile: 225-282-0680
jfiore@dunlapfiore.com
efonacier@dunlapfiore.com

**DUANE MORRIS LLP**

Jamie Welton
(Admitted Pro Hac Vice)
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: 214-257-7213
Facsimile: 214-292-8442
jrwelton@duanemorris.com

Shannon Hampton Sutherland
(Admitted Pro Hac Vice)
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215-979-1104
Facsimile: 215-689-4956
shsutherland@duanemorris.com

*Attorneys for JB Group of LA, LLC d/b/a Infrastructure Solutions Group*

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice to all counsel on this 31st day of August 2022.

                                          /s/ Jennifer A. Fiore
                                            Jennifer A. Fiore