UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MMR CONSTRUCTORS, INC.

NO. 22-267

VS.

JB GROUP OF LA, LLC D/B/A
INFRASTRUCTURE SOLUTIONS
GROUP and DAVID HEROMAN

**CERTIFIED TRANSCRIPT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DEPOSITION OF KASEY KRAFT

Taken on Tuesday, August 16, 2022,
At the Law Offices of
Dunlap Fiore
6700 Jefferson Highway, Building 2, Baton Rouge,
LA

REPORTED BY: KIMBERLY GIBNEY, CCR, RPR

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**EXHIBIT 3**

```
 1   A.        That's not why I didn't ask him.  I just
 2   didn't ask him.
 3   Q.        Okay.  Were you trying to keep it a
 4   secret that you were downloading these MMR
 5   files?
 6   A.        I figured they would be able to figure
 7   it out.
 8   Q.        So you just figured they might figure it
 9   out, but you didn't think to ask them?
10   A.        I didn't think it would be -- turn into
11   this.
12   Q.        Okay.  While you were an MMR employee,
13   you didn't share any estimates with any
14   competitors of MMR, correct?
15   A.        MMR estimates to competitors, no.
16   Q.        Because that would be harmful to MMR?
17             MS. SUTHERLAND:  Objection.
18   Outside the scope.
19   Q.        You can answer.
20   A.        No.
21             MS. SUTHERLAND:  I think we need
22   to get straight on the limits of this
23   deposition.  The limits of this deposition are
24   to identify -- well, it's in writing and I don't
25   have it up in front of me.  But it's to identify
```

1    where MMR information may reside.  That question
2    is not in any way designed to identify where
3    that information may reside.
4            MR. KEE:  Actually, if he shared
5    it with anyone outside of MMR, that would be
6    where it resides.  So if you want to instruct
7    him not to answer, you can go do that.
8            MS. SUTHERLAND:  That wasn't
9    your question.  You were asking about things
10   when he worked at --
11           MR. KEE:  Exactly.  That's
12   right.
13           MS. SUTHERLAND:  -- at MMR.
14           MR. KEE:  That's correct.
15           MS. SUTHERLAND:  But that wasn't
16   your question.
17           MR. KEE:  If you want to
18   instruct him not to answer --
19           MS. SUTHERLAND:  Ask your
20   question again.
21           MR. KEE:  If you want to
22   instruct him to not answer, you can.
23           MR. KEEGAN:  Could we read the
24   question back.
25           MS. SUTHERLAND:  Could you read

1    the question back.
2                    THE COURT REPORTER:  "While you
3    were an MMR employee, you didn't share any
4    estimates with any competitors of MMR, correct?"
5    BY MR. KEE:
6    Q.       And my next question is:  You wouldn't
7    do that because that would be harmful to MMR?
8                    MR. KEEGAN:  Object to form.
9                    MS. SUTHERLAND:  Same objection.
10   It's outside of the scope.
11                   MR. KEE:  Are you instructing
12   him not to answer?
13                   MS. SUTHERLAND:  He's not my
14   client.
15                   MR. KEEGAN:  Yeah.  That is
16   clearly outside the scope.  I'm trying to give
17   as much deference as I can.  Can we go off the
18   record and talk about where you're going with
19   this and maybe how much you have left.  And I'd
20   be inclined to not instruct him to stop
21   answering questions.  But it's -- you know, I do
22   have to wonder where it's going.
23                   MR. KEE:  This is the last
24   question on that topic.
25                   MR. KEEGAN:  What's the question

1  again?
2  BY MR. KEE:
3  Q.      My next question was: You wouldn't
4  share those estimates with a competitor while
5  you were at MMR because that would be harmful to
6  MMR?
7           MR. KEEGAN: Object to form.
8  Calls for speculation.
9           If the witness knows, he can
10 answer.
11 A.      I didn't share any estimates with
12 anybody outside of MMR.
13 Q.      And I'm saying you didn't because that
14 would be harmful to MMR?
15 A.      Correct.
16 Q.      Okay. When Mr. Lambert -- during that
17 discussion with Mr. Lambert with the external
18 hard drive, did you tell him that you had other
19 external drives or flash drives in your
20 possession that had MMR information on it?
21 A.      Like I said, I didn't -- when I left, it
22 was all in a box. I didn't know I had them.
23 Q.      When did you box up your office in
24 relation to when you had the external hard drive
25 plugged in? Did you box your office up before