UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MMR CONSTRUCTORS, INC., | : | CIV. NO. 22-267 |
| Plaintiff, | : | |
| VERSUS | : | JUDGE BRIAN A. JACKSON |
| JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP DAVID HEROMAN, KASEY KRAFT, JASON YATES, MICHAEL LOWE, AND TRAVIS DARDENNE, | : | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND TO COMPEL**

The Court should hold Defendant, JB Group of LA, LLC, d/b/a Infrastructure Solutions Group ("ISG"), in civil contempt for violating the Preliminary Injunction and the Court's order concerning forensics (the "Forensic Order"). Plaintiff, MMR Constructors, Inc. ("MMR"), requests that the Court enter contempt sanctions to coerce compliance and compensate MMR for its attorneys' fees and costs relating to this motion and the contemptuous conduct.

**BACKGROUND FOR CONTEMPT FINDING**

1. MMR filed its original complaint on April 25, 2022, seeking, among other things, a temporary restraining order and preliminary injunction based on the misappropriation of trade secrets.

2. On April 27, 2022, the Court granted MMR's request for a temporary restraining order. (R. Doc. 7). The temporary restraining order enjoined and prohibited ISG from "[f]ailing to return the information and external storage devices identified in the verified Complaint (Doc. 1), and any other documents/devices that contain MMR's confidential business information." (R. Doc. 7 at p. 14).

3. On May 19, 2022, the parties filed a *Joint Motion for Preliminary Injunction and Discovery Order* (R. Doc. 21), as well as a *Joint Motion to Approve Forensic Protocol* (R. Doc. 22).

4. The Court granted the requested Preliminary Injunction on May 20, 2022. (R. Doc. 23). Like the temporary restraining order, the Preliminary Injunction enjoined ISG from the following:

> Failing to return and allow the remediation of (in accordance with the forensic protocol) the documents and information identified in the *Verified Complaint*, and any other documents or information identified through the forensic protocol that contain MMR's trade secrets and confidential business information.

(R. Doc. 23.)

5. The Preliminary Injunction further ordered the following:

> **IT IS FURTHER ORDERED** that on or before May 20, 2022, MMR and Defendants shall enter into and abide by an agreed-upon forensic protocol, to be submitted to the Court in the form of a jointly proposed order.

(R. Doc. 23).

6. On May 31, 2022, the Court approved and ordered that the forensic protocol, required by the Preliminary Injunction and jointly submitted by the parties, govern the forensic examinations (the "Forensic Order"). (R. Docs. 22-1, 25).

7. The Forensic Order clearly set forth the parameters of necessary forensic examinations, the devices and accounts within its scope, and the manner and timing for the production of required forensic device reports and documents that contain search terms.

8. The Forensic Order, for instance, requires ISG's forensic examiner to:

> generate the following reports (or their equivalents) on the Devices and Accounts under their respective control: Timeline Report, USB Registry Report, LNK File Analysis, Jump List Analysis, Shellbag Analysis, cellphone report, and an analysis listing the existing and

> deleted user created files including Microsoft Office files such as Word, Excel, PowerPoint, and other file types including .pdf files, emails, etc.). The Examiners shall simultaneously provide these reports to the Parties' counsel.

(R. Docs. 22-1, 25).

9. Further, after creating the images of the devices and equivalent copies of the accounts, ISG's forensic examiner is required by the Forensic Order to:

> As soon as practicable, the ISG Examiner shall deliver the Targeted Collection from the ISG Devices and Accounts to ISG's and Heroman's counsel and MMR's counsel simultaneously, which be designated by agreement of all counsel as "Attorneys' Eyes Only."

(R. Docs. 22-1, 25).

10. Since the entry of the Preliminary Injunction and the Forensic Order, MMR has received no forensic reports and zero documents from the ISG devices and accounts. That is, over the past three months, ISG and its examiner have failed to provide even the rudimentary forensic reports that should take no more than a few days to generate.

11. Meanwhile, MMR has conducted agreed-upon, preliminary depositions limited to the potential devices that contain MMR's information, custodians who may possess the information, and other issues relating to the unlawful migration of MMR's information.

12. MMR learned from these depositions that other former MMR employees who were now owners or managers of ISG had also taken MMR information on external storage devices and had used hat information to conduct business for ISG.

13. For instance, Jason Yates, a former MMR employee and now an owner and CEO of ISG, testified that he had retained an external hard drive that contained MMR's information and plugged in that external hard drive into his ISG computers. (*See, e.g.*, Exhibit 1, Yates Deposition Tr. Excerpts, at 21:9-28).

