UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MMR CONSTRUCTORS, INC.**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 22-267-BAJ-RLB**

**JB GROUP OF LA, LLC, ET AL.**

### ORDER

Before the Court is Plaintiff MMR Constructors, Inc.'s ("MMR") Motion for Rule 30(d) Sanctions. (R. Doc. 64). Defendant JB Group of LA, LLC *d/b/a* Infrastructure Solutions Group ("ISG") has filed a response. (R. Doc. 67). MMR filed a reply. (R. Doc. 76).

**I.    Background**

MMR commenced this action by filing a Complaint seeking damages and injunctive relief against ISG and former MMR employee David Heroman ("Heroman"). (R. Doc. 1). MMR alleges that ISG and certain employees stole MMR's trade secrets and confidential business information. MMR seeks relief under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq*. ("DTSA"), the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq*. ("LUSTA"), the Louisiana Unfair Trade Practice Act, La R.S. 51:1401 *et seq*. ("LUPTA"), and various torts under Louisiana law. The district judge granted MMR's Motion for Temporary Restraining Order, which sought immediate injunctive relief prohibiting the defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information, and set a preliminary injunction hearing. (R. Doc. 7; *see* R. Doc. 16).

Since the commencement of this action, MMR has named as defendants four additional former MMR employees (in addition to Heroman) who departed for ISG: Kasey Kraft ("Kraft"), Jason Yates ("Yates"), Michael Lowe ("Lowe"), and Travis Dardenne ("Dardenne"). (R. Docs.

29, 53). Among other things, MMR alleges that these individual defendants "accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor," and that ISG profited from these unlawful misappropriations and deceptive trade practices. (R. Doc. 53 at 25-27).

The instant dispute pertains to the March 27, 2023 deposition of the non-party Walter "Ben" Huffman ("Huffman"), a former employee of MMR who is currently employed as ISG's Project Controls Manager. MMR noticed the deposition to take place, but does not appear to have served a Rule 45 subpoena to secure the deposition. (*See* R. Doc. 64-5). ISG's counsel appeared at the deposition on behalf of Huffman. (R. Doc. 64-6, "Huffman Depo. Tr."; *see* R. Doc. 67 at 3 ("ISG employee Mr. Huffman was initially represented at this deposition by ISG's counsel.")).

At the deposition, Huffman initially testified that he created a timekeeping database for ISG "[f]rom scratch" without access to MMR's timekeeping database. ( Huffman Depo. Tr. at 26:17-28:6; 35:17-2). Later in the deposition, however, Huffman changed his testimony to state that he was in fact "working with an MMR database to create the timekeeping database for ISG." (Huffman Depo. Tr. at 139:12-21). When asked why he had not provided the truth in his earlier testimony, Huffman replied "I don't know. I don't know." (Huffman Depo. Tr. at. 140:5-6). Huffman then testified that the MMR database was on his computer, but that he had not told anyone about the database. (Huffman Depo. Tr. at. 140:10-21). MMR's counsel called for a break in the deposition. (Huffman Depo. Tr. at. 140:22-24). There is no dispute that during the break, ISG's counsel informed MMR's counsel that the deposition would not continue. ISG

represents that at that point, "ISG's counsel determined that, consistent with counsel's own ethical obligations, [they] could no longer represent both Mr. Huffman and ISG." (R. Doc. 67 at 3). MMR's counsel then contacted the undersigned's chambers, but the undersigned was unavailable to provide guidance to the parties at the time of the deposition.

ISG represents that immediately after the deposition was suspended, ISG agreed to have Huffman's ISG-issued laptops and accounts preserved for imaging, and further agreed to have forensic reporting conducted pursuant to the Forensic Protocol entered in this action. (*See* R. Doc. 67-4). ISG specifically represents that "ISG's counsel took possession of Huffman's current ISG-issued laptop from him immediately after the deposition, without him having accessed it, and sent it off to the forensic examiner that day." (R. Doc. 67 at 4-5). Furthermore, ISG represents that it "would agree to the reimbursement of MMR's and its counsel's travel costs between New Orleans and Baton Rouge for the first deposition and any court reporter appearance fee for the first deposition." (R. Doc. 67 at 5; *see* R. Doc. 67-7).

On April 13, 2023, MMR filed the instant Motion for Rule 30(d) Sanctions. (R. Doc. 64). MMR seeks the following as sanctions for the termination of the deposition: (1) an award of attorneys' fees and costs associated with this motion, as well as the initial and subsequent depositions of Huffman; (2) an order requiring ISG to produce Huffman for a limited deposition concerning the identification of storage devices and computers on which Huffman stored, transferred, or accessed MMR documents; (3) an order requiring Huffman to appear for a separate full deposition; and (4) any other appropriate sanctions to deter ISG from engaging in such conduct.

