UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-267-BAJ-RLB** |
| **JB GROUP OF LA, LLC, ET AL.** | |

**ORDER**

The Court held an in-person conference on September 12, 2023. (R. Doc. 99). At the conference, the parties discussed the status of the ongoing forensic review and production of documents in this matter. Having considered the representations of the parties, and the record as a whole, the Court issues the following ruling to govern the parties' continued discovery efforts.

**I.     Background**

MMR Constructors, Inc. ("MMR") commenced this action by filing a Complaint seeking damages and injunctive relief against JB Group of LA, LLC *d/b/a* Infrastructure Solutions Group ("ISG") and former MMR employee David Heroman ("Heroman"). (R. Doc. 1). MMR alleges that ISG and certain employees stole MMR's trade secrets and confidential business information. MMR seeks relief under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq.* ("DTSA"), the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq.* ("LUSTA"), the Louisiana Unfair Trade Practice Act, La R.S. 51:1401 *et seq.* ("LUPTA"), and various torts under Louisiana law. The district judge granted MMR's Motion for Temporary Restraining Order, which sought immediate injunctive relief prohibiting the defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information, and set a preliminary injunction hearing. (R. Doc. 7; *see* R. Doc. 16).

After the parties identified the electronic devices at issue, the district judge entered a Stipulated Preliminary Injunction and required the parties to submit an agreed-upon forensic protocol. (R. Doc. 23).

Since the commencement of this action, MMR has named as defendants four additional former MMR employees (in addition to Heroman) who departed for ISG: Kasey Kraft ("Kraft"), Jason Yates ("Yates"), Michael Lowe ("Lowe"), and Travis Dardenne ("Dardenne"). (R. Docs. 29, 53). Among other things, MMR alleges that these individual defendants "accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor," and that ISG profited from these unlawful misappropriations and deceptive trade practices. (R. Doc. 53 at 25-27).

The Court has entered into the record a Forensic Protocol, which, as amended, sets forth a list of search terms to collect information from accounts and devices belonging to ISG, Heroman, Kraft, Dardenne, Lowe, and Yates. (R. Docs. 26, 45). The Court has also entered into the record a Protective Order governing the exchange of confidential information. (R. Doc. 42).

On April 27, 2023, MMR sought a status conference with the undersigned for the purposes of discussing the following: (1) the parties' disputes regarding potential additional amendment of the Forensic Protocol, as amended, to add additional "revised" search terms, as well as devices, accounts, and custodians, and (2) modifications of the deadlines in this action given the need to conduct additional discovery. (R. Doc. 65). With respect to the potential additional amendment of the Forensic Protocol, MMR suggested that the parties have agreed to

include devices and accounts of the non-parties Laiton McCaughey ("McCaughey") and Walter "Ben" Huffman ("Huffman"), as well as Kraft's personal e-mail account. (R. Doc. 65 at 3-6). In response, ISG represented that while it had "agreed to image and provide forensic reports" for ISG laptops and e-mail accounts issued to the McCaughey and Huffman, it did not agree to MMR's "expanded search terms" or the addition of certain proposed additional non-party custodians. (R. Doc. 68).

The Court granted the motion to set status conference, and required, among other things, the parties to submit a joint status report identifying (1) MMR's proposed additional search terms; (2) MMR's proposed additional devices, accounts, and custodians; and (3) the parties' proposed amended deadlines. (R. Doc. 71).

On May 26, 2023, the parties filed their Amended Joint Status Report. (R. Doc. 79). MMR identified 79 proposed search terms to be conducted on additional custodians, many of which were already included in the Forensic Protocol. (R. Doc. 79 at 2). ISG objected to many of these search terms (including terms already agreed to in the Forensic Protocol) as constituting "generic file/file extension terms" or "broad and generic construction industry and contracting terms," and suggested that they be deleted or, in most circumstances, that the term and connector "and MMR" be added to the search terms. (R. Doc. 79 at 3-7). MMR also identified 22 additional proposed non-party custodians (most of which are identified as former MMR employees). (R. Doc. 79 at 9-10). In opposing the addition of these custodians, ISG argues, among other things, that given that their forensic examiner has already imaged and searched the entire ISG OneDrive document repository, the inclusion of "each of these third-parties' ISG devices and accounts in the forensic protocol would be overly broad, unduly burdensome and unreasonably costly, and not proportionate to the needs of the case." (R. Doc. 79 at 11). Finally,

3

the parties jointly proposed modifications to the deadlines in the Scheduling Order. (R. Doc. 79 at 11-12).

