UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MMR CONSTRUCTORS, INC., | CIV. NO. 22-267 |
| Plaintiff, | |
| VERSUS | JUDGE BRIAN A. JACKSON |
| JB GROUP OF LA, LLC, ET AL., | |
| Defendants. | MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR. |

**MEMOARNDUM IN SUPPORT OF MOTION FOR DISCOVERY SANCTIONS**

The Court directed ISG to move forward with producing documents that hit on the undisputed search terms of the Forensic Order. This included the following search terms—P19, P20, and P21—but ISG has refused to produce the documents that hit on those terms from the devices and accounts of Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander. MMR respectfully requests that the Court order ISG to comply with the Court's previous order by producing the documents that hit on the undisputed search terms and compensate MMR for the fees and costs associated with the *Motion for Discovery Sanctions*.[1]

**BACKGROUND**

MMR filed its original complaint on April 25, 2022, seeking, among other things, a temporary restraining order and preliminary injunction based on the misappropriation of trade secrets. On April 27, 2022, the Court granted MMR's request for a temporary restraining order, which prohibited ISG from "[f]ailing to return the information and external storage devices

---

[1] "ISG" stands for Defendant, JB Group of LA, LLC, d/b/a Infrastructure Solutions Group, and "MMR" stands for Plaintiff, MMR Constructors, Inc. "Forensic Order" means the forensic protocol that the Court approved, ordered, and amended.

1

identified in the verified Complaint (Doc. 1), and any other documents/devices that contain MMR's confidential business information." (R. Doc. 7 at 14.)

On May 19, 2022, the parties filed a Joint Motion for Preliminary Injunction and Discovery Order (R. Doc. 21), as well as a Joint Motion to Approve Forensic Protocol (R. Doc. 22.) The Court entered the requested Preliminary Injunction on May 20, 2022. (R. Doc. 23.) Like the temporary restraining order, the Preliminary Injunction enjoined ISG from:

> Failing to return and allow the remediation of (in accordance with the forensic protocol) the documents and information identified in the Verified Complaint, and any other documents or information identified through the forensic protocol that contain MMR's trade secrets and confidential business information.

(R. Doc. 23.) The Preliminary Injunction further ordered the following:

> IT IS FURTHER ORDERED that on or before May 20, 2022, MMR and Defendants shall enter into and abide by an agreed-upon forensic protocol, to be submitted to the Court in the form of a jointly proposed order.

(R. Doc. 23.)

On May 31, 2022, the Court entered the Forensic Order, required by the Preliminary Injunction and jointly submitted by the parties, governing the forensic examinations in this case. (R. Docs. 22-1, 25, 26.) The Forensic Order clearly set forth the parameters of necessary forensic examinations, the devices and accounts within its scope, and the manner and timing to produce required forensic device reports and documents that contain agreed-on search terms.

### *MMR and ISG have no dispute regarding search terms: P19, P20, and P21*

As discovery progressed, it became clear that the devices and accounts of additional ISG employees should be added to the Forensic Order. However, there was a dispute about how the list of search terms should be altered, as well as a disagreement about which ISG employees' devices and accounts should be added to the Forensic Order. Despite the disagreements, there was a set of

2

search terms that the parties agreed should remain in the Forensic Order and that the devices of the two ISG employees—Ben Huffman and Laiton McCaughey—should be added to the Forensic Order. With regard to the search terms, the parties agreed that, among others, the following search terms should remain in the Forensic Order: P19, P20, and P21.

### *Court orders work to progress on undisputed search terms*

Because the parties had reached an impasse, MMR filed an Ex Parte *Motion to Set Status Conference Regarding Forensic Protocol Dispute* (R. Doc. 65) to discuss the disagreements. The Court held the status conference on July 27, 2023, and entered a minute entry, through which the Court "ordered the parties to move forward with the undisputed searches" on the devices and accounts of Ben Huffman and Laiton McCaughey. (R. Doc. 92 (emphasis in original).) This included the search terms: P19, P20, and P21.

