UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.,** | **CIVIL ACTION NO.: 22-CV-267** |
| Plaintiff, | **JUDGE BRIAN A. JACKSON** |
| VERSUS | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |
| **JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP, et al.,** | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Defendants JB Group of LA, LLC, Jason Yates, and Travis Dardenne (collectively, "**ISG**"), file this memorandum in opposition to Plaintiff MMR Constructors, Inc.'s ("**MMR**") motion for a protective order (the "**Motion**" or "**Mot.**"; ECF 151).

### PRELIMINARY STATEMENT

MMR seeks to preclude any discovery into the reasons why its employees left to join ISG and other firms during the period relevant to this lawsuit. ISG's discovery – focused on the reasons for the mass exodus from MMR – is relevant because MMR has placed these reasons squarely at issue in this case.

MMR placed the reasons for its employees' departure in issue throughout its pleading, discovery demands and deposition questions. In its pleadings, MMR alleges that ISG attempted to "replicate MMR" by conspiring with MMR employees during the recruitment process to "steal" MMR materials for ISG's benefit. Likewise, MMR's written discovery asked about the "recruitment process," presuming that ISG in fact recruited, solicited or, in MMR's words,

1

"poached" MMR employees to come work at ISG. During depositions, MMR asked about what was said during the alleged recruitment, and whether ISG knew that certain employees had copied MMR files in the last weeks of their employment before joining ISG. In short, ISG's alleged "poaching" of MMR employees to steal proprietary files put at issue how and why these and other employees left MMR.

To avoid the fact that MMR opened the door to the very discovery it now contests, MMR's motion contends that ISG's defense should be barred because it is unpled and, after two years of discovery, it represents a "changed course." This is misleading on two grounds. *First*, discovery to date has been one-sided. ISG had to produce more than a million pages of documents at an incredible expense. In contrast, MMR has produced just under 1,700 pages of documents in response to 4 out of 88 separate requests. MMR has taken five depositions to none for ISG. ISG is only now beginning to obtain discovery, not change course.[1]

*Second*, MMR's point about pleading requirements conflates an affirmative defense with a general defense. Affirmative defenses must be pled; general defenses do not need to be pled. ISG's response to MMR's poaching narrative is a general, not affirmative, defense so any reference to pleading requirements is completely misplaced.

MMR further contends, without evidentiary support, that ISG's discovery should be precluded because it may cause "unnecessary expenses," "unnecessary delay," and potential "embarrassment." But such conclusory, unsupported contentions have been rejected by courts in this Circuit. Moreover, MMR failed to offer a single affidavit or any documentary evidence to demonstrate what financial burden it may suffer, how ISG's discovery would delay progress, and under what circumstances MMR customers might be embarrassed by ISG. Not surprisingly, MMR

---

[1] Stolper Decl. ¶ 3.

avoids the heavy burden of proving extraordinary circumstances required to obtain a protective order. This is because MMR cannot come close to satisfying it, particularly as discovery is permissibly broad and attempts to limit discovery are discouraged.

As set forth in detail below, the requested protective order has neither factual nor legal support, and the Court should deny MMR's Motion in its entirety.

## RELEVANT FACTS

### A. Relevant Portion of MMR's Complaint

MMR's Second Amended Complaint (the "**Complaint,**" ECF 53) alleges that ISG recruited MMR employees to "replicate MMR" by conspiring with MMR employees during the recruitment process to "steal" MMR materials for ISG's benefit. Complaint ¶¶ 2, 63. "MMR began to uncover evidence that ISG was recruiting MMR employees who were willing to bring MMR's trade secrets and confidential business information with them to ISG. *Id*. ¶ 36. MMR's Complaint referenced Kasey Kraft as an example of this:

> ***ISG poached Kasey Kraft*** in March 2022, and on his last day of employment, Kraft was caught attempting to transfer a significant amount of MMR's trade secrets and confidential business information to an external storage device. MMR initially believed he had been thwarted in his attempts at stealing that information, but MMR now has reason to believe that ***Kraft retained MMR's trade secrets and confidential business information, allowing ISG to receive a highly valuable, yet unfair, competitive advantage***.

Complaint ¶ 3 (emphasis added).

