UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MMR CONSTRUCTORS, INC., | : | CIV. NO. 22-267 |
| | : | |
| Plaintiff, | : | |
| | : | |
| VERSUS | : | JUDGE BRIAN A. JACKSON |
| | : | |
| JB GROUP OF LA, LLC D/B/A | : | |
| INFRASTRUCTURE SOLUTIONS | : | |
| GROUP, ET Al., | : | MAGISTRATE JUDGE RICHARD L. |
| | : | BOURGEOIS, JR. |
| Defendants. | | |

## MMR'S REPLY IN FURTHER SUPPORT OF MOTION FOR PROTECTIVE ORDER

At least one lesson can be drawn from this discovery dispute. If counsel for a party needs to call "an in-person meeting" (flying from New York to Baton Rouge) "to explain the relevance and context of this discovery to avoid any *knee-jerk objections*," then that set of discovery is likely far out of bounds. (*Attorney Declaration*, R. Doc. 152-1, ¶ 29) (emphasis added).

Defendants' opposition proves just that. It does nothing to demonstrate a valid reason to seek (from MMR and third parties) OSHA records, documents about former LSU football players, and MMR's internal executive compensation plans. Those records offer *zero* relevance to whether Defendants misappropriated MMR's information and whether that information is protected. Defendants essentially concede this point (as they must) because video footage from LSU's campus will tell us *nothing* about whether, for instance, ISG's executives knowingly and intentionally authorized its employees' use of MMR's information.

Defendants, nevertheless, try to force an elephant through a keyhole. They blame MMR for alleging that ISG recruited employees and encouraged them to misappropriate MMR's proprietary information. Defendants make the quantum leap that, therefore, ISG "needs to establish the real reasons why and how people left MMR." (R. Doc. 152, p. 5). The so-called "real reasons," however, provide no probative value to whether, how, why, or what information Defendants

misappropriated from MMR. And the "real reasons" provide no defense to stealing this information.

Though Defendants' counsel is an accomplished New York attorney, his thirteen-page declaration cannot pull off the miracle of opening up discovery so broadly. A "knee-jerk reaction" is the only reasonable one when confronted with such blatantly irrelevant, disproportional, and harassing discovery. The Court should waste no time in granting MMR's protective order because the discovery is not relevant or proportional to a claim and defense and because MMR has satisfied the requirements for a protective order.

### I.    The discovery is not tethered to claims and defenses and is far from proportional.

Defendants assert that "MMR's reference to the pleadings is a red herring." (R. Doc. 152, p. 14). But that is incorrect. As explained in MMR's opening brief, the _**claims**_ and _**defenses**_ in the pleadings are exactly what the Court must analyze to determine whether MMR is entitled to relief (or, conversely, whether Defendants are entitled to discovery). *See also Singleton v. Cannizzaro*, No. 17-10721, 2020 U.S. Dist. LEXIS 11248, at *9-11 (E.D. La. Jan. 23, 2020) (quotations and citations omitted) (emphasis added) ("Thus, while construing relevance broadly, ***this Court is anchored by the parties' pleadings***. To implement the rule that discovery must be relevant to the _**claim**_ or _**defense**_ of any party, district courts have examined the relationship of the requested discovery and the facts it is intended to uncover to the specific claims and defenses raised by the parties. For example . . . evaluating the relevancy determination necessarily begins with an examination of [the plaintiff's] claim in this case."); Advisory Committee Notes to 2000 Amendments (emphasis added) ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties

that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

A.    **This is a theft-of-information case, relating to a discreet set of former MMR employees.**

Defendants cannot pinpoint any *claim* upon which they can justify the requested discovery. The claims at issue in this case are that ISG misappropriated MMR's protected information and hired MMR employees who aided in that continued misappropriation. There is no claim based on the *solicitation* of MMR employees; rather, the claim is that these hired employees improperly brought MMR's information with them to ISG and then made use of that information with ISG's consent and authorization. Defendants try to conflate discovery that is relevant to "claims" or "defenses" with discovery that is, at best, relevant to a table-setting preamble. *See Vives v. City of New York*, No. 02-6646, 2003 U.S. Dist. LEXIS 1833, at *2 (S.D.N.Y. Feb. 10, 2003) ("If a party could unilaterally alter the scope of discovery merely by including extraneous allegations in the complaint, the limitations on discovery contemplated by Rule 26 quickly become a dead letter."). The reason a named defendant left MMR's employ to join ISG is immaterial to whether he stole MMR's information and then continued to use such information while employed at ISG.

