## AGREED REMEDIATION & MONITORING PROTOCOL

After meaningful conferences with the Special Master appointed in *MMR Constructors, Inc. v. JB Group of LA, LLC d/b/a Infrastructure Solutions Group, et al.*, No. 22-267 (M.D. La.) (the "**Civil Action**"), MMR Constructors, Inc. ("**MMR**") and JB Group of LA, LLC d/b/a Infrastructure Solutions Group ("**ISG**," with MMR, the "**Parties**") have reached an agreement on the terms of this Remediation & Monitoring Protocol (the "**Protocol**"), as set forth below. The Special Master approves and agrees to administer the Protocol to effectuate the court-ordered remediation and monitoring of ISG's compliance with the Court's *Preliminary Injunction* (Doc. 23).

## REMEDIATION

1.  **RESERVATION OF RIGHTS**. Nothing in this Protocol restricts, impacts, impairs, infringes on, limits or waives the parties' rights or defenses, or the ability to protect and preserve their rights, remedies and interests, including claims and defenses against other parties, in the Civil Action. For the avoidance of doubt, the parties reserve all rights and remedies available at law or in equity. Further, the parties reserve their rights to object to the admissibility of this Protocol and all negotiations relating hereto.

2.  **PARTY EXAMINERS.** In confecting the terms of the Protocol, the Parties were assisted by their respective forensic experts. ISG's forensic expert is Kroll Associates, Inc. (the "**ISG Examiner**"), and MMR's forensic expert is LCG, LLC (the "**MMR Examiner**"). Both the ISG Examiner and MMR Examiner are aware of the pendency of the Civil Action.

3.  **SCOPE OF REMEDIATION.** The environments, devices, and accounts that are subject to the Protocol include:

    a.   ISG's cloud environments;

    b.   ISG computers and tablets listed in **Appendix B**;

    c.   ISG email accounts listed in **Appendix C**;

    d.   Personal cellphones of the individuals listed in **Appendix D**;

    e.   Personal computers/tablets of the individuals listed in **Appendix E**;

    f.   Personal email accounts of the individuals listed in **Appendix F**.

    g.   External storage devices listed in **Appendix G**.

4.  **PROCESS FOR REMEDIATION**. The remediation efforts will proceed through a multi-stage process that includes assistance from the ISG Examiner and oversight by the Special Master.  For the purpose of clarity and standardization during remediation, the term "Double-Delete" refers to taking all requisite steps to ensure that a custodian or

administrator may not subsequently recover the deleted items, i.e., that the deletions are permanent.

a.   **Stage One: Create a clean Cloud Environment.**  ISG currently uses a cloud environment, on which resides documents that are subject to the Court's Contempt Order regarding remediation. ISG will move away from this cloud environment ("**Old Cloud**") that contains such documents by creating a new, clean cloud environment ("**Clean Cloud**"), according to the following:

   i.    ISG may ingest documents from the Old Cloud into the Clean Cloud, so long as the documents are not MMR documents or derivate documents ("**Clean Documents**").

   ii.   ISG will identify the Clean Documents that it believes are necessary to be ingested into the Clean Cloud by copying and pasting the Clean Documents into a separate folder, titled "Clean Documents," within the Old Cloud, and will segregate the Clean Documents into two categories: ISG non-proprietary vs. ISG proprietary files.

   iii.  Before the Clean Documents are ingested into the Clean Cloud, there will be a review process:

      1)  The ISG Examiner will review the Clean Documents to confirm they are "clean" (*i.e.*, are not MMR documents or derivative documents).

      2)  In a manner that the Special Master deems most appropriate, the Special Master will conduct a review of the Clean Documents that ISG has segregated as "ISG proprietary files" to ensure none are MMR documents or derivative documents.

         a)  During the review of these documents, the Special Master may request review and input from MMR's counsel concerning whether the documents are MMR documents or derivative documents. For the purpose of allowing MMR counsel an opportunity for review and input, the Special Master will convene a Zoom conference with MMR and ISG counsel to display the documents in question (or some other reasonable means if the volume of documents renders a Zoom conference impractical). Before MMR's counsel's review, ISG will be given the opportunity to redact any proprietary information as needed.

      3)  The ISG Examiner will provide MMR counsel with an inventory listing the ISG proprietary files that shall include all standard metadata available from forensic tools such as Axiom including, but not limited to: filenames, file paths, file sizes and MD5 hashes. In the event that ISG instructs the ISG Examiner to redact certain file names and/or paths, the ISG Examiner will provide a redacted

inventory listing to MMR and an unredacted listing to the Special Master. MMR can identify files that it wishes to review to ensure that none are MMR documents or derivatives. For the purpose of allowing MMR counsel an opportunity to review the identified files, the ISG Examiner will conduct a Zoom conference with MMR and ISG counsel to display the documents in question.

4) MMR counsel reviews the non-proprietary Clean Documents to ensure that none are MMR documents or derivative documents.

