1                    UNITED STATES DISTRICT COURT

2                    MIDDLE DISTRICT OF LOUISIANA

3

4    MMR CONSTRUCTORS, INC.        : CIVIL ACTION

5    VERSUS                        : NO. 3:22-CV-267-BAJ-RLB

6    JB GROUP OF LA, LLC           : APRIL 2, 2024

7    ========================================================
                          MOTIONS HEARING
8              BEFORE THE HONORABLE BRIAN A. JACKSON
                   UNITED STATES DISTRICT JUDGE
9
                     A P P E A R A N C E S
10

11   FOR PLAINTIFF, MMR CONSTRUCTORS, INC.:

12       JONES WALKER LLP
         BY: P.J. KEE, ESQUIRE
13       BY: MICHAEL ANDREW FOLEY, ESQUIRE
         BY: THOMAS P. HUBERT, ESQUIRE
14       BY: JACOB JUDE PRITT, ESQUIRE
         201 ST. CHARLES AVENUE
15       NEW ORLEANS, LOUISIANA 70170

16
     FOR DEFENDANTS ISG, TRAVIS DARDENNE, JASON YATES:
17
         DUNLAP FIORE, LLC
18       BY: JENNIFER ANN FIORE, ESQUIRE
         BY: ERIN GOURNEY FONACIER, ESQUIRE
19       6700 JEFFERSON HIGHWAY, BUILDING #2
         BATON ROUGE, LOUISIANA 70806
20

21   FOR DEFENDANT DAVID HEROMAN:

22       KEEGAN, JUBAN, LOWE & ROBICHAUX, LLC
         BY: AMBER NICOLE ROBICHAUX, ESQUIRE
23       5555 HILTON AVENUE, SUITE 205
         BATON ROUGE, LOUISIANA 70808

24

25         REPORTED BY:  NATALIE W. BREAUX, RPR, CRR
                  UNITED STATES COURTHOUSE

EXHIBIT
1

1              **777 FLORIDA STREET**
        **BATON ROUGE, LOUISIANA 70801**

2             **(225) 389-3565**
     **NATALIE_BREAUX@LAMD.USCOURTS.GOV**

3

4  **PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING**
      **COMPUTER-AIDED TRANSCRIPTION SOFTWARE**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        (APRIL 2, 2024)

 2                        PROCEEDINGS

 3           THE LAW CLERK:  ALL RISE.

 4               (CALL TO THE ORDER OF COURT)

