## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.,** | **CIVIL ACTION NO.: 22-CV-267** |
| Plaintiff, | **JUDGE BRIAN A. JACKSON** |
| VERSUS | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |
| **JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP, et al.,** | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### ISG'S MOTION FOR SANCTIONS

Defendants JB Group of LA, LLC, Jason Yates and Travis Dardenne (collectively, "**ISG**") file this Reply Memorandum in Support of ISG's Motion for Sanctions and to respond to MMR's "Opposition to Motion for Sanctions" ("**MMR's Opposition**").

### PRELIMINARY STATEMENT

Given the chance to address the litany of ethics and discovery violations detailed in ISG's Sanctions Motion, MMR opted to gloss over the facts and instead quibbles over the legal citations in support of those violations. Significantly, MMR's Opposition does not address the fundamental wrongdoing at issue: **the potential (and actual) disclosure of ISG's privileged and confidential information** during the secret deposition of ISG's employee and co-defendant Kasey Kraft ("**Kraft**").[1] MMR offered no answer to this egregious conduct or the following in connection with that secret deposition:

---

[1] ISG provided extensive quotes from the transcript of questions that elicited or could have elicited privileged and confidential information. *See* Sanctions Motion, ECF 179-1 at 5-9. MMR's Opposition does not respond to this

1

- MMR ensured that ISG did not have the ability to hold the witness accountable when he strayed from the truth to assuage those (MMR) offering him a golden ticket out of this federal lawsuit;

- MMR knew that the witness, as a current employee and co-defendant of ISG, had substantive interactions with ISG's counsel as part of the defense of this lawsuit; and

- MMR conditioned the deposition on confidentiality so that its existence and substance was withheld until MMR opted to exploit it for its own benefit.

MMR's handling of the secret deposition is a quintessential example of unfair play that the ethics and discovery rules are intended to prevent. If MMR was only seeking the "truth" from Kraft, there would not have been any reason to keep the deposition confidential from ISG. The transcript itself reveals that MMR wanted more than the truth from the witness; MMR wanted to make sure that the witness knew he needed to tell MMR what it wanted to hear before releasing him from this lawsuit.

MMR's Opposition deals with the facts by using half-truths or misdirections. Sidestepping the facts of MMR's own behavior, MMR attempts to refocus the Court on prior contempt findings, which have nothing to do with the Sanctions Motion. The very first line of the MMR's Opposition refers to "contempt" and contempt is referenced three times in the first three pages alone.

As set forth below, MMR's Opposition fails to overcome the need for sanctions under the circumstances.

---

other than to offer two sentences comprising a blanket denial that confidential and privileged information was disclosed. ECF 188 at 21-22. This speaks volumes about how indefensible MMR's conduct is. MMR's counsel has no standing (or incentive) to assess ISG's privileged and confidential information. Nor does MMR address ISG's authority that the mere potential for disclosure of privileged and confidential information runs afoul of the ethics rules, without the need to prove actual disclosure. *See* ECF 179-1 at 13.

**ARGUMENT**

I. **MMR'S MISAPPLICATION OF AN ABA COMMENT CANNOT OVERCOME RULE 4.2(B)**

As anticipated, MMR's Opposition hides behind the presence of Kraft's personal attorney's participation in the secret deposition to somehow condone its actions. However, Kraft's personal attorney has no bearing on Louisiana's Rule 4.2(b), where the focus is on protecting the privileged and confidential information of an organization like ISG when opposing counsel seeks to speak with a current employee whose conduct could be imputed to that organization. "The dual purposes behind Rule 4.2 are to prevent disclosure of attorney/client communications and to protect a party from liability-creating statements elicited by a skilled interrogator." *Stevens v. St. Tammany Par. Gov't*, 2019-1555 (La. App. 1st Cir. 4/8/21), 322 So. 3d 1268, 1278, *writ denied*, 2021-C-00800 (La. 11/3/21), 326 So. 3d 898; *Woodard v. Nabors Offshore Corp.*, 2001 WL 13339, at *3 (E.D. La. Jan. 4, 2001) ("Because Holder is a 'party' under Rule 4.2, plaintiff's counsel may not contact him or employees like him without defendant's consent or unless authorized by law to do so"), *citing Jenkins v. Wal-Mart Stores, Inc.*, 1997 WL 87617, at *1 (W.D. La. Feb. 27, 1997).

