UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.,** | **CIVIL ACTION NO.: 22-CV-267** |
| **Plaintiff,** | **JUDGE BRIAN A. JACKSON** |
| **VERSUS** | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |
| **JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP, et al.,** | |
| **Defendants.** | |

*****************************************************************************

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES

**MAY IT PLEASE THE COURT:**

For the following reasons, Defendants, JB Group of LA, LLC, d/b/a Infrastructure Solutions Group, Jason Yates, Travis Dardenne, David Heroman and Michael Lowe (collectively, "**ISG**"), respectfully submit this Memorandum in Support of its Motion to Compel Plaintiff, MMR Constructors, Inc. ("**MMR**"), to immediately respond and provide interrogatory answers and documents responsive to ISG's requests.

### I.    PRELIMINARY STATEMENT

ISG has produced more than a million pages of material (most of which unrelated to this dispute as the result of overbroad search terms imposed on ISG). In sharp contrast, MMR has stonewalled production, trickling out **less than 2,000 pages in response to only 4 of 119 separate requests**, even when MMR agreed to produce responsive documents to certain of those requests. In fact, 1,672 of the 1,684 pages MMR has produced are nothing more than the employment files of the individual defendants. MMR has not produced a single email (whether internal or external).

1

MMR's failure to abide by basic discovery rules has not been without protest from ISG. As set forth in the Declaration of Erin Fonacier, ISG has consistently pressed for the outstanding documents and interrogatory answers – evidence critical to the defense of this trade secret case – engaging in numerous meet and confer sessions, zoom meetings and email exchanges with MMR's counsel. The need for these documents increased with importance as the parties began discussing scheduling depositions of party witnesses this past May 2024. ISG made it clear that depositions could not proceed without an adequate document production from MMR; ISG would not be prejudiced with taking MMR depositions without the benefit of MMR's documents. During the summer of 2024, MMR made assurances that it would be producing additional documents, but those assurances were unfulfilled. This led ISG to send an itemized deficiency letter on August 20, 2024.[1] ISG followed up several times but to date, MMR has not substantively responded to the letter or produced a single document in response. Consequently, ISG had no choice but to seek relief from the Court.

## II.     OUTSTANDING DISCOVERY

The discovery at issue is targeted and highly relevant. For purposes of this motion, ISG has narrowed down MMR's discovery failures to four areas of inquiry, set forth immediately below.

### A. MMR's Internal Communications

In any commercial dispute, a party's communications about that dispute are highly relevant. This is particularly true here because several current ISG employees are former MMR employees and have specific recollections of email communications and other documents in MMR's files during their tenure that relate to this dispute. Yet none have been produced to date.

---

[1] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "M".

For example, ISG's founder Jason Yates testified that while he was employed at MMR he had exchanged emails with MMR's in-house counsel Matt Welborn about ISG.[2] Yates further answered in response to MMR's complaint that MMR's corporate counsel, Mr. Welbourne, was aware of his use of MMR forms and templates on behalf of ISG,[3] and therefore such correspondence would prove the same. MMR's knowledge and consent to Yates' use of MMR files came about according to Yates because he started ISG while working at MMR with MMR's knowledge and consent.[4] This led ISG to assert the following document demand:

**REQUEST FOR PRODUCTION NO. 1:**[5]

Provide a copy of all Documents reflecting, concerning, or relating to communications between Matt Welborn and Jason Yates referencing, concerning, or relating to ISG (including, but not limited to, communications in or about early 2021 relating to the contract from Jefferson Parish to ISG for the Causeway Lighting Project and contract from Boone Construction to ISG for the Baton Rouge Airport Lighting Project).

Relatedly, ISG requested communications between MMR and Yates concerning ISG (RFP #2) and communications prior to the lawsuit within MMR concerning ISG. ISG specifically requested communications among MMR's two most senior officials, Pepper Rutland and John Clouatre, relating to MMR's allegations in this lawsuit. (First Set of RFP #13 and #14).[6] Another former MMR official now with ISG is Kevin Alexander, who recalls specific communications with Yates and others about ISG while Mr. Alexander was with MMR. ISG subsequently requested from MMR Mr. Alexander's emails about ISG and forensic copies of his computer and cell phone, which he returned to MMR on his departure.[7]

---

[2] *See* Jason Yates' deposition, pages 9 and 15 (ECF 119-003).
[3] *See* Jason Yates Answer to MMR's Second Amended Complaint for Damages, Temporary Restraining Order, and Injunctive Relief, ₱ 30 (ECF 75).
[4] *See* Jason Yates' deposition, pages 15-16, 55, and 59 (ECF 119-003).
[5] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "C".
[6] While MMR agreed to produce responsive documents, not a single document has been produced. See also, a true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "A".
[7] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "H".

