UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.,** : | **CIV. NO. 22-267** |
| Plaintiff, : | |
| VERSUS : | **JUDGE BRIAN A. JACKSON** |
| **JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP ET AL.** : | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |
| Defendants. | |

### RESPONSES TO DEFENDANTS' FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO MMR CONSTRUCTORS, INC

NOW INTO COURT, through undersigned counsel, comes Plaintiff MMR Constructors, Inc. ("MMR"), which in response to Defendants' *Fourth Set of Requests for Production of Documents*, respectfully submits the following:

### REQUEST FOR PRODUCTION NO. 1:

Documents reflecting work-related injuries incurred by MMR employees, consultant or contractors on MMR Project Sites between January 1, 2018, through December 31, 2023, including but not limited to"

a. Medical or hospital bills paid by MMR on behalf anyone who incurred an injury on a MMR Project Site;

b. Credit card bills of MMR or MMR personnel reflecting hospital or medical expenses of anyone who incurred an injury on a MMR Project Site;

c. Complaints or communications about work-related injuries;

d. Reports generated in accordance with the OSHA Rule for Recording and Reporting Occupational Injuries and Illnesses under 29 CFR Part 1904;

e. OSHA 300 and 300A logs.

### RESPONSE TO REQUEST NO. 1:

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request

**EXHIBIT F**

because it seeks irrelevant information and is not proportional to needs of this case. These requested documents have zero relevance here, as there is no *claim* or *defense* in this case that in any way relates to "work-relates injuries" or OSHA. This is a theft-of-information case that has *nothing* to do with physical injuries, medical bills, or OSHA recordkeeping. Nevertheless, ISG seeks numerous documents — over a five-year period (January 1, 208 through December 31, 2023) — relating to hospital bills, hospital and medical expenses, communications about work-related injuries, OSHA reports, and OSHA logs. Accordingly, this request is not tailored to seek relevant information in a proportional manner to the claims and defenses in this case, as the burden to search for and through five years of records far outweighs any relevance (and there is zero relevance) these medical/injury-related documents would have in a trade secret case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 2:**

The LSU Contract.

**RESPONSE TO REQUEST NO. 2:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information. ISG defines the "LSU Contract," as the "contract between MMR and LSU for the maintenance of cameras on LSU's campus." However, the contents of such a contract have zero relevance here. There is no *claim* or *defense* in this theft-of-information case concerning a camera maintenance contract between MMR and LSU, and the contents of such a contract are not relevant here.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 3:**

Time sheets of MMR employees, consultants, and contractors assigned to or performing services under the LSU Contract.

**RESPONSE TO REQUEST NO. 3:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. The "time sheets" of "MMR employees, consultants and contractors" who worked — at any point time — under a camera maintenance contract with LSU offer zero relevant information in this theft-of-information case. There is no *claim* or *defense* based on the "time sheets" exchanged between MMR and ISG. The only claims in this case center on the misappropriation of information by ISG and its employees — not MMR's work under a camera maintenance contract with LSU. Any burden associated with gathering such "time sheets" — regardless of how extensive — is excessive and disproportional, as such "invoices" have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 4:**

Invoices to LSU for time spent by MMR employees, consultants and contractors under the LSU Contract.

**RESPONSE TO REQUEST NO. 4:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. The "invoices" for time spent by "MMR employees, consultants and contractors" who worked — at any point time — under a camera maintenance contract with LSU offer zero relevant

#102258553v1                                      3

information. There is no *claim* or *defense* based on the "invoices" exchanged between MMR and ISG. The only claims in this case center on the misappropriation of information by ISG and its employees — not MMR's work under a camera maintenance contract with LSU. Any burden associated with gathering such "invoices" — regardless of how extensive — is excessive and disproportional, as such "invoices" have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 5:**

Documents reflecting complaints about billing or timekeeping practices of MMR under the LSU Contract, including responses to such complaints.

