UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MMR CONSTRUCTORS, INC., | : | CIV. NO. 22-267 |
| | : | |
| Plaintiff, | : | |
| | : | |
| VERSUS | : | JUDGE BRIAN A. JACKSON |
| | : | |
| JB GROUP OF LA, LLC, ET AL., | : | |
| | : | |
| Defendants. | : | MAGISTRATE JUDGE |
| | : | RICHARD L. BOURGEOIS, JR. |

## REPLY IN SUPPORT OF MOTION TO COMPEL COMPLIANCE AND/OR FOR FURTHER CONTEMPT

MMR seeks something very simple: for ISG to no longer have access to MMR's information that it stole and then misused. In fact, in a 2022 status report, ISG proudly informed the Court that it wanted the exact same thing:

> ISG does not want or need any information tied in any way to MMR, trade secret or not. ISG has at the outset of this litigation cooperated, agreed to a preliminary injunction and forensic protocol to identify, and return any MMR information.

(R. Doc. 31 at p. 6). But that proved to be mere window dressing, as ISG continued to use MMR's information in violation of the agreed-upon *Preliminary Injunction*. The agreed-upon *Remediation & Monitoring Order* is the latest iteration of ISG's agree-then-renege approach. We are now in February 2025 — nearly three years after the Court ordered the return of MMR's information,[1] ten months after ISG was ordered to "cleanse ISG's systems,"[2] and seven months after the parties

---

[1] In the TRO, issued on April 26, 2022, the Court ordered ISG to "return the information and external storage devices identified in the verified Complaint (Doc. 1), and any other documents/devices that contain MMR's confidential business information." (R. Doc. 7).

[2] (R. Doc.145 at p. 14) (ordering that MMR's protected information must be "cleansed" from ISG's systems).

#103491380v2

agreed to the terms of the *Remediation & Monitoring Protocol*[3] — yet ISG still has access to MMR's information and is even actively trying to undo the very protocol it agreed to.

MMR remains at a loss. The law in the Fifth Circuit is clear that a party, who has been held in contempt, "should thereafter be required to keep a safe distance away from the margin line — even if that requirement involves a handicap as compared with those who have not disqualified themselves." *Bd. of Supervisors of the La. State Univ. v. Smack Apparel Co.*, 574 F. Supp. 2d 601, 605 (E.D. La. 2008). Yet ISG is not just tiptoeing near the line; it is deliberately crossing it with outright impunity, even disregarding directives of the Special Master, whom the Court tasked "with ensuring ISG's compliance with the Preliminary Injunction " and "administer[ing]" the *Remediation & Monitoring Order*. And it's not just MMR; the Special Master has also expressed his concern over ISG's conduct:

> We all know that the deadline for that status report came and went without even a cursory effort to comply; so I cannot help but smile at the statement, 'ISG does not wish to give the impression that it does not take the Remediation Protocol, orders from the Court, or requests from the Special Master seriously.' ISG may not wish to give that impression, but ***it could hardly do more to impress upon me that it intends all three***.

(R. Doc. 213-1, p. 10) (emphasis added).

Put simply, ISG's conduct runs afoul of the very reason the Court appointed the Special Master, as it expected the "appointment of the special master will presumably forestall any motions of this nature in the future." Unfortunately, motion practice is necessary, and ISG's opposition — as well as recently discovered evidence about the revamping and relaunching of an "ISG 2.0" — only underscores that need. This Reply will briefly address the three arguments that ISG makes to

---

[3] (R. Docs. 155, 156).

#103491380v2

justify its conduct and present the Court with newly discovered evidence that demonstrates ISG _never_ intended to fully comply with the *Remediation & Monitoring Order.*

*    *    *

_First_, ISG argues that it did nothing out of sorts because the *Remediation & Monitoring Order* does not contain "deadlines" or a definite "timeline." This logic leads to absurdities. There is a real sense of urgency here because ISG could not be trusted to comply with the *Preliminary Injunction* on its own. This is why the Court appointed the Special Master to ensure compliance and administer the *Remediation & Monitoring Order*. But, under its interpretation, ISG can unilaterally decide how fast to proceed — whether that be a few months or a few years — here, it is approaching a full year since the Court held ISG in contempt and not even "Step One" of the *Remediation & Monitoring Order* is near completion.