14. Yates also testified that Kasey Kraft — a former MMR employee and now head of estimating for ISG — had transferred MMR information to his ISG computer (Exhibit 1 at 34-37), and Kasey Kraft confirmed that he had used an external storage device to do so, (*see, e.g.*, Exhibit 2, Kraft Deposition Tr. Excerpts, at 12-13).

15. Michael Lowe, a former MMR employee and now manager of ISG's Texas operations, also testified that he had retained MMR information on an external hard drive and had used MMR information on that drive to conduct business for ISG. (*See, e.g.*, Exhibit 3, Michael Lowe Deposition Tr. Excerpts, at 15:23-19).

16. Based on this testimony and the disclosure of additional sources of MMR information, the parties filed a *Joint Motion to Approve Amendment to Forensic Protocol* (R. Doc. 42) to expand the scope of the Forensic Order to include the external storage devices disclosed during the depositions that were, arguably, not already subject to the Forensic Order's scope. On August 11, 2022, the Court granted the motion and amended the Forensic Protocol. (R. Doc. 44).

17. There are still two former MMR employees, now working for ISG, whom the parties had agreed would sit for a limited deposition to determine, among other things, whether further devices and accounts should have been included under the Forensic Order. The two individuals are Ben Huffman and Travis Dardenne.

18. As MMR was awaiting dates for these two preliminary depositions and after just two weeks of the Court granting the *Joint Motion to Approve Amendment to Forensic Protocol*, ISG's counsel confirmed that it was instructing its forensic examiner to withhold the production of forensic reports and documents relating to the ISG devices and accounts.

19. The purported reason was that MMR had not sufficiently identified its trade secrets and confidential business information, even though MMR identified that information in its verified

complaint and provided the list of documents that Heroman had taken to ISG's forensic examiner to aid his search for documents.

20. Further, ISG is taking this position despite the clear language and procedure in the Forensic Order that specifically envisions MMR conducting a review of the forensic reports and produced documents to identify the files that belong to MMR so that they can be remediated to ensure compliance with the Preliminary Injunction:

> 11. **MMR REVIEW.** MMR's counsel will review the files delivered by the Examiners and will provide to ISG's and Heroman's counsel a list of file ("**MMR Files**") that MMR's counsel believe should be permanently deleted from the Devices and Accounts in accordance with Section 12 below.
>
> 12. **REMEDIATION.** The Parties will confer in good faith about the MMR Files that MMR's counsel believe should be removed from the Devices and Accounts. If the Parties cannot reach an agreement on whether the MMR Files should be removed, the Parties will request a conference with the Court to discuss the MMR Files. Once an agreement is reached or a court order is entered, the Examiners will then locate the MMR Files on the Devices and Accounts and will then permanently delete such MMR Files from the Devices and Accounts as soon as practicable. The Examiners will then provide the Parties' counsel with a certification that the removal is complete.

(R. Doc. 22-1).

21. ISG's refusal to abide by and comply with the Forensic Order is preventing MMR not only from conducting the review it is entitled to undertake but also from fully identifying the files that are at issue in this case — the very thing that ISG complains MMR has not sufficiently done.

## LAW AND ARGUMENT

I.    **Legal standard for civil contempt.**

Federal courts possess the inherent authority to enforce their own orders through contempt sanctions. *See Wafenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (affirming civil

contempt award, which included attorney's fees, for violating the court's order); *see generally* 11A Wright, Miller, Kane & Marcus, Federal Practice and Procedure § 2960 (2010) ("A court's ability to punish contempt is thought to be an inherent and integral element of its power and has deep historical roots."). The Court can and should hold ISG in civil contempt based on clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by ISG; and (3) they failed to comply with the order. *See American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2005) (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

II.  **ISG is in contempt for violating the Preliminary Injunction and Forensic Order.**

The evidence clearly and convincingly establishes each required element for a civil contempt finding. <u>First</u>, the Court entered the Preliminary Injunction, which requires compliance with the Forensic Order, and the Forensic Order, which requires the production of specified forensic reports and documents. The Preliminary Injunction and Forensic Order have been in effect since May 20, 2022, and May 31, 2022, respectively. (*See* R. Docs. 23, 25.) <u>Second</u>, the Forensic Order, backed by the Preliminary Injunction, requires the following of ISG and its forensic examiner:

> 5.  **DEVICE AND DRIVE REPORTS.** The Examiners shall generate the following reports (or their equivalents) on the Devices and Accounts under their respective control: Timeline Report, USB Registry Report, LNK File Analysis, Jump List Analysis, Shellbag Analysis, cellphone report, and an analysis listing the existing and deleted user created files including Microsoft Office files such as Word, Excel, PowerPoint, and other file types including .pdf files, emails, etc.). The Examiners shall simultaneously provide these reports to the Parties' counsel.
>
> . . .
>
> 9.  **ISG EXAMINER PRODUCTION.** ***As soon as practicable***, the ISG Examiner ***shall deliver*** the Targeted Collection from the

> ISG Devices and Accounts to ISG's counsel and Heroman's counsel and MMR's counsel simultaneously, which be designated by agreement of all counsel, as "Attorney's Eyes Only."