## II. Law and Analysis

"At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys,

embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). ISG did not move to terminate or limit the deposition at issue pursuant to Rule 30(d)(3)(A). Accordingly, the Court will turn directly to whether and to what extent sanctions are merited under Rule 30(d)(2), in light of the termination of the deposition, given ISG's counsel's decision to no longer represent Huffman at the deposition.

"The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). "The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted" given that the rule does not expressly describe the available sanctions. *Howell v. Avante Servs., LLC*, No. 12-293, 2013 WL 824715, at *5 (E.D. La. Mar. 6, 2013) (finding that payment of attorney's fees for deposition of non-party was an "appropriate sanction" under Rule 30(d)(2)); *Soule v. RSC Equipment Rental, Inc.,* No. 11-2022, 2012 WL 5060059, at *1-2 (E.D. La. Oct. 18, 2012) (ordering parties to conduct all future depositions "in a professional manner" and enjoining specific conduct under Rule 30(b)(2)); *Todd v. Precision Boilers, Inc.*, No. 07-0112, 2008 WL 4722338, at *1 (W.D. La. Oct. 24, 2008) (ordering re-deposition where deponent's attorney refused to allow questioning for the full 7 hour period specified in Rule 30(d)(1)). It is "well within [a district court's] discretion to use sanctions to deter future abuse of discovery." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (discussing the purpose of sanctions pursuant to Rule 37).

In support of its Motion for Rule 30(d) Sanctions, MMR relies primarily on the decision *VirnetX Inc. v. Cisco Sys., Inc.*, No. 10-417, 2012 WL 7997962 (E.D. Tex. Aug. 8, 2023). In *VirnetX*, the court was faced with competing motions pertaining to a terminated deposition in a patent litigation action. The non-party deponent was an engineering manager employed by the defendant Apple. Apple's counsel, who appeared on behalf of the non-party deponent,

terminated the deposition after making various "not so subtle speaking objections" and not allowing the deponent "to answer the questions" posed to him despite the deponent's willingness and ability to answer those questions. *Id*. at *3. The Court concluded that "Apple's counsel chose to end the deposition in violation of Rule 30(d)(3)(A)" because "[m]erely disagreeing with a particular line of questioning is not justification to shut down the deposition." *Id*.

In awarding sanctions to the plaintiff under Rule 30(d)(2), the Court found that the sanctions to be imposed "must serve the dual purpose of deterring any similar discovery abuse in this case, as well as deterring similar abuse in future cases" and "must attempt to address any harm suffered by [plaintiff] as a result of Apple's improper termination of the deposition." *Id*. at *4. Looking to the motivation of Apple's counsel for stopping the deposition, the Court concluded that the facts raised "a strong inference that Apple's motivation to shut down the deposition was to provide an opportunity to 'woodshed' the witness, rather than to protect the witness from any unfair conduct or questioning by opposing counsel." *Id*. In light of the foregoing, the Court required payment of attorney's fees and costs and the choice of the following sanctions: (1) Apple must bear the costs of completing the deposition without further communication between Apple and the deponent regarding the patents at issue, with all post-termination communications deemed waived; or (2) Apple must be precluded from calling the deponent at trial and an adverse inference instruction would be provided to the jury. *Id*. at *6.

Here, ISG represents that its counsel terminated Huffman's deposition in "good faith" based on an apparent concurrent conflict of interest that only arose during the course of the deposition. (R. Doc. 67 at 6-9). ISG represents that its counsel was not attempting to "woodshed" Huffman in terminating the deposition, but instead "had legitimate ethical concerns that cast doubt on whether ISG's counsel could continue with its representation of Mr. Huffman in

5

connection with the deposition or that any counsel—MMR's or ISG's—could continue to ask Mr. Huffman questions under the circumstances." (R. Doc. 67 at 8).

Unlike in *VirnetX*, it does not appear that ISG's counsel's motivation for terminating the deposition was to influence or alter the testimony of Huffman. The Court accepts as true, for the purposes of the instant motion, that ISG's counsel first identified a potential concurrent conflict of interest with respect to Huffman at the time the deposition was terminated. Indeed, Huffman specifically testified that he had not disclosed his possession of the MMR timekeeping database to anyone prior to his deposition testimony on the subject. (*See* Huffman Depo. Tr. at 140:10-21). Consistent with the foregoing, ISG represents that Huffman had not previously disclosed to ISG (including its management, employees, and counsel) about his possession of the MMR timekeeping database. (R. Doc. 67 at 3-4). Presumably, this means that Huffman affirmatively mislead ISG's counsel regarding these actions. The testimony on which ISG's counsel predicated the termination of the deposition is distinguishable from Huffman's earlier testimony regarding ISG's use of MMR information, including green sheets and overhead sheets to create estimates for potential clients, given that all were apparently unaware prior to the deposition that Huffman had possession of MMR's timekeeping database. (Huffman Depo. Tr. at. 9:13-11:25).