On June 2, 2023, the Court modified the deadlines in the Scheduling Order in accordance with the requests of the parties. (R. Doc. 80).

On July 27, 2023, the Court held a status conference with the parties. (R. Doc. 92). At the conference, the Court asked for additional "information regarding the implementation of the searches, how potentially responsive documents were identified, how those documents were reviewed for any privileged materials, how the appropriate documents were produced to plaintiff's counsel, how plaintiff counsel's review occurred, and how the results of that review were communicated back to the defense." (R. Doc. 92 at 1). "In order to better understand the timing, expense, and resources that will be implicated by any decision regarding the <u>disputed</u> terms and custodians, the Court ordered the parties to move forward with the <u>undisputed</u> searches and report back regarding the specifics of those searches." (R. Doc. 92 at 2).

The parties submitted various status reports describing the status of the undisputed searches. (R. Docs. 93, 94, 95, 96, 98). ISG completed the undisputed searches on the accessible Huffman and McCaughey ISG devices, accounts, and data, and provided the search hit reports on August 30, 2023. ISG provided a declaration from their digital forensic examiner, Lee Whitfield, outlining the work conducted and the associated costs. (R. Doc. 96-1). In relevant part, the declaration provides that "ISG has incurred approximately $88,870.19 in fees and costs" from Mr. Whitfield's firms pertaining to Forensic Protocol work. (R. Doc. 96-1 at 2). Mr. Whitfield also noted that he had proposed two methods for decrypting data that was otherwise inaccessible on McGaughey's ISG laptop. (R. Doc. 96-1 at 3; *see* R. Doc. 93-1).

On September 12, 2023, the Court held an in-person status conference to discuss the

4

foregoing issues. (R. Doc. 99). At the conference, MMR represented that it had agreed on one of Mr. Whitfield's alternatives with respect to attempting to access the encrypted data on McGaughey's ISG laptop. In addition, MMR identified the following five individuals as the most important potential custodians: Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander. The parties also discussed the potential addition of counsel and other search terms to be treated as "presumptively privileged" with respect to Mr. Alexander in light of an unrelated legal dispute between that individual and MMR. The Court also informed the parties that they would be provided the opportunity to seek further amendment of the deadlines in this action.

On September 19, 2023, ISG, Yates, and Dardenne submitted an additional status report. (R. Doc. 100). In this status report, they represent that the ISG email accounts of Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander were imaged by Mr. Whitfield on September 18, 2023. (R. Doc. 100 at 1). Furthermore, ISG identified the counsel and other search terms to be treated as "presumptively privileged" as discussed at the conference. (R. Doc. 100 at 2). Finally, ISG confirmed that on September 19, 2023, as agreed by the parties, it was able to reset the administrative password to allow Mr. McCaughey's ISG laptop to be imaged, and that searches of undisputed search terms were being conducted on that device as previously ordered. (R. Doc. 100 at 2).

Accordingly, the only issues remaining are (1) the scope of search terms on additional custodians to be used moving forward and (2) whether any of the additional 22 proposed custodians should be subject to the Forensic Protocol.

## II.     Law and Analysis

### A.     Scope of Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

### B.     Proposed Search Terms

Having considered the arguments of the parties, the Court will limit the search terms to be used moving forward in discovery with respect to non-party custodians to the <u>undisputed</u> search terms identified in the parties Amended Joint Status Report (R. Doc. 79) and already used by the parties to search the McCaughey and Huffman devices and accounts.

The Court has reviewed the disputed search terms. The Court agrees with ISG that, for the purposes of searches for non-party custodians, including McCaughey and Huffman, the disputed search terms constitute "generic file/file extension terms" or "generic construction

6

industry and contracting terms" that are not reasonably tailored for discriminating between MMR's proprietary information and ISG's proprietary information. The Court recognizes that many of these search terms were agreed-upon by the parties for the purposes of the Forensic Protocol, which was originally designed to locate documents and information solely with respect to the original defendants – ISG and Heroman. (*See* R. Doc. 26). The amendment to the Forensic Protocol, which expanded the search to the additional defendants Dardenne, Kraft, Lowe, and Yates, did not modify the search terms. (*See* R. Doc. 45). The expansion of searches to non-party custodians, however, merits a limitation of the applied search terms.