On August 30, 2023, ISG's forensic expert completed his work on the devices and accounts of Ben Huffman and Laiton McCaughey and, as ISG represented to the Court, "sent a hard drive containing the complete set of search hit documents for the undisputed searches of the Huffman ISG data and available McCaughey ISG data to all counsel." This production included the documents that hit on the specific undisputed search terms: P19, P20, and P21. (R. Doc. 98, ISG Status Report.)

This production, moreover, was in line with each of the previous forensic productions. That is, the prior productions—from the devices and accounts of David Heroman, Kasey Kraft, Travis Dardenne, Michael Lowe, and Jason Yates—included the documents that hit on the search terms: P19, P20, and P21.

3

#102020869v4

*ISG changes course, refuses to produce documents on undisputed terms*

After ISG made the production from the devices and accounts of Ben Huffman and Laiton McCaughey, the Court held an in-person conference to discuss the <u>disputed search terms</u> and the <u>disputed custodians</u>. Following the conference, the Court issued an order resolving the dispute over the search terms and the custodians. (R. Doc. 101.)

For the search terms, the Court found "it proportional to the needs of this case to limit additional searches to the **undisputed** search terms identified in the parties' May 26, 2023 Amended Joint Status Report (R. Doc. 79)." (R. Doc. 101 at 7 (emphasis in original).) Accordingly, the Court found that the terms—P19, P20, and P21—were:

> sufficient to generate a reasonable and proportionate production of responsive documents and information within the scope of discovery with respect to McCaughey and Huffman, and the additional non-party custodians discussed below.

(R. Doc. 101 at 8.) As for the custodians, the Court found it "proportionate to the needs of this case to allow for the discovery of these non-party individual's ISG e-mail accounts **and devices**": the additional individuals were Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander. (R. Doc. 101 at 8 (emphasis in original).)

Despite this order, ISG is refusing to produce the documents that hit on the terms—P19, P20, and P21—from the devices and accounts of Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander. Accordingly, MMR respectfully requests that the Court order ISG to comply with its previous order.

## **LEGAL ARGUMENT**

Fed. R. Civ. P. 37(b) addresses a litigant's failure—like ISG's failure in this instance—to comply with a court order related to discovery. Rule 37(b)(2)(A) specifically accounts for situations where a party "fails to obey an order to provide or permit discovery[,]" and it enumerates

4

sanctions that the Court can enter to compel compliance. In addition to the sanctions identified in Rule 37(b)(2)(A)(i)-(vii), the Court has wide discretion to enter an award of attorneys' fees incurred because of the disobedient party's failure to comply with a prior court order. Fed. R. Civ. P. 37(b)(2)(C).

Supplementing the Court's express authority under Rule 37 is the Court's inherent authority to enforce its own orders through contempt sanctions. *See Wafenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (affirming civil contempt award, which included attorney's fees, for violating the court's order); *see generally* 11A Wright, Miller, Kane & Marcus, Federal Practice and Procedure § 2960 (2010) ("A court's ability to punish contempt is thought to be an inherent and integral element of its power and has deep historical roots."). Federal courts have "broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process," and the "proper aim of judicial sanctions for civil contempt is full remedial relief, that such sanctions should be adapted to the particular circumstances of each case, and that the only limitation upon the sanctions imposed is that they be remedial or coercive but not penal." *Bd. Of Supervisors of La. State Univ. v. Smack Apparel Co.*, 574 F. Supp. 2d 601, 6 (E.D. La. 2008). Accordingly, a contempt order may be "employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc. v. Allied Pilots Ass'n.*, 228 F.3d 574, 585 (5th Cir. 2000)

Here, the Court should issue a discovery sanction that holds ISG in civil contempt based on clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by ISG; and (3) they failed to comply with the order. *See American Airlines, Inc. v. Allied*

5

*Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2005) (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