The Complaint went beyond Kasey Kraft. *See* Complaint ¶ 4 ("Despite [] Kraft being caught in the act, this ***did not prevent ISG from continuing to target MMR's employees and trade secrets***. The hiring of David Heroman was the latest iteration.") (emphasis added). MMR's conspiracy theory continues with the allegation that "in the month before his resignation on April 8, 2022, Heroman downloaded over ***1,500 files*** from MMR's systems to several electronic storage

3

devices and personal Google Drive account." Complaint ¶ 42. To tie this effort to ISG, MMR alleged that "Heroman plugged in six external storage devices on his last day with MMR yet chose to return only four of the six that he plugged in that day." Complaint ¶ 58. "Since his resignation from MMR on April 8, 2022, ISG has employed Heroman who continues to have the trade secrets and confidential business information stolen from MMR on personal electronic storage devices and in his Google Drive account." Complaint ¶ 64.

Aside from liability allegations, MMR claimed that Messrs. Kraft and Heroman transferred "such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor." Complaint ¶¶ 110, 116. In other words, MMR's poaching theory is also relevant to its claim for damages.

### B. **MMR Opened the Door to the Discovery it Now Seeks to Preclude**

During the discovery process, MMR pursued its theory that ISG engaged in illicit recruiting. MMR's First Set of Request for Production demanded "Communications and Documents relating to the recruitment and/or hiring of the following individuals: Jason Yates, Travis Dardenne, Ben Huffman, Kraft, Heroman, Christopher Comeaux, and any other former MMR employee who is currently employed by ISG." Ex. 5 to Stolper Decl.

MMR intensively explored ISG's alleged illicit recruiting scheme during the depositions. During Ben Huffman's deposition, MMR asked Mr. Huffman, "Who recruited you to leave MMR and join ISG?" Mr. Huffman responded, "I wasn't necessarily recruited ... I started contemplating leaving MMR probably six or eight months before that." Ex. 2 to Stolper Decl.at 53-54. After a detailed examination of the reasons Mr. Huffman left MMR, MMR pressed Mr. Huffman about whether they discussed during the interview process ISG's alleged scheme to obtain MMR

4

materials to which Mr. Huffman responded, "not at that time." *Id.* at 74. Likewise, MMR asked Kasey Kraft if, prior to joining ISG, he discussed bringing MMR files to ISG. Ex. 1 to Stolper Decl. at 54-56. MMR further asked whether Mr. Kraft copied MMR files to external drives during his last week of employment with MMR. *Id.* at 41. MMR also sought documents and communications related to the "decision to hire" certain individuals, including Messrs. Heroman and Kraft. Ex. 3 to Stolper Decl. MMR further requested "documents and communications" between Heroman and Kraft "before their last day of employment with MMR." *Id.* (Request No. 4). MMR served interrogatories asking for ISG to identify MMR employees that ISG recruited and "describe the nature of your communications (including whether you recruited them to join ISG) and the approximate date of such communications." Ex. 4 to Stolper Decl.

C. **The Contested Discovery**

In response to MMR's false narrative about ISG's allegedly illicit solicitation of MMR employees, ISG needs to establish the real reasons why and how people left MMR during the relevant period in question. Through its own independent investigation, ISG preliminarily found that MMR employees left for reasons including, but not limited to, MMR's internal dynamics, workplace injuries, false billing and shoddy service, and an illicit bonus scheme. Stolper Decl. ¶¶ 22-27. Hence, ISG served document requests targeting these specific reasons for MMR employees' departure, each listed on pages 6 and 7 of MMR's Motion.

Specifically, ISG requested documents reflecting work-related injuries, including medical or hospital bills paid by MMR, credit card bills of MMR for hospital or medical expenses, complaints about work-related injuries, and OSHA logs and reports. These requests, if honored, would contrast the actual injuries versus those reported to OSHA, and how those injuries were paid for (insurance or not). ISG also requested documents reflecting MMR's performance and

5

record-keeping under its contract with LSU, as well as billing and time sheets for LSU-related work. Upon information and belief, these documents would show that MMR's performance ranged from sub-par to outright fraudulent, which is why at least one employee left MMR. For the alleged illicit bonus scheme, ISG asked for records reflecting the bonuses paid to employees during the period in question. Upon information and belief, these documents, if produced, would uncover that MMR kept two sets of records, one reflecting bonuses owed and one not reflecting any bonuses owed. This would corroborate the scheme, as reported to ISG as part of its initial investigation, and partially explain the departures from MMR.