Defendants push forward, arguing that there is a hard-and-fast rule that discovery is always permitted if is related to any allegations in a pleading. *See, e.g.,* (R. Doc. 152, pp. 9-10) (emphasis in bold added) (wherein ISG states that MMR's assertion that "there is no <u>claim</u> relating to the hiring of employees" is "belied" by what MMR has "**alleged**" in its complaint). Defendants ignore the proportionality requirements imposed under Rule 26 to reach their faulty conclusion, and they cite several cases they claim stand for the proposition that "[i]t is well-established that discovery related to pleading allegations is relevant." (R. Doc. 152, pp. 10-11) (collecting cases). But

3

Defendants' reliance on those cited cases is disingenuous: the allegations in cases there were, unlike the case here, interwoven with the underlying ***claims*** at issue.[1]

For example, in *GMFS, LLC v. Cenlar FSB*, the plaintiff alleged that the defendant improperly withheld a monetary "Exit Fee," as the plaintiff had cause to terminate the parties' agreement because the defendant was subjecting the plaintiff to regulatory penalties. 2019 U.S. Dist. LEXIS 186179, at *18-19 (M.D. La. Oct. 28, 2019). The Court found that "discovery regarding regulatory issues relating to the factual allegations" in the complaint was relevant because the plaintiff's claims inextricably rested on those allegations. *See id.*

The same cannot be said of MMR's theft-of-information claims. The so-called "reasons" that named Defendants left MMR to join ISG is immaterial — whether it be because the named Defendant did not like MMR's OSHA record keeping practices, how it maintained LSU's security cameras, internal executive compensation, or general workplace culture. What is material is whether those named Defendants misappropriated information that is legally protected and whether ISG condoned and partook in such actions. Regardless of how Defendants try to spin the statements in the Complaint's preamble, that is the crux of MMR's claims. In fact, the narrative

---

[1] *EEOC v. Kaplan* addresses whether a Title VII plaintiff could conduct a Rule 30(b)(6) deposition of an EEOC employee. The court in that case did not address the discrete issue raised by the parties here, but it is notable that the 30(b)(6) notice had a topic related to an "allegation" central to the plaintiff's claim: "[f]actual information and documents that support or rebut Plaintiff's allegation in the Complaint that 'Defendant has subjected a class of aggrieved Black job applicants. . . to an ongoing pattern or practice of discriminatory failure to hire such persons because of their race . . .'" 2011 U.S. Dist. LEXIS 57829, at *2 (N.D. Ohio May 27, 2011). In *LDGP, LLC v. Cynosure*, the claims concerned whether the defendant engaged in some type of false and/or unfair trade practice by advertising machines as being capable of "removing tattoos," and the allegation for which discovery was permitted was, unlike the case here, directly related to that claim. 2016 U.S. Dist. LEXIS 202581 (N.D. Ill. Aug. 15, 2016). The decision in *Johnsen v. Kirtz* has nothing to do with a discovery dispute, and, instead, concerned a motion to dismiss under Rule 12(b)(6). 2018 U.S. Dist. LEXIS 178848, at *7 (S.D. Fla. Oct. 18, 2018). Lastly, in *Tijerina v. Alaska Airlines, Inc.*, a sexual harassment plaintiff sought discovery concerning other complaints and investigative records relating to sex harassment, discrimination, and retaliation. 2022 U.S. Dist. LEXIS 203462 (S.D. Cal. Nov. 7, 2022). The court applied Rule 26(b)(1)'s balancing test and found that the discovery "***is relevant*** and can support several important issues and factual allegations made in the Complaint and is likely beneficial." *Id*. at *17. The same cannot be said of the irrelevant and harassing discovery Defendants seek, which is untethered to "important" issues or factual allegations.

4

does not even put into play — or "open the door" to — the highly irrelevant areas of inquiry for which Defendants needlessly seek discovery. *See, e.g,* (R. Doc. 152, pp. 9-10) (reproducing Paragraph Nos. 2, 3, 64, and 110 of MMR's operative complaint). Not one of these allegations rules out the possibility — nor takes any position regarding whether — the named Defendants may have had legitimate motivations for leaving MMR.[2]

> **B.    OSHA records, security cameras on LSU's campus, and internal compensation records offer no defense to theft-of-information claims.**

Importantly, Defendants concede that they are "not asserting an unclean hands defense." (R. Doc. 152, p.16). Defendants therefore cannot tie the requested discovery to any affirmative defense that Defendants have asserted in this case, and they are left with trying to argue that this discovery has probative value to some type of "general" defense. *See* (R. Doc. 152, pp. 14-16). But the reason an employee decides to leave a job is not a defense to misappropriating an employer's trade secrets. ISG simply cannot overcome an undeniable fact: the purported reason(s) why named defendants left MMR — *whatever the reason may be* — is not a defense to MMR's theft-of-information claims. Put differently, MMR's theft-of-information claims do not depend on, nor are they impacted by, the reasons why the named Defendants may have chosen to resign. *See Symbria, Inc. v. Callen*, No. 20-4084, 2021 U.S. Dist. LEXIS 268387, at *10 (N.D. Ill. Sept. 9, 2021) (emphasis added) ("Third, plaintiffs' non-solicitation claim depends on whether defendants asked plaintiffs' employees to leave Symbria, ***not on the reason any Symbria employee may have chosen to resign***. In short, the Court sustains plaintiffs' relevance objections . . . ").