5) If there is any disagreement on whether a document is a Clean Document or not, the parties shall first meet and confer, and to the extent there is any unresolved disputes, then the dispute will be presented to the Special Master and, if the dispute remains unresolved after being presented to the Special Master, to the Court.

iv. Once the documents have been reviewed and approved as Clean Documents, the ISG Examiner will upload those approved Clean Documents to the Clean Cloud that the new devices/accounts may access (see below).

v. The Clean Cloud will not be accessible by ISG until the ISG Examiner completes the upload of the Clean Documents and the stages set forth below for the acquiring of clean computing devices and remediating email accounts are complete.

vi. A full inventory listing of the approved Clean Documents (with usual and customary the associated metadata) that are uploaded to the Clean Cloud will be provided to the Special Master and MMR counsel. In the event that ISG instructs the ISG Examiner to redact certain file names and/or folder paths, the ISG Examiner will provide a redacted inventory listing to MMR and an unredacted listing to the Special Master.

vii. The Old Cloud shall remain active, but the credentials will be changed such that only the ISG Examiner has access. To the extent someone accesses the Old Cloud, the ISG Examiner shall promptly notify the Special Master and MMR counsel about the details of this access.

b. **Stage Two: Deploy clean ISG computing devices with access to clean Cloud Environment.**

i. ISG will secure new computers for the individuals listed in Appendix A and have ISG's IT team working to have them ready to be deployed as soon as the Clean Cloud Environment goes live. Only commercial software applications and no ISG or MMR data (or derivatives) will be added to the new computers.

      ii.      Because the new computers will not be activated until *after* the Clean Cloud is approved and ready to go live, the new computers will not be inspected *provided that* no ISG or MMR data (or derivatives) is copied onto the media of the new computers before they are granted access to the Clean Cloud.

      iii.     The ISG Examiner shall provide an inventory of new computers that lists the makes, models, and serial numbers, and the ISG Examiner shall certify that the computers are in fact new and contain no ISG or MMR data (or derivatives) at the time of deployment and syncing with the Clean Cloud.

      iv.      Before the new computers are deployed and synced to the Clean Cloud, the ISG individuals will continue to use their old computers so that there is no disruption of business.

      v.      The ISG computing devices listed in Appendix B (the "**Old Computing Devices**") will be collected and preserved by the ISG Examiner. Upon collection of the Old Computing Devices, the ISG Examiner shall provide a certification confirming that they are under the ISG Examiner's exclusive possession and control.

  c.     **Stage Three: Cleanse ISG email accounts with access to clean Cloud Environment.**

      i.      The ISG Examiner will host the preservation copy of the email mailboxes of the ISG employees listed in Appendix C.

      ii.      The ISG Examiner will be provided with a corresponding MMR remediation list for each email account that was previously subject to the Forensic Protocol. The ISG Examiner shall Double-Delete the items on that list from the email accounts. "Double Delete" means taking all requisite steps to ensure that a custodian or administrator may not subsequently recover the deleted items, i.e., that the deletions are permanent.

      iii.     The ISG employees listed in Appendix C will identify emails/attachments after the ISG Examiner has deleted the documents identified on the MMR remediation lists or in the first instance if their email accounts were not subject to the Forensic Protocol, provided that ISG may direct the ISG Examiner to Double Delete the contents of email accounts after the ISG examiner preserves the contents of the email accounts. Further, to the extent ISG determines an email should be retrieved, the procedures set forth in Paragraph 5 below shall be followed.

          1)     The ISG Examiner will create a copy, as well as a log, of what has been identified and ensure that no steps were taken to defeat the legitimate ends of the process, such as by forwarding the item or copying it to a new location.

      2)     The ISG Examiner will then Double Delete and perform any other steps needed to render irrecoverable the identified emails/attachments.

iv.     ISG and MMR must promptly meet and confer to agree on search terms, including follow up meet and confer after testing keyword hit counts.

v.     ISG Examiner will conduct key word searches on the accounts of Ben Huffman, Kasey Kraft, and Jason Yates through ISG email accounts in Microsoft Office 365 using Purview or other native capabilities.

vi.     ISG Examiner shall provide an inventory listing the documents that contain any key words to ISG's and MMR's counsel.

vii.     MMR's counsel will identify the documents for further inspection that, on a good faith basis, are believed to be MMR documents or derivative documents, and in the event such documents are identified, the ISG Examiner will place the identified documents into a Relativity workspace for review by ISG.

viii.     ISG will identify documents that ISG does not want deleted based on the review in Relativity.

ix.     MMR attorneys, on an attorneys-eyes-only basis, shall review the documents that ISG does not want deleted. The parties shall then meet and confer over any issues. Any unresolved disputes will then be presented to the Special Master, and if the dispute remains unresolved after being presented to the Special Master, to the Court.

x.     In the event that it is determined that an MMR document or derivative document has been located through the keyword searching and review, a meet and confer will be promptly convened with counsel for MMR and ISG, as well as the ISG Examiner and MMR examiner, to investigate how such document was not deleted through the preceding processes.

      1)     The reason why such document was not previously deleted will guide the parties during this meet and confer session to set forth any follow-up search or activity, if needed, to ensure that there are no further MMR documents or derivative documents in ISG's possession.