 5           THE COURT:  GOOD MORNING, EVERYONE.  BE

 6   SEATED.

 7               ALL RIGHT.  LET'S CALL THE CASE.

 8           THE COURTROOM DEPUTY:  CIVIL CASE NO.

 9   22-267, MMR CONSTRUCTORS INCORPORATED VERSUS JB GROUP

10   OF LOUISIANA, LLC, ET AL.

11           THE COURT:  ALL RIGHT.  COUNSEL, LET ME ASK

12   YOU TO ENTER YOUR APPEARANCES AT THIS TIME AND TO DO

13   SO USING THE FORWARD PODIUM.

14           MR. KEE:  THANK YOU, YOUR HONOR.

15               P.J. KEE ON BEHALF OF PLAINTIFF, MMR

16   CONSTRUCTORS, INC.  AND WITH ME I HAVE TOM HUBERT --

17           THE COURT:  MR. HUBERT.

18           MR. KEE:  -- MICHAEL FOLEY --

19           THE COURT:  MR. FOLEY.

20           MR. KEE:  -- AND JACOB PRITT.

21           THE COURT:  WELCOME.

22           MR. PRITT:  GOOD MORNING, YOUR HONOR.

23           MR. KEE:  AND THEN WITH ME, YOUR HONOR, IS

24   MATT WELLBORN, REPRESENTATIVE FOR PLAINTIFF.

25           THE COURT:  VERY GOOD.  THANK YOU.
```

1          AND FOR THE DEFENDANTS?

2          **MS. FONACIER:**  GOOD MORNING, YOUR HONOR.

3          ERIN FONACIER ON BEHALF OF ISG, TRAVIS

4  DARDENNE AND JASON YATES.  WITH ME IS MS. JENNIFER

5  FIORE AND TWO CLIENTS:  MR. YATES AND MR. BREELAND.

6          **THE COURT:**  THANK YOU.  ALL RIGHT.

7          MR. KEE, LET ME GIVE YOU THE FIRST SHOT

8  AT IT.  WHY DON'T YOU -- FIRST OF ALL, LET ME ASSURE

9  ALL SIDES THAT -- BOTH SIDES, I SHOULD SAY -- THAT

10  I'VE READ THE PLEADINGS IN THE CASE AS WELL AS THE

11  MOST RECENTLY FILED REPLY BY THE PLAINTIFF.

12  OBVIOUSLY I HAVE SOME QUESTIONS ABOUT HOW WE GOT TO

13  THIS POINT.

14          BUT BEFORE WE PROCEED, MR. KEE, LET ME

15  GIVE YOU A BRIEF OPPORTUNITY TO STATE ON THE RECORD

16  THE REASONS THAT YOU'RE -- WE'RE BACK IN COURT AT

17  THIS POINT, DESPITE THE ENTRY OF THE PRELIMINARY

18  INJUNCTION ORDER.  TELL ME WHY WE'RE HERE, VERY

19  BRIEFLY.  OKAY?  FORWARD PODIUM.

20          **MR. KEE:**  YOUR HONOR, WE'VE -- I PREPARED A

21  PRESENTATION FOR YOU TO GIVE YOU THE FULL CONTEXT OF

22  WHY WE'RE HERE.  IT'S A LITTLE LONGER THAN BRIEF.

23          **THE COURT:**  WELL, LET'S JUST -- LET'S SORT

24  OF GIVE ME THE HIGHLIGHTS, IF YOU WILL.  I WILL GIVE

25  YOU AN OPPORTUNITY TO MAYBE -- FOR THE SAKE OF

1    TIME -- TO GO ON AND PROVIDE ME WITH ANY EVIDENCE YOU

2    HAVE ELECTRONIC, ANY DEMONSTRATIVE AIDS.

3            BUT LET'S -- AGAIN, LET'S -- AS A

4    LOGICAL STARTING POINT FOR ME, TELL ME WHY YOU'RE

5    HERE.  AGAIN, I'VE READ IT -- READ YOUR PLEADINGS.

6    YOU ASSERT THAT THE DEFENDANTS -- MY

7    INTERPRETATION -- DID NOT TAKE MY ORDER SERIOUSLY.

8    BUT LET ME GIVE YOU AN OPPORTUNITY TO BEGIN.

9            **MR. KEE:**  AND THAT'S EXACTLY RIGHT, YOUR

10   HONOR.  AFTER TWO YEARS OF THE PARTIES LIVING UNDER

11   THIS PRELIMINARY INJUNCTION, WE'VE UNCOVERED, AFTER

12   THE SECOND DEPOSITION OF MR. HUFFMAN, THAT ISG

13   COMPLETELY FLOUTED YOUR HONOR'S ORDER, TOOK NO

14   SERIOUS STEPS TO COMPLY, AND ACTUALLY TOOK EFFORTS TO

15   HIDE THE FACT THAT THEY HAD CREATED -- BASICALLY

16   SCRUBBED AND REBRANDED TOOLS THAT WAS STOLEN FROM MMR

17   AND TAKEN TO ISG.

18           WE WERE SHOCKED TO FIND THAT OUT.  ALSO

19   SHOCKED TO HEAR FROM MR. HUFFMAN THAT NO ONE AT ISG,

20   NO ONE IN THE EXECUTIVE TEAM, TOLD HIM HOW HE SHOULD

21   COMPLY WITH THIS INJUNCTION.  AFTER THE FIRST

22   DEPOSITION, WHICH WAS SHUT DOWN SHORTLY AFTER HE

23   ADMITTED TO USING AN MMR DATABASE TO CREATE A REPLICA

24   FOR ISG -- THAT WAS IN MARCH OF 2023 -- WE WERE NOT

25   ABLE TO DEPOSE HIM AGAIN UNTIL FEBRUARY OF 2024.  AND

1  NOTHING WAS EVEN DONE IN THE INTERIM TO ASK MR.

2  HUFFMAN -- NO ONE ON THE EXECUTIVE TEAM ASKED MR.

3  HUFFMAN WHAT HE DID, WHAT DOCUMENTS HE CREATED, HOW

4  HE CREATED THEM.

5              AND, YOUR HONOR, THAT'S BECAUSE THEY

6  KNEW.  MR. HUFFMAN WAS HIRED GIVEN HIS SKILLS IN

7  EXCEL SPREADSHEETS, ACCESS DATABASES; HE KNEW HOW TO

8  CREATE THEM.  AND THAT'S SOMETHING THAT THE CURRENT

9  ISG EXECUTIVE TEAM AND EMPLOYEES DID NOT KNOW HOW TO

10  DO.

11          **THE COURT:**  ALL RIGHT.  THANK YOU, MR. KEE.

12              LADIES, IS IT MS. FONACIER?  IS THAT

13  HOW YOU PRONOUNCE YOUR LAST NAME?

14          **MS. FONACIER:**  *FONACIER.*

15          **THE COURT:**  *FONACIER*, OKAY.

16              NOW, LET'S GET RIGHT TO IT.  WHAT

17  HAPPENED?

18          **MS. FONACIER:**  SURE, YOUR HONOR.

19              ISG DID NOT INTENTIONALLY VIOLATE THIS

20  INJUNCTION.  WE ARE HERE FOR THE MOTION FOR CONTEMPT

21  OF THE PRELIMINARY INJUNCTION.  MANY OF THE THINGS

22  THAT MMR HAS POINTED OUT IN THEIR PLEADINGS OCCURRED

23  PRIOR TO THIS LITIGATION AND IS THE BASIS FOR THIS

24  LITIGATION, NOT THE INJUNCTION.

25              THE THREE INSTANCES OF MR. HUFFMAN WERE

1  NOT DISCOVERED UNTIL HIS DEPOSITION.  IN BOTH

2  DEPOSITIONS HE DENIED IT.  WHILE THE EXECUTIVE TEAM

3  DID NOT QUESTION MR. HUFFMAN, THOSE QUESTIONS WERE

4  HAPPENING IN THE BACKGROUND BETWEEN ATTORNEYS.  WE

5  DID NOT WANT TO INFLUENCE HIS TESTIMONY.  WE WANTED

6  TO ENSURE -- AND WE BELIEVED THAT THE SECOND

7  DEPOSITION WAS GOING TO BE SHORTLY FORTHCOMING.  HE

8  HAD HIS OWN ATTORNEY, AND WE WERE ASSURED BY THAT

9  ATTORNEY THAT THERE WERE NO OTHER SURPRISES WE NEEDED

10  TO KNOW ABOUT.

11          **THE COURT:**  WELL, LET ME STOP YOU THERE.

12              AT SOME POINT SOMEONE MADE THE DECISION

13  FOR MR. HUFFMAN TO RETAIN COUNSEL.  CORRECT?

14          **MS. FONACIER:**  YES, YOUR HONOR.

15          **THE COURT:**  AND WHO IS REPRESENTING MR.

16  HUFFMAN?

17          **MS. FONACIER:**  ROBERT BLANKENSHIP.

18          **THE COURT:**  OKAY.  AND MR. HUFFMAN HIMSELF

19  IS NOT A PARTY TO THIS LAWSUIT.  CORRECT?

20          **MS. FONACIER:**  HE IS NOT, YOUR HONOR.

21          **THE COURT:**  SO IT SEEMS TO ME, AGAIN, JUST

22  BASED UPON THE PLAINTIFF'S DESCRIPTION OF WHAT

23  HAPPENED, IS THAT -- AND I GUESS BY YOUR OWN

24  ADMISSION, IF YOU WILL -- THAT MR. HUFFMAN DID

25  SOMETHING THAT HE SHOULD NOT HAVE DONE.  DO YOU AGREE

1    WITH THAT?

2         MS. FONACIER:  YES, YOUR HONOR.  WELL, I

3    WILL HAVE SOME STIPULATION.  MMR HAS NOT PROVEN THAT

4    THESE MATERIALS ARE A TRADE SECRET OR CONFIDENTIAL.

5    THE INJUNCTION SAYS --

6         THE COURT:  BUT THAT'S -- WE KNOW THAT.

7    THAT'S GOING TO BE ADDRESSED ON THE MERITS.

8         MS. FONACIER:  SO OUR, YOU KNOW --

9         THE COURT:  BUT THAT'S NOT THE POINT.  THE

10   POINT IS:  WHEN WE HAVE ISSUES LIKE THIS, CASES

11   INVOLVING THEFT OF TRADE SECRETS AND THE LIKE -- AND

12   SO I'LL JUST -- SO I'LL STATE IT ON THE RECORD AND

13   PERHAPS STATE THE OBVIOUS FOR YOUR CLIENTS -- COURTS

14   DON'T MAKE A DECISION ON THE MERITS AT THE TIME OF

15   THE FILING OF THE LAWSUIT.

16         BUT WHAT COURTS DO IS PUT A HOLD ORDER

17   ON EVERYTHING:  *NOBODY DO ANYTHING.  NOBODY GO*

18   *ANYWHERE.  DON'T DO ANYTHING THAT COULD COMPROMISE*

19   *ONE PARTY'S INTEREST OR ANOTHER OR PREJUDICE ANOTHER*

20   *PARTY'S INTEREST*.  RIGHT?

21         SO LET'S JUST MAINTAIN KIND OF THE

22   STATUS QUO.  BUT IN THIS CASE IT WAS CLEAR TO ME AT

23   THE OUTSET -- AND I THINK IT WAS CLEAR TO THE

24   DEFENDANTS AS WELL BECAUSE YOU-ALL CERTAINLY HAD NO

25   OBJECTION.  I MEAN, AS I UNDERSTAND IT, FROM MY

1   RECOLLECTION, THIS WAS A MUTUALLY AGREED UPON

2   PRELIMINARY INJUNCTION.

3          **MS. FONACIER:**  YES, YOUR HONOR.

4          **THE COURT:**  SO YOUR CLIENTS HAD SOME

5   KNOWLEDGE OF THE NATURE OF THE LAWSUIT, THE DATA THAT

6   WAS ALLEGEDLY STOLEN, AND THE FACT THAT THAT DATA

7   COULD NOT BE RELIED ON IN ANY MANNER GOING FORWARD.

8             NOW, WHAT PLAINTIFFS HAVE ASSERTED IS

9   THAT -- NOT ONCE BUT TWICE NOW -- MR. HUFFMAN HAS

10  ADMITTED TO USING THAT DATA NOTWITHSTANDING THE ENTRY

11  OF THE PRELIMINARY INJUNCTION.  RIGHT?

12         **MS. FONACIER:**  YES, YOUR HONOR.

13         **THE COURT:**  SO THE QUESTION FOR ME IS:  WHAT

14  EFFORTS, IF ANY, DID YOUR CLIENTS MAKE TO INFORM --

15  NOT JUST THE MANAGEMENT TEAM, NOT JUST THE I.T. STAFF

16  BUT EVERY EMPLOYEE -- THAT *YOU CANNOT AND WILL NOT*

17  *USE THIS DATA.  IF YOU DO, YOU'RE VIOLATING A FEDERAL*

18  *COURT ORDER AND THERE ARE SEVERE RAMIFICATIONS FOR*

19  *SUCH*?

20            SO I GUESS WHAT I'M ASKING YOU -- AND

21  I -- WHY -- IT SEEMS TO ME THAT NOBODY TOOK MY ORDER

22  SERIOUSLY, AS I MENTIONED EARLIER.

23         **MS. FONACIER:**  NO, YOUR --