MMR ignores a Louisiana case that ISG cited in detail that specifically addressed the presence of a witness's personal attorney in connection with very similar circumstances, *In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992).[2] In *Shell*, the court took issue with plaintiff's counsel's conduct notwithstanding the fact that the individual employee of the defendant had been represented by personal counsel. *Id.* at 108-09. The court concluded that plaintiff's counsel was "inappropriate and contrary to fair play." *Id.* at 108. The court consequently sanctioned plaintiff's

---

[2] Buried in footnote five is a single line reference to the substance of *In re Shell*: "involving counsel obtaining proprietary documents; the court did not determine whether Rule 4.2 had been violated." ECF 188 at 11.

counsel by forbidding plaintiff from using any documents or information obtained from the third-party source, as well as forbidding any further *ex parte* communications with third-parties in the case, at the risk of disqualification and other sanctions. *Id*. at 109.

Rather than address *In re Shell* or Louisiana Rule 4.2(b), MMR's Opposition presents the Court with a comment to the ABA's version of Rule 4.2 to suggest that Kraft's personal attorney's presence somehow cures what took place here. There are several flaws with this argument.

The problem with MMR's reference to ABA Rule 4.2 and its accompanying comment is that Louisiana's Rule 4.2, since its amendment in 2004, is significantly different from the ABA rule (ABA Rule 4.2 closely resembles the version of Louisiana Rule 4.2 that was repealed in 2004). ABA Rule 4.2 is short:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Model Rules of Prof'l Conduct R. 4.2 (2023). The comment to ABA Rule 4.2 on which MMR relies reads as follows:

> [7] In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. *See* Rule 4.4.

In contrast, the current iteration of Louisiana Rule 4.2 reads as follows:

4

> Unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with:
>
> (a) a person the lawyer knows to be represented by another lawyer in the matter; or
>
> (b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a **represented organization** and
>
> > (1) who supervises, directs or regularly consults with the **organization's lawyer** concerning the matter;
> >
> > (2) who has the authority to obligate the **organization** with respect to the matter; or
> >
> > (3) whose act or omission in connection with the matter may be imputed to the **organization** for purposes of civil or criminal liability.

La. Rules of Prof'l Conduct R. 4.2 (emphasis added). The Louisiana Supreme Court in 2004 expanded Rule 4.2 to include subsection (b), which addresses the rights of a represented organization. MMR would be correct to point out that ABA comment 7 also addresses the rights of a represented organization and some of the language in the ABA comment is similar to Louisiana Rule 4.2(b). However, of critical importance is that in adopting the current iteration of Rule 4.2(b) in both 2004 and again in 2011, the Louisiana Supreme Court extracted some language from ABA comment 7 but did not include the language from the ABA comment that MMR relies upon: "If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule." In other words, in neither 2004 or 2011 did the Louisiana Supreme Court opt to include the ABA comment's language that it would be permissible to speak with an employee of a represented organization who consults with the organization's lawyer concerning the matter and whose acts can be imputed to the organization so long as the employee is represented by his own counsel.

That the Louisiana Supreme Court did not incorporate such language makes sense, because Louisiana's Rule 4.2 reflects Louisiana state and federal law. *See generally* Dane S. Ciolino, *Lawyer Ethics Reform in Perspective: A Look at the Louisiana Rules of Professional Conduct Before and After Ethics 2000*, 65 La. L. Rev. 536, 582 n. 323 (2005) ("The LSBA Ethics 2000 Committee believed that it was not proposing a change in the law regarding contact with constituents of represented organizations, but rather, that it was restating the law as it existed at that time."). Indeed, no Louisiana court has permitted contact with a high level constituent represented by independent counsel. In fact, it is the opposite. *See In re Shell Oil Refinery*, 143 F.R.D. 105, 107 (E.D. La.) (focusing on the substance of the conduct "regardless of whether the PLC's communication with a Shell employee was in violation of Rule 4.2" and granting relief for unfair conduct). MMR's reference to the ABA comment is, therefore, misleading at best.