These are very specific demands intended to yield not only relevant but likely admissible evidence; yet MMR has not produced a single document in response to these requests. This is particularly egregious in light of MMR's allegations in this lawsuit about conducting an investigation into the copying of MMR files by employees departing for ISG.[8]

On August 20, 2024, in response to MMR's objections ISG narrowed these requests in scope temporally and limited the MMR employees to which these requests apply.[9] However, MMR has yet to respond to these narrowed requests despite the fact that it would only take a few forensic searches (*e.g.*, search "Yates" or "ISG" on targeted individuals' MMR emails) between January 1, 2020 and April 23, 2022 to identify responsive documents.

### B. MMR's Use of Publicly Available Data

In its recent motion to vacate the preliminary injunction, ISG put forth testimony from three former MMR employees who explained how the data MMR uses in its estimating process – the data upon which the injunction is based – is not proprietary and is actually based on publicly available data from a subscription service offered by the National Electrical Contractors Association ("**NECA**").[10] MMR contends that the database is not based on NECA and instead is the result of decades of MMR expertise.[11] It is because of this fact dispute that ISG served the following document demand:

**REQUEST FOR PRODUCTION NO. 5:**[12]

Provide a copy of all Documents referencing, concerning, or relating to National Electrical Contractors Association ("NECA") unit rates and/or NECA labor rates.

---

[8] *See* MMR's First Amended Complaint (ECF 29); ¶ 36 ("MMR engaged a firm with an expertise in computer forensics to confirm whether – like Kasey Kraft – there was any evidence suggesting the potential theft of information"); ¶ 64 ("MMR engaged its forensic expert to analyze the computer issued to Kraft").
[9] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "M".
[10] *See* Russel Gaudin deposition, pg. 18 (ECF 161-5) and Billy Hoover deposition, pg. 19 (ECF).
[11] *See* MMR's Opposition to Motion To Dissolve Preliminary Injunction, pages 29-30. (ECF 168-1).
[12] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "C".

4

To facilitate MMR's production, ISG further limited this request to documents "relating to any comparison or analysis of NECA unit rates used by MMR between January 1, 2020 and December 31, 2021."[13] As with all of the discovery demands at issue, MMR has made no production in response to this narrowed request.

### C. MMR Disclosing it's Purported "Trade Secrets"

One of ISG's contentions in response to MMR's trade secret claim is that certain of MMR's alleged "proprietary" documents, templates and data – in particular relating to pricing and bidding information – is actually shared among customers and competitors alike.

Former MMR employees now with ISG know that when they worked at MMR they had pricing and bidding information from competitors and competitors had MMR information as well.[14] ISG was aware that it was industry standard to possess competitor information because such information was practically identical across the board. The information is shared by customers who may ask MMR to beat competitors' bids, or through other means.[15] Former MMR employees at times shared MMR information with others (customers, contractors, etc.) when it made sense to do so.[16] And employees often take information from one employer to the next.[17] This was confirmed in testimony by the former MMR employees with no affiliation with ISG.[18] For example, another former MMR employee, Billy Hoover, explained during his deposition, "*[E]verybody uses the same formats*. Everybody uses profit, overhead, taxes, to my knowledge … there is nothing secret about how you do an overhead sheet."[19]

---

[13] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "M".
[14] *See* Jason Yates' deposition, pgs. 30-31 (ECF 119-003).
[15] Recent testimony stated that sometimes customers share bids with competitors to obtain better pricing. S*ee* Tracey Hollier deposition, pg. 25 (ECF 161-6); Billy Hoover deposition pg. 81 (ECF 161-3)
[16] *See* Russell Gaudin deposition pgs. 17-18 (ECF 161-5).
[17] *Id.* at pgs. 85-86 (ECF 161-5).
[18] *See* Russell Gaudin deposition pgs. 85-86 (ECF 161-5).
[19] Billy Hoover deposition pg. 74 (ECF 161-3).