**RESPONSE TO REQUEST NO. 5:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks "complaints" and "responses to such complaints" relating to a camera maintenance contract between MMR and LSU. Even if such complaints and responses existed, they would offer no relevance here. There is no *claim* or *defense* based on timekeeping and billing under any contract between MMR and any customer. The only claims in this case center on the misappropriation of information by ISG and its employees — not MMR's invoices under a camera maintenance contract with LSU. Any burden associated with gathering such documents — even the most minimal effort — would be excessive and disproportional, as such documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 6:**

Documents reflecting complaints from LSU (including from the LSU Police Department and LSU students) about the equipment (*e.g.*, cameras) MMR was required to service during the pendency of the LSU Contract, including any responses to such complaints.

**RESPONSE TO REQUEST NO. 6:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks "complaints" (and "responses to such complaints") relating to "equipment (*e.g.*, cameras)." Even if such complaints and responses existed, they would offer no relevance here. There is no *claim* or *defense* based on camera equipment that MMR may have serviced under a contract with LSU. The only claims in this case concern the misappropriation of information by ISG and its employees — not camera equipment provided to LSU. Any burden associated with gathering such documents — even the most minimal effort — would be excessive and disproportional, as such documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 7:**

Communications concerning the following individuals who were involved in safety-related incidents on the LSU campus during the pendency of the LSU Contract:

    a. Sidney Slate;

    b. Connor Brantely;

    c. Derrius Guice;

    d. Elisabeth Andries;

    e.   Samantha Brennan;

    f.   Jade Lewis;

    g.   Drake Davis;

    h.   Victor Silva;

    i.   Edouard d'Espalungue d'Arros.

**RESPONSE TO REQUEST NO. 7:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks "communications" relating to "safety-related incidents" on the LSU campus. Even if such communications existed, they would offer no relevance here. There is no ***claim*** or ***defense*** based on any "safety-related incidents" involving any of the identified individuals. The only claims in this case concern the misappropriation of information by ISG and its employees — not purported "safety-related incidents" on the LSU campus. Any burden associated with searching for and gathering such communications — even the most minimal effort — would be excessive and disproportional, as such communications have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 8:**

Documents identifying former LSU employees who went to work for MMR.

**RESPONSE TO REQUEST NO. 8:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case.

This request seeks "documents identifying" employees — without any temporal limitation — who at one time worked for LSU and, later, worked for MMR. Even if such documents existed, they would offer no relevance here. There is no *claim* or *defense* based on the hiring of LSU employees. The only claims in this case concern the misappropriation of information by ISG and its employees. Any burden associated with searching for and gathering such documents — even the most minimal effort — would be excessive and disproportional, as such documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 9:**

Documents identifying any LSU or State of Louisiana employees who have received benefits or gifts from MMR, including but not limited [*sic*] employees who have flown on MMR's private aircraft.

**RESPONSE TO REQUEST NO. 9:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks "documents" that would identify benefits or gifts (broad, vague terms that are not defined). Even if such documents existed, they would offer no relevance here. There is no *claim* or *defense* based on any "benefits or gifts." The only claims in this case concern the misappropriation of information by ISG and its employees. Any burden associated with searching for such communications — even the most minimal effort — would be excessive and disproportional, as such communications have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 10:**

Documents reflecting outstanding work orders under the LSU Contract at the time the LSU Contract was terminated.

**RESPONSE TO REQUEST NO. 10:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks "work orders" exchanged between MMR and LSU. These "work orders" would offer no relevance here. There is no *claim* or *defense* based on any "work orders" that MMR exchanged with LSU. The only claims in this case concern the misappropriation of information by ISG and its employees — not "work orders" for LSU. Any burden associated with searching for and gathering such documents — even the most minimal effort — would be excessive and disproportional, as such documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 11:**

Communications reflecting the reason or reasons why the LSU Contract was terminated.