ISG's delays, moreover, are intentional — as the Special Master noted. *See* (R. Doc. 213-1 at ¶23) ("Your note is my first indication that the remediation is intentionally not proceeding or is purposefully sluggish.").  ISG does not (and cannot) dispute what its forensic expert disclosed during a call with the Special Master — namely that, from July through December 2024, ISG's expert _only_ spent _15 hours_ or so on this matter. But this process is not a leisurely stroll or some hobby to work on after hours. ISG was held in contempt and is required to cleanse its systems of MMR's information — and not whenever it feels like getting around to it. This course of delay, delay, delay, delay merely thwarts the very purpose of the agreed-upon *Remediation & Monitoring Order*, as the Special Master cannot perform his monitoring functions. And this point deserves belaboring. After Special Master's appointment ten months ago, ISG is effectively preventing him from monitoring ISG's compliance with the *Preliminary Injunction.* But according to ISG, there

3

is nothing amiss here because the *Remediation & Monitoring Order* did not have a specific "deadline." That is patently absurd.

*Second*, and relatedly, ISG argues there is no sense of urgency here because the Court, the Special Master, and MMR should just trust — with no effective oversight — that ISG has now pulled itself into compliance. ISG goes on to argue that MMR simply seeks to exact "punishment." This gaslighting requires no response. But what does deserve further explanation is the real urgency at issue here. MMR just learned, on January 27, 2025, that ██████████████████ ████████████████████████████████████████.[4] Further, Mike Lowe — a named-defendant here — has already been installed at ISG 2.0, ████████████████████ ████████████ and is no longer under ISG's control. Mr. Breeland also confirmed that he still has access to ISG's computing systems and email accounts that, according to his own admissions, contain MMR's protected information, including MMR's business plans and audited financial statements. The full contours of "ISG 2.0" remain unknown at this time because ISG's counsel (in violation of the federal rules) instructed Mr. Breeland to stop answering such questions during his deposition last week. But what we can see is that ISG is essentially removing assets to revamp and launch an ISG 2.0. In fact, ISG even seems to be incurring all manner of debts before fully revamping ISG 2.0 — even accepting a million-dollar default judgment in this very Court.[5]

---

[4] ██████████████████████████████████████████ *see* https://www.pehub.com/mag-capital-partners-snaps-up-viasats-telecom-systems-integration-business-nessco/ (last visited Feb. 4, 2025), but MMR has included redactions in the body of this reply because ISG marked Mr. Breeland's testimony on this point as "Attorneys' Eyes Only." The full transcript of Mr. Breeland's deposition has not yet been prepare, but MMR will supplement its motion with that transcript once it is received.

[5] *See Cubic Transp. Sys., Inc. v. JB Group of LA, LLC*, No. 24-549, (M.D. La. Jul. 8, 2024) (R. Doc. 13) (granting default judgment).

#103491380v2

Without the benefit of knowing about ISG 2.0, the Court just today rejected ISG's argument that "there is 'no urgent need'" to complete the *Remediation & Monitoring Protocol*, noting:

> Such a statement once more *ignores the reason for its issuance*. Put simply, ISG agreed to do something, the Court accepted this agreement, and then ISG went back on its word. Intentional or not, this reneging was patently avoidable. That ISG now tells the Court that its compliance with the Preliminary Injunction need not be enforced inspires no confidence that this time would be any different.

(R. Doc. 232 at p. 2-3 n. 1). But this new evidence starkly underscores why completing the *Remediation & Monitoring Order* is now as urgent as when the Court issued the TRO and *Preliminary Injunction*. That is, there is a real and imminent threat that MMR's protected information could be transferred to ISG 2.0.