(R. 22-1 ¶ 5, 9) (emphasis added). *Third*, ISG has explicitly instructed its forensic examiner to not make the required production of forensic reports, as well as documents containing search terms. On August 26, 2022, ISG's counsel that it was essentially instructing its forensic examiner to make no productions (including forensic reports) from the ISG devices and accounts, and then on August 29, 2022, ISG's counsel again confirmed the same during a phone call with undersigned counsel.

In sum, this obstruction with and failure to abide by the Forensic Order — apparently to gain leverage and force MMR to take additional steps never agreed to or negotiated by the parties — not only violates the terms of the Forensic Order but also the requirements of the Preliminary Injunction.

### III. The Court should issue coercive and compensatory sanctions.

Federal courts have "broad discretion in assessing sanction to protect the sanctity of its decrees and the legal process," and the "proper aim of judicial sanctions for civil contempt is full remedial relief, that such sanctions should be adapted to the particular circumstances of each case, and that the only limitation upon the sanctions imposed is that they be remedial or coercive but not penal." *Bd. Of Supervisors of La. State Univ. v. Smack Apparel Co.*, 574 F. Supp. 2d 601, 6 (E.D. La. 2008). A contempt order may be "employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n.*, 228 F.3d 574, 585 (5th Cir. 2000); *Total Safety v. Rowland*, No. 13-6109 (E.D. La. Oct. 29, 2014) (R. Doc. 321) ("The purposes of civil contempt are two-fold: to compensate the prevailing party for losses and damages caused by the other's noncompliance and to coerce the derelict party into compliance with the original

injunction.").

Based on the particular circumstances of this case and ISG's conduct, the Court should order both coercive and compensatory relief. Without further Court-ordered relief, ISG will continue to flout their obligations. And while it is within the Court's discretion to fashion a sanction that will coerce compliance, the Court should consider also ordering ISG's forensic examiner to immediately produce the forensic images from the ISG devices and accounts to the MMR forensic examiner specified in the Forensic Order.

The MMR forensic examiner is capable of assuming the obligations of generating and producing the forensic reports, as well as the documents containing the search terms, which ISG and its examiner have willfully refused to do for the ISG devices and accounts. Further, the MMR forensic examiner was already bound by the Forensic Order and have completed work on the external storage devices under its control. And the MMR forensic examiner did so timely. After receiving the three external storage devices under its control, the MMR forensic examiner produced the required forensic reports on June 13, 2022. This is in stark contrast to ISG's forensic examiner who has produced no forensic reports from the ISG devices and accounts. In addition to taking an inordinate amount of time to produce the required forensic reports, the ISG forensic examiner is not acting independently to comply with the obligations of the Preliminary Injunction and Forensic Order and is instead taking contemptuous direction from ISG. This calls into question the integrity of the forensic work.

Whether the Court transfers the obligations of the ISG forensic examiner to the MMR forensic examiner or fashions some other sanction to coerce compliance, the Court should also include a compensatory sanction in its contempt order. MMR has been forced to expend what should have been unnecessary time and resources relating to ISG's contempt. The Court should

therefore award MMR its attorneys' fees and costs associated with these efforts. Such an award will compensate MMR for what should have been unnecessary fees and costs and will likewise send a stern warning "necessary to enforce future compliance" with the Preliminary Injunction and Forensic Order. *See Smack Apparel Co.*, 574 F. Supp. 2d at 605-06.

## CONCLUSION

For these reasons, the Court should find ISG in contempt of the Preliminary Injunction and Forensic Order and enter the appropriate sanctions to ensure future compliance and to compensate MMR for its attorneys' fees and costs.

Respectfully submitted:

*/s/ P.J. Kee*
P.J. KEE  (La. Bar No. 34860)
THOMAS P. HUBERT (La. Bar No. 19625)
JACOB J. PRITT (La. Bar No. 38872)
MICHAEL A. FOLEY (La. Bar No. 35774)
JONES WALKER, LLP
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8230
Email:  pkee@joneswalker.com

***Counsel for MMR Constructors, Inc.***

## CERTIFICATE OF SERVICE

I certify that on September 6, 2022, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System, which will be send a copy of the pleading to all parties via email.

*/s/ P.J. Kee*
P.J. Kee