Given the nature of Hoffman's testimony revealing his possession of MMR's timekeeping database—which ISG and its counsel were unaware of at the time of the deposition—the Court will not inquire further regarding when the asserted concurrent conflict of interest arose.[1]

---

[1] This district has adopted the Rules of Professional Conduct of the Louisiana State Bar Association, as amended by the Louisiana Supreme Court. LR 83(b)(6). The Louisiana Rules of Professional Conduct provide that a "lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which is exists if "(1) the representation of one client will be directly adverse to another client" or "(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another." La. R. Prof. Cond. R. 1.7(a). The lawyer may represent the client, however, if "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is

6

That said, ISG's counsel were faced with, at the very least, a <u>potential</u> concurrent conflict of interest with respect to their representation of Hoffman, a former employee of the plaintiff bringing this trade secret misappropriation action.[2] Notwithstanding this potential concurrent conflict of intertest, ISG's counsel decided to represent Huffman at his deposition. The termination of the deposition was a direct result of this decision. There is no indication that there was grounds to terminate the deposition, based on MMR's counsel's conduct, under Rule 30(d)(3)(A). Even if they were ethically obligated to withdraw their representation of Huffman at his deposition, this action directly impeded, delayed, and frustrated Huffman's fair examination. *See* Fed. R. Civ. P. 30(d)(2).

As sanctions under Rule 30(d)(2), the Court will require ISG (or its counsel) to pay the reasonable costs and expenses incurred by MMR for appearing at Huffman's terminated deposition on March 27, 2023. These costs and expenses shall include the travel costs and court reporter fees, as well as all attorneys' fees and costs incurred by MMR with resect to its counsel's <u>travel and appearance</u> at the deposition.

Furthermore, the Court will require Huffman, a non-party to this lawsuit, to appear for a single, continued deposition not to exceed 7 hours. To the extent necessary, this deposition may be secured with a Rule 45 subpoena. Given that ISG immediately imaged Huffman's devices and accounts, there is no need to conduct separate depositions related to these devices and accounts. MMR may question Huffman about these devices and accounts at the subsequent deposition. The parties shall bear their own costs with respect to this subsequent deposition.

---

not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." La. R. Prof. Cond. R. 1.7(b).

[2] Notably, ISG's counsel also represent Yates and Dardenne, two individual defendants currently employed by ISG. For the purposes of this motion, however the Court declines to consider whether ISG's counsel's representation of those individual defendants implicates Rule 1.7.

ISG represents that "[s]ince the date of the deposition, ISG's counsel has had no substantive communication with Mr. Huffman about the case or his testimony. He now has his own counsel." (R. Doc. 67 at 9). Given that the deposition was terminated based on an apparent concurrent conflict of interest and to provide Huffman to have the opportunity to obtain his own counsel, it appears that any communications following the deposition between ISG's counsel and Huffman are outside of any attorney-client relationship. Accordingly, the Court has no immediate concern regarding MMR questioning Huffman regarding his communications with ISG's counsel after the termination of the deposition.

However, because this topic has not been fully briefed and Huffman has not been heard on this issue, and to avoid potential objections under Rule 30(c)(2) regarding attorney-client privileged communications between Huffman and ISG's counsel after the termination of the deposition, the Court will require ISG, its counsel and/or Huffman (through his newly retained counsel) to file any necessary motions regarding post-termination attorney-client communications between ISG's counsel and Huffman no less than two weeks prior to Huffman's continued deposition.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that MMR's Motion for Rule 30(d) Sanctions is **GRANTED IN PART and DENIED IN PART**. The parties shall bear their own costs with respect to the filing of this motion and the associated briefing.

**IT IS FURTHER ORDERED** that ISG (or its counsel) must pay the reasonable costs and expenses incurred by MMR for appearing at the first deposition of Walter "Ben" Huffman. These costs and expenses shall include travel costs and court reporter fees, as well as all other

8

attorneys' fees and costs incurred by MMR with respect to the travel and attendance at the deposition. In connection with these sanctions, the parties are to do the following:

(1) If the parties are able to resolve this among themselves or otherwise agree to a reasonable amount of attorney's fees and costs, ISG and/or its counsel shall pay that amount;

(2) If the parties do not agree to a resolution, MMR may, within **14 days** of the docketing of this Order, file a Motion for Fees and Costs, setting forth the reasonable amount of costs and attorney's fees (including evidentiary support) incurred; and

(3) ISG shall, within **7 days** of the filing of MMR's Motion for Fees and Costs, file any opposition pertaining to the imposition of the amounts requested by ISG.

**IT IS FURTHER ORDERED** that the non-party Walter "Ben" Huffman is subject to an additional deposition not to exceed 7 hours. This deposition shall take place on or before **July 31, 2023**. Any motions pertaining to communications between ISG counsel and Huffman following the termination of the prior deposition shall be filed not less than two weeks prior to the rescheduled deposition.

Signed in Baton Rouge, Louisiana, on June 7, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**