With a couple of exceptions, ISG proposed to add the search term and connector "and MMR" to the disputed search terms.[1] The parties acknowledged, however, that the addition of the "and" connector would not locate any additional documents given that "MMR" is already a stand-alone search term. MMR's counsel further acknowledged that they are able to identify search terms within the documents produced.

Having considered the arguments of the parties, the Court finds it proportional to the needs of this case to limit additional searches to the **undisputed** search terms identified in the parties' May 26, 2023 Amended Joint Status Report (R. Doc. 79). The Court acknowledges MMR's concern that an ISG employee may have transferred MMR's proprietary information to an ISG document without including any designation that it was originally an MMR document. In weighing the potential costs to ISG with respect to running the proposed additional search terms, the Court finds that the proposed discovery using the disputed search terms and connectors is disproportionate to the needs of the case. The use of MMR documents not otherwise disclosed

---

[1] ISG suggests deletion in whole of the search terms "Budget vs. Spent" and "Budget vs. Spend." (*See* R. Doc. 79 at 7-8). The Court agrees that these terms are too generic for the purposes of locating MMR-specific documents in the devices of non-party custodians.

7

during the ESI searches can be explored in deposition testimony of the defendants or other former MMR employees. The undisputed search terms are sufficient to generate a reasonable and proportionate production of responsive documents and information within the scope of discovery with respect to McCaughey and Huffman, and the additional non-party custodians discussed below.

### C. Additional Custodians

At the hearing, MMR represented that the 22 additional proposed non-party custodians were identified in the course of discovery as possessing, or having transmitted, MMR documents or information at issue. MMR noted that one e-mail correspondence to McCaughey included MMR documents or information sent by a non-ISG vendor in a relationship with Kevin Alexander, an ISG employee. MMR highlighted this communication as evidence that additional discovery of non-party custodians must be conducted to determine whether, and to what extent, MMR documents and information had been used by ISG.

Given that ISG has already incurred significant expenses with respect to forensic examiner searches, storage of information, and productions to date, the Court is not inclined to order searches of 22 additional non-party custodians, some of which were never employed by MMR. The Court will, however, allow for a limited expansion of the custodians subject to the Forensic Protocol. As discussed above, MMR identified the following five individuals as the most important potential custodians: Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander. The Court finds it proportionate to the needs of this case to allow for the discovery of these non-party individual's ISG e-mail accounts **and devices**.

ISG's counsel raised one pertinent issue with respect to Kevin Alexander. ISG's counsel asserted that MMR and Mr. Alexander have an ongoing legal dispute that is unrelated to the

claims and defenses in this action.[2] ISG has provided the additional search terms, which include counsel, to be treated as "presumptively privileged" with respect to Mr. Alexander pursuant to Section 8 of the Forensic Protocol. (*See* R. Doc. 26 at 2-3). The Court agrees with the application of the proposed terms for those purposes. (*See* R. Doc. 100 at 2). Furthermore, ISG is provided a reasonable amount of time to review all documents obtained from Mr. Alexander's accounts and devices to determine whether they should be produced as relevant to the claims and defenses in this action. ISG must specifically identify the total number of any documents produced relative to Mr. Alexander, as well as the total number of documents withheld (and on what basis).

### D.   Modification of Deadlines

The parties are to review the scope of this ruling and meet-and-confer with respect to any necessary modification of the current Scheduling Order required to complete discovery. The parties shall submit a joint status report proposing new deadlines. The Court will set an additional status conference if necessary.

### III.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Forensic Protocol previously entered is amended pursuant to the parameters set forth above.

**IT IS FURTHER ORDERED** that the parties shall file, on or before **October 2, 2023,** a Joint Status Report seeking new proposed deadlines in this action, up to and including the trial date.

Signed in Baton Rouge, Louisiana, on September 22, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] MMR represented that there is no current litigation between MMR and Mr. Alexander.