Indeed, the issue of producing the documents on the undisputed search terms was so thoroughly litigated that further motion practice should have been unnecessary. The Court unequivocally found that the "undisputed" search terms (which included P19, P20, and P21) were proportional to the needs of the case and that the documents hitting on these terms were required to be produced. (*See* R. Doc. 101 at 8.). Specifically, after much deliberation, the Court found that the undisputed search terms would "***generate a reasonable and proportionate production of responsive documents and information***." (R. Doc. 101 at 8 (emphasis added).) There should be no further discussion or need for motion practice: ISG should have produced the documents that hit on those terms from the devices and accounts of Shawn Breeland, Tony Arimond, Chris Comeaux, Dan Howell, and Kevin Alexander.

But ISG has taken it upon itself to determine that it can withhold the production of the documents that hit on those search terms. To justify its position, ISG stated in a status report that the search terms "are hitting on code not substance," (R. Doc. 105 at 11), and, relatedly, that their use has yielded "a large number (thousands) of false hits . . . due to the [undisputed terms] coming up in code, etc. . ." (R. Doc. 105 at 4). ISG also claims that some of the documents that hit on the undisputed terms are, for example, "Daily Tickets" or other documents that ISG claims "are not responsive to or relevant to the purpose of the [Forensic Order ]." (R. Doc. 105 at 2.)

Though the Court's order does not allow ISG to make <u>another</u> determination that documents hitting on the undisputed search terms can be withheld, ISG's justification is far afield. <u>First</u>, the example that ISG gives—namely the "Daily Tickets"—are documents that MMR is claiming contain MMR's information. In other words, ISG's argument about irrelevant documents

#102020869v4

is inextricably intertwined with the merits of the parties' claims and defenses. Whether "Daily Tickets" incorporate information taken from MMR is a fact issue that must be sorted out in the discovery process. To put it within the context of the Court's order, these documents are part of the "reasonable and proportionate production of responsive documents and information" that the search terms are generating. (R. Doc. 101 at 8.) *Second*, these search terms (P19, P20, and P21) have been used in the previous forensic productions, so ISG's purported burden concern cannot be taken too seriously. In fact, to the extent some documents that hit on these terms may be less relevant than others, sorting that out falls within the burden on MMR (and not ISG) when reviewing the documents, and MMR has made clear that it is more than willing to shoulder that burden, just as it did for all of the previous productions that included documents hitting on the terms P19, P20, and/or P21. Further, if ISG is concerned that documents are irrelevant to the case, but contain its protected information, the documents that hit on the undisputed terms are already treated as "attorneys' eyes only."

Ultimately, the Court's order here was clear, which makes ISG's non-compliance so egregious, and, consequently, renders ISG's non-compliance completely unjustified. Fed. R. Civ. P. 37(b)(2)(c). Nor has ISG's disobedience of the Court's prior order been "harmless," *see id.*, as ISG has halted the forensic production, and it has forced MMR to expend resources resorting to motion practice. ISG's disobedience is particularly troublesome considering it has already been admonished by the Court for abruptly terminating MMR's deposition of Ben Huffman, with the Court ordering ISG to reimburse MMR for its associated attorneys' fees and costs.

7

## CONCLUSION

For the foregoing reasons, MMR respectfully requests that Court issue an order that compels ISG to comply with its order to produce the documents that hit on the undisputed search terms and, further, that compensates MMR for the fees and costs associated with the filing of what should have been an unnecessary motion.

Respectfully submitted:

*/s/ P.J. Kee*
P.J. KEE  (La. Bar No. 34860)
THOMAS P. HUBERT (La. Bar No. 19625)
JACOB J. PRITT (La. Bar No. 38872)
MICHAEL A. FOLEY (La. Bar No. 35774)
JASON A. CULOTTA (LA Bar No. 35731)
CONNOR H. FIELDS (LA Bar No. 39880)
JONES WALKER, LLP
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8230
Email:  pkee@joneswalker.com
***Counsel for MMR Constructors, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record for Defendants by electronic filing on January 25, 2024.

*/s/ P.J. Kee*
P.J. Kee