## ARGUMENT

### I. MMR FAILS TO MEET THE HIGH STANDARDS FOR A PROTECTIVE ORDER

MMR concedes that to obtain a protective order under Rule 26, it bears the burden of showing the "*necessity* of [a protective order], which contemplates a particular and *specific demonstration of fact* as distinguished from stereotyped and conclusory statements." Mot at 10 (quoting *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (emphasis added)). This is a "***particularly heavy burden***." *Granados v. State Farm Lloyds*, No. 10-cv-13, 2010 WL 11597707, at *1 (W.D. Tex. June 2, 2010) (emphasis added); *see also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (the court held that "it is very unusual for a court to [issue a protective order that prohibits] [a party from] taking of deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Abraha v. Colonial Parking, Inc.*, 311 F. Supp. 3d 237, 238 (D.D.C. 2018) ("[i]n showing that good cause exists to issue a protective order and thereby limit discovery, the moving party has a 'heavy burden of showing ***extraordinary circumstances*** based on specific facts.'").

6

This Court has repeatedly rejected a party's request for a protective order where the requesting party failed to meet its heavy burden. For example, in *Lewis v. Cain*, No. 15-cv-318, 2016 WL 11722676, at *2 (M.D. La. July 27, 2016) (Mag. J. Bourgeois), this Court denied the defendant's motion for a protective order due to the defendant's "failure to carry its burden." Likewise, in *GMFS, LLC v. Cenlar FSB*, No. 18-cv-582, 2020 WL 9602044, at *3 (M.D. La. July 1, 2020) (Mag. J. Bourgeois), the Court rejected the defendant's protective order request because it "failed to make [] a showing" of the necessity of issuance of a protective order. Again, in *Mapp v. UMG Recordings, Inc.*, No. 15-cv-602, 2016 WL 11780233, at * 2 (M.D. La. Apr. 19, 2016) (Mag. J. Bourgeois), the Court denied the defendants' request for a protective order because they "[had] not advanced sufficient 'good cause.'"

Here, MMR has failed to meet its burden of showing the extraordinary circumstances that warrant a protective order. Although MMR claims that ISG's discovery may cause "unnecessary expenses," "unnecessary delays," and a potential "embarrassment" of MMR's customer relationship, it ***cites no authority*** holding that such conclusory allegations constitute "extraordinary circumstances" as required. Mot at 13. Indeed, courts have routinely rejected these types of conclusory, generalized, and unsupported allegations as a basis for a protective order. *See e.g.*, *S. Filter Media, LLC v. Halter*, No. 13-cv-116, 2014 WL 715727, at *4 (M.D. La. Feb. 21, 2014) (Mag. J. Bourgeois) ("***possible avoidance of cost*** is ***insufficient*** good cause to warrant a protective order") (emphasis added; quotation omitted); *Anaya v. Tricam Indus., Inc.*, No. 18-cv-1045, 2020 WL 13094091, at *2 (W.D. Tex. Jan. 19, 2020) ("a blanket assertion that these topics are '***irrelevant*** to [the disputed issue]' is ***insufficient*** to meet [the moving party's] burden of showing good cause and a specific need for a protective order") (emphasis added); *Williams v. Chrysler Fin. Corp.*, No. 98-cv-2931, 1999 WL 221119, at *4 (E.D. La. Apr. 9, 1999) (the court

7

found the defendant failed to meet the Rule 26 burden because its "conclusory statements reflect nothing more than [defendant's] desire to limit plaintiff's discovery to topics that [defendant] deems relevant, without any particularized demonstration of fact to support its argument."); *Ring Plus, Inc. v. Cingular Wireless, LLC*, No. 06-cv-159, 2007 WL 9702621, at *4 (E.D. Tex. July 26, 2007) ("an affidavit … which asserts in a conclusory manner that disclosure … will cause injury … is insufficient to establish good cause") (quotation omitted); *Morrow v. City of Tenaha*, No. 08-cv-288, 2010 WL 3927969, at *3 (E.D. Tex. Oct. 5, 2010) ("mere embarrassment, without a demonstration that the embarrassment will be particularly serious or substantial [harm], is not enough to demonstrate good cause for a protective order"); *Welsh v. City & Cnty. of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("[m]ere embarrassment by the release of information is insufficient to constitute serious harm" that can justify the issuance of a protective order).