Indeed, Defendants do not even attempt to explain how the "reasons for leaving" would prove that the Defendants did not misappropriate MMR's trade secrets. In fact, they do not even

---

[2] MMR's use of the word "poach" is immaterial, as one definition of that word is simply "to attract (someone, such as an employee or customer) away from a competitor)". *See* http://www.merriam-webster.com/dictionary/poach.

provide a declaration from a named defendant swearing, under penalty of perjury, that the reason they left MMR was related to OSHA record keeping, executive compensation, or performance under an LSU contract. Instead, we have statements from ISG's counsel, who readily admits that the discovery arose after speaking with disgruntled former employees — "only some of whom made their way to ISG." That is, this entire fishing expedition is not even related to named Defendants. Regardless, whether due to displeasure with internal executive compensation, workplace injuries, performance on a contract with LSU, or workplace dynamics, this displeasure may lead an employee to search for another job, but it does not provide a cognizable defense to stealing property.

## II.    MMR has met its burden to obtain a protective order.

District courts have significant discretion to enter protective orders — including, and especially, to prevent discovery such as this — and district courts may exercise that discretion based on the facially apparent irrelevant and harassing nature of discovery (*i.e.*, by examining the very substance of the requests themselves), the nature of the parties' claims and defenses, and the record already before the court. *See Las Vegas Sun, Inc. v. Adelson*, No. 19-01667, 2024 U.S. Dist. LEXIS 59414, at *7, 14 (D. Nev. Mar. 31, 2024) (affirming the magistrate judge's order prohibiting inquiry into four topics that "were irrelevant and disproportionate" to the case); *Rotstain v. Trustmark Nat'l Bank*, No. 2020 U.S. Dist. LEXIS 262224, *28-30 (N.D. Tex, Feb. 27, 2020) (finding that, "[b]ased on the record as presently developed," there was no basis to subject a third party to irrelevant discovery, and, as such, entering a protective order that still allowed for "discovery on relevant, non-privileged" matters); *Holman v. Lee Mem'l Health Sys.*, No. 18-76, 2019 U.S. Dist. LEXIS 240152, at *7-8 (M.D. Fla. Jul. 28, 2019) (granting in part a motion for protective order where the defendants had not "adequately demonstrated that the discovery sought

is relevant to any claim or defense in this litigation" or was "proportional to the needs of the case," and finding that the discovery "appears to be designed solely to harass, embarrass, and intimidate" the plaintiff); *Robinson v. Horizon Blue Cross Shield of N.J.*, No. 12-2981, 2014 U.S. Dist. LEXIS 98345, at *10-11 (D. N.J. Jul. 21, 2014) (finding good cause to enter a protective order from undue burden and expense and weighing the "duration of [the] action—over two years—and the amount of discovery already produced."); *Benitez v. Am. Std. Circuits, Inc.*, No. 08-1998, 2009 U.S. Dist. LEXIS 36867, at *2-3 (N.D. Ill. Mar. 3, 2009) (entering a protective order based on harassing requests related to the plaintiffs' immigration status).

At this stage of this case — including after the entry of a TRO, preliminary injunction, significant motion practice, and now a contempt order — the Court has ample record evidence and briefing to evaluate the parties' claims and defenses for the purpose of determining the scope of relevancy and potential harassment. And the discovery Defendants seek is so blatantly irrelevant and burdensome, and designed for such an obvious improper purpose that MMR is entitled to a protective order.[3] The fact that the Individual Defendants waited years to even raise these lines of inquiry indicates the need for a protective order, as does the fact that Defendants only requested this discovery after being held in contempt and settlement talks stalled.

\* \* \* \*

It is time to close the door on this distraction. For the foregoing reasons and those set forth in its opening brief, MMR prays that the Court enter the requested protective order.

---

[3] The timing and manner in which the discovery was served further demonstrates its improper purpose. *See* (R. Doc. 151-1, p. 5). ISG has also expressed its intent to subpoena other customers of MMR, *see, e.g.,* (R. Doc. 152-1, ¶ 20), thereby amplifying the need for the requested protective order.

#102381939v3

Respectfully submitted:

*/s/ P.J. Kee*

P.J. Kee (La. Bar No. 34860)
Thomas P. Hubert (La. Bar No. 19625)
Michael W. Magner (La. Bar No. 01206)
Jacob J. Pritt (La. Bar No. 38872)
Michael A. Foley (La. Bar No. 35774)
Jason A. Culotta (La. Bar No. 35731)
Connor H. Fields (La. Bar No. 39880)
JONES WALKER, LLP
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8230
Facsimile:  (504) 589-8230
Email:  pkee@joneswalker.com

8

#102381939v3