      2)     Any unresolved disputes concerning the need or parameters of any follow-up search or activity shall be presented to the Special Master for resolution.

    d.     **Stage Four: Cleanse personal cellphones of the individuals listed in Appendix D**.

        i.     For cellphones of those listed in Appendix D, the following procedure will be followed:

            a)     The ISG Examiner shall create a forensic image of the cellphone of each custodian listed on Appendix D. This backup will remain in the custody of the ISG Examiner.

            b)     The ISG Examiner will use forensic tools to search the forensic image of each custodian's cellphone and create a log of any such MMR files or derivatives located on the cellphone, and the ISG Examiner's search for MMR files or derivatives will be based on search terms and hash values from the remediation list, as well as the exhibits attached to the contempt motion.

            c)     The ISG Examiner will then Double-Delete any such MMR files or derivatives on the cellphone.

        ii.     For cellphones in Appendix D that are backed up to the cloud (iCloud or Google) and on which MMR files or derivatives are identified and deleted, the following procedures will be followed:

            a)     The ISG Examiner will examine the iCloud or Google accounts, including documents stored in iDrive or Google Drive but excluding documents stored on mobile device backups to determine if copies exist of the MMR Files or derivatives by using forensic software (Elcomsoft, etc.) and custodian credentials to access the cloud account associated with the cellphone, and the ISG Examiner's search for MMR files or derivatives will be based on search terms and hash values from the remediation list, as well as the exhibits attached to the contempt motion.

            b)     The ISG Examiner will log any MMR Files or derivatives located in the cloud.

            c)     The ISG Examiner will then Double-Delete copies of any MMR Files or derivatives from the live cloud account.

            d)     The ISG Examiner will back up the remediated devices to the cloud and permanently overwrite any device backups dating from prior to the cellphone remediation located on the cloud such that the only surviving backup is the backup of the cleansed cellphone.

e.     **Stage Five: Cleanse personal computers/tablets.** The computers/tablets of the individuals listed in Appendix E will be remediated as follows:

   i.      ISG will identify all computers and tablets owned by the individuals listed in Appendix E that have had access to and/or on which MMR documents or derivatives existed.

   ii.     The individuals listed in Appendix E shall identify, under penalty of perjury, all MMR documents and derivative documents within the personal computer/tablet.

   iii.    ISG shall provide a listing of those documents/emails to the Special Master and MMR, and the ISG Examiner shall provide a copy of those documents/emails to the Special Counsel and MMR counsel.

   iv.     The ISG Examiner shall then Double-Delete those identified documents from the personal computer/tablet.

   v.      The Special Master shall confirm, on a proportional sampling basis of those computers/tablets, that any necessary deletion is complete before access is given back to ISG employee, acknowledging that access may be precluded for a short period of time (hours, not days).

f.     **Stage Six: Cleanse personal email accounts.** The personal email accounts of the individuals listed in Appendix F will be remediated as follows:

   i.      ISG will identify the personal email accounts of the individuals listed in Appendix E on or through which MMR documents or derivatives existed or through which MMR documents or derivatives were accessible.

   ii.     The individuals listed in Appendix E shall identify, under penalty of perjury, all MMR documents and derivatives within their respective personal email accounts.

   iii.    ISG shall provide a listing of those documents/emails to the Special Master and MMR, and the ISG Examiner shall provide a copy of those documents/emails to the Special Master and MMR counsel.

   iv.     The ISG examiner shall then Double-Delete those identified documents from the personal email account after preserving copies of what will be deleted.

   v.      The Special Master shall confirm on a proportional sampling basis of select employees' personal email accounts that this is complete before access is given back to those select ISG employees, recognizing that access may be precluded for a short period of time (hours, not days).

g.    **Stage Seven: Cleanse external storage devices.** The following procedures will be followed for the cleansing of the external storage devices listed in Appendix G:

    i.    The external storage devices listed in Appendix G are those identified in the USB history reports from the computers that were subject to the Forensic Protocol or a subpoena, as well as any other external storage devices that ISG identifies in its possession and that may contain MMR documents or derivatives.

    ii.    ISG will conduct a physical search for those external storage devices and identify to the Special Master and MMR counsel the external storage devices that could not be located following a diligent search.

    iii.    ISG shall provide those external storage devices to the ISG Examiner, to the extent located and not already provided to Lee Whitfield as part of the Forensic Protocol.

    iv.    The ISG Examiner or Lee Whitfield shall maintain possession of the external storage devices, and to the extent not already done, complete a forensic report that lists the documents existing on the devices, which shall be shared in unredacted form to the Special Master and in redacted form, as necessary according to the same procedures set forth in Stage 1, to MMR's counsel.

    v.    ISG shall purchase new storage devices for use in the Clean Environment.

    vi.    If ISG believes that it is necessary to keep/retain access to document(s) on an external storage device, ISG shall identify those documents and share that list with the Special Master and MMR counsel.

    vii.    Before releasing any of these documents to ISG for ingestion in the Clean Cloud or the New ISG Computers, the same procedures set forth in Stage 1 for determining "clean" documents (*i.e.*, are no MMR documents or derivative documents) shall be followed.

5.    **TRANSITION-PERIOD DOCUMENTS.** The Parties recognize that ISG may need to ingest additional documents into the Clean Cloud that were not initially identified in the set of Clean Documents, and agree that the following procedures will be followed for approval:

a.    If, after the Clean Cloud goes live and new computers are granted access, ISG believes that a document should have been included in the Clean Cloud but was inadvertently omitted, ISG shall notify the Special Master and MMR counsel of the issue and request that the ISG Examiner be allowed to introduce that document into the Clean Cloud. The ISG Examiner shall provide the document(s) to MMR counsel, and MMR counsel and ISG counsel shall meet and confer. If the issue cannot be resolved, it will be presented first to the Special Master and then, if

necessary, to the Court. If there is no dispute, the ISG Examiner shall be permitted to introduce that document into the Clean Cloud.