24         **THE COURT:**  BECAUSE IF IT WAS TAKEN

25  SERIOUSLY -- AND I'M NOT TRYING TO LECTURE YOU.

1  YOU'RE A GREAT LAWYER.  YOU KNOW HOW THIS WORKS.  IF

2  IT WAS TAKEN SERIOUSLY, HOLD ORDERS, EMAILS WOULD

3  HAVE GONE OUT, INSTRUCTIONS WOULD HAVE COME DOWN FROM

4  EITHER THE GENERAL COUNSEL, FROM THE TOP MANAGEMENT:

5  *DON'T DO ANYTHING.  DON'T USE THIS.  PUT IT ASIDE.*

6  *WE'RE SORTING IT OUT*.  BUT THAT WASN'T DONE HERE,

7  APPARENTLY.  AT LEAST IF IT WAS, IT DIDN'T REACH MR.

8  HUFFMAN.  RIGHT?

9         **MS. FONACIER:**  YOUR HONOR, WE WOULD LIKE TO

10  SAY WE HAVE ATTACHED THE DECLARATION OF MR. YATES WHO

11  TESTIFIED HE DID GO TO ALL THOSE PEOPLE.  AND THE

12  PLAINTIFFS HERE ACTUALLY ATTACHED THE DEPOSITION OF

13  MR. KASEY KRAFT, WHICH WAS TAKEN VERY SHORTLY AFTER

14  THE INJUNCTION WHEN EVERYONE'S MEMORIES WERE MUCH

15  BETTER.  AND HE TESTIFIED -- AND THIS IS ON PAGE 63

16  OF HIS DEPOSITION -- THAT JASON CAME AROUND TO NOT

17  JUST HIM BUT EVERYONE AND SAID, "IF YOU HAVE

18  ANYTHING, LET ME KNOW."

19         MR. KRAFT FURTHER TESTIFIED ON PAGE 69

20  THAT JASON -- WHEN HE DID TELL JASON "I DO HAVE

21  SOMETHING, HE SAID, 'DON'T ACCESS IT.  DON'T DO

22  ANYTHING WITH IT.  LEAVE IT THERE,'" WHICH WAS THE

23  TERMS OF THE INJUNCTION; DON'T DELETE IT, DON'T

24  ACCESS IT, DON'T DO ANYTHING.

25         **THE COURT:**  SO LET ME ASK YOU THIS NOW.  MR.

1   HUFFMAN IS STILL AN EMPLOYEE OF YOUR CLIENT.

2   CORRECT?

3            **MS. FONACIER:**  YES, YOUR HONOR.

4            **THE COURT:**  WHAT, IF ANYTHING, IS YOUR

5   CLIENT DOING ABOUT THIS, THAT -- THIS APPARENT

6   AFFIRMATIVE DECISION AT LEAST ON HIS PART TO

7   DISREGARD THE ORDER?

8            **MS. FONACIER:**  YOUR HONOR, THE --

9            **THE COURT:**  IS HE STILL WORKING EVERY DAY?

10           **MS. FONACIER:**  HE IS.  HE --

11           **THE COURT:**  HE'S NOT BEEN SUSPENDED?

12           **MS. FONACIER:**  HE HAS BEEN --

13           **THE COURT:**  HE'S NOT BEEN SANCTIONED.

14   RIGHT?  SO --

15           **MS. FONACIER:**  I DO HAVE SOME NEW

16   INFORMATION.  HE IS ON A REDUCED PAY THAN WHAT HE WAS

17   BEFORE.  HE ALSO HAS BEEN MOVED AND CHANGED ROLES SO

18   THAT HE NOW HAS A DIRECT SUPERVISOR THAT HE IS

19   REPORTING TO.  HE -- YOU KNOW, HE WAS, FOR LACK OF A

20   BETTER WORD, RIGHT, DEMOTED.  HE'S NO LONGER ON HIS

21   OWN.  HE IS GETTING SUPERVISION TO ENSURE THAT --

22   AND -- THAT WHAT HE'S DOING IS IN COMPLIANCE WITH

23   EVERYTHING THAT WE'RE DOING HERE.

24           **THE COURT:**  MS. FONACIER, YOU KNOW, I TAKE

25   NO PLEASURE IN SORT OF GETTING MY BACK UP ABOUT

1  THESE.  YOU KNOW, YOU'RE A FINE LAWYER.  YOUR

2  CO-COUNSEL MS. FIORE IS A FINE LAWYER.  AND SOMETIMES

3  I UNDERSTAND THAT LAWYERS ARE HIRED VERY OFTEN TO

4  KIND OF HELP THEIR CLIENTS GET OUT OF A PICKLE, SO TO

5  SPEAK.

6          AND THEY'RE IN A PICKLE RIGHT NOW, I'VE

7  GOT TO TELL YOU, BECAUSE, AGAIN, WHEN I ISSUE AN

8  ORDER -- WHEN ANY COURT ISSUES AN ORDER, THE

9  EXPECTATION IS THAT THE PARTIES WILL ABIDE BY IT

10 WITHOUT QUESTION.  THAT DIDN'T HAPPEN HERE.  THAT'S

11 THE SOURCE OF MY CONCERNS AND CERTAINLY THE SOURCE OF

12 THE PLAINTIFF'S CONCERNS.  HOW IT HAPPENED, WHY IT

13 HAPPENED IS FOR SOMEONE ELSE TO DEAL WITH AND FOR

14 THIS COURT TO DEAL WITH PERHAPS AT ANOTHER TIME.

15          SO THE FIRST THING I NEED TO KNOW,

16 THOUGH, IS:  WHAT ASSURANCES CAN YOU GIVE ME THAT THE

17 TERMS OF THE PRELIMINARY INJUNCTION WILL BE OBEYED?

18          **MS. FONACIER:**  YES, YOUR HONOR.

19          SO AS WE INDICATED IN OUR PLEADINGS, WE

20 HAVE BEEN SEARCHING FOR ESTIMATING TOOLS BECAUSE WE

21 DON'T WANT THIS TO HAPPEN AGAIN.  WE WERE UNAWARE --

22 WE ADMIT, WE WERE CAUGHT UNAWARE.  WE'RE TRYING --

23 AND SINCE THAT DEPOSITION, AS YOU CAN SEE, WE LISTED

24 THE STEPS WE HAVE TAKEN.  ON GOOD FRIDAY WE EXECUTED

25 A CONTRACT WITH ACCUBID.  WE BOUGHT TWO NEW LAPTOPS

1  THAT HAS NOTHING ELSE ON IT.  THE BIDS -- ALL BIDS

2  WILL BE ESTIMATED WITH THIS PROGRAM.

3             ON TOP OF THAT, WE'RE -- ISG IS GOING

4  TO, FOR LACK OF BETTER WORDS, GET RID OF ALL THE

5  OTHER LAPTOPS.  WE WILL WIPE THEM ONCE --

6        **THE COURT:**  WAIT.  LET ME STOP YOU RIGHT

7  THERE.  AND I COMMEND YOUR CLIENT FOR WANTING TO

8  START ANEW.  THAT'S GREAT.

9             BUT I NEED TO KNOW FROM MR. KEE IF THE

10  DATA ON THAT COULD BE EVIDENCE AT SOME POINT EITHER

11  IN THE MERITS -- WHEN WE REACH THE MERITS PHASE OF

12  THIS LITIGATION OR IN SOME CATEGORY OF DAMAGES.  SO

13  HAVE YOU-ALL DISCUSSED THAT?

14        **MS. FONACIER:**  NOT YET.  AND I WILL -- SORRY

15  IF MY WORDS WERE IMPRECISE.  WE ARE WILLING TO OBTAIN

16  ALL NEW LAPTOPS.  AND UPON THE END OF THIS CASE OR

17  UPON APPROVAL OF OTHER PARTY, WILLING TO WIPE THE OLD

18  ONES, WHATEVER NEEDS TO HAPPEN.  ALL NEW EMAILS --

19        **THE COURT:**  SO IN OTHER WORDS, YOU'RE GOING

20  TO PRESERVE WHATEVER EVIDENCE THERE MAY BE?

21        **MS. FONACIER:**  OF COURSE, YOUR HONOR.

22        **THE COURT:**  VERY GOOD.  THANK YOU.

23        **MS. FONACIER:**  AND OUR ENTIRE ONEDRIVE WAS

24  IMAGED PRIOR, SO ALL THAT HAS ALREADY BEEN DONE.

25        **THE COURT:**  AND LET ME STOP YOU RIGHT THERE.

1          **MS. FONACIER:**  SURE.

2          **THE COURT:**  MR. KEE, YOU DON'T HAVE A

3    DISPUTE WITH THAT.  RIGHT?  YOU DON'T HAVE ANY -- YOU

4    CAN USE THIS FORWARD MICROPHONE RIGHT HERE.  OKAY?

5          **MR. KEE:**  SURE.

6                WE HAVE NO DISPUTE WITH THEM BUYING ALL

7    NEW LAPTOPS.  OUR ISSUE IS:  THIS INFORMATION IS

8    SPREAD THROUGHOUT THE COMPANY, SO I MEAN, IT'S LIKE A

9    CANCER.

10         **THE COURT:**  OKAY.  SO LET'S SEE.  MAYBE IS

11   THERE A WAY TO KIND OF PUT THE GENIE BACK IN THE

12   BOTTLE?

13         **MS. FONACIER:**  SURE.  I HAVE SOME ADDITIONAL

14   THINGS WE'RE WILLING TO DO.  WE WOULD LIKE -- WE'RE

15   GOING TO START WITH ALL NEW EMAILS.  OLD EMAILS WHERE

16   SOME OF THESE THINGS WERE EMAILED, NO LONGER

17   ACCESSIBLE.  THE ONEDRIVE ITSELF -- THIS IS A SHARED

18   CLOUD, FOR LACK OF A BETTER TERM -- WILL -- IT WILL

19   TAKE A LITTLE TIME, MAYBE 30 DAYS.  BUT WE THINK WE

20   CAN SHUT IT DOWN COMPLETELY AND ACCESS BE GIVEN TO MY

21   OFFICE OR TO SOMEONE ELSE THE COURT MAY CHOOSE.  WE

22   CAN'T DELETE ALL THINGS, AS YOU KNOW.  WE'RE

23   CONSTRUCTION CONTRACTS; YOU KNOW, HR MAY NEED TO BE

24   ACCESSED, BUT IT CAN GO THROUGH A PROCESS, AS

25   DETERMINED BY THE COURT IF NECESSARY, ON HOW THOSE

1   THINGS WILL BE ACCESSED.  AND WE WOULD MAKE SURE THAT

2   IT'S ONLY, YOU KNOW, AN OWNER NEEDS A PROOF OF, YOU

3   KNOW, THAT SOMEBODY SHOWED UP TO WORK THAT DAY TYPE

4   OF THING.

5           WE'RE ALSO LOOKING -- THE ONLY THING

6   THAT WOULD BE TRANSFERRED:  THIRD-PARTY PROGRAMS.

7   SO, FOR EXAMPLE, THE VIEWPOINT IS THE ACCOUNTING

8   SOFTWARE PROGRAM.  THAT WOULD BE AN ITEM THAT WE

9   WOULD CONTINUE USING, AND IT CAN ONLY -- IT'S

10  ACCOUNTING SOFTWARE.  IT CAN ONLY INCLUDE OUR OWN

11  ACCOUNTING.  AND WE WOULD UPDATE THE COURT WHEN EACH

12  ITEM OCCURS AND THE TRANSITION IS COMPLETE.  AND, YOU

13  KNOW, WE THINK THAT THESE -- THERE IS NO RISK OF THE

14  MATERIALS BEING USED.  THEY WERE ESTIMATING

15  MATERIALS.  WE HAVE A WHOLE NEW PROGRAM FOR

16  ESTIMATING MATERIALS.

17          AND ON TOP OF THAT, WE WILL, AS I SAID,

18  SHUT DOWN EVERYTHING:  EMAIL, ONEDRIVE, ACCESS, NEW

19  LAPTOPS, YOUR HONOR, BECAUSE -- TO SHOW WE ARE

20  SERIOUS THAT MAYBE -- WE DON'T WANT ANYTHING ELSE TO

21  SLIP THROUGH THE CRACKS AGAIN.  CLEARLY THIS

22  OCCURRED.  WE DON'T WANT IT TO HAPPEN AGAIN.

23          **THE COURT:**  VERY WELL.  THANK YOU.

24          MR. KEE, YOUR RESPONSE?

25      **MR. KEE:**  SURE.

1            I TAKE GREAT ISSUE WITH THIS IDEA THAT

2  THINGS SLIPPED THROUGH THE CRACKS.  MR. HUFFMAN

3  WAS -- HE WAS NOT A LONE WOLF.  HE WASN'T GOING

4  ROGUE.

5            **THE COURT:**  NOW, WHY DO YOU SAY THAT?

6            **MR. KEE:**  THE EMAIL CORRESPONDENCE SHOWS

7  HE'S IN DIRECT COMMUNICATION WITH MR. YATES AND MR.

8  BREELAND AND MR. DARDENNE, THE CEO, THE PRESIDENT,

9  AND THE COO.  THAT'S WHO HE COMMUNICATED WITH.

10           **THE COURT:**  AFTER THE ISSUANCE OF THE

11  INJUNCTION?

12           **MR. KEE:**  AFTER THE -- YES.  AND WHAT THEY

13  DID JUST A WEEK BEFORE THE TRO, MR. HUFFMAN HAS

14  COLLECTED -- AND IT WAS SENT BY MR. DARDENNE AND

15  OTHER PEOPLE AT ISG -- MMR'S ESTIMATING TOOLS.  SENT