Worse, MMR is likely misinterpreting the ABA comment language to suit its needs. The sentence quoted above – "If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule – has to be read in conjunction with the preceding sentence: "Consent of the organization's lawyer is not required for communication with a **former** constituent." Read together, the comment suggests that a former constituent represented by a lawyer only needs the consent of that lawyer to speak with opposing counsel. In other words, the phrase "if a constituent of the organization" was intended to be read as "a **former** constituent of the organization." To read it otherwise would swallow the purpose of the rule altogether and negate the need for 4.2(b). As stated above and reflected in the highlighted text of the Rule above, the intent of that subsection is to protect the represented organization.

*Finally*, even if the Court were to consider the ABA comment, however misplaced, the comment itself says that "a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization." Model Rules of Prof'l Conduct R. 4.2 cmt. ¶7. ISG's brief dedicated an entire section to how taking an unnoticed deposition and then withholding its existence for months violated ISG's rights under the Federal Rules of Civil Procedure. *See* ISG Br. ECF 179-1 at 13-16.

## II.   MMR CANNOT OVERCOME ITS 3.4(B) VIOLATION

In its Sanctions Motion, ISG argued with supporting authority that offering Kraft a release in exchange for his testimony was itself an ethics violation of Louisiana Rule of Professional Conduct 3.4(b). In response, MMR argues that Rule 3.4(b) prohibits the payment for testimony and a release does not constitute a "payment." MMR further argues that Rule 3.4(b) does not prohibit conditioning settlement on the provision of truthful testimony. Neither of these arguments holds up.

In support of its contention that Rule 3.4(b) requires an actual payment to a witness, MMR's Opposition cites to the title of the Rule's Annotation, "Payment of Witnesses." ECF 188 at 16-17. In so doing, MMR's Opposition ignores the text of the Rule itself, which prohibits a lawyer from offering "an **inducement** to a witness that is prohibited by law." La. Rules Prof'l Conduct R. 3.4(b). The Rule is not limited to money but includes any type of inducement. The very Annotation MMR relies on discusses the kinds of inducements that are prohibited, including "anything of apparent present or prospective value." La. Rules Prof'l Conduct R. 3.4(b), annotation "Payment of Witnesses". MMR cannot credibly contest that a full release from a federal lawsuit is something of value.

The other issue MMR raises is whether offering settlement in exchange for testimony is prohibited by law. MMR's position is that such an offer is not prohibited. MMR cites *Classic Soft Trim, Inc. v. Albert*, 18-1237, 2021 U.S. Dist. LEXIS 37002, at *6-9 (M.D. Fla. Jan. 14, 2021) in support of its view. ECF 188 at 18. In that case, plaintiffs' counsel sent an email to defendant's counsel stating that plaintiffs would "entertain a dismissal" of the defendant "in exchange for him testifying truthfully about [his alleged wrongdoing]." *Id*. at *1. Defendant subsequently moved to disqualify plaintiffs' counsel based on that singular email. *Id.* While the court did deny defendant's motion for sanctions, the court's decision hinged on the fact that the offending email contained "no actual offer*." Id.* at *3. The Court held that "the lack of an actual offer precludes a finding that [plaintiff's counsel] violated Rule 4-3.4(b)." *Id*. at *3. MMR's Opposition failed to notify the Court of this critical distinction. And MMR's Opposition did not disclose that the *Classic Soft Trim* court went on to say "even though the email does not violate Rule 4-3.4(b), it is troubling….[the] email treads on treacherous ground because it could open the door to a violation of the Rule." *Id*. at *4. Nor did MMR's Opposition mention the *Classic Soft Trim* court's ultimate holding:

> This opinion should not be construed as holding that an offer of dismissal of claims alone could *never* constitute a sufficient incentive to violate Rule 4-3.4(b). Rather, the Court simply finds that the mere mention of a willingness to entertain dismissal is insufficient in this case.