This is not to criticize MMR's business practices; according to industry participants, the flow of information among competitors is fluid and not atypical.[20] The President of one of MMR's competitors, Tracy Hollier of Merit Electric, testified consistently as well:

Q: You wouldn't want your competitor to have your inside information, right?

A: […] the information is still industry knowledge. We all know what it takes to do the job and do work in this industry. … In my case, I'm 30 years [in this industry], but it's all very industry knowledge, experience, and …basically all get from the same pool of people, too."[21]

\* \* \*

Q. And the -- do you know, in your experience, do customers ever share the bids of other competitors with you -- with Merit to try to get Merit to meet a price or beat a price or the other way around?

A. Unofficially?

Q.· Yes.

A.· I would say in the course of my 30 years I have had customers share information, yes.[22]

One reason for this is that pricing and bidding information is rendered stale with little to no economic value almost immediately after a customer selects a contractor through a bidding process.[23] This is because pricing and bidding information – the information at the heart of MMR's trade secret claim – is very project specific and not transferable to other projects.[24]

---

[20] *See* Russell Gaudin deposition, pgs. 85-86 (ECF 161-5); Tracey Hollier deposition, pg. 61 (ECF 161-6); Rob Mason deposition, pgs. 01-103 (ECF 161-4).
[21] Tracey Hollier deposition, pg. 33, (ECF 161-6).
[22] *Id.* at 25.
[23] *See* Russell Gaudin deposition, pgs. 90, 97-98, 104-105 (ECF 161-5); Tracey Hollier deposition, pgs. 17-23 and 53-54 (ECF 161-6); Rob Mason deposition, pgs. 54-56 (ECF 161-4); and Billy Hoover, pg. 30 (ECF  161-3).
[24] *See* Rob Mason deposition, pgs.48-50 (ECF 161-4); Tracey Hollier deposition, pgs. 18-19 (ECF161-6); and Billy Hoover, pgs. 21-30 (ECF  161-3).

Consequently, through discovery ISG sought to obtain whatever competitor information MMR had in its possession (First Set of RFP[25] #41, Third Set of RFP[26] #14, Fourth Set of RFP[27] #21, Fifth Set of RFP[28] #1-6, Yates Interrogatory[29] #10). For example:

**REQUEST FOR PRODUCTION NO. 14:**[30]

Provide a copy of all Documents reflecting or relating to the disclosure outside of MMR of any overhead top sheets, labor and material sheets, estimates, change logs, job analyses, contracts, change orders, s-curves, timekeeping documents, Quality Assurance/Quality Control manuals, employee handbooks, safety manuals, and/or customer proposals from the date when any of the Defendants commenced employment with MMR, through the present.

**INTERROGATORY NO. 10:**[31]

Identify and describe in detail each instance in which MMR (including but not limited to Jason Templet, Vance Mitchell, Wayne Radley, John Clouatre, Mike Kee, and/or Pepper Rutland) possessed, used, and/or disclosed documents of a competitor of MMR (including, but not limited to, ISC Constructors) documents or information (including, but not limited to, to bid on any project or contract), including the Identity of the MMR individuals involved in such possession, use, and/or disclosure, the type of information possessed, used, and/or disclosed, and how.

Conversely, ISG also sought evidence of MMR sharing pricing and bidding information outside of MMR (First Set of RFP #34[32] and Amended Interrogatories #5, 6, 9 and 10[33]). Obviously, instances of such disclosure would defeat any trade secret claim. Specific discovery demands include:

**REQUEST FOR PRODUCTION NO. 34:**[34]

Provide a copy of all Documents reflecting or relating to the disclosure outside of MMR of any Greensheets.

---

[25] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "A".
[26] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "D".
[27] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "F".
[28] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "G".
[29] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "E".
[30] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "D".
[31] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "E".
[32] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "A".
[33] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "B".
[34] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "A".

**AMENDED INTERROGATORY NO. 5:**[35]

Identify all persons and/or entities, outside of MMR, with whom any MMR Officer, Manager, Project Manager, Salesperson, or Estimator (or anyone else with the knowledge of any such individual) have at any time shared or divulged information and/or Documents you identified in your response to Interrogatory No. 4.