**RESPONSE TO REQUEST NO. 11:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks "communications" relating to the ending of a contractual relationship between MMR and LSU. Even if these "communications" existed, they would offer no relevance here. There is no *claim* or *defense* based on a contractual relationship between MMR and LSU. The

only claims in this case concern the misappropriation of information by ISG and its employees — not whether or how a contract between MMR and LSU may have ended. Any burden associated with searching for and gathering such communications — even the most minimal effort — would be far too much and disproportional, as such communications have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 12:**

Communications reflecting the reason or reasons why the contract with Microsoft was terminated.

**RESPONSE TO REQUEST NO. 12:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that could eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. ISG does not identify what it means by "the contract with Microsoft," but the request seeks "communications" reflecting reasons why the unidentified contract ended. Even if these communications existed, they would offer no relevance here. There is no *claim* or *defense* based on the purported reasons that a "contract with Microsoft" ended. The only claims in this case concern the misappropriation of information by ISG and its employees — not MMR's performance under some unidentified contract. Any burden associated with searching for and gathering such communications — even the most minimal effort — would be excessive and disproportional, as such communications have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 13:**

Communications reflecting the reason or reasons why the contract with Amazon was terminated.

**RESPONSE TO REQUEST NO. 13:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that could eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. ISG does not identify what it means by "the contract with Amazon," but the request seeks "communications" reflecting reasons why the unidentified contract ended. Even if these communications existed, they would offer no relevance here. There is no *claim* or *defense* based on the purported reasons that a "contract with Amazon" ended. The only claims in this case concern the misappropriation of information by ISG and its employees — not MMR's performance under some unidentified contract. Any burden associated with searching for and gathering such communications — even the most minimal effort — would be far too much and disproportional, as such communications have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 14:**

MMR's employment file of Michael Wilson Jr., including but not limited to documents concerning (a) any complaints he raised about MMR business practices and (b) why he was terminated.

**RESPONSE TO REQUEST NO. 14:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request

#102258553v1                                              10

because it does not seek relevant information and is not proportional to the needs of the case. This request seeks the "employment file" of a person with seemingly no knowledge relevant to case. The "employment file" of Michael Wilson contains no documents that are relevant to a *claim* or *defense*, other than his confidentiality agreement that required him to protect the secrecy of MMR's confidential business information. The only claims in this case concern the misappropriation of information by ISG and its employees — and Mr. Wilson (as far as MMR knows) has no knowledge about what ISG and its employees misappropriated. Any burden associated with gathering his so-called "employment file" — even the most minimal effort — would be excessive and disproportional, as those documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 15:**

MMR's employment files of the following individuals, including but not limited to documents concerning why they were terminated:

a. Michael Viola;

b. Kevin Correjolles;

c. Michael Gomez.

**RESPONSE TO REQUEST NO. 15:**

MMR objects to this because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information. This request seeks the "employment files" of three individuals with seemingly no knowledge relevant to this case. The "employment files" of the three individuals contain no documents that are relevant to a *claim* or *defense*, other than their confidentiality agreements that required them to protect the secrecy of MMR's confidential

#102258553v1                                           11

business information. The only claims in this case concern the misappropriation of information by ISG and its employees — and the listed individuals (as far as MMR knows) have no knowledge about what ISG and its employees misappropriated and their employment files would not offer relevant information.

MMR is withholding the production of personnel files based on these objections.

**REQUEST FOR PRODUCTION NO. 16:**

Documents reflecting the bonuses paid to MMR stockholders between January 1, 2019 through December 31, 2023, including but not limited to handwritten cards on which bonus amounts were reflected.