*Third*, ISG argues that the Court should find it has acted in good faith. That argument could not be further from the truth. Mr. Breeland's testimony confirms that ISG never had an intention to complete what it agreed to in the *Remediation & Monitoring Order*. Even though ISG had hired a forensic expert to aid in negotiating the terms of the *Remediation & Monitoring Order* — and even though the Special Master consistently advised the parties throughout the negotiations about the costs and required resources — Mr. Breeland testified that ISG did not have the resources to complete what it was agreeing to do. Indeed, by June 2024, before ISG agreed to terms of the *Remediation & Monitoring Order*, it had decided that a failed acquisition had "doomed" ISG's business.[6] However, at *no point* before the Court entered the *Remediation & Monitoring Order* did ISG ever express that its business was "doomed" or that it could not afford what it just agreed to accomplish — despite ISG knowing all facts supporting Mr. Breelend's verified allegations in

---

[6] In a verified counterclaim filed with the Delaware Court of Chancery, Mr. Breeland verified that "this transaction has been a disaster and **has doomed ISG's business**." (Exhibit 1, *ISG's Verified Counterclaims* ¶ 4.)

5

Delaware and despite being advised by top-tier forensic experts about the scope and costs of the *Remediation & Monitoring Order*. Indeed, in his "Report and Recommendation," the Special Master noted that, "[t]he process reflected in the Agreed Order is one where *each side's digital forensics experts have weighed in on its design and expressed confidence in its suitability*" and that the Special Master had "done [his] best to ensure counsel understand these potentialities and uncertainties to be situated to advise their clients and budget the time and resources required for successful execution." (Exhibit 2, Special Master letter, dated Jun. 16, 2024). It was only after MMR started asking for updates in September 2024 — given the long span of silence — that ISG started to complain that completing the agreed-upon terms threatened ISG's "survivability." But given all that was transpiring behind ISG's doors — with the failed acquisition, taking a million-dollar-default judgment in this Court, the lawsuits that ISG were percolating[7] — ISG was far from acting in good faith. Instead, ISG deliberately chose to — once again — agree to terms, act as if the obligations are then being completed, renege on that agreement, and then fight to undo the agreed terms. Here, it is possibly worse — as ISG simultaneously requested an earlier trial date, with the hope that the clock would run out on any chance that the *Remediation & Monitoring Order* could ever be completed.[8]

*    *    *

For these reasons, and for the reasons set forth in MMR original memorandum in support, the Court should grant MMR's motion. Further, to assist the Court with fashioning the appropriate

---

[7] Based on a review of publicly available dockets, in 2024 alone, ISG has been sued at least ten times, nearly all of which concern agreement-then-renege schemes. *See* (Exhibit 3, Docket Listing Printout).

[8] Indeed, ISG was even pushing for a March trial date — one month from now, knowing that it had no intention of completing the *Remediation & Monitoring Order* beforehand.

6

sanction, MMR requests that the Court set a hearing, during which the Court can hear from the

Special Master, ISG's forensic experts, MMR's forensic experts, and the ISG executive team who

are actively preventing the completion of the *Remediation & Monitoring Order.*

Respectfully submitted:

*/s/ P.J. Kee*

P.J. Kee (La. Bar No. 34860)
Thomas P. Hubert (La. Bar No. 19625)
Michael W. Magner (La. Bar No. 01206)
Michael A. Foley (La. Bar No. 35774)
Jason A. Culotta (La. Bar No. 35731)
Jacob J. Pritt (La. Bar No. 38872)
Connor H. Fields (La. Bar No. 39880)
JONES WALKER, LLP
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8230
Facsimile: (504) 589-8230
Email: pkee@joneswalker.com
***Counsel for MMR Constructors, Inc.***

#103491380v2

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served on all counsel of record by

electronic filing on February 4, 2025.

                              */s/ P.J. Kee*
                              P.J. Kee

#103491380v2