Not surprisingly, MMR provided the Court with **no evidence** (neither an affidavit nor documentary evidence) to support its conclusory contentions. *See e.g.*, *In re Terra Int'l, Inc.*, 134 F.3d at 306 (when the requesting party "made nothing more than a conclusory allegation" to support its request for a protective order and did not support its motion "with any affidavits or other evidence that might provide support for" its contention, the trial court abused its discretion by issuing the protective order). In other words, MMR has failed to "direct the court to evidence" that it will sustain "clearly defined and serious injury in the absence of such an order." *Hawkins v. Hutchison*, No. 05-cv-184, 2006 WL 8436815, at *2 (N.D. Tex. Dec. 22, 2006).

Further, MMR's conclusory arguments for a protective order disregard the broad scope of discovery under Fifth Circuit law.  The scope of discovery is "broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). At the discovery stage, relevant

evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Stevenson v. Benjamin*, No. 21-30253, 2022 WL 12309062, at *1 (5th Cir. Oct. 21, 2022).[2] This Court has emphasized that the "[d]iscovery should be allowed unless the party opposing discovery establishes that the information sought 'can have no possible bearing on the claim or defense of the party seeking discovery.'" *Lewis v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 21-cv-198, 2023 WL 3509691, at *3 (M.D. La. May 17, 2023) (Mag. J. Bourgeois).

Under these circumstances, the Court should deny MMR's motion.[3]

## II.   MMR OPENED THE DOOR WITH ITS COMPLAINT

MMR's Motion also fails because MMR cannot overcome the highly relevant nature of the discovery at issue. MMR simply argues that "there is no <u>claim</u> relating to the hiring of employees." Mot. at 11-12. This is belied by MMR's own complaint. For example, MMR alleged:

- Since recruiting and offering an ownership stake to a former MMR employee, ISG has sought to penetrate the market for these projects by, in large part, replicating MMR. ISG has poached MMR employees who themselves gained valuable know-how across various sectors of MMR's business, from project controls and human resources to operations and business development.

- ISG poached Kasey Kraft in March 2022, and on his last day of employment, Kraft was caught attempting to transfer a

---

[2] It is worth noting that "the threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401." *Lewis*, 2023 WL 3509691 at *3.

[3] In its Motion, MMR also requests this Court to issue a ***blanket protective order*** prohibiting ISG from "***this type of discovery***"—any discovery that MMR alleged, "no way relate[s] to the theft-of-information claims." Mot. at 13 (emphasis added).  However, courts frequently deny the request for a blanket protective order because the alleged irrelevant documents or information may become relevant during the course of the litigation. *See Doe 1 v. Baylor Univ.*, No. 16-cv-173, 2018 WL 11471462, at *3 (W.D. Tex. Oct. 10, 2018); *Garza v. Universal Healthcare Servs., Inc.*, No. 16-cv-364, WL 11646817, at *6 (S.D. Tex. May 17, 2017) (refusing to "issue a blanket protective order prohibiting plaintiffs from serving future, appropriate discovery requests on [the third party]."); *Delphi Connection Sys., LLC v. Koehlke Components Inc.*, No. 12-cv-1356, 2014 WL 12605646, at *3 (C.D. Cal. Feb. 6, 2014) (the court rejected defendant's request to issue a "blanket protective order" precluding disclosure of certain category evidence and information because "[s]uch a broad, undefined order is inappropriate").

- significant amount of MMR's trade secrets and confidential business information to an external storage device. MMR initially believed he had been thwarted in his attempts at stealing that information, but MMR now has reason to believe that Kraft retained MMR's trade secrets and confidential business information, allowing ISG to receive a highly valuable, yet unfair, competitive advantage.

- Since his resignation from MMR on April 8, 2022, ISG has employed Heroman who continues to have the trade secrets and confidential business information stolen from MMR on personal electronic storage devices and in his Google Drive account.

- Heroman, Kraft, Yates, Lowe, and, upon information and belief, Dardenne accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor. The individual defendants engaged in similar acts.

*See* Complaint ¶¶ 2, 3, 64, and 110.

Accordingly, MMR put the questions of why and how its employees left the company at issue by alleging the reason for its employees' departure was that ISG "poached" MMR employees to "replicate MMR" by conspiring with MMR employees during the recruitment process to "steal" MMR materials for ISG's benefit.