b.   MMR and ISG recognize that there will be a period of time after the Clean Documents are approved for uploading to the Clean Cloud and before the Clean Cloud goes live during which ISG may receive and/or work on documents that it wishes to be uploaded to the Clean Cloud (the "**Transition-Period Documents**"). The Transition-Period Documents will be treated on expedited basis as follow:

   i.   ISG's counsel will notify MMR's counsel on the need to initiate an expedited review of the Transition-Period Documents, and the ISG Examiner will conduct a Zoom conference with MMR and ISG counsel to display the documents. Further, the ISG Examiner is permitted to redact portions of the documents before being displayed during the Zoom conference if ISG's counsel instructs him to do so.

   ii.   During the Zoom conference, if counsel cannot resolve a dispute about a Transition-Period Document, then the dispute will be presented to the Special Master and, if the dispute remains unresolved after being presented to the Special Master, it will be presented to the Court.

   iii.   If there is no dispute about a Transition-Period Document, it will be uploaded to the Clean Cloud and then added to the inventory file listing of Clean Documents.

## MONITORING

6.   **SCOPE OF MONITORING.** The Special Master's monitoring efforts will begin following the completion of the remediation efforts called for by the Protocol and will include audits of the Clean Cloud, a selection of the new ISG computers, and a selection of the remediated ISG email accounts. The purpose of this monitoring is to ensure compliance with the Court's *Preliminary Injunction* and to identify any issues that appear to demonstrate that ISG is not complying with the Court's *Preliminary Injunction*.

7.   **AUDITS.** Once the Clean Cloud has been deployed and the new ISG computers are allowed access to it, the Special Master will conduct three audits.

a.   The first audit will occur within three months of the Clean Cloud going live and will consist of a review of the Clean Cloud and a sampling of ISG computers and email accounts to complete the audit, according to the following procedures:

   i.   The Special Master shall provide the ISG Examiner with three days' notice of when he will be initiating the first audit, and the ISG Examiner and ISG shall ensure that the Special Master is given access to the Clean Could as the Special Master deems appropriate.

    ii.    Once the Special Master has access to the Clean Cloud, the Special Master shall perform searches to ensure that MMR documents or derivative documents do not exist within the Clean Cloud.

    iii.    Special Master shall also identify three of the new ISG computers and three ISG email accounts that will be subject to audit.

    iv.    For the computers, the Special Master will perform a forensic analysis that includes conducting a search for MMR documents and derivative documents, as well as analyzing whether external storage devices or other similar means have been used in order to decide whether there are additional devices or repositories that should be search for MMR documents and derivative documents.

    v.    For the email accounts, the Special Master will search across those accounts on a random sample basis for MMR documents and derivative documents.

b.    The second audit will occur within four months from the completion of the first audit, according to the following procedures:

    i.    The Special Master shall provide the ISG Examiner with three days' notice of when he will be initiating the second audit, and the ISG Examiner and ISG shall ensure that the Special Master is given access to the Clean Could as the Special Master deems appropriate.

    ii.    The Special Master shall take into consideration the search efforts and the MMR document and derivative search results from the prior audit to inform this second audit.

    iii.    The Special Master shall also identify two new ISG computers and two emails accounts that will be subject to audit.

    iv.    For the computers, the Special Master will perform a forensic analysis that includes conducting a search for MMR documents and derivative documents, as well as analyzing whether external storage devices or other similar means have been used in order to decide whether there are additional devices or repositories that should be search for MMR documents and derivative documents.

    v.    For the email accounts, the Special Master will search across those accounts on a random sample basis for MMR documents and derivative documents.

c.    The third audit will occur within four months from the completion of the second audit, according to the following procedures:

    i.    The Special Master shall provide the ISG Examiner with three days' notice of when he will be initiating the third audit, and the ISG Examiner and

ISG shall ensure that the Special Master is given access to the Clean Could as the Special Master deems appropriate.

ii.    The Special Master shall take into consideration the search efforts and results of the prior audit's search for MMR document and derivatives to inform this third audit.

iii.    The Special Master shall also identify one ISG computer and one email account that will be subject to audit.

iv.    For the computer, the Special Master will perform a forensic analysis that includes conducting a search for MMR documents and derivative documents, as well as analyzing whether external storage devices or other similar means have been used in order to decide whether there are additional devices or repositories that should be search for MMR documents and derivative documents.

v.    For the email account, the Special Master will search across the account on a random sample basis for MMR documents and derivative documents

8.    **MEET AND CONFER.** If the Special Master identifies any issues that appear to demonstrate that ISG is not complying with the Court's *Preliminary Injunction*, the Special Master will convene a conference with counsel for ISG and MMR to discuss the issues and possible solutions.

9.    **REPORTING.** At the conclusion of each audit, the Special Master will prepare a brief report detailing the scope of the audit and issues identified.