16  TO HIM.  HE'S NOT AN ESTIMATOR.  HE HAS NO IDEA HOW

17  TO ESTIMATE.  HE DOESN'T KNOW WHAT'S IMPORTANT ABOUT

18  IT.

19           BUT HIS INSTRUCTIONS WERE:  *CAN YOU*

20  *MAKE THESE JUST LOOK DIFFERENT?  MAKE THEM LOOK*

21  *DIFFERENT, BUT WE NEED THEM TO OPERATE IN THE EXACT*

22  *SAME MANNER*.  BECAUSE THAT'S ALL -- ALL OF THESE

23  GUYS, THEY ALL WORKED AT MMR.  THEY DIDN'T WORK

24  ANYWHERE ELSE.  SO WHAT THEY GREW UP ON, WHAT THEY

25  KNEW HOW TO USE WERE MMR'S TOOLS.

1          SO THEY ASKED:  *CAN YOU JUST MAKE THEM*

2    *LOOK DIFFERENT BUT FUNCTION THE SAME?*  AND THAT'S

3    WHAT MR. HUFFMAN IS GOOD AT.  HE CAN --

4          **THE COURT:**  LET ME ASK -- MS. FONACIER, DO

5    YOU DISPUTE THAT?  YOU CAN USE THIS MICROPHONE.  YOU

6    MAY REMAIN -- NO, THE MICROPHONE CLOSEST TO MY

7    COURTROOM DEPUTY.  THE REASON FOR THAT, IT'S EASIER

8    FOR MY COURT REPORTER.  NOT THAT SHE HAS ANY HEARING

9    DIFFICULTIES, BUT STILL.

10         **MS. FONACIER:**  YES, YOUR HONOR.  WE DO

11   DISPUTE THAT.  FIRST OF ALL, I'M GOING TO SAY BASED

12   ON THEIR PLEADINGS -- I'M NOT EVEN SURE, WHEN YOU SAY

13   "MMR ESTIMATING TOOLS," IF YOU'RE REFERRING TO --

14         **THE COURT:**  YOU CAN ADDRESS THE COURT.  YOU

15   DON'T HAVE TO ADDRESS YOUR OPPONENT.

16         **MS. FONACIER:**  GREEN SHEETS, IF HE'S

17   REFERRING TO THE ACTUAL GREEN SHEETS, WHICH IS WHAT

18   MMR CALLED THEM, OR THE LABOR AND MATERIAL SHEETS

19   THAT MR. HUFFMAN MADE, BECAUSE IN HIS PLEADINGS HE

20   CALLS THE NEW DOCUMENTS SAME AS THE OLD DOCUMENTS.

21   IT'S CONFUSING.

22         HOWEVER, WE DISPUTE THAT ANYONE OTHER

23   THAN MR. HUFFMAN WAS AWARE THAT HE WAS USING THIS.

24   IT'S IN -- WHAT HE'S -- THEY'RE TALKING ABOUT, IT'S

25   IN THE CODE.  AND REALLY MR. HUFFMAN IS THE ONLY ONE

1  WHO UNDERSTANDS THE UNDERLYING FORMULAS AND CODE THAT

2  HE'S REFERENCING.

3          **THE COURT:**  BUT DO YOU DISPUTE THAT THERE

4  WERE COMMUNICATIONS -- EMAIL COMMUNICATIONS BETWEEN

5  MR. HUFFMAN AND OTHER OFFICIALS -- I'LL PUT IT THAT

6  WAY; MANAGERS AT YOUR CLIENT'S COMPANY -- ABOUT THE

7  USE OF THIS SOFTWARE AND THIS INFORMATION

8  POST-ISSUANCE OF THE PRELIMINARY INJUNCTION?

9          **MS. FONACIER:**  I DO.  HOW I UNDERSTAND IT

10  IS:  AT THE TIME, THESE -- THAT THIS WAS PART OF THE

11  INJUNCTION, THESE SPREADSHEETS WERE UNDERSTOOD TO BE

12  INDUSTRY-WIDE STANDARD.  AND I DON'T THINK THERE IS

13  ANY DISAGREEMENT -- THERE IS PLENTY OF TESTIMONY

14  ATTACHED IN THE DEPOSITIONS -- THAT MR. HUFFMAN WAS

15  ASKED:  "HEY, THESE ARE THE TYPES OF THINGS THAT --

16  THIS ESTIMATING SHEET, THE LABOR AND MATERIAL, THAT

17  TOP SHEET THAT OTHER PEOPLE USE, THIS IS WHAT WE HAVE

18  BEEN USING," WHICH MR. YATES ADMITTED WAS BASED ON

19  THE MMR GREEN SHEETS.  AND WE WANT TO HAVE THE SAME

20  KIND OF FUNCTIONALITY, BECAUSE IN TRUTH --

21          **THE COURT:**  BUT WHY DIDN'T HE GO TO SOMEONE

22  ELSE?  WHY DID HE HAVE TO GO BACK TO MR. HUFFMAN WHO

23  HAD AN INTIMATE KNOWLEDGE OF EVERYTHING THAT'S GOING

24  ON AT MMR?  WHY DIDN'T THERE -- IF IT'S SO WIDESPREAD

25  AROUND THE INDUSTRY, WHY DIDN'T THEY GO TO A THIRD-

1  PARTY VENDOR AND SAY *WELL, WE CAN PROVIDE THIS.  WE*

2  *CAN PROVIDE -- THERE'S ANOTHER EXAMPLE WE CAN*

3  *PROVIDE*?  WHY DID THEY HAVE TO CONTINUE TO GO BACK TO

4  MR. HUFFMAN FOR THAT?

5          **MS. FONACIER:**  WELL --

6          **THE COURT:**  BECAUSE UNDERSTAND -- HUMAN

7  NATURE IS GOING TO SAY *WELL, I CAN TELL YOU WHAT I'M*

8  *ACCUSTOMED TO.  I'M GOING TO TELL YOU WHAT I DID*

9  *BEFORE*.  AND THAT'S PRECISELY THE ISSUES THAT ARE AT

10  PLAY IN THIS LITIGATION; THAT HE WAS RELYING ON THE

11  SAME INFORMATION HE HAD DEVELOPED OVER THE COURSE OF

12  TIME THAT HE WAS WORKING FOR MMR.  HOW COULD HE NOT

13  HAVE SAID *WELL, INDEPENDENTLY I SUGGEST WE DO THIS,*

14  *THIS AND THIS*?  I'M NOT SURE THAT MAKES SENSE TO ME.

15          **MS. FONACIER:**  SURE, YOUR HONOR.

16          WELL, PART OF I GUESS THE UNDERLYING

17  FACTS THAT HELP MAKE SENSE IS THAT MMR WAS AWARE THAT

18  MR. YATES WAS USING THOSE MATERIALS PRIOR TO THIS

19  TIME.  MR. YATES WORKED AT MMR AND IN THE OPEN WAS

20  USING THOSE MATERIALS FOR ISG.

21          WHEN HE LEFT MMR, THERE WAS -- NO ONE

22  ASKED HIM TO STOP.  HE WAS NEVER ON NOTICE THAT MMR

23  REALLY HAD AN ISSUE WITH IT.  AND WHEN WE GOT NOTICE,

24  WHICH WAS THE LITIGATION, WE WERE ALREADY IN THE

25  PROCESS OF STOPPING.

1   **THE COURT:**  SO WAIT.  MR. YATES -- AND I

2   WANT TO MAKE SURE.  I DON'T WANT TO MISCHARACTERIZE

3   YOUR ARGUMENT.  YOU' RE ARGUING TO ME THAT MR. YATES

4   WAS NOT AWARE AFTER HE TRANSITIONED OVER TO ISG THAT

5   HE COULD NOT -- HE COULD NOT ANY LONGER USE MMR'S

6   PROPRIETARY SOFTWARE?  DID IT REALLY HAVE TO TAKE MMR

7   TO SAY *OH, YOU CAN'T USE OUR SOFTWARE THAT YOU HAD*

8   *BEEN USING WHEN YOU WERE EMPLOYED WITH US*?  WAS

9   THERE -- DID MMR -- ARE YOU SUGGESTING THAT MMR

10  SHOULD HAVE PUT HIM ON NOTICE OR MADE A FORMAL

11  REQUEST:  *DON'T USE OUR PROPERTY*?

12  **MS. FONACIER:**  WELL, LET -- I'LL BE A LITTLE

13  CLEARER.  MR. YATES WAS USING THOSE ESTIMATING SHEETS

14  FOR ISG WITH THE KNOWLEDGE OF MMR.

15  **THE COURT:**  IS THAT --

16  **MR. KEE:**  THAT'S FALSE.

17  **THE COURT:**  MR. KEE, IS THAT SUPPORTED BY

18  ANY EVIDENCE THAT YOU HAVE?

19  **MR. KEE:**  THAT'S INACCURATE, YOUR HONOR.

20  **MS. FONACIER:**  THAT'S WHAT MR. YATES HAS

21  TESTIFIED TO.  AND WE HAVE NEVER HAD -- UNTIL THIS

22  TIME, HONESTLY, WE'VE NEVER HAD ANYONE DISPUTE IT.

23  AND THAT WAS THE UNDERSTANDING, WHICH IS WHY -- I

24  MEAN, YOU CAN SEE NOW WHY PEOPLE WERE NOT AS

25  CONCERNED WHEN IT ORIGINALLY HAPPENED, BECAUSE THESE

1  WERE SUPPOSED TO BE PUBLIC AVAILABLE NECA RATES.

2                 WE HAVE, AGAIN, THREE PEOPLE TESTIFYING

3  WHO WERE USING AND BUILDING THE SHEETS:  *HEY, GUYS,*

4  *THESE ARE JUST RATES THAT YOU'RE GETTING FROM A*

5  *PLATFORM THAT YOU PAY A COUPLE HUNDRED DOLLARS FOR.*

6  *WE WENT AND PAID FOR THOSE RATES AND WE PUT THEM IN.*

7                 MR. HUFFMAN HIMSELF IN HIS DEPOSITION,

8  I THINK, WAS ASKED:  "HEY, YOU DIDN'T THINK THIS WAS

9  A BIG DEAL?"

10                 AND HE SAID, "WELL, NO.  IT'S JUST A

11  VLOOKUP, WHICH ANYBODY CAN DO WITH THESE PUBLIC

12  AVAILABLE RATES."

13                 AND HE WAS SPECIFICALLY ASKED:  "WELL,

14  HOW DO YOU KNOW THAT?"

15                 AND HE SAID, "I WAS TRAINED AT MMR THAT

16  THE INDUSTRY RATES IS THE BASIS.  IT'S WHAT WE USE.

17  WE DON'T DIFFER FROM THEM, SO I -- I DIDN'T THINK

18  THERE WAS ANYTHING TO BE CONCERNED ABOUT."

19                 SO I JUST -- I DON'T -- I'M NOT

20  DISPUTING THAT THEY WERE USED.  I JUST WANT TO GIVE

21  YOU A FRAME OF REFERENCE.

22                 A PERSON WHO HE BELIEVED HE MORE OR

23  LESS HAD THE BLESSING OF MMR.  CORPORATE COUNSEL WE

24  BELIEVE KNEW.  MANAGEMENT KNEW, STOCKHOLDERS KNEW.

25  PEOPLE DISCUSSED THIS AT LUNCH WITH OTHER MMR

1   STOCKHOLDERS, OTHER EMPLOYEES.  IT WASN'T A SECRET,

2   MEANING, YOU KNOW, ONCE WE LEFT, THEY -- I THINK MR.

3   YATES THOUGHT, YOU KNOW, *I WANT TO BUILD MY OWN*

4   *STUFF.  I DON'T WANT TO USE THAT ANYMORE.  MAYBE THEY*

5   *DON'T CARE*.  AND THAT'S WHAT WE HIRED MR. HUFFMAN --

6   BECAUSE, TO BE HONEST, THE OTHER GUYS DIDN'T HAVE THE

7   TECHNOLOGICAL CAPABILITIES TO DO IT.

8           MR. HUFFMAN CAME AND SAID, "YEAH, I

9   KNOW HOW TO USE EXCEL.  I KNOW HOW TO BUILD THIS

10  STUFF.  I'LL DO IT."  AND WE DIDN'T -- BECAUSE OF THE

11  PREVIOUS ALLOWANCES AND BECAUSE OF THE PUBLICLY

12  AVAILABLE DATA, THEY WERE NOT CONCERNED UNTIL THE

13  LITIGATION.  WHETHER THAT'S REASONABLE OR NOT, NO,

14  YOUR HONOR, BUT THERE WAS AT LEAST SOME --

15          **THE COURT:**  UNDERSTOOD.

16          **MS. FONACIER:**  -- SEMBLANCE OF A REASON.

17          **THE COURT:**  ALL RIGHT.  MR. KEE?

18          **MR. KEE:**  THERE IS A LOT THERE THAT'S NOT

19  SUPPORTED BY ANY EVIDENCE.  AND MR. HUFFMAN DID NOT

20  TESTIFY ABOUT WHAT SHE JUST SAID ABOUT RATES.  HE WAS

21  NOT AN ESTIMATOR.  HE DID NOT KNOW WHERE THOSE RATES

22  CAME FROM.  WHEN PRESSED, HE SAID, "I DON'T KNOW HOW

23  MMR CAME UP WITH THOSE RATES.  I AM NOT IN

24  ESTIMATING."

25          AND CAN I JUST SHOW YOU AN EMAIL?

1              **THE COURT:** YES.

2              **MR. KEE:** SHE'S SAYING THINGS WERE OUT IN

3  THE OPEN.  DO YOU MIND PULLING FROM MY COMPUTER,

4  PLEASE?

5              AND, YOUR HONOR, I WAS GOING TO GO