*Id*. at *4 n.8

ISG's position is that offering settlement in exchange for testimony is prohibited by law. The first and most analogous case that ISG cited is *Dyll v. Adams*, 1997 WL 222918, at *2 (N.D. Tex. Apr. 28, 1997). The *Dyll* court held that an attorney must not offer to pay compensation to a witness contingent upon the content of his testimony or the outcome of the case. *Id*. at *2. The settlement offer proposed "a form of *quid pro quo:* the exchange of information that will be useful at trial-that is, Adam's videotaped deposition testimony-for a settlement with plaintiffs. *Id.* The

8

letter violates the relevant disciplinary rules and ethical guidelines." *Id.* While MMR acknowledges that under *Dyll*, a party cannot offer settlement based on the content of testimony, MMR attempts to differentiate *Dyll* because in *Dyll* the settlement offer was conditioned on "useful" testimony and here, MMR contends that the settlement with Kraft was conditioned on "truthful" testimony. MMR's attempted distinction fails for two reasons.

*First*, the *Dyll* court held that "payment for factual testimony is generally prohibited **even if the testimony sought is truthful**." *Dyll*, 1997 WL 222918, at *2 (emphasis added), citing *State of N.Y. v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) ("The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true."). *Second*, MMR's counsel's statements in the Kraft deposition transcript revealed that MMR sought helpful (*i.e.*, useful) testimony from Kraft. MMR played lip service to only seeking "truthful" testimony (ECF 188 at 16) during the deposition and in its settlement agreement but ISG's memorandum provided several transcript quotes of how MMR induced Kraft to provide useful testimony in exchange for a release. ECF 179-1 at 3-5. For example, when MMR's counsel conditioned dismissal on the assumption that the deposition "goes as planned" and "as everybody hopes it will go," the only inference anyone including Kraft could have drawn was that his testimony had to placate (*i.e*., be favorable to) MMR to be dismissed from the lawsuit. ECF 175-2 at 7-8. MMR's Opposition did not address this portion of the transcript.

### III.  THERE IS NO JUSTIFICATION FOR THE SECRECY

MMR does not contest that it required Kraft not to disclose the deposition to ISG and that it did not produce the transcript until attaching it in Opposition to the Motion to Vacate. MMR's

9

Opposition offers several excuses for not turning over the deposition transcript sooner and refutes that any ethics or discovery rules were violated.[3]

### A. MMR Argues that a Deposition Did Not Occur

As a threshold matter, MMR continues to contest that the deposition was actually a deposition. In opposition to ISG's Motion to Vacate, MMR described the transcript as a "sworn statement." ECF 175 at 2. Now MMR refers to the deposition as a "pre-deposition interview." ECF 188 at 1. To call it an "interview" under oath strains credulity. The transcript reads like any other deposition transcript would, with a court reporter, instructions, questions and answers, all under oath for the purpose of imputing conduct to an opposing party (ISG). MMR's counsel admitted during the deposition that it was, in fact, a deposition that was occurring: "Now we learned, in your *last* deposition…." ECF 175-2 at 101, emphasis added.