Again, former MMR employees now with ISG know: (i) that documents responsive to Request No. 34 existed at MMR; (ii) the names of MMR employees who shared pricing and bidding information with industry participants outside of MMR; and (iii) the names of those outside of MMR who received such MMR information. In other words, these discovery demands were not drafted in a vacuum. In 2023, MMR agreed to provide answers to these specific interrogatories. Over a year later, MMR has not provided amended responses nor has MMR produced any responsive documents.

### D. MMR's Insufficient Effort to Protect Internal Information

As the Court is no doubt aware, MMR has the burden of establishing that it has "taken reasonable measures to keep [the alleged proprietary information] secret."[36] One who voluntarily discloses secret information or who fails to take reasonable precautions to secure its secrecy cannot properly claim that information constitutes a trade secret.[37] In *Rx.com v. Hruska*, No.05-cv-4148, 2006 WL 2583434 at *5-6 (S.D. Tex. Sept. 7, 2006), the court found no reasonable steps to protect the alleged trade secrets were taken because "[plaintiff] has never requested [defendant] return the e-mails, delete them, or take other steps to prevent their further disclosure."

One of ISG's defenses to MMR's trade secret claim is that MMR did not take any steps to prevent its employees from leaving with MMR files. Indeed, ISG intends to prove at trial that

---

[35] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "B".
[36] *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 518 (E.D. La. 2018).
[37] *Phillips v. Frey*, 20 F.3d 623, 631 (5th Cir. 1994) citing *Interox v. PPG Industries, Inc.,* 736.2d 194, 202 (5th Cir.1984).

8

MMR consented to Yates having possession of MMR files when he started ISG (and it is Yates who is the source of MMR files at ISG). Against this backdrop, ISG sought evidence reflecting MMR's actions and inactions in protecting its alleged trade secrets and proprietary information. For example, ISG requested the following:

**REQUEST FOR PRODUCTION NO. 19:**[38]

Documents or communications concerning any exit interview of the Former MMR Employees.

**INTERROGATORY NO. 7:**[39]

Please Identify any employees who have left MMR's employment, from 2021 forward, by the employee position, employee name, and date, the stated reasons for leaving, and the individuals next employer(s) after MMR.

**AMENDED INTERROGATORY NO. 18:**[40]

Identify and Describe each instance in which MMR ensured that MMR information was deleted from any employee-owned device such as mobile phones, external hard drives, and/or other storage devices for any who left anytime after 2017.

ISG also sought information about an HR firm MMR retained to address MMR's policies relating to employee retention.

**REQUEST FOR PRODUCTION NO. 8:**[41]

The contract or engagement letter with the HR Firm, or documents reflecting the scope of the HR Firm' engagement.

**REQUEST FOR PRODUCTION NO. 9:**[42]

Any reports or documents reflecting the results of the HR Firm's engagement.

---

[38] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "D".
[39] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "E".
[40] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "B".
[41] A true and correct copy of which is attached to the Fonacier Declaration as **Exhibit** "G".
[42] *Id.*

9

These requests should have yielded information about how MMR handled employee departures and exit interviews. These requests also should have provided information relevant to ISG's defense that MMR's lawsuit was motivated not by concern over proprietary information but about a negative reaction to so many MMR employees leaving to join competitors including (and not exclusively) ISG. Consistent with MMR's approach to discovery, MMR has failed to provide any responsive documents or interrogatory answers.

E. **MMR Has Blatantly Ignored Its Discovery Obligations**

In summary, despite numerous discovery requests by ISG and conferences and correspondence regarding deficiencies on a bevy of occasions, MMR has not provided responsive documents or interrogatory answers. As of the date of the filing of this motion, MMR has had months, if not years in some instances, to respond to ISG's requests for production of documents and interrogatories. Where ISG has been forthcoming with divulging its information regarding this matter, MMR has been consistently uncooperative and obstructive in its approach to responding to simple, reasonable discovery requests. Many of MMR's responses consist of nothing more than the same boilerplate objections copied and pasted over and over again. Moreover, MMR's responses were deficient not only because of the evasive nature of their objections and responses, but also because it was obvious that MMR did not produce all (or in most cases *any*) of the relevant, non-privileged documents in its possession.