**RESPONSE TO REQUEST NO. 16:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks documents reflecting "bonuses" paid to MMR stockholders over a five-year period. There are no *claims* or *defenses* in this case that relate to the payment of "bonuses." The only claims in this case center on the misappropriation of information by ISG and its employees — not the payment of bonuses to MMR stockholders. Any burden associated with gathering documents reflecting "bonus" information — even the most minimal effort — would be excessive and disproportional, as those documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 17:**

Documents reflecting the amounts and purpose of payments to the following between January 1, 2019 through December 31, 2023:

a. Craig Gosserand or CG Construction;

b. Keith Russell or Russell Pools;

c. Michael Pennington or Pennington Lawn;

d. Frank McArdle or Big River Construction.

**RESPONSE TO REQUEST NO. 17:**

MMR objects to this request because its scope is subject to a *Motion for Protective Order* that would eliminate or limit the need for a response. Further, MMR objects to this request because it does not seek relevant information and is not proportional to the needs of the case. This request seeks documents reflecting "payments" to four vendors over a five-year period. There are no *claims* or *defenses* in this case that relate, in any way, to these four vendors or payments to these four vendors. The only claims in this case center on the misappropriation of information by ISG and its employees — not the vendors or payments to these vendors. Any burden associated with gathering documents reflecting such information — even the most minimal effort — would be excessive and disproportional, as those documents have no relevance to the claims and defenses in this theft-of-information case.

MMR is withholding a search based on these objections.

**REQUEST FOR PRODUCTION NO. 18:**

Documents such as invoices and accounting records reflecting MMR's procurement and/or creation of the following documents, as defined in MMR's complaint and other court submissions in this action:

a. Green Sheets;

b. Overhead Top Sheets;

c. Job Analysis Program;

  d. Timekeeping Database;

  e. Budget & Spend Report;

  f. Employee Handbook;

  g. Safety Manual;

  h. Safety Training Materials;

  i. QA/QC Manual;

  j. BS Report.

**RESPONSE TO REQUEST NO. 18:**

MMR objects to this request as duplicative and refers Defendants to MMR's response to RFP Nos. 9-12 in Defendants' *Third Set of Requests for Production*, which are incorporated here by reference. Further, to the extent MMR locates invoices relating to MMR's Employee Handbook, Safety Manual or Materials, and/or QA/QC Manual, MMR will supplement its response.

**REQUEST FOR PRODUCTION NO. 19:**

Documents or communications concerning any exit interview of the Former MMR Employees.

**RESPONSE TO REQUEST NO. 19:**

MMR objects to this request as not proportional to the needs of the case. The definition of "Former MMR Employees" includes thirty-seven individuals (some of whom were never MMR employees), many of whom did not depart under suspicious circumstances. As MMR answered in response to Amended Interrogatory No. 13, MMR manages the exit process for departing employees on a case-by-case basis, by the departing employees' supervisors and/or managers, and varies across departments. Thus, MMR does not deploy a standard exit interview form, but instead entrusts supervisor and/or manager to handle the final communications with a departing employee. For instance, Ben Huffman testified in this case about the conversation he

#102258553v1          14

had with his supervisor after he notified MMR that he was resigning: the contents of this conversation were not documented but the participants to the conversation can provide testimony about what was discussed. However, under circumstances where MMR learns about suspicious pre-separation computing activity or knows that an employee is leaving to join a direct competitor, MMR has reminded such departing employees about their obligation to return company property and abide by post-employment contractual obligations (even though MMR's policies require them to do so without this additional notice), including those related to confidentiality and non-disclosure of information. Under those circumstances, MMR has also sent formal letters to departing employees, through counsel, and/or initiated legal proceedings to protect its rights. Some examples, in addition to the individual defendants (like David Heroman and Kasey Kasey) here, include Tyler Freeman, Michael Buchanan, Mitchell White, and James Jarwin. These individuals are not, however, listed in the definition of "MMR Former Employees."

Subject to and without waiving these objections, MMR refers Defendants to the personnel files that it has produced in this case. If a document exists that summarized the contents of an exit interview, it would likely have been included in those files. MMR also refers Defendants to the testimony of Ben Huffman. Further, MMR will continue to search for documents that may have captured the contents of an exit interview with a named defendant.