It is well-established that discovery related to pleading allegations is relevant. *See, e.g.*, *GMFS, LLC v. Cenlar FSB*, No. 18-cv-582, 2019 WL 5558568, at *6 (M.D. La. Oct. 28, 2019) ("discovery…relating to the ***factual allegations in Plaintiff's Complaint is relevant*** at this stage") (Mag. J. Bourgeois); *also Tarin v. RWI Constr., Inc.*, No. 12-cv-145, 2012 WL 13076183, at *2 (D.N.M. Sept. 7, 2012) (granting the motion to compel and held the court "does not see how documents and communications related to the factual allegations in the complaint would not be relevant to the parties' claims or defenses"); *E.E.O.C. v. Kaplan Higher Educ. Corp.*, No. 10-cv-

10

2882, 2011 WL 2115878, at *1 (N.D. Ohio May 27, 2011) (granting defendant's motion to compel seeking documents to "rebut Plaintiff's allegation in the Complaint"); *LDGP, LLC v. Cynosure, Inc.*, No. 15-cv-50148, 2016 WL 11706712, at *3 (N.D. Ill. Aug. 15, 2016) (denying plaintiff's motion for a protective order because "the amended complaint claims that no tattoo was ever fully removed by the machine, an allegation which this discovery may also permit defendant to rebut"); *Johnsen v. Kirtz*, No. 18-cv-81019, 2018 WL 5084351, at *3 (S.D. Fla. Oct. 18, 2018) ("the proper method to deny factual allegations in the Complaint is through a responsive pleading and the appropriate procedure to rebut facts is through discovery."); *Tijerina v. Alaska Airlines, Inc.*, No. 22-cv-203, 2022 WL 16824509, at *5 (S.D. Cal. Nov. 7, 2022) (the court found the "discovery is relevant" because it can support "factual allegations made in the Complaint."). MMR cites no authority for precluding discovery into the factual allegations in MMR's own complaint.

### III. MMR WALKED THROUGH THE DOOR WITH DISCOVERY INQUIRIES

After opening the door with its Complaint, MMR then walked through that same door by pursuing its illicit recruiting theory during discovery. Specifically, MMR sought documents and information about why and how its employees' left MMR, including "the nature of your communications (including whether you recruited them to join ISG) and the approximate date of such communications." Stolper Decl. ¶ 13. MMR asked Ben Huffman "**_who recruited you to leave MMR and join ISG?" Mr. Huffman responded, "I wasn't necessarily recruited... I started contemplating leaving MMR probably six or eight months before that_**." Stolper Decl. ¶ 12 (emphasis added). Then MMR pressed Mr. Huffman about whether they discussed during the interview process ISG's alleged scheme to obtain MMR materials to which Mr. Huffman responded "not at that time." *Id.*

11

The obvious point of these questions is to link the reason employees left MMR (were they recruited by ISG, as alleged, or did they leave for different reasons) to the taking of MMR files (did ISG ask or suggest files be taken, or were they taken for legitimate reasons). There is no other reason for MMR to be asking about the recruitment process or why and how people left MMR. MMR opened the door. It cannot now ask that the door be closed because the truth (and a valid defense for ISG) may "embarrass" or "annoy" MMR, as stated in MMR's motion. *See, e.g., Clapper v. Am. Realty Invs., Inc.*, No. 14-cv-2970, 2017 WL 11679071, at *2 (N.D. Tex. Oct. 26, 2017) (the court ordered the plaintiff to produce the requested documents because "***Plaintiffs should not be permitted to open the door on earlier time periods but contend that the same time period is not relevant for purposes of Plaintiffs' production***.") (emphasis added).

## IV. ISG'S REQUESTS DIRECTLY ADDRESS THE ALLEGATIONS RAISED BY MMR

In order to rebut MMR's illicit recruiting allegations, ISG is entitled to challenge MMR's narrative that MMR employees were solicited by ISG. It is important for ISG to establish that, like Ben Huffman's testimony quoted above, employees were not recruited to ISG, as alleged, but left MMR for their own reasons. And from a credibility perspective, ISG is entitled to obtain corroboration of those reasons from non-ISG employees. If someone left MMR to work elsewhere for the same reason(s) that an ISG employee gave for leaving MMR, that evidence refutes MMR's allegation that someone like Ben Huffman left MMR as part of an illicit scheme to take trade secrets. To that end, ISG's discovery is targeted at the reasons ISG's preliminary investigation identified as to why MMR employees left the company. Stolper Dec. ¶¶ 22-27.