**APPENDIX A**

As required by Stage 2 of the Protocol, ISG will acquire new computers and/or tablets for the following employees:

1. Aaron Campise
2. Anthony "Tony" Arimond
3. Branden Alexander Daigre
4. Bridget Suzette Murphy
5. Catherine "Cathy" Cimino
6. Chad Jason Lee
7. Christopher "Chris" Marshall Comeaux
8. Christopher "Chris" Guidry
9. Dalton Breeland
10. Danny "Dan" Duane Howell Jr
11. David Heroman
12. Drake Bourgeois Jr
13. Earl Steven Keller
14. Garrett Guidry
15. Jared A Babin
16. Jason Yates
17. Joseph "Joe" Samson IV
18. Kasey C Kraft
19. Kenneth Paul Landry
20. Kevin Alexander
21. Laiton McCaughey
22. Lane Michael Buffalo
23. Lenny C Tramonte
24. Logan Christopher Ray
25. Michael "Mike" Connolly
26. Michael "Mike" Lowe
27. Richard K Mann
28. Samuel "Sam" Dixon Cole
29. Samuel "Sam" Barton Shirley
30. "Ronald" Shawn Breeland
31. Tiffany B Medine
32. Travis Everett Castle
33. Travis Dardenne
34. Walter B "Ben" Huffman

**APPENDIX B**

The following is an inventory of the make and serial number of the Old Computing Devices, as defined in this Protocol:

| First Name | Last Name | Brand | Model # | Tag # |
|---|---|---|---|---|
| Aaron | Campise | Microsoft | Surface Tablet | 0F00D65221101J |
| Anthony ("Tony") | Airmond | Microsoft | Surface | |
| Branden | Daigre | Dell | Inspiron 16 5620 | B3ZDML3 |
| Bridget | Murphy | Box (HP) | HP Elite 8300 SFF | MXL239266S |
| Catherine | Cimino | ASUS | VivoBook | 12MLCN0CV039812499 |
| Chad | Lee | ACER | N21C2 | SF314512-52MZ |
| Chris | Comeaux | DELL | Latitude 3420 | CGP1LL3 |
| Chris | Comeaux | DELL | Inspiron15 | H2TDDW3 |
| Chris | Guidry | Microsoft | Surface Laptop | 26006795057 |
| Dalton | Breeland | HP | Latitude | 5CD2272KH |
| Dan | Howell | HP | HP Envy x360 | CND3230BYT |
| David | Heroman | HP | HP Envy x360 | CND32330Z0 |
| David | Heroman | Apple | ipad | P21LXD44KP |
| Drake | Bourgeois | DELL | G15 5511 | 5W4WMJ3 |
| Earl | Keller | Acer | A315-24PT-R4U2 | NXKHDAA0043410A1BF3400 |
| Garrett | Guidry | Dell | Inspiron 16 P117F | HLJ8NL3 |
| Garrett | Guidry | Apple | Ipad | |
| Jared | Babin | Dell | Latitude | GG6QWG3 |
| Jason | Yates | Microsoft | Surface Laptop | 047996713957 |
| Joe | Sampson | Lenovo | IDEAPAD3 | PF4ABH2X |
| Kasey | Kraft | Dell | Latitude | BFNSGL3 |
| Kenny | Landry | HP | 15.6" i7 | 5CD4061G76 |
| Kevin | Alexander | Acer | A315-24PT-R4U2 | NXKHDAA0043470083F3400 |
| Laiton | McCaughey | Lenovo | Yoga7 | YX065WZ6 |

| Lane | Buffalo | Dell | Inspiron 16 5620 | DS7VNL3 |
|---|---|---|---|---|
| Lenny | Tramonte | Dell | INSPRION | CT7VNL3 |
| Logan | Ray | HP | 17-cn2068cl | 5CG33222WJ |
| Mike | Connolly | Dell | Inspiron | 6KJ8NL3 |
| Mike | Lowe | HP | 15-eg0067st | 5CD1226QHP |
| Richard | Mann Sr. | Microsoft | SURFACE LAPTOP 1951 | 005571322757 |
| Ronald "Shawn" | Breeland | HP | Envy x360 | CND1387CYF |
| Sam | Cole | Dell | Inspiron | 7CNP2B3 |
| Sam | Shirley | Dell | Latitude | GDM7NL3 |
| Tiffany | Medine | Dell | Inspiron | 1THJBL3 |
| Travis | Castle | Dell | Inspiron 16 5620 | G0ZDML3 |
| Travis | Dardenne | Dell | | |
| Walter "Ben" | Huffman | Microsoft | Surface Laptop | 017012314957 |
| Walter "Ben" | Huffman | Dell | Inspiron | 5VZ9H53 |
| Walter "Ben" | Huffman | Dell | Inspiron | 5S7VNL3 |
| **Total** | **39** | | | |

**APPENDIX C**

The ISG Examiner wll host the preservation copy of the email mailboxes of the ISG employees listed below:

1. Aaron Campise
2. Anthony "Tony" Arimond
3. Branden Alexander Daigre
4. Bridget Suzette Murphy
5. Catherine "Cathy" Cimino
6. Chad Jason Lee
7. Christopher "Chris" Marshall Comeaux
8. Christopher "Chris" Guidry
9. Dalton Breeland
10. Danny "Dan" Duane Howell Jr
11. David Heroman
12. Drake Bourgeois Jr
13. Earl Steven Keller
14. Garrett Guidry
15. Jared A Babin
16. Jason Yates
17. Joseph "Joe" Samson IV
18. Kasey C Kraft
19. Kenneth Paul Landry
20. Kevin Alexander
21. Laiton McCaughey
22. Lane Michael Buffalo
23. Lenny C Tramonte
24. Logan Christopher Ray
25. Michael "Mike" Connolly
26. Michael "Mike" Lowe
27. Richard K Mann
28. Samuel "Sam" Dixon Cole
29. Samuel "Sam" Barton Shirley
30. "Ronald" Shawn Breeland
31. Tiffany B Medine
32. Travis Everett Castle
33. Travis Dardenne
34. Walter B "Ben" Huffman