6  THROUGH THIS JUST TO SHOW WHY THE EXECUTIVE TEAM AT

7  ISG CAN'T BE TRUSTED WITH WHAT THEY ARE SAYING AND

8  CAN'T BE TRUSTED, HONESTLY, WITH COMPLYING ON THEIR

9  OWN WITH YOUR COURT'S ORDER.  AND THAT'S WHY WE'VE

10 REQUESTED A SPECIAL MASTER BE IN PLACE TO -- THEY

11 NEED SOMEONE LOOKING OVER THEIR SHOULDER.  THEY HAVE

12 TO HAVE THAT.

13             WE -- IT'S BEEN TWO YEARS, AND THEY'RE

14 STILL COMING IN HERE AND SAYING THAT THINGS WERE DONE

15 IN THE OPEN AND MMR DOESN'T CARE.  THAT IS LUDICROUS.

16 WE HAVE SPENT -- I DON'T EVEN WANT TO TELL YOU WHAT

17 WE HAVE GONE THROUGH TO GET TO THIS POINT.  BUT THIS

18 IS SERIOUS.  AND MMR TAKES THIS STUFF SERIOUSLY.

19             **THE COURT:** OKAY.  SO ARE WE -- WHAT'S GOING

20 ON, MS. BREDA?

21             **MS. FONACIER:** IF YOU ALLOW ME JUST -- I'M

22 GOING TO GIVE YOU A CITE, YOUR HONOR, WHILE WE'RE

23 WAITING.

24             **THE COURT:** SURE.

25             **MS. FONACIER:** IN MR. HUFFMAN'S FIRST DEPO,

1  PAGE 76, HE SPECIFICALLY TESTIFIED THAT HE WAS

2  TRAINED ON THE GREEN SHEETS, THAT HE BELIEVED THEY

3  ARE VERY COMMON, AND THAT HE WERE TAUGHT THAT THE

4  NECA RATES WERE THE INDUSTRY STANDARDS USED BY MMR

5  AND THAT THEY DID NOT DEVIATE FROM THAT RATE, JUST SO

6  YOU HAVE A CITE.  SO THAT IS, JUST SO YOU KNOW, WHERE

7  THAT INFORMATION IS COMING FROM.

8          **THE COURT:**  ALL RIGHT.  WELL, I UNDERSTAND.

9  THANK YOU FOR THE CLARIFICATION.

10         **MR. KEE:**  AND MR. HUFFMAN IS NOT AN

11 ESTIMATOR.  HE NEVER HAD AN ESTIMATING FUNCTION --

12         **THE COURT:**  UNDERSTOOD.

13         **MR. KEE:**  -- AT MMR.  HE WAS A COMPLETELY

14 DIFFERENT SECTION.

15         **THE COURT:**  VERY WELL.

16         **MR. KEE:**  HERE'S MR. YATES IN FEBRUARY OF

17 2021 WHILE HE'S STILL AN MMR EMPLOYEE:  ACCESS TO

18 MMR'S EMAIL ACCOUNT.  THIS IS AN MMR ESTIMATING TOOL.

19 THIS IS ONE OF THE OVERHEAD TOP SHEETS:  SENDING IT

20 FROM HIS GMAIL TO THE PRESIDENT OF ISG AT THE TIME,

21 SHAWN BREELAND.

22              SO TO SAY THAT THINGS ARE JUST OUT IN

23 THE OPEN AND MR. YATES IS TELLING EVERYONE WHO WILL

24 LISTEN THAT HE IS USING MMR'S INFORMATION TO BUILD A

25 COMPETITOR IS JUST NOT SUPPORTED BY ANY FACTS.  THEY

1 HAVE NOT -- THEY HIRED A LOT OF PEOPLE FROM MMR.  NO

2 ONE HAS SUPPORTED -- NO ONE HAS SUBMITTED A

3 DECLARATION AND SAID *OH, YES, I HEARD MR. YATES*

4 *INFORM -- TELL SOMEONE AT MMR THAT HE WAS TAKING THIS*

5 *INFORMATION WITH HIM.*

6           AND, IN FACT, WE'VE QUESTIONED -- THERE

7 IS A SHAREHOLDER WHO WAS IN SOME WAY INVOLVED WITH

8 THE CREATION OF THIS ISG.  HIS NAME IS KEVIN

9 ALEXANDER.  HE POINTED MISTER -- AND MR. YATES

10 POINTED TO HIM IN HIS DEPOSITION, SAYING "OH, WELL, I

11 TOLD KEVIN ALEXANDER."

12           WE'VE INTERVIEWED KEVIN ALEXANDER, AND

13 HE DENIES THAT, SO THAT NEVER HAPPENED:  "100

14 PERCENT, I DIDN'T GIVE AUTHORITY.  I WASN'T TOLD.  I

15 DIDN'T -- I WAS NOT IN ANY WAY INVOLVED WITH

16 AUTHORIZING MR. YATES TO USE OR BRING ANY INFORMATION

17 WITH HIM TO ISG."

18           AND HE'S UNDER A NONDISCLOSURE

19 DISAGREEMENT.  WHEN WE TALK ABOUT NOTICE, PUTTING ON

20 NOTICE, HE IS UNDER A CONFIDENTIALITY AGREEMENT WITH

21 MMR THAT STATES HE MUST KEEP ALL OF THIS INFORMATION

22 CONFIDENTIAL, IT'S MMR'S PROPERTY, AND HE'S NOT TO

23 TAKE IT WITH HIM.

24           **THE COURT:**  OKAY.  ANY RESPONSE?

25           **MS. FONACIER:**  YES.  SO I DO NOT BELIEVE MR.

1  ALEXANDER WAS THE PERSON THAT MR. YATES TALKED TO.  I
2  HAVE SOME OTHER NAMES.  WE HAVE NOT YET TAKEN THOSE
3  PERSONS' DEPOSITIONS OR GOTTEN THEIR DECLARATIONS.
4  I'M HAPPY TO SUBMIT THEM TO THE COURT AT A LATER
5  DATE.
6           IN ADDITION, MMR DID HAVE EVERYONE SIGN
7  A -- KIND OF A BLANKET CONFIDENTIALITY AGREEMENT.
8  HOWEVER, IN THE 20 YEARS THAT MR. YATES WORKED FOR
9  MMR, HE DID NOT HAVE ONE BIT OF TRAINING ON WHAT'S
10  CONFIDENTIAL.  PEOPLE USE THUMB DRIVES.  THEY HAD
11  THEM IN BOWL -- WE GOT ONE TESTIMONY THEY HAD THEM IN
12  A BOWL.
13       **THE COURT:**  WELL, I GUESS MY QUESTION IS --
14  SO THAT ARGUMENT, MS. FONACIER, SUGGESTS THAT IT WAS
15  THE PLAINTIFF'S FAULT BECAUSE THEY DIDN'T PROPERLY
16  TRAIN MR. YATES ON WHAT IS CONFIDENTIAL OR
17  PROPRIETARY INFORMATION.
18       **MS. FONACIER:**  IT IS NOT THEIR FAULT.
19  HOWEVER, THE STANDARD UNDER, I BELIEVE THE LANHAM
20  ACT, REQUIRES THAT A COMPANY BOTH TRAIN PROPERLY,
21  IDENTIFY TRADE AND CONFIDENTIAL INFORMATION, AND
22  CREATE A CULTURE WHERE SUCH THINGS ARE PROTECTED.
23           IF -- NO ONE WAS EVER GIVEN AN EXIT
24  INTERVIEW, NO ONE WAS EVER ASKED TO RETURN MATERIAL.
25  PEOPLE HAVE THUMB DRIVES IN CARS, IN BAGS, IN RANDOM

1 BOXES.  NO ONE --

2    **THE COURT:**  BUT NOT -- THAT MIGHT BE THE

3 CASE, BUT IT DOESN'T MEAN THAT THEY USE THAT

4 INFORMATION.  I MEAN, EVERYBODY HAS GOT A FEW THUMB

5 DRIVES THAT ARE, YOU KNOW, TWO, THREE, FOUR OR FIVE

6 YEARS OLD.  IT DOESN'T MEAN THAT YOU CAN COME BACK AT

7 SOME LATER TIME AND SAY *OH, LOOK, LET ME USE THIS OR*

8 *GIVE IT TO SOMEONE OR SELL IT TO SOMEONE,* GOD FORBID.

9 THAT DIDN'T HAPPEN HERE.

10    **MS. FONACIER:**  YOU'RE CORRECT, YOUR HONOR.

11 HOWEVER, THAT IS THE STANDARD UNDER THE CLAIMS THAT

12 THEY MADE AGAINST MR. YATES AND MMR; THAT THAT IS ONE

13 OF THE PRONGS THAT YOU ARE REQUIRED TO DO TO SEEK ANY

14 DAMAGES FOR THE USE OF THAT INFORMATION.

15    **THE COURT:**  WELL, YOU KNOW WHAT?  LET ME

16 GIVE -- I'LL GIVE YOU A VERY BRIEF OPPORTUNITY TO

17 REPLY TO THAT, BUT WE'RE NOT HERE, AGAIN, TO TAKE UP

18 THE MERITS.  BUT I APPRECIATE THE CONTEXT.  I DO.

19    **MR. KEE:**  SURE.  I MEAN, IT'S -- IF YOU

20 RECALL, YOUR HONOR, THE FIRST REASON WE GOT HERE WAS

21 BECAUSE THEY HIRED -- ISG HIRED AN EMPLOYEE, DAVID

22 HEROMAN.  AND WE HAVE OUR I.T. -- WE HAVE A WHOLE

23 SOFTWARE PROGRAM THAT IS GEARED TOWARDS STOPPING AND

24 ESSENTIALLY CATCHING ACTIVITIES THAT LOOK SUSPICIOUS.

25 WE HAD A WHOLE REPORT AND WE PROVIDED IT TO THE

1  COURT, AND IT WAS THE BASIS FOR THE TRO; THAT WE WERE

2  ABLE TO IDENTIFY HIM USING THUMB DRIVES AND TAKING

3  INFORMATION OFF OF OUR SYSTEM AND BRINGING IT WITH

4  HIM.

5           SO TO SAY THAT MMR DOESN'T TAKE STEPS

6  OR DOESN'T TAKE REASONABLE MEASURES TO PROTECT ITS

7  INFORMATION IS JUST FALSE.  WE HAVE AGREEMENTS WITH

8  THE PARTIES.  I MEAN, THEY KNOW -- MR. HUFFMAN

9  TESTIFIED ALL OF THIS IS CONFIDENTIAL AND PROTECTED

10 BY THE NONDISCLOSURE AGREEMENT.  AND WE HAVE SOFTWARE

11 TO CATCH THOSE ACTIVITIES THAT MIGHT BE SUSPICIOUS.

12 AND WE'VE SUED -- WE HAVE SUED EMPLOYEES THAT HAVE

13 DONE THIS AND WE'VE BEEN ABLE TO CATCH IN THE ACT.

14 THIS ISN'T THE FIRST TIME.

15      **THE COURT:**  WELL, COUNSEL, IT SEEMS TO ME

16 THAT IT IS UNDISPUTED AT LEAST THAT MR. HUFFMAN

17 RELIED ON INFORMATION THAT WAS PROHIBITED FROM USE

18 AFTER THE ENTRY OF THE PRELIMINARY INJUNCTION.

19           DO WE BOTH AGREE?  OR DO YOU BOTH

20 AGREE?

21      **MR. KEE:**  YES, YOUR HONOR.

22      **MS. FONACIER:**  YES, YOUR HONOR.

23      **THE COURT:**  SO THE NEXT QUESTION IS --

24 AGAIN, WITHOUT LITIGATING AT THIS POINT THE MERITS OF

25 THE CLAIMS AND DEFENSES IN THE CASE, THE QUESTION

1  BECOMES:  WELL, WHAT IS THE COURT TO DO AT THIS

2  POINT?  THE PLAINTIFF HAS REQUESTED A NUMBER OF

3  FACTORS, WHICH WE'LL DISCUSS IN JUST A MOMENT.  IN

4  FACT, LET'S TAKE THAT UP RIGHT NOW.

5            SO FIRST OF ALL -- AND I THINK WE'LL

6  COVER ALL OF THIS.  MS. FONACIER, YOU CAN -- YOU CAN

7  REMAIN -- GRAB YOUR NOTES, BUT --

8        **MS. FONACIER:**  I WAS JUST GRABBING THE LIST

9  SO THAT WE'RE ALL ON THE SAME PAGE HERE.

10       **THE COURT:**  YOU SHOULD HAVE -- IF YOU HAVE

11 TO BRING A BINDER, YOU CAN PROBABLY USE THE LIP OF

12 THE BENCH THERE.

13       **MS. FONACIER:**  I HAVE IT.  THANK YOU.

14       **THE COURT:**  OKAY, GREAT.

15            SO -- AND IF I OMIT ONE OF THE MANY

16 THINGS THAT YOU-ALL ARE REQUESTING, MR. KEE, I'M SURE

17 YOU'LL REMIND ME.

18            THE FIRST IS TO, ONCE AGAIN, REQUIRE

19 THAT ISG CEASE THE USE OF ALL PROGRAMS THAT COULD BE

20 WITHIN THE AMBIT OF THE LITIGATION HERE.

21            IS THAT CORRECT?

22       **MR. KEE:**  YES, YOUR HONOR.

23       **THE COURT:**  HAVE YOU IDENTIFIED ALL OF

24 THOSE -- ALL OF THAT INFORMATION IN A WAY THAT THE

25 DEFENDANTS, YOU KNOW, JUST TO BE FAIR TO THEM, FULLY

1  UNDERSTAND?

2       **MR. KEE:**  WE HAVE BEEN -- SO ANYTIME WE GET

3  FORENSICS THROUGH THE PROTOCOL, WE HAVE BEEN

4  PROVIDING REMEDIATION LISTS OF THINGS THAT NEED TO BE