ISG's brief (ECF 179-1) cited to several cases debunking MMR's suggestion that the Kraft transcript was a sworn statement (*i.e.*, a declaration or affidavit). *See Dunigan v. Mississippi Valley State Univ.*, 2020 WL 9606765, at *3 (N.D. Miss. Oct. 16, 2020) ("A transcript of an interview may not be considered a declaration within the meaning of Rule 56(c)(4)"); s*ee also Marin v. King*, 2015 WL 13651016, at *2 (D.N.M. Oct. 29, 2015) ("affidavits do not involve a sworn witness answering questions propounded by an attorney"), *aff'd*, 720 F. App'x 923, 932 (10th Cir. 2018) (a transcript of an interview with an attorney "does not at all resemble a traditional affidavit."). MMR tries to distinguish ISG's authority because the procedural settings of these cases may be different. ECF 188 at 22. However, MMR ignores the substance of those cases, which

---

[3] Requiring Kraft to keep the existence of the deposition confidential from his employer and co-defendant ISG violated Louisiana Rules 3.4(a), 3.4(f) and 4.4(a), and Federal Rule of Civil Procedure 30(b). *See* ISG's Motion ECF 179-1 at 12-13. MMR's Opposition has no answer to this other than to say that Kraft was allowed to disclose the existence of his settlement with MMR. ECF 188 at 7. This misses the point. Notice of the settlement is not at issue. The lack of notice of a deposition that is being used against ISG, where ISG's confidential and privileged information went unprotected, is the issue.

unequivocally and consistently determined sworn testimony exactly like Kraft's to be a deposition and not a statement, interview or declaration, as MMR contends.

### B. The Deposition is Not Protected Work Product

MMR next attempts to defend the lack of disclosure of the deposition on the ground that the deposition was protected by the work-product doctrine. It is a remarkable argument considering that the doctrine is intended to protect a litigant's privacy with respect to litigation strategy (*e.g.*, the mental impressions, conclusions and opinions of counsel in preparing for litigation). *See In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982) (declining to protect materials that "[were] not mental impressions, conclusions, opinions or legal theories of an attorney.") (citing Fed. R. Civ. P (b)(3)). A plaintiff's deposition of a defendant cannot constitute work-product. There is no alignment of interests and no expectation of privacy. *See Zimmerman v. Wells Fargo Advisors, LLC*, 2016 WL 11601249, at *3 (E.D. Mich. Feb. 8, 2016) (finding the "transcripts of witness statements" are not protected by work product doctrine because they do not contain any "mental impressions, conclusions and opinions"); *In re Packaged Ice Antitrust Litig.*, 2011 WL 1790189, at *10 (E.D. Mich. May 10, 2011) ("verbatim recordings do not contain the types of [']mental impressions, conclusions and opinions['] protected by the work product doctrine"); *Nam v. U.S. Xpress, Inc.*, 2012 WL 12840094, at *3 (E.D. Tenn. May 15, 2012) (finding that "nonparty witness statements and affidavits, at least those that are mere recitations of facts within the knowledge of the witnesses and which do not contain [']mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation['], are not protected from disclosure under the work product doctrine.").

MMR cites *Harrell v. Orkin, LLC,* 2012 WL 13202483, at *8-14 (E.D. La. May 10, 2012) for the proposition that Kraft's deposition can be protected by the "work product doctrine." ECF

188 at 20. However, *Harrell* did not involve a sworn deposition taken under oath before a court reporter; rather, plaintiff's counsel hand-wrote the witness's statement, and the witness subsequently signed it. 2012 WL 13202483, at *5. Unlike Kraft, the witness in *Harrell* was not a party and not subject to any potential liability. *See id.* at *1-2. To borrow a phrase from MMR's Opposition, there is a great deal of daylight between a transcript and an attorney's handwritten attempt to capture a witness's statement. "When taking notes, an attorney often focuses on those facts that she deems legally significant." *Zimmerman*, 2016 WL 11601249, at *3.

### C. The Deposition Transcript Was Responsive to Multiple Requests

To avoid its obligations under the Federal Rules of Civil Procedure, MMR says that ISG "does not point to a single specific discovery request tailored to discovery of Kraft's [deposition]." ECF 188 at 19. In this respect, MMR is correct that ISG did not cite to a single request, but that is because the deposition transcript is so obviously relevant to the lawsuit and numerous document demands that ISG did not anticipate MMR contesting its relevance or responsiveness to existing demands. MMR's argument is puzzling because the transcript is responsive to no less than eight separate document demands. *See* Declaration of Michael Stolper at ¶ 13. There is simply no excuse (other than unfair play) for MMR not to notify ISG of the deposition and turnover the transcript.