MMR's discovery responses are well below the threshold of their responsibilities under the Federal Rules, and MMR failed to adequately address most of the requests levied upon them, despite MMR's repeated acknowledgment that MMR has responsive information and documents in its possession. Further, MMR has continually promised to supplement responses, yet MMR has failed to do so at each turn.

MMR's counsel has been afforded a litany of opportunities to correct discovery deficiencies, as detailed in numerous deficiency letters sent by ISG's counsel. Still, the only consistency throughout the discovery process has been MMR's unwillingness to provide any substantive information relative thereto.

### III. ARGUMENT

Rule 37(a)(3)(B) provides that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to answer an interrogatory submitted under Rule 33,"[43] or if "a party fails to produce documents or fails to respond that inspection will be permitted or fails to permit inspection as requested under Rule 34."[44] FRCP 37 further notes, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[45] Trial courts are afforded substantial discretion in determining whether to grant or deny a motion to compel discovery.[46] "If the motion is granted or if the requested discovery is only provided after the motion is filed, 'the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.'"[47]

---

[43] Fed. R. Civ. P. 37(a)(3)(B)(iii).
[44] Fed. R. Civ. P. 37(a)(3)(B)(iv). *Rivera v. Martin J. Donnelly Antique Tools*, 2016 WL 1389984 (M.D. La. Apr. 7, 2016). (The district court struck responses which established as a matter of law that the party lacked evidence to address those specific assertions.)
[45] Fed.R. Civ. P. 37(a)(4). *Maya Detiege, Et Al. v. Katrina R. Jackson*. Dayne Sherman, No. CV 3:23-0175, 2024 WL 4884414, at *3 (W.D. La. Nov. 25, 2024).
[46] *Valley Reg'l Med. Ctr. v. Wright*, No. 02-40144, 61 Fed.Appx. 121, at *2 (5th Cir. 2003) (per curiam); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir.2000); *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, (5th Cir. 2013) (the district court dismissed certain claims as discovery sanction for failing to participate in discovery, failing to properly supplement responses, and failing to preserve documents); *Heptinstall v. Blount*, 3 F.3d 436 (5th Cir. 1993) ("the district court […] may impose sanctions when a party fails to answer interrogatories or fails to respond to requests for production after receiving proper notice.").
[47] *Dwight & Gary LLC*, 2021 WL 6973865, at *2 (quoting Fed. R. Civ. P. 37(a)(5)(A)). *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1031 (5th Cir. 1990) (The Court determined that the award of fees permitted by Rule 37(d), which provides for sanctions for discovery abuses in cases where no prior discovery order has issued.)

11

In accordance with Rule 37, this Court should order MMR to (a) serve full, complete, and non-evasive answers to the interrogatories and (b) produce full and complete copies of documents requested at issue herein.

## CONCLUSION

For the reasons set forth herein, ISG respectfully requests that the Court grant its Motion to Compel, and, pursuant to Rule 37 of the Federal Rules of Civil Procedure, order that MMR provide responsive answers and documents to ISG's Interrogatories and Requests for Production of Documents and assess attorneys' fees and costs associated with this Motion against MMR.

Respectfully submitted,

**DUNLAP FIORE LLC**

/s/ Jennifer A. Fiore
Jennifer A. Fiore (Bar # 28038)
Erin G. Fonacier (Bar # 33861)
6700 Jefferson Hwy, Building #2
Baton Rouge, LA 70806
Telephone: 225-282-0660
Facsimile: 225-282-0680
jfiore@dunlapfiore.com
efonacier@dunlapfiore.com

**SEIDEN LAW LLP**

/s/ Michael T. Stolper
Michael T. Stolper (Admitted Pro Hac Vice)
Xintong Zhang (Admitted Pro Hac Vice)
322 Eighth Avenue, Suite 1200
New York, NY 10001
Telephone: 212-337-3502
mstolper@seidenlaw.com
xzhang@seidenlaw.com

*Attorneys for JB Group of LA, LLC d/b/a Infrastructure Solutions Group, Jason Yates,*

*Travis Dardenne, David Heroman and Michael Lowe*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record on this 9th day of December 2024.

/s/ Jennifer A. Fiore
Jennifer Fiore