**REQUEST FOR PRODUCTION NO. 20:**

Documents or communications reflecting MMR's decision to bid on industrial instrument and electrical work for International Paper in Mansfield, Louisiana.

**RESPONSE TO REQUEST NO. 20:**

MMR objects to this request because it seeks information that is not relevant and it is not proportional to the needs of the case. This request lacks any temporal limitations or any project-

based limitation. International Paper has operated a facility in Mansfield, Louisiana, for numerous years, and MMR has a long history of bidding electrical and instrumentation ("E&I) work at that facility, and MMR has continued its efforts to provide E&I work to International Paper since. Further, there are no *claims* or *defenses* relating to any decision by MMR to bid on E&I work for International Paper. The only claims in this case concern the misappropriation of information by ISG and its employees — not MMR's decision to bid on any E&I work at International Paper. Any burden associated with gathering documents reflecting MMR's decision (over the course of several years) to bid on E&I work at International Paper — even the most minimal effort — would be excessive and disproportional, as those documents have no relevance to the claims and defenses in this theft-of-information case.

Subject to and without waiving these objections, MMR refers Defendants to MMR-1680-MMR-1684, which is an internal estimating report showing MMR's bidding history for E&I work at International Paper since 2010.

**REQUEST FOR PRODUCTION NO. 21:**

Documents reflecting rates, estimates, bid documents of competitors of MMR.

**RESPONSE TO REQUEST NO. 21:**

MMR objects to this request because it is duplicative of prior requests and violates the parties' agreement regarding the scope of such discovery. Since the first set of written discovery served on MMR, Defendants have sought the production of competitors' documents that MMR purportedly possessed or used. *See* RFP No. 42 of ISG's *First Set of Requests for Production*; RFP Nos. 4 of ISG's *Second Set of Requests for Production*; and RFP Nos. 2-3 of Defendants' *Third Set of Requests for Production*; ROG No. 10 of J. Yates's *First Set of Interrogatories*. MMR position has been — and still is — that this discovery seeks irrelevant information because

there is no claim that MMR has misappropriated a competitor's protected information and because is not proportional to the needs of the case. Counsel for MMR and Defendants met and conferred about the scope of this type of discovery, and ultimately agreed that MMR would supplement its response to Request for Production Nos. 2-3 of the Defendants' *Third Set of Requests for Production*. MMR supplemented its responses and refers Defendants to them. The supplemental production demonstrated that the competitor confirmed MMR had taken its concerns about a former employee seriously and demonstrated that there was no evidence that the former employee had possession of, disclosed, or was using the competitor's information as an employee of MMR.

This request now goes even further than the original discovery that the parties had agreed to narrow, and it is nothing more than a fishing expedition. There is no allegation that MMR misappropriated a competitor's information in this case; and even so, this request lacks a temporal limitation and fails to identify a single custodian/employee whose devices or accounts should be searched (or who allegedly has possession of such requested documents), even though MMR has over 5,000 employees and the individual defendants were each former employees of MMR. Accordingly, in addition to being duplicative and in violation of the parties' agreement, MMR objects to this request because it seeks information that is not relevant and is not proportional to the needs of the case.

MMR is withholding a search based on these objections.

Respectfully submitted:

*/s/ P.J. Kee*
P.J. Kee (La. Bar No. 34860)
Thomas P. Hubert (La. Bar No. 19625)
Michael W. Magner (La. Bar No. 01206)
Jacob J. Pritt (La. Bar No. 38872)
Michael A. Foley (La. Bar No. 35774)
Jason A. Culotta (La. Bar No. 35731)
Connor H. Fields (La. Bar No. 39880)
JONES WALKER, LLP
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8230
Facsimile:   (504) 589-8230
Email:  pkee@joneswalker.com
***Counsel for MMR Constructors, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record for Defendants by email on June 3, 2024.

*/s/ P.J. Kee*
P.J. Kee