The first reason employees left MMR was due to the company's "bonus" scheme – Mr. Rutland maintained complete control over when and how much of the bonus would be paid, sometimes withholding bonus money for whimsical reasons. *Id*. ¶ 26. Because bonuses were not

12

captured on the books of the company, an individual employee lacked (or perceived to lack) the ability to compel payment of the bonus after it was earned and disclosed to the employee. *Id*. This scheme creates the proverbial golden handcuff scenario. This is why ISG asked for the note cards on which bonuses were reflected.

The second reason ISG uncovered for employee departures concerned MMR's practices in connection with workplace injuries. *Id*. ¶ 24. For example, injured workers are not provided with insurance coverage; instead, doctor and hospital bills are paid by MMR with corporate credit cards. *Id*. This approach deprived injured employees the full protection from insurance, including workers compensation insurance, while at the same time keeping MMR's safety record artificially positive. ISG's investigation identified at least one employee who left allege he MMR because he was uncomfortable with the way in which MMR handled workplace injuries. Discovery will determine the extent to which MMR employees departed due to the manner in which MMR handled workplace injuries, not because of ISG's "poaching." This is why ISG asked for medical bills, credit card receipts, reports and complaints arising out of workplace injuries.

The third reason MMR employees left the company concerned its business practices with certain customers, including Louisiana State University ("**LSU**"). Former MMR employees reported that MMR failed to maintain the campus security cameras, which created a campus safety hazard. *Id*. ¶ 27. Moreover, these employees maintain that MMR would frequently falsify its bills to LSU and other customers. *Id*. For example, a task that would actually take just a few hours of work would be inflated and billed to LSU for eight hours. *Id*. ISG is aware of at least one employee who left MMR because of the way in which MMR conducted business with customers like LSU and intends to offer that evidence in support of the actual reasons employees left MMR, not

13

because of some illicit poaching scheme of ISG. Consequently, ISG requested documents concerning, among other things, complaints about equipment and billing for LSU.

The fourth reason was due to workplace dynamics. MMR has poached a number of employees from its primary competitor, ISC Constructors ("**ISC**"), and in doing so, MMR's corporate culture and dynamics have changed for the worse. Stolper Dec. ¶ 23.[4] MMR did not challenge any requests relating to the hiring of former ISC employees. But, more broadly, if ISG can show that there was a mass exodus of MMR employees at the relevant time for reasons unrelated to theft of trade secrets, that mass exodus can undermine MMR's theory of illicit recruiting.

## V.   MMR'S REFERENCE TO PLEADINGS IS A RED HERRING

MMR claims that the question of why and when employees left MMR is irrelevant because ISG did not plead this as an "affirmative defense." Mot. at 3, 11. This argument conflates affirmative defenses, which must be pled, with general defenses, which do not need to be pled. *See, e.g., In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense," and therefore ***no need to be pleaded in the defendant's answer***) (emphasis added); *Donohoe v. Am. Isuzu Motors, Inc.*, 155 F.R.D. 515, 517 (M.D. Pa. 1994) (the court recognized the differences between "general defenses" and "affirmative defenses" and held the "general defenses need not be pleaded and the matter raised would be superfluous in the context of an answer.").[5]

---

[4] Former MMR employee Ben Huffman testified that one of the reasons he chose to leave MMR was because he "didn't particularly care for what the future looked like at MMR" because "most of the managers are primed for retirement or **fixing to leave**." Ex. 2 to Stolper Decl. at 66-67 (emphasis added).

[5] MMR also cites *Regions Bank v. Tauch*, No. 10-cv-3388, 2011 WL 2020268 (E.D. La. May 24, 2011) for the same proposition but that case addressed what constituted an affirmative defense to a contract claim. The *Regions Bank* court, citing Fed. R. Civ. P. 8(c), held that the defendant "did not specifically raise any *affirmative defenses* … in avoidance of his contractual obligations and thus waived same." 2011 WL 2020268 at *6 (emphasis added). The *Regions Bank* case did not address the issue of when to raise general defenses. That case was also near the end of

The Western District of Pennsylvania's decision in *Ferrone v. Onorato*, No. 05-cv-303, 2007 WL 1247093 (W.D. Pa. Apr. 27, 2007) is instructive. In *Ferrone*, the plaintiff opposed certain discovery because it was not tied to plead affirmative defenses. *Id*. at *2. The court disagreed because the defendants were "not restricted to the defenses stated in their Answer." *Id.,* citing *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312 (3d Cir. 2006) (explaining the distinction between "affirmative defenses," which must be pleaded in answer to be preserved, and "general defenses," which challenge plaintiff's *prima facie* case and are not pled."). *See generally Ferrone*, 2007 WL 1247093.