**APPENDIX D**

The following individuals' personal cellphones will be subject to the Protocol:

1. Anthony "Tony" Arimond

2. Christopher "Chris" Marshall Comeaux

3. Danny "Dan" Duane Howell Jr

4. David Heroman

5. Jason Yates

6. Kasey C Kraft

7. Kevin Alexander

8. Laiton McCaughey

9. Michael "Mike" Lowe

10. Ronald "Shawn" Breeland

11. Travis Dardenne

12. Walter B "Ben" Huffman

**APPENDIX E**

The following individuals' personal computers/tablets will be subject to the Protocol:

1. Anthony "Tony" Arimond

2. Christopher "Chris" Marshall Comeaux

3. Danny "Dan" Duane Howell Jr

4. David Heroman

5. Jason Yates

6. Kasey C Kraft

7. Kevin Alexander

8. Laiton McCaughey

9. Michael "Mike" Lowe

10. Ronald "Shawn" Breeland

11. Travis Dardenne

12. Walter B "Ben" Huffman

**APPENDIX F**

The following individuals' personal email accounts will be subject to the Protocol:

1. Anthony "Tony" Arimond

2. Christopher "Chris" Marshall Comeaux

3. Danny "Dan" Duane Howell Jr

4. David Heroman

5. Jason Yates

6. Kasey C Kraft

7. Kevin Alexander

8. Laiton McCaughey

9. Michael "Mike" Lowe

10. Ronald "Shawn" Breeland

11. Travis Dardenne

12. Walter B "Ben" Huffman

# APPENDIX G

The following external storage devices are subject to the Protocol:

| Custodian | Serial /UID | Description |
|---|---|---|
| Anthony "Tony" Arimond | 08606E6D4162B1A1F70837C9 | Kingston DataTraveler 3.0 USB Device |
| Anthony "Tony" Arimond | 20230712004369F | TOSHIBA EXTERNAL_USB USB Device |
| Anthony "Tony" Arimond | 574343344E345256594E3745 | WD My Book 1230 USB Device |
| Anthony "Tony" Arimond | 5&1640e3c8&0&000000 | KBG40ZNS128G BG4A KIOXIA* |
| Anthony "Tony" Arimond | 07009B59BA821164 | PNY USB 2.0 FD |
| Anthony "Tony" Arimond | 42CF4960F99100D0 | FLASH DISK |
| Anthony "Tony" Arimond | 000000001539 | GENERIC MASSSTORAGECLASS |
| Anthony "Tony" Arimond | F729A66B2B336A98460E | LEXAR USB FLASH DRIVE |
| Anthony "Tony" Arimond | 1234568148E1 | Samsung Portable SSD T5 |
| Ronald "Shawn " Breeland | 3973501052797360768 | VendorCo ProductCode USB Device |
| Ronald "Shawn " Breeland | 323234323739343033373335 | SanDisk Extreme 55AE SCSI Disk Device |
| Ronald "Shawn " Breeland | 6&28b4374f&0&000001 | Extreme 55AE |
| Ronald "Shawn " Breeland | ab7656669618 | Generic Flash Disk USB Device |
| Ronald "Shawn " Breeland | 5&2264a8ab&0&000000 | KBG40ZNS256G TOSHIBA MEMORY* |
| Ronald "Shawn " Breeland | 0401cf1649a8dfc689c6aa5abe837050ea 825b3f29cb2e85edd3a4bc0f321c7 | USB  SANDISK 3.2GEN1 |
| Ronald "Shawn " Breeland | 000000001539 | GENERIC MASSSTORAGECLASS |
| Ronald "Shawn " Breeland | 4C530001320924103114 | SANDISK ULTRA |
| Ronald "Shawn " Breeland | 6&af2d24 | GENERIC FLASH READER |
| Ronald "Shawn " Breeland | ab7827381884 | GENERIC FLASH DISK |
| Ronald "Shawn " Breeland | HEADER1383D43914501 | VENDORCO PRODUCTCODE |
| Ronald "Shawn " Breeland | 35130207C4103B22 | SANDISK SANDISK CRUZER |
| Ronald "Shawn " Breeland | 0E3156B0 | GENERIC FLASH DISK |
| Ronald "Shawn " Breeland | 8&ef11ae9 | GENERAL UDISK |
| Ronald "Shawn " Breeland | 6&ea6c259 | GENERIC MASS-STORAGE |
| Ronald "Shawn " Breeland | 602D9AAC | GENERIC FLASH DISK |
| Ronald "Shawn " Breeland | 6&2b95378e | VENDORCO PRODUCTCODE |
| Ronald "Shawn " Breeland | 1C1B0D0194C9E360195665DC | KINGSTON DT MICRODUO 3C |
| Ronald "Shawn " Breeland | ab7933224406 | GENERIC FLASH DISK |
| Ronald "Shawn " Breeland | 20042103230C80A079A4 | SANDISK CRUZER |
| Ronald "Shawn " Breeland | 07181538A5845178 | VERBATIM STORE N GO |
| Ronald "Shawn " Breeland | 04018619061222160316 | WALGREEN INFINITIVE |
| Ronald "Shawn " Breeland | 071C2A9675158188 | PNY USB 2.0 FD |
| Ronald "Shawn " Breeland | 5&7993a9c&0&2 | Generic Mass-Storage |
| Chris Comeaux | E0D55EA574021581A94B4936 | Kingston DataTraveler 3.0 USB Device |
| Chris Comeaux | 0123456789ABCDE | NORELSYS 1081CS1 USB Device |
| Chris Comeaux | 20230813003390F | TOSHIBA EXTERNAL_USB USB Device |