5  DELETED.  AND THAT'S SINCE 2022.  SO THEY HAVE AN

6  EXTENSIVE LIST.  AND I BELIEVE JUST BY SUBJECT MATTER

7  THEY KNOW -- YOU KNOW, WHILE IT MAY NOT BE EVERY

8  SINGLE DOCUMENT, THEY KNOW, FOR INSTANCE, THE

9  ESTIMATING TOOLS.  THESE ARE ALL THINGS THAT NEED THE

10  DATABASES.

11       **THE COURT:**  MS. FONACIER, YOU DON'T DISPUTE

12  THAT?  YOU DON'T DISAGREE WITH THAT.  CORRECT?

13       **MS. FONACIER:**  WELL, I DISPUTE ITEMS ON THE

14  LIST.  HOWEVER, I DON'T DISPUTE HE HAS GIVEN ME A

15  LIST.

16       **MR. KEE:**  WELL, EVERY TIME WE'VE PROVIDED A

17  LIST, THE RESPONSE HAS BEEN "WE WILL REMEDIATE THOSE

18  DOCUMENTS."

19       **THE COURT:**  HOW MANY LISTS HAVE YOU

20  PROVIDED?

21       **MR. KEE:**  I THINK ABOUT -- YEAH, EIGHT TO

22  TEN I BELIEVE.  I DON'T KNOW IF THEY'VE BEEN DELETED.

23  THEY SAID THEY WOULD.  I DON'T KNOW IF THEY HAVE,

24  BECAUSE THERE IS OBVIOUSLY STILL --

25       **MS. FONACIER:**  WE HAVEN'T AT THIS POINT,

1   YOUR HONOR.  WE WERE KIND OF -- WE WERE UNDER THE

2   IMPRESSION -- AND I APOLOGIZE, P.J., IF THIS HAS BEEN

3   WRONG PROTOCOL -- THAT WE WOULD KIND OF GET TO THE

4   END, DELETE EVERYTHING AT ONCE BECAUSE -- RIGHT?

5   WE'RE TRYING ALSO NOT TO DISTURB THE EVIDENCE AND THE

6   METADATA ITSELF WHILE THE FORENSIC PROTOCOL WAS STILL

7   ONGOING.

8             SO WE HAVE THOSE LISTS.  AGAIN, I WILL

9   HAVE TO DOUBLE-CHECK.  AND I APOLOGIZE, BUT MY

10  CO-COUNSEL WAS KEEPING THAT LIST.  I NEED TO

11  DOUBLE -- GET THAT BACK FROM HER.

12        **THE COURT:**  IT'S OKAY.  THAT'S ALL RIGHT.

13        **MS. FONACIER:**  BUT I -- FOR THE -- I KNOW

14  FOR SEVERAL OF THEM WE DID AGREE TO REMEDIATE THE

15  WHOLE THING.  I THINK SOME OF THE LATER ONES WE

16  POSSIBLY DID NOT.  BUT AGAIN, I WOULD HAVE TO DOUBLE-

17  CHECK, YOUR HONOR.

18        **THE COURT:**  SO WHY DON'T WE DO THIS THEN --

19  JUST SO THAT THERE IS NO MISUNDERSTANDING, NO

20  AMBIGUITY ABOUT THE LIST, WHAT I'M GOING TO ASK YOU

21  TO DO, MR. KEE, IS FILE THOSE LISTS INTO THE RECORD

22  IN THIS CASE UNDER SEAL, OF COURSE.  ALL RIGHT?  AND,

23  OF COURSE, YOU'LL GO ON AND SERVE A COPY ON YOUR

24  OPPONENTS.  OKAY?

25        **MR. KEE:**  SURE.

1       **THE COURT:**  I THINK THAT'S PROBABLY THE

2   EASIEST WAY TO ENSURE THAT WE'RE ALL ON THE SAME

3   PAGE.

4              DO WE AGREE WITH THAT?

5       **MS. FONACIER:**  YES, YOUR HONOR.

6       **THE COURT:**  ALL RIGHT.  NEXT, MMR IS ASKING

7   ISG TO SUBMIT A REMEDIATION PROTOCOL FOR CLEANSING

8   ISG'S SYSTEM OF MMR'S INFORMATION.

9       **MR. KEE:**  SO RIGHT BEFORE THAT WE'RE ASKING

10  FOR SOME SIGNED ACKNOWLEDGEMENTS JUST FROM ALL THE

11  EMPLOYEES THAT THEY'VE ACTUALLY RECEIVED COPIES OF

12  THE PRELIMINARY INJUNCTION AND THEY ARE COMPLYING

13  WITH IT.

14      **THE COURT:**  SO TELL ME -- MR. KEE, MY

15  UNDERSTANDING IS THAT SOME OF -- WELL, LET ME ASK.

16  HAVE ALL OF THE EMPLOYEES BEEN INFORMED OF THIS

17  LITIGATION AND THE OBLIGATIONS OF ISG TO MAINTAIN

18  DATA?

19      **MS. FONACIER:**  YES.  I WILL SAY, WITH A

20  SLIGHT FOOTNOTE, WHICH WAS IN OUR PLEADING, WE'VE

21  TOLD ALL OFFICE STAFF, RIGHT?  THIS IS A CONSTRUCTION

22  COMPANY.  THERE IS FIELD GUYS, SO NOT ALL OF THEM

23  HAVE BEEN INFORMED.  BUT EVERYONE THAT'S IN AN OFFICE

24  WORKING WITH THESE TOOLS, HAVE ACCESS TO THE

25  ONEDRIVE, HAS BEEN --

1          **THE COURT:**  IS THAT SATISFACTORY, MR. KEE?

2          **MR. KEE:**  NO, YOUR HONOR, BECAUSE ALLEGEDLY

3    MR. YATES TOLD THEM ABOUT THIS INJUNCTION IN 2022,

4    AND NO ONE AT THE COMPANY FOLLOWED IT.  SO WE WOULD

5    LIKE SOMETHING IN WRITING.

6          **THE COURT:**  SO WHY SHOULD ALL -- WHY SHOULD

7    A LINE CONSTRUCTION WORKER HAVE TO --

8          **MR. KEE:**  AND THIS WAS MEANT -- THIS IS TO

9    THE CORPORATE STAFF, YOU KNOW, THE PEOPLE THAT HAVE

10   COMPUTERS AND EMAIL ACCOUNTS AND THAT ARE ACTUALLY

11   USING THE INFORMATION.  IT'S THOSE EMPLOYEES.

12          A FIELD WORKER INSTALLING THE CABLES

13   AND DOING THE CONSTRUCTION WORK, THEY DON'T NEED TO

14   SIGN THE ACKNOWLEDGMENT.

15          **THE COURT:**  SO HOW WOULD YOU DESCRIBE THE

16   CATEGORY OF EMPLOYEES THAT YOU BELIEVE OUGHT TO SIGN

17   AN ACKNOWLEDGMENT?

18          **MR. KEE:**  SURE.  THE EXECUTIVE TEAM, ALL

19   MANAGERS, ALL ESTIMATORS.  AND I THINK THAT WOULD

20   COVER ANYONE WITH ACCESS TO THE ISG ONEDRIVE.

21          **THE COURT:**  MS. FONACIER, DO YOU AGREE WITH

22   THAT?  YOU DON'T DISPUTE THAT?

23          **MS. FONACIER:**  WE DON'T HAVE ANY ISSUE WITH

24   THAT.

25          **THE COURT:**  SO WHY DON'T WE GO ON AND,

1 AGAIN, MR. KEE, SUBMIT TO YOUR OPPONENTS THE LIST OF

2 ALL PERSONS YOU BELIEVE SHOULD COME, AGAIN, WITHIN

3 THE AMBIT OF THE ORDER AND THE CERTIFICATION.  ALSO,

4 I WOULD ALSO LIKE INFORMATION ON HOW YOUR CLIENT WILL

5 IMPOSE THIS REQUIREMENT ON NEW EMPLOYEES.

6 　　　　　　　ARE THERE CONTRACTORS WHO WORK FOR ISG

7 WHO MIGHT BE -- WHO MAY HAVE ACCESS TO THIS

8 INFORMATION?

9 　　　　**MS. FONACIER:**  (MOVING HEAD UP AND DOWN.)

10 　　　　**THE COURT:**  SO ANYBODY WHO CAN COME WITH --

11 THAT CAN TOUCH THIS INFORMATION IN ANY WAY.  ALL

12 RIGHT?

13 　　　　　　　I WILL TELL YOU THAT I WOULD OTHERWISE

14 BE SATISFIED WITH A DECLARATION OR AN ACKNOWLEDGMENT

15 FROM CORPORATE COUNSEL, CEO, CFO, WHATEVER.  BUT I

16 THINK IN THIS CASE I WILL REQUIRE A CERTIFICATION

17 FROM EVERY PERSON WHO WOULD HAVE AN OPPORTUNITY TO

18 TOUCH OR USE THIS INFORMATION.  OKAY?

19 　　　　**MS. FONACIER:**  YES, YOUR HONOR.

20 　　　　**THE COURT:**  SO LET'S MOVE ON NOW TO THE

21 REMEDIATION PROTOCOL.

22 　　　　　　　WHAT EXACTLY, MR. KEE, ARE YOU ASKING

23 THE COURT TO REQUIRE -- TO REQUIRE OF THE DEFENDANTS

24 HERE?

25 　　　　**MR. KEE:**  SURE.  SO REALLY WHAT WE THINK IS

1   ABSOLUTELY NECESSARY -- AND THIS HAS BEEN DONE IN

2   OTHER CASES I'VE PERSONALLY WORKED ON WHERE THERE HAS

3   BEEN CONTEMPT ISSUES OF THIS NATURE -- IS JUST THE

4   APPOINTMENT OF A SPECIAL MASTER, SOME THIRD PARTY.

5          THE COURT:  SO LET'S TALK ABOUT THAT.

6              WHAT'S THE DEFENSE'S POSITION ON THE

7   APPOINTMENT OF A SPECIAL MASTER?

8          MS. FONACIER:  WELL, WE ALREADY HAVE A

9   FORENSIC PROTOCOL IN PLACE, YOUR HONOR, THAT IS --

10  DOES ALMOST EXACTLY WHAT THEY'RE REQUESTING.  AND WE

11  WILL HAVE SEPARATION FROM THAT ONEDRIVE AND THE

12  EMAILS AND LAPTOPS WHERE ALL THOSE MATTERS ARE GOING

13  TO BE SEGREGATED VERY SHORTLY.  YOU KNOW, WE HAVE

14  SPENT A QUARTER OF A MILLION DOLLARS TRYING -- YOU

15  KNOW, COMPLYING WITH THE FORENSIC ORDER, PROVIDING

16  THIS INFORMATION.  AND HONESTLY, THEY'RE JUST A SMALL

17  COMPANY.  THESE EXPENSES ARE VERY HARD TO BEAR.

18              AND SO COULD THERE BE A SPECIAL MASTER

19  WHO INSPECTS THE NEW SYSTEM ONCE WE HAVE IT SET UP TO

20  JUST ENSURE THAT NOTHING, FOR LACK OF A BETTER WORD,

21  MIGRATED THERE THAT'S NOT SUPPOSED TO AND IT, YOU

22  KNOW -- IT'S A CLEAN BREAK.

23          THE COURT:  I UNDERSTAND THAT, BUT A COUPLE

24  OF THINGS.  ONE, PLAINTIFFS ASSERT THAT THE VALUE OF

25  THE COMPANY HAS RISEN EXPONENTIALLY SINCE AT LEAST

1  MR. HUFFMAN JOINED THE COMPANY.  I DON'T KNOW IF

2  THAT'S TRUE OR NOT.  I'M NOT HERE TO -- BUT I HAVE TO

3  TELL YOU THAT I'VE ALREADY GIVEN YOUR CLIENT ONE

4  OPPORTUNITY TO GET IT RIGHT.

5         YOU KNOW, HERE IN FEDERAL COURT -- AND

6  YOU KNOW THIS, AND I'M SURE YOU HAVE COUNSELED THEM

7  -- THERE IS NO SECOND BITE.  THERE IS NO SECOND

8  CHANCES.  IF YOU DON'T DO WHAT YOU WERE SUPPOSED TO

9  DO THE FIRST TIME AROUND -- AND I TRUST THAT THEY

10 HAVE OBVIOUSLY VERY GOOD COUNSEL THAT INFORMED THEM

11 OF THEIR OBLIGATIONS WITH GREAT CLARITY AND

12 PRECISION; AND YET STILL WE KNOW THAT THERE WERE

13 INSTANCES OF NONCOMPLIANCE.

14         SO I WILL TELL YOU RIGHT NOW THAT A

15 SPECIAL MASTER WILL BE APPOINTED.  AND I WILL ALSO

16 TELL YOU THAT THE SPECIAL MASTER -- OR YOUR CLIENT

17 WILL LIKELY BEAR THE FINANCIAL BURDEN OF THE COURT'S

18 APPOINTMENT OF THE SPECIAL MASTER.  I'VE GIVEN YOUR

19 CLIENT AN OPPORTUNITY TO GET IT RIGHT.  THEY HAVEN'T

20 DONE THAT.  SO I'M LEFT WITH NO OTHER CHOICE, BECAUSE

21 I CAN'T -- I'M VERY BUSY HERE.  I TELL FOLKS ALL THE

22 TIME; WE HAVE THE HIGHEST DOCKET IN THE -- ONE OF THE

23 HIGHEST DOCKETS OF CASES.  I CANNOT HAVE A SECOND

24 GO-ROUND HERE, ALLEGATIONS WHERE THERE WAS YET

25 ANOTHER FAILURE TO ABIDE BY THE COURT'S ORDER.  SO

1  FOR THAT REASON, I WILL APPOINT A SPECIAL MASTER.