As a last-ditch argument, MMR says that even if the transcript should have been produced, the three-month delay between the deposition and the production of the transcript is too short a period to constitute a violation of the Federal Rules of Civil Procedure or any ethics rules. ECF 188 at 19. MMR describes this three-month delay as relatively insignificant in a three-year old case. *Id*. This argument only works without context. A three-month delay of turning over a deposition transcript of a key witness may not have been an issue during the first two years of this litigation, but the same cannot be said of the three-months it was actually kept hidden from ISG,

where this period included motion practice over the lack of merit of MMR's claims and efforts to schedule the remaining depositions. Obviously, the Kraft deposition was germane to these activities and would have been important to have sooner than as an attachment to MMR's opposition to the Motion to Vacate the Preliminary Injunction.[4] *See Drayton v. United Airlines, Inc.*, 2022 WL 17724410, at *3 (S.D. Tex. Dec. 15, 2022), aff'd,2023 WL 5919327 (5th Cir. Sept. 11, 2023) (excluding plaintiff's witness statement where the plaintiff produced its witness statement on the same day defendant filed its motion for summary judgment and it left defendant to "prepare[] [its] Motion for Summary Judgment without knowledge of [the witness's statement."]); *also Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1009-10 (8th Cir. 1998) (finding prejudice in "at least partial[]" reliance on non-existence of evidence in preparing motion for summary judgment); *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D. Ala. 2001) (holding that plaintiff was prejudiced by defendant's late production, which was produced in opposing plaintiff's motion, because the plaintiff had to "spend additional time and resources" in "analyzing and responding" to these "highly relevant and crucial material").

### D.  ISG Did Not Delay or Stall the Kraft Deposition

Scattered throughout MMR's Opposition is the suggestion that ISG deliberately delayed and stalled Kraft from testifying. MMR relies on this narrative in defense of its conduct. However, as set forth in the accompanying Declaration of Michael Stolper, this narrative is offensive to the truth. It was MMR who refused to meet and confer over deposition scheduling, which could have been accomplished before the briefing on ISG's Motion to Vacate the Preliminary Injunction concluded. *See* the Declaration of Michael Stolper at 5, 8-9.

---

[4]   MMR tries to shorten the window in which it unlawfully failed to turn over the transcript to ISG by representing it did not receive the transcript until July 17, 2024. This is beside the point. Had ISG been noticed for the deposition, ISG would have known about the testimony and could have ordered the transcript to be delivered in less than the three weeks MMR claims it waited for the transcript.

13

## CONCLUSION

For the above reasons, ISG respectfully requests that this Court grant its Motion for Sanctions by either (i) striking Kraft's secret deposition and precluding Kraft as a witness or (ii) disqualifying MMR's counsel.

<div style="margin-left: 40%;">

Respectfully submitted,
**DUNLAP FIORE LLC**

/s/ Jennifer A. Fiore
Jennifer A. Fiore (Bar # 28038)
Erin G. Fonacier (Bar # 33861)
6700 Jefferson Hwy, Building #2
Baton Rouge, LA 70806
Telephone: 225-282-0660
Facsimile: 225-282-0680
jfiore@dunlapfiore.com
efonacier@dunlapfiore.com

**SEIDEN LAW LLP**

/s/ Michael T. Stolper
Michael T. Stolper (Admitted Pro Hac Vice)
Xintong Zhang (Admitted Pro Hac Vice)
322 Eighth Avenue, Suite 1200
New York, NY 10001
Telephone: 212-337-3502
mstolper@seidenlaw.com
xzhang@seidenlaw.com

*Attorneys for JB Group of LA, LLC d/b/a Infrastructure Solutions Group, Jason Yates, Travis Dardenne, David Heroman and Michael Lowe*

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice to all counsel on this 29th day of October 2024.

/s/ Jennifer A. Fiore
Jennifer A. Fiore