MMR cites *Caro v. Brown & Brown of Louisiana, LLC*, No. 23-cv-596, 2024 WL 269152 (M.D. La. Jan. 24, 2024) for the proposition that discovery is limited to the claims and defenses in an action. At a superficial level the *Caro* case has some appeal; it is an employment case in which the employees seek to compel discovery of workplace conditions that led to their departure. However, upon closer examination, the case really has no application here. The initial reason the *Caro* employees gave for needing discovery of the circumstances of their departure has no bearing to this case. In *Caro*, the employees claimed that workplace conditions were relevant to the third and fourth factors of a preliminary injunction analysis (*i.e.*, the balance of the equities and public interest). *Id* at *4. This Court held the opposite: "This information has no relevance to any prospective effect of enforcement of the non-solicitation covenants on their current livelihoods (*i.e.*, the threatened harm) or the public at large." *Id* at *5. Obviously, ISG is not claiming relevance based on injunction factors so this part of the *Caro* case has no application to MMR's motion. *Id*.

---

discovery and any attempt to amend the pleading the court held would have caused prejudice, which is not the procedural posture here.

The *Caro* employees then claimed that their workplace conditions were relevant to an unclean hands defense to the enforcement of a non-solicitation covenant. *Id* at *6. Again, this Court held the opposite, namely, there was no authority that "requires the application of an 'unclean hands' defense rendering non-solicitation covenants unenforceable." *Id* at *7. ISG is not asserting an unclean hands defense nor is this suit in the context of restrictive covenants or the statute governing restrictive covenants, La. R.S. 23:921. In *Caro*, the requested discovery had no relevance to the claims or defenses at hand, which is in sharp contrast to the circumstances presented here, in which MMR has alleged that ISG engaged in illicit recruiting practices and thereby placed directly in issue the circumstances surrounding the departure of MMR employees.

## VI.   THE LSU SUBPOENA WAS ISSUED IN GOOD FAITH

MMR's Motion suggests that ISG's discovery was conducted in bad faith because it "adversely affect[s] MMR's customer relationship, starting with LSU, and [tries] to annoy or embarrass MMR." Mot. at 13. The record reflects that the opposite is true. ISG counsel called for an in-person meeting to explain the context of the now contested discovery to avoid motion practice and shining a public light on these issues. In response to MMR's initial objections, ISG revised the LSU subpoena to eliminate any legitimate objection, but instead of meeting with ISG, MMR opted to file the instant motion. Finally, if ISG's intent were to embarrass MMR with LSU, as MMR's motion contends, ISG would have served the subpoena regardless of MMR's objections. There was no prohibition on serving the subpoena. But ISG withheld the subpoena, awaiting the outcome of this motion. MMR knew this before filing its protective order motion in which it represents to this Court that "the LSU subpoena is being served." Mot. At 8. ISG is not the one acting in bad faith.

## CONCLUSION

For the foregoing reasons, ISG respectfully requests that the Court deny MMR's Motion in its entirety.

Respectfully submitted,

**DUNLAP FIORE LLC**

/s/ Jennifer A. Fiore
Jennifer A. Fiore (Bar # 28038)
Erin G. Fonacier (Bar # 33861)
6700 Jefferson Hwy, Building #2
Baton Rouge, LA 70806
Telephone: 225-282-0660
Facsimile: 225-282-0680
jfiore@dunlapfiore.com
efonacier@dunlapfiore.com

**SEIDEN LAW LLP**

/s/ Michael Stolper
(Admitted Pro Hac Vice)
Michael Stolper
322 8th Avenue, Suite 1200
New York, New York 10001
Telephone: 212-337-3502
mstolper@seidenlaw.com

*Attorneys for JB Group of LA, LLC d/b/a Infrastructure Solutions Group, Jason Yates, and Travis Dardenne*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice to all counsel on this 10th day of June 2024.

/s/ Jennifer A. Fiore
Jennifer A. Fiore