| Chris Comeaux | 20051738020EEB614660 | SanDisk Cruzer USB Device |
|---|---|---|
| Chris Comeaux | 04019123030422013803 | SanDisk Cruzer Glide USB Device |
| Chris Comeaux | 4&3249f751&0&030000 | NVMe KBG50ZNS256G NVMe KIOXIA 256GB* |
| Chris Comeaux | 16B1D056 | GENERIC FLASH DISK |
| Chris Comeaux | 058F84688461 | GENERIC- SD |
| Chris Comeaux | 1640570306 | INNOSTOR INNOSTOR |
| Chris Comeaux | M2&REV_1.08 | GENERIC- MICRO SD |
| Chris Comeaux | MMC&REV_1.00 | GENERIC- SD |
| Travis Dardenne | 04017905101920143623 | SanDisk Cruzer Glide |
| Travis Dardenne | NA9DXBRV | Seagate  BUP Slim SL |
| Travis Dardenne | 7&1af5bf68&0&000000 | Seagate BUP Slim SL |
| Travis Dardenne | D83C411D | GENERIC FLASH DISK |
| Travis Dardenne | 090148cb91fda57845560be4a4fcb30d86aac6f5b08fc4fae994347c0dbafc7 | USB SanDisk 3.2Gen1 |
| Travis Dardenne | 090148cb91fda57845560be4a4fcb30d86aac6f5b08fc4fae994347c0dbafc7d6f600 00000000000000000002b602eedff843a2 08155810723aa57a6 | USB  SanDisk 3.2Gen1 |
| Travis Dardenne | 5&2b0f94e6&0&000000 | BC711 NVMe SK hynix 256GB* |
| David Heroman | 121220160204 | Mass   Storage Device |
| David Heroman | AABB0B2300001162 | PNY   USB 2.0 FD |
| David Heroman | 0360421020005339 | TESLA   DRIVE |
| David Heroman | 574D43315433363934313834 | WD My Book 1140 |
| David Heroman | NA9E4DTR | Seagate  BUP Slim BK |
| David Heroman | 6&1b335fa4&0&000000 | Seagate BUP Slim BK |
| David Heroman | | SanDisk Cruzer (4 GB) flash drive |
| David Heroman | | Patriot Xporter XT (8 GB) flash drive |
| David Heroman | | Flash drive shaped like Darth Vader |
| David Heroman | | USB C Memory Stick (1 TB) |
| Dan Howell | 070D17FDB3CB9240 | USB DISK 3.0 USB Device |
| Dan Howell | 058F84688461 | Generic- SD/MMC USB Device |
| Dan Howell | 158F84688461 | Generic- SD/MMC USB Device |
| Dan Howell | 2077241044054758610 | VendorCo ProductCode USB Device |
| Dan Howell | 5&5a247b3&0&000000 | WD PC SN810 SDCPNRY-1T00-1006* |
| Dan Howell | m2&rev_1.08 | Generic- Micro SD/M2 USB Device |
| Dan Howell | mmc&rev_1.00 | Generic- SD/MMC USB Device |
| Dan Howell | 4&11d42a70&0&0030 | NULL WD PC SN810 SDCPNRY-1T00-1006* |
| Walter "Ben" Huffman | 4&3527998&0&020000 | NVMe BC711 NVMe SK hynix 512GB* |
| Walter "Ben" Huffman | NACA6SN6 | Seagate Portable |
| Walter "Ben" Huffman | 574D43344E30333932323234 | WD My Book 1140 |
| Walter "Ben" Huffman | 60000719201300000 | GENERIC- SD |