2               NOW, WHO THAT SPECIAL MASTER WILL BE IS

3  SOMETHING THAT THE COURT -- I'M ALREADY -- I'VE

4  ALREADY UNDERTAKEN SOME EFFORTS TO TRY TO IDENTIFY A

5  SUITABLE SPECIAL MASTER.  IT MAY BE SOMEONE LOCALLY,

6  IT MAY BE SOMEONE NATIONALLY.  I DON'T KNOW.  I WILL,

7  HOWEVER, GIVE BOTH SIDES AN OPPORTUNITY TO WEIGH IN

8  ON THAT.

9               AS I TYPICALLY DO WITH SPECIAL MASTERS,

10 EACH SIDE WILL BE ENTITLED TO PROVIDE TWO PROPOSED

11 SPECIAL MASTERS.  I MAY OR MAY NOT CONDUCT A HEARING

12 ON IT.  I MAY OR MAY NOT TAKE TESTIMONY FROM THE

13 PROPOSED SPECIAL MASTERS.  BUT A SPECIAL MASTER WILL

14 BE APPOINTED IN THIS CASE.

15              NOW, I WOULD URGE YOU-ALL IN THE

16 MEANTIME TO MEET AND CONFER SO THAT YOU CAN AT LEAST

17 AGREE UPON THE SCOPE OF THE SPECIAL MASTER'S WORK AND

18 ANY PROTOCOLS THAT MIGHT BE REQUIRED FOR THE SPECIAL

19 MASTER TO DISCHARGE HIS OR HER DUTIES.

20              ANY QUESTIONS ABOUT THAT?

21      MR. KEE:  NO, YOUR HONOR.

22      MS. FONACIER:  NO, YOUR HONOR.

23      THE COURT:  NOW, MR. KEE, YOU'RE ALSO ASKING

24 FOR THE FILING OF -- PERIODIC FILING OF COMPLIANCE

25 REPORTS.

1    **MR. KEE:**  YES.  AND I THINK THAT WILL

2    BE PART OF THE PROTOCOL, IS JUST THE SPECIAL MASTER

3    UPDATING THE COURT AND THE PARTIES THE STATUS OF WHAT

4    HE'S FOUND AND WHEN HIS WORK IS COMPLETE.

5         **THE COURT:**  I THINK THAT'S RIGHT.  I WOULD

6    ENVISION A SPECIAL MASTER, OF COURSE, HAVING

7    UNFETTERED ACCESS TO BOTH YOUR CLIENTS' INFORMATION.

8    RIGHT?  AND I THINK WE CAN OBVIATE THE NEED FOR

9    PERIODIC REPORTS FROM THE DEFENDANTS THROUGH THE USE

10   OF A SPECIAL MASTER.

11            HOWEVER, I WILL SAY THAT IF THE SPECIAL

12   MASTER BELIEVES THAT THE DEFENSE SHOULD PROVIDE SOME

13   REPORTS OR ANY OTHER INFORMATION OBVIOUSLY FOR THE

14   SPECIAL MASTER TO DISCHARGE HIS OR HER DUTIES, THAT,

15   OF COURSE, WILL BE REQUIRED.

16        **MS. FONACIER:**  YES, YOUR HONOR.

17        **THE COURT:**  AND, OF COURSE, YOU'RE ALSO

18   REQUESTING ATTORNEYS' FEES AND COSTS RELATED TO

19   BRINGING THIS MOTION.

20            ANY OTHER ISSUES?  ANY OTHER REQUESTS?

21   ANY OTHER ITEMS THAT YOU'VE REQUESTED THAT I DIDN'T

22   DISCUSS?

23        **MR. KEE:**  YES.  SO WE HAVE ASKED FOR THERE

24   TO BE A PAUSE ON BIDDING ON NEW WORK, BECAUSE WHAT

25   WE'VE SEEN IS ALL OF THE BIDS FROM -- WELL, BEFORE

1  THE INJUNCTION WAS BID USING OUR ESTIMATING TOOLS,

2  SINCE THE INJUNCTION WAS BID USING THE REPLICAS.

3            AND SO WE'D ASK FOR A PAUSE UNTIL SOME

4  POINT WHERE THE COURT FEELS COMFORTABLE THAT THEY

5  AREN'T USING -- THEY CAN'T USE OUR STUFF ANYMORE.  I

6  MEAN, I THINK THAT'S ONLY --

7            **THE COURT:**  OKAY.  MS. FONACIER, WHAT IS

8  YOUR REACTION TO THAT?

9            **MS. FONACIER:**  I MEAN, THIS WILL LITERALLY

10 CRIPPLE THE COMPANY.  AND AS I EXPLAINED, WE HAVE, AS

11 OF TWO DAYS AGO, A WHOLE NEW ESTIMATING PROGRAM.

12 THERE IS NO RISK TO USE THOSE SHEETS.  WE HAVE -- AND

13 WE'RE PAYING FOR A SPECIAL PROGRAM.  THEY'RE GOING

14 TO -- AS INDICATED RIGHT NOW, THEY'RE ON -- BEING

15 DOWNLOADED ON LAPTOPS THAT DON'T HAVE ANYTHING ELSE

16 ON THEM.

17            WE WILL GET ANY CERTIFICATIONS THE

18 COURT REQUIRES TO SAY THAT EVERY BID IS GOING TO BE

19 RUN ONLY USING THAT PROGRAM, AND WE WILL PROVIDE

20 STATUS UPDATES TO THE COURT WHEN ALL OTHER MATTERS

21 ARE, YOU KNOW, COMPL- -- EMAILS, EVERYTHING IS CLOSED

22 OFF.

23            **THE COURT:**  AND THANK YOU FOR THAT

24 EXPLANATION.

25            SO ALL THE ESTIMATING TOOLS THAT YOU'RE

1  USING NOW HAVE SINCE BEEN PURCHASED OR ACQUIRED WELL

2  AFTER THE ISSUANCE OF THE INJUNCTION.  CORRECT?

3          **MS. FONACIER:**  YES, YOUR HONOR.

4          **THE COURT:**  ALL RIGHT.

5              MR. KEE, WERE YOU AWARE OF THAT?

6          **MR. KEE:**  SHE JUST -- SHE JUST SAID THEY

7  BOUGHT IT ON GOOD FRIDAY.  WE WERE NOT --

8          **THE COURT:**  I'M VERY RELUCTANT TO TELL THIS

9  COMPANY THAT THEY CAN'T -- I MEAN, THAT'S A LIFELINE

10 FOR THEM.  RIGHT?  THEY'VE GOT TO KEEP -- NOBODY

11 WANTS THIS COMPANY TO GO UNDER, NOBODY WANTS THIS

12 COMPANY TO HAVE TO DISCHARGE EMPLOYEES.

13         **MR. KEE:**  CORRECT.

14         **THE COURT:**  YOU KNOW, WE WANT THEM TO

15 GROW --

16         **MR. KEE:**  YEAH.

17         **THE COURT:**  -- LIKE EVERY OTHER --

18 ESPECIALLY A LOCALLY OWNED BUSINESS.  RIGHT?

19             SO AGAIN, I'M NOT WILLING TO GO AS FAR

20 AS TO SAY YOU CAN'T PUT ANY -- MAKE ANY OTHER BIDS OR

21 SUBMIT ANY OTHER BIDS.  YOU KNOW, THAT'S GOING A

22 LITTLE BIT TOO FAR.

23             WHAT I'M GOING TO ASK YOU TO DO IS -- I

24 DON'T KNOW IF YOU HAVE YOUR OWN I.T. PEOPLE WHO CAN

25 MEET AND CONFER; LAWYERS, YOU CAN MEET AND CONFER

1  JUST TO SATISFY YOURSELF THAT THE DEFENDANTS HAVE, IN

2  FACT, A NEW ESTIMATING TOOL AND ARE NOT GOING TO BE

3  RELYING ON MMR TECHNOLOGY, BECAUSE, AGAIN, I'M VERY

4  RELUCTANT TO HANDCUFF THEM IN THAT WAY.

5          **MR. KEE:**  CAN I JUST SUGGEST SOMETHING --

6          **THE COURT:**  SURE.

7          **MR. KEE:**  -- THAT JUST CAME TO ME?  AND WE

8  CAN KEEP THIS ON AN ATTORNEYS' EYES ONLY, BUT JUST SO

9  THE ATTORNEYS FEEL COMFORTABLE UNTIL THE SPECIAL

10 MASTER HAS COMPLETED HIS OR HER WORK.

11          SO PART OF THE DISCOVERY HAS BEEN

12 REQUESTING ESTIMATING TOOLS AND WHAT'S ACTUALLY BEING

13 USED.  IF THEY CAN PROVIDE TO US ANY NEW BIDS GOING

14 FORWARD, UNTIL THE SPECIAL MASTER GETS INVOLVED,

15 SHOWING -- I MEAN, BECAUSE THAT IS A DISCOVERY

16 REQUEST:  *WHAT ESTIMATING TOOLS ARE YOU USING TO* --

17 BECAUSE THAT'S A KEY --

18          **THE COURT:**  THAT'S KIND OF A THORNY ISSUE,

19 BECAUSE YOU -- YOU KNOW, SHE'S NOT GOING TO WANT TO

20 --

21          **MR. KEE:**  AND THAT'S WHY WE'RE SAYING

22 ATTORNEYS' EYES ONLY, WHERE WE WOULD NOT -- THERE IS

23 A PROTECTIVE ORDER IN PLACE THAT PROTECTS --

24          **THE COURT:**  RIGHT.

25          **MR. KEE:**  SO THERE IS LEVELS.  AND SO --

1          **THE COURT:**  WHY DON'T WE DO THIS.

2          **MR. KEE:**  -- WE WOULDN'T SHOW IT TO ANYONE,

3  NOT EVEN OUR CORPORATE COUNSEL.

4          **THE COURT:**  MS. FONACIER, WHAT IS YOUR

5  REACTION?

6          **MS. FONACIER:**  WELL, I WOULD, OF COURSE, NOT

7  LIKE TO DO THAT.  AND I THINK I CAN PROVE -- I HAVE

8  THE AGREEMENT FOR THE ACCUBID WITH ME TODAY.  I CAN

9  GIVE THAT TO HIM.  WE COULD WALK THEM THROUGH THE

10 PROGRAM.

11          ALSO, IF -- AND I'LL ASK, YOUR HONOR,

12 IF YOU ARE GOING TO ORDER THIS, THAT WE BE ALLOWED TO

13 REDACT THE ACTUAL BIDDING INTERNAL INFORMATION.  YOU

14 CAN SEE THAT WE SUBMITTED A BID THROUGH THIS PROGRAM

15 BUT NOT THE INTERNAL COMPETITIVE --

16          **THE COURT:**  I'M NOT GOING TO ADDRESS THAT AT

17 THIS POINT.  AND I'M NOT GOING TO ADDRESS IT BECAUSE

18 I'M CONFIDENT THAT THE TWO OF YOU CAN MEET AND

19 CONFER.  I MEAN, THERE IS A DEGREE OF GOODWILL AND

20 TRUST AMONG YOU, AS WITH -- I MEAN, AGAIN, YOU GUYS

21 ARE GOOD LAWYERS.  YOU HAVE BEEN OUTSTANDING MEMBERS

22 OF THE BAR.

23          AND I TRUST, FRANKLY, THAT YOU-ALL WILL

24 REACH AN AGREEMENT TO SATISFY EACH OF YOUR CLIENTS

25 THAT, YOU KNOW, NOBODY'S GOING TO BE ADVANTAGED BY --

1    AT LEAST THE EFFORT TO ASSURE ONE ANOTHER THAT ISG IS

2    NOT RELYING ANYMORE, AT LEAST GOING FORWARD, ON THE

3    ESTIMATING PART OF IT ON MMR.  ALL RIGHT?

4                    DO YOU-ALL AGREE WITH THAT?

5            **MR. KEE:**  YES.  I THINK WE CAN COME TO AN

6    AGREEMENT ON THAT.  AND IF NEEDED, WE CAN TALK TO THE

7    MAGISTRATE.

8            **THE COURT:**  YOU CAN SPEAK TO THE MAGISTRATE

9    JUDGE OR YOU CAN BRING IT -- YOU CAN NOTIFY ME.  I

10   MAY REFER IT TO THE MAGISTRATE JUDGE.  BUT AGAIN, I

11   THINK YOUR CLIENT SHOULD CERTAINLY MOVE FORWARD TO

12   CONTINUE TO BID ON PROJECTS.  I MEAN --

13           **MS. FONACIER:**  THANK YOU, YOUR HONOR.

14           **THE COURT:**  -- THAT'S JUST TOO IMPORTANT.

15                    ANYTHING ELSE, MR. KEE?

16           **MR. KEE:**  SO THE ONLY OTHER -- AND I GUESS

17   THIS WILL BE PART OF THE REMEDIATION PROTOCOL THAT

18   WE'LL TRY TO WORK OUT.  BUT JUST AFTER THE COMPLETION

19   OF THE WORK, JUST TO ALLOW THE SPECIAL MASTER TO HAVE

20   SOME KIND OF ACCESS TO JUST DOUBLE-CHECK FOLLOWING

21   THE SPECIAL MASTER'S REPORT.

22           **THE COURT:**  I WOULD ENVISION THE SPECIAL

23   MASTER MEETING WITH THE BOTH OF YOU AND DETERMINING