| | | |
|---|---|---|
| Walter "Ben" Huffman | 4C530001320924103114 | SANDISK ULTRA |
| Walter "Ben" Huffman | 070D17FDB458F774 | USB DISK 3.0 |
| Walter "Ben" Huffman | 9880071022712701854 | Seagate |
| Walter "Ben" Huffman | E68285DA | GENERIC FLASH DISK |
| Walter "Ben" Huffman | C85F1458 | GENERIC FLASH DISK |
| Walter "Ben" Huffman | 04017905101920143623 | SANDISK CRUZER GLIDE |
| Walter "Ben" Huffman | MS | GENERIC- SD |
| Walter "Ben" Huffman | 4&391cc7c&0&0030 | NULL KBG40ZNS1T02 BG4A KIOXIA |
| Walter "Ben" Huffman | NAAZYRPA | Seagate Portable |
| Walter "Ben" Huffman | MMC&REV_1.00 | GENERIC- SD |
| Walter "Ben" Huffman | MMC | GENERIC- SD |
| Kasey Kraft | AABB0B2300001162 | PNY USB 2.0 FD |
| Kasey Kraft | 4C530001101221110094 | SanDisk Cruzer Glide |
| Kasey Kraft | NACAKG5L | Seagate Portable |
| Kasey Kraft | 2HC015KJ | Seagate USB |
| Kasey Kraft | 7&512fdfd | |
| Kasey Kraft | 6&137c2492&0&000000 | Seagate Portable |
| Kasey Kraft | 6&394e70fd&0&000000 | Seagate USB |
| Kasey Kraft | 4&2ed2851&0&020000 | |
| Kasey Kraft | A8C73880 | Generic Flash Disk |
| Kasey Kraft | 1653014CBE110003 | CBM Flash Disk |
| Kasey Kraft | 000AEBFFB51C5C871714001B | Kingston DataTraveler 2.0 |
| Kasey Kraft | 07000378B2D71841 | PNY USB 2.0 FD |
| Kasey Kraft | 57S3CVHMZZT06FSJ | Lexar USB Flash Drive |
| Kasey Kraft | AEB91265 | Generic Flash Disk |
| Kasey Kraft | D99FCAC4 | Generic Flash Disk |
| Kasey Kraft | 900069E05B3A8E28 | Verbatim STORE N GO |
| Kasey Kraft | A8C73880 | Generic USB |
| Kasey Kraft | AEB91265 | Generic USB |
| Kasey Kraft | 000AEBFFB51C5C871714001 | Kingston external |
| Kasey Kraft | D99FCAC4 | Generic USB |
| Kasey Kraft | 17804010030 | PNY external |
| Michael Lowe | 000000001539 | Generic  MassStorageClass |
| Michael Lowe | 4A454B554256555A | WD    My Book 25EE |
| Michael Lowe | NA9E4DTR | Seagate  BUP Slim BK |
| Michael Lowe | 6&1b335fa4&0&000000 | Seagate BUP Slim BK |
| Michael Lowe | 90009651177F8423 | PNY    USB 2.0 FD |
| Michael Lowe | 900087F638021337 | Verbatim STORE N GO |
| Michael Lowe | 6&136340e&0 | |
| Michael Lowe | 4&26c31a9e&0&020000 | NVMe SK hynix BC511 HFM512GDJTNI-82A0A* |
| Michael Lowe | 07009B59BA821164 | PNY    USB 2.0 FD |
| Michael Lowe | 20052845321DC9D2EDBC | Staples  Relay UFD |

| | | |
|---|---|---|
| Michael Lowe | JEKUBVUZ | WD My Book 25EE |
| Michael Lowe | 0171060490B0 | PNY USB 2.0 FD |
| Michael Lowe | WXH1A599AP5Z | My Passport external |
| Laiton McCaughey | 20230525010187F | TOSHIBA EXTERNAL_USB USB Device |
| Laiton McCaughey | 575835324443325253484433 | WD MY PASSPORT 2626 |
| Laiton McCaughey | 04010f2239ed6da55abadbb443c5b6c54 626054a3ab2a5c13c2347fb4a83694 | USB SanDisk 3.2Gen1 USB Device |
| Laiton McCaughey | 058F84688461 | Generic- Micro SD/M2 USB Device |
| Laiton McCaughey | 4&3527998&0&020000 | NVMe BC711 NVMe SK hynix 512GB* |
| Laiton McCaughey | NA7V6N9N | Seagate Ultra Slim GD |
| Laiton McCaughey | 04010F2239ED6DA55ABADBB443C5B6C 54626054A3AB2A5C13C2347FB4A83694 AD3BE000000000000000000009028C65 A0087AF1883558107CF2A25E2 | USB SanDisk 3.2Gen1 |
| Jason Yates | 04020129102820123226 | SanDisk Cruzer Glide |
| Jason Yates | 574D43315433373834303232 | WD My Book 1140 |
| Jason Yates | NA9E4DTR | Seagate BUP Slim BK |
| Jason Yates | 181109000004B | Buslink C31G2 |
| Jason Yates | 6&31e9aa&0&000000 | Buslink C31G2 |
| Jason Yates | 6&1b335fa4&0&000000 | Seagate BUP Slim BK |
| Jason Yates | NA85AD4Z | Seagate Expansion |
| Jason Yates | 5&5d055f5&0&000000 | SDBPTPZ-1T00-1124-WDC* |
| Jason Yates | 6&376beebc&0&000000 | Seagate Expansion |
| Jason Yates | 070D17FDB458F774 | USB DISK 3.0 |
| Jason Yates | 04014dc72188ff6098e522981e2f32e883 d4a5bf8aba16f06ff54d616acc545 | USB SANDISK 3.2GEN1 |
| Jason Yates | 4C530001320924103114 | SanDisk Ultra |
| Jason Yates | 6&23dee1ad | GENERAL UDISK |
| Jason Yates | 0123456789ABCDE | iXpand Flash Drive |
| Jason Yates | 575853314133373444A534B | WD    My Passport 25E2 |
| Jason Yates | 0F7707D41070 | USB DISK 3.0 |
| Jason Yates | 04014dc72188ff6098e5 | USB SanDisk 3.2Gen1 |
| Jason Yates | WXS1A373DJSK | WD My Passport 25E2 |
| Jason Yates | 04014DC72188FF6098E522981E2F32E8 83D4A5BF8ABA16F06FF54D616ACC545 710F30000000000000000000034E61E CFF02B6188155810783A95460 | USB SanDisk 3.2Gen1 |
| Jason Yates | 5&1487BDB9&0&2 | General UDisk |
| Jason Yates | NA85AD4Z | Seagate Expansion Portable Drive- 1 TB |

*These items are likely internal solid state drives, but are included until confirmation