24   WHAT'S THE APPROPRIATE PROTOCOL FOR HIM OR HER TO

25   DISCHARGE THEIR DUTIES, TO MAKE SURE THAT EVERYTHING

1  IS CLEAN, THERE HAS BEEN A COMPLETE SEPARATION, THERE

2  IS NO EVIDENCE OF ANY OTHER PROPRIETARY SOFTWARE OR

3  OTHER DATA.  SO I GUESS I'M GOING TO JUST DEFER TO

4  THE SPECIAL MASTER TO WORK THAT OUT.  I MEAN, I DON'T

5  HAVE THE EXPERTISE TO EVEN THINK ABOUT THINGS LIKE

6  THAT OR HOW THAT KIND OF A PROTOCOL WOULD EVEN BE SET

7  UP.

8            SO THIS IS WHAT WE'LL DO -- NOW, MR.

9  KEE, I UNDERSTAND YOU HAVE OTHER DATA THAT YOU WANTED

10 TO OFFER INTO THE RECORD.

11           MS. FONACIER, DO YOU HAVE ANY EVIDENCE

12 THAT YOU WISH TO ENTER INTO THE RECORD?

13           **MS. FONACIER:**  YES, YOUR HONOR.  IN ADDITION

14 TO WHAT WE'D OFFER AND INTRODUCE WITH THE -- I'M

15 GETTING AN EXHIBIT STICKER HERE FOR YOU -- WITH THE

16 DECLARATION -- IN ADDITION TO THE DECLARATIONS, I

17 HAVE AN EXHIBIT C, WHICH IS A -- THE SIGNED AGREEMENT

18 SHOWING THAT WE HAVE PURCHASED THE NEW ESTIMATING

19 TOOLS.

20           **THE COURT:**  SO LET ME TAKE A LOOK AT THAT.

21           **MS. FONACIER:**  SURE.

22           AND YOU CAN SEE AT THE FRONT IS THE

23 QUOTE THAT WE WERE ORIGINALLY QUOTED AND THEN THE

24 TERMS AND CONDITION.  AND THEN WHEN YOU GET TO THE

25 BACK, YOU CAN SEE THAT IT IS EXECUTED BY MR. YATES.

1  AND I BELIEVE IT WAS -- YES.

2          **THE COURT:**  OKAY.  SO WHAT I'M GOING TO ASK

3  YOU TO DO IS FILE THIS INTO THE RECORD UNDER SEAL, OF

4  COURSE.

5          **MS. FONACIER:**  YES.  YES.

6          **THE COURT:**  I'M GOING TO RETURN THIS HARD

7  COPY TO YOU.

8                  IS THERE AN ISSUE WITH RESPECT TO --

9  WELL, LET ME ASK YOU THIS:  IS IT YOUR POSITION THAT

10  THIS IS PROPRIETARY SUCH THAT IT SHOULD NOT BE SHARED

11  WITH YOUR OPPONENT?

12          **MS. FONACIER:**  THE AGREEMENT ITSELF?

13          **THE COURT:**  IT'S EVIDENCE OF THAT TO ME.

14  IT'S EVIDENCE THAT --

15          **MS. FONACIER:**  NO, NO.  WE ARE -- THE FACT

16  THAT WE HAVE AN AGREEMENT IS -- WE'RE HAPPY TO SHARE

17  WITH COUNSEL AND THE OTHER SIDE THAT WE ARE USING

18  THIS -- THIS IS NOW THE PROGRAM THAT WE ARE USING TO

19  DO SO.

20          **THE COURT:**  OKAY.  NOW, LET'S TURN NOW TO

21  THE PLAINTIFF.

22                  MR. KEE, IS THERE ANYTHING THAT YOU

23  WISH -- I UNDERSTAND YOU HAVE SOME DOCUMENTS THAT ARE

24  QUITE VOLUMINOUS.

25          **MR. KEE:**  SO -- WELL, THE DOCUMENTS ARE --

1  THEY JUST NEED TO GO ON A THUMB DRIVE.  THEY'RE THE

2  EXCEL SHEETS THAT WE HAD SUBMITTED AS SUPPORT FOR OUR

3  MOTION.  BUT JUST THE LOGISTICS OF HOW TO GET THAT TO

4  YOU --

5       **THE COURT:**  SO IS IT PROPRIETARY, SUCH THAT

6  --

7       **MR. KEE:**  YES.

8       **THE COURT:**  -- YOU'RE UNWILLING TO SHARE IT

9  WITH YOUR OPPONENT?

10      **MR. KEE:**  OH, NO.  THEY ALL CAME FROM ISG'S

11 SYSTEM.

12      **THE COURT:**  SO WHY DON'T WE DO THIS.  WHY

13 DON'T YOU FILE THAT INTO THE RECORD UNDER SEAL

14 CONVENTIONALLY; IN OTHER WORDS, JUST -- IT'S ON A

15 FLASH DRIVE.  RIGHT?

16      **MR. KEE:**  CORRECT.

17      **THE COURT:**  JUST FILE IT INTO THE RECORD

18 CONVENTIONALLY.  AND I'LL HAVE OUR I.T. STAFF SET IT

19 UP SO THAT I CAN -- BECAUSE TYPICALLY WHEN WE HAVE

20 THIS KIND OF PROPRIETARY INFORMATION -- TRADE SECRETS

21 CASES, PATENT INFRINGEMENT CASES -- I LIKE TO KIND OF

22 HAVE A STAND-ALONE COMPUTER.  I DON'T WANT TO DO

23 ANYTHING THAT IS GOING TO CAUSE ANY TYPE OF BREACHES

24 WHERE THIS IS GOING TO BE OUT THERE.  RIGHT?

25      **MR. KEE:**  SURE.

1          **THE COURT:**  SO JUST GO ON AND HAVE THEM --

2    AGAIN, JUST FILE IT INTO THE RECORD UNDER SEAL

3    CONVENTIONALLY AND I'LL TAKE A LOOK AT IT.

4          **MR. KEE:**  OKAY.

5          **THE COURT:**  AND I'M SURE THAT THE SPECIAL

6    MASTER WILL ALSO HAVE NEED TO REVIEW THAT AS WELL.

7               ALL RIGHT.  SO I'M GOING TO ASK EACH

8    SIDE -- I'M GOING TO GIVE YOU BOTH 14 DAYS TO SUBMIT

9    YOUR RECOMMENDATIONS FOR A SPECIAL MASTER.  SO THAT

10   WILL BE DUE ON -- LET'S MAKE IT DUE ON WEDNESDAY, THE

11   17TH OF APRIL.  OKAY?

12         **MR. KEE:**  OKAY.

13         **THE COURT:**  AGAIN, IF YOU HAVE C.V.s, I'D

14   LIKE TO SEE A C.V. OF THESE FOLKS.  ANYTHING ELSE, OF

15   COURSE, THAT YOU THINK CAN BEAR ON IT.

16               I'M GOING TO REPEAT THAT I'M MAKING MY

17   OWN RESEARCH AT THIS POINT.  AT LEAST MY VERY SKILLED

18   LAW CLERKS ARE DOING SO.  AND WE HAVE KIND OF A

19   SYSTEM WE CAN CHECK WITH OUR ADMINISTRATIVE OFFICE

20   FOR CERTAIN TYPES OF CATEGORIES OF EXPERTS, SO WE'RE

21   CHECKING THOSE RESOURCES AS WELL.

22               MY POINT HERE IS THAT I MAY NOT SELECT

23   ANY OF THE FOLKS THAT YOU-ALL RECOMMEND, BUT AT LEAST

24   I WANT TO GIVE YOU-ALL, NONETHELESS, AN OPPORTUNITY

25   TO WEIGH IN ON THIS BEFORE I MAKE A DECISION.

1          ANY QUESTIONS ABOUT THAT?

2          **MR. KEE:**  NO, YOUR HONOR.

3          **MS. FONACIER:**  NO, YOUR HONOR.

4          **THE COURT:**  MR. KEE, OBVIOUSLY WITH RESPECT

5     TO THE ISSUE OF ATTORNEYS' FEES AND COSTS, IT'S

6     PREMATURE AT THIS POINT TO DETERMINE WITH ANY DEGREE

7     OF CERTAINTY WHAT THAT WILL MEAN OR EVEN WHETHER

8     YOU'RE ENTITLED TO IT AT THIS POINT.  I'D PREFER TO

9     WAIT UNTIL THE SPECIAL MASTER COMPLETES THE

10    ASSIGNMENT, AND THEN WE'LL GO FROM THERE SHOULD YOU

11    WISH TO RENEW.

12          SO I GUESS WHAT I'M SAYING IS THAT PART

13    OF YOUR MOTION WILL BE DENIED WITHOUT PREJUDICE --

14          **MR. KEE:**  UNDERSTOOD.

15          **THE COURT:**  -- TO YOUR ABILITY TO FILE IT AT

16    A LATER TIME.

17          **MR. KEE:**  THANK YOU, YOUR HONOR.

18          **THE COURT:**  IS THERE ANYTHING FURTHER FROM

19    EITHER SIDE?

20          ANYTHING FROM THE PLAINTIFF?

21          **MR. KEE:**  NO, YOUR HONOR.

22          **THE COURT:**  FROM THE DEFENSE?

23          **MS. FONACIER:**  ONE QUESTION.  WOULD -- HE

24    WILL FILE, YOU SAID, IN 14 DAYS HIS REQUEST FOR THE

25    MASTER.  IS IT --

1    **THE COURT:**  NO, I'M GOING TO APPOINT THE

2  MASTER.  THE QUESTION --

3    **MS. FONACIER:**  NO, NO.  I'M SAYING FOR THE

4  TYPES OF THINGS HE'S ASKING FOR.  IF WE WOULD, YOU

5  KNOW, HAVE ALTERNATE IDEAS, DO WE JUST TAKE THAT UP

6  WITH THE MASTER OR IS THAT LIKE SOMETHING YOU WOULD

7  LIKE US TO FILE WITH THE COURT?

8    **THE COURT:**  NO, YOU CAN -- SO THE FIRST

9  ORDER OF BUSINESS IS LET'S -- YOU'RE GOING TO GO ON

10  AND FILE YOUR -- THE DATA CONVENTIONALLY.  RIGHT?

11    **MR. KEE:**  CORRECT.

12    **THE COURT:**  YOU CAN FILE THAT -- IS IT READY

13  TO GO?  YOU CAN FILE THAT NOW.

14    **MR. KEE:**  YEAH, I WAS GOING TO DO THAT.

15    **THE COURT:**  SO WHAT I PREFER TO DO IS WAIT

16  UNTIL THE SPECIAL MASTER IS APPOINTED.  THEY CAN MEET

17  WITH BOTH OF YOU, CONFER WITH BOTH OF YOU.  AND THEN

18  THEY WILL DETERMINE WHAT THEY NEED AND WHERE THEY GO.

19  I DON'T WANT TO MAKE THAT ASSUMPTION.

20    **MS. FONACIER:**  NO.  THANK YOU, YOUR HONOR.

21  THAT'S WHAT I WANTED TO BE CLEAR.  AND ALSO --

22    **THE COURT:**  THANK YOU FOR ASKING.  THAT'S AN

23  IMPORTANT CONSIDERATION, FOR SURE.

24    **MS. FONACIER:**  AND ALSO -- THIS IS NOT A

25  QUESTION.  I WOULD JUST LIKE TO INFORM YOU THAT WE

1   WILL -- IN ADDITION TO FILING THAT NEW EXHIBIT, WE'LL

2   GIVE STATUS UPDATES ON THE COURT AS WE DO EACH THING

3   THAT -- TO SEPARATE OUR SYSTEM.

4           **THE COURT:**  WELL, THANK YOU SO MUCH.

5               NOW, LISTEN, THIS IS -- AS IS OFTEN THE

6   CASE IN COMMERCIAL CASES IN FEDERAL COURT, THIS IS

7   HIGHLY CONTESTED.  I UNDERSTAND THAT.  BUT I

8   APPRECIATE THE PREPARATION THAT COUNSEL HAS PUT IN TO

9   REALLY GET THESE ISSUES TEED UP FOR THE COURT.  THESE

10  ARE, AGAIN, VERY TECHNICAL ISSUES.  BUT I WANT TO

11  THANK BOTH SIDES FOR BEING PREPARED FOR TODAY'S

12  HEARING.

13              ALL RIGHT.  THERE BEING NO FURTHER

14  BUSINESS FOR THE COURT, COURT IS NOW ADJOURNED.

15          **MS. FONACIER:**  THANK YOU, YOUR HONOR.

16          **THE LAW CLERK:**  ALL RISE.

17              COURT IS NOW ADJOURNED.

18          **(WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)**

19              **C E R T I F I C A T E**

20      **I CERTIFY THAT THE FOREGOING IS A CORRECT**

21  **TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE**

22  **ABOVE-ENTITLED NUMBERED MATTER.**

23  **S:/NATALIE W. BREAUX**

24  **NATALIE W. BREAUX, RPR, CRR**

25  **OFFICIAL COURT REPORTER**