# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MMR CONSTRUCTORS, INC.,** | **CIVIL ACTION NO.: 22-CV-267** |
| Plaintiff, | **JUDGE BRIAN A. JACKSON** |
| VERSUS | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |
| **JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP, et al.,** | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANT JB GROUP OF LA, LLC D/B/A INFRASTRUCTURE SOLUTIONS GROUP'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Defendant, JB Group of LA, LLC, d/b/a/ Infrastructure Solutions Group ("ISG"), respectfully files this memorandum in support of its motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c) to prevent Plaintiff, MMR Constructors, Inc. ("MMR"), from continuing to pursue improper and overbroad discovery, as set forth below.

## I. PRELIMINARY STATEMENT

ISG seeks a protective order to stop MMR's ongoing misuse of discovery. MMR has repeatedly ignored relevance and proportionality limitations, and has used discovery to harass ISG, its employees, its investors, and unrelated third parties. This motion arises from MMR's improper questioning at the January 27, 2025, deposition of ISG's then-President, Ronald "Shawn" Breeland, where MMR violated a written agreement to limit questioning to liability-related topics. In violation of that agreement, MMR pursued improper damages-related inquiries—including ISG's valuation and investor relationships—and repeatedly posed questions concerning third parties with no relevance to this case. After ISG objected and the parties were unable to resolve

the dispute, Magistrate Judge Bourgeois advised ISG to seek a protective order under the Federal Rules of Civil Procedure.

MMR's discovery overreach extends well beyond the Breeland deposition. It is part of a broader pattern of improper tactics, including expansive and irrelevant discovery requests into ISG's valuation, its investors (including Highground Holdings, LLC ("Highground")), and the business and investors of Nessco Group Holdings ("Nessco"), Mr. Breeland's new employer. For the avoidance of doubt, Nessco has no relation to ISG. It is simply the new employer for Mr. Breeland as well as Defendant Mike Lowe, a former ISG employee who was also the topic of several improper questions during the Breeland deposition.

The only conceivable basis for MMR to seek discovery from third parties such as Highground or Nessco would be to confirm whether they possess any MMR documents. MMR's discovery, however, is not so limited. Moreover, ISG has already conducted an exhaustive forensic review to ensure that any such documents were identified and produced.

ISG has implemented strict controls to prevent the unauthorized dissemination of MMR materials, including safeguards over the devices and accounts of Mr. Breeland and Mr. Lowe as they transitioned to their new employment. Despite these precautions, MMR continues to pursue intrusive and harassing discovery that serves no legitimate purpose.

Given the exhaustive discovery that has already occurred, further demands of this nature are unwarranted and should be precluded by the Court. ISG respectfully requests that the Court impose appropriate limits on discovery to prevent further litigation abuse and undue burden on ISG and nonparties.

2

## II. RELEVANT PROCEDURAL HISTORY

### A. MMR's Impermissible Damages Discovery.

On January 14, 2025, MMR served a notice of deposition for Mr. Breeland, scheduling his deposition for January 27, 2025. That same day, MMR filed a motion to compel (ECF 225), seeking sweeping discovery into ISG's financial and business records, including documentation of every transaction, bid, profit statement, and valuation since ISG's inception.[1] MMR also sought discovery from ISG's investors unrelated to its trade secrets claims. Given the scope of MMR's motion and its clear intent to pursue impermissible damages discovery, ISG objected to the deposition of Mr. Breeland, whose primary role at ISG was investor relations and fiduciary.

On January 21, 2025, counsel for ISG and MMR met and conferred regarding the Breeland deposition and MMR's motion to compel. ISG maintained that the deposition should not proceed until the Court ruled on the proper scope of damages discovery, which would avoid unnecessary disputes and ensure that questioning remained within the bounds of relevance. MMR was unable to articulate any reason why the Breeland deposition could not wait until those issues were adjudicated. In an effort to reach a compromise, ISG proposed that the parties submit a joint letter to the Magistrate requesting expedited consideration of MMR's motion to compel, which MMR declined.

Despite MMR's refusal to postpone the deposition, ISG sought to mitigate potential disputes. ISG proposed making Mr. Breeland available for deposition if MMR agreed in writing to limit its questioning to liability-related topics and to refrain from inquiries regarding damages,

---

[1] These requests bear no connection to a plausible damages calculation and amount to an improper fishing expedition into ISG's proprietary business information—despite the fact that MMR has not identified a single customer it lost to ISG. ISG filed an opposition to MMR's motion to compel on February 4, 2025, detailing the irrelevance and overbreadth of MMR's requests. (*See* ECF 233).

3

including ISG's valuation and investor relationships. Although MMR initially rejected this proposal during the meet and confer, it later confirmed via email that it would abide by this limitation. *See* Email from P.J. Kee on January 21, 2025, attached hereto as Exhibit 1. Pursuant to this agreement, on January 22, 2025, MMR served a second notice of deposition for Mr. Breeland, expressly stating that it would not question him regarding the extent or scope of MMR's damages. *See* Supplemental Notice of Deposition of Shawn Breeland, attached hereto as Exhibit 2, at 1 ("MMR has agreed to limit the deposition of Mr. Breeland by not asking questions regarding the extent or scope of MMR's damages.").

### B. MMR Violated the Agreement During the Breeland Deposition.

On January 27, 2025, Mr. Breeland's deposition proceeded at MMR's counsel's office. Despite the pre-deposition agreement, MMR posed damages-related questions, requiring the parties to seek guidance from Magistrate Judge Bourgeois. MMR's questioning was improper in two key respects: (1) it directly violated the pre-deposition agreement by asking about damages-related topics, including ISG's investor relationships and financial matters, and (2) it extended into speculative and irrelevant matters concerning third parties and nonparties with no connection to this litigation.[2]

MMR's improper inquiries included topics relating to ISG's valuation and investor relations, as well as Nessco's business operations, investor relations, and former ISG employee's career moves, none of which relate to MMR's trade secrets claims.[3] For example, over ISG's

---

[2] To the extent that MMR seeks discovery from third parties for the limited purpose of inquiring about MMR files, ISG will not object. However, any discovery propounded on nonparties pertaining to issues other than MMR's files amount to nothing more than efforts to burden and harass those nonparties, all of whom have little to no connection to this action or the claims and defenses at issue.

[3] MMR has a history of asking harassing and irrelevant questions at depositions. For example, at Ben Huffman's second deposition, MMR questioned him about irrelevant and confidential documents such as investor decks, letters to investors, documents from accountants (protected under the accountant's privilege), and banking

4

objections, MMR's counsel asked Mr. Breeland the following questions concerning ISG's valuation and investor relations:

> "Were you also looking for investors to help raise capital, too?"
>
> "[Investor Decks] would go out to investors to try and raise capital for ISG?"

Breeland Dep. 231:23-24; 306:4-8.

Further, over ISG's objections, MMR's counsel asked Mr. Breeland the following questions concerning Nessco and Mr. Breeland's career moves:

> "What is the anticipated relationship between ISG and Nessco?"
>
> "What is the succession plan when you leave [ISG]?"

Breeland Dep. 63:22-23; 109:21-22.

Additionally, in an apparent effort to circumvent the order quashing MMR's prior subpoena on Highground, while also ignoring Highground's outstanding objections to MMR's second subpoena on Highground[4], MMR asked numerous questions relating to Highground. For example, over ISG's objections, MMR's counsel asked Mr. Breeland the following questions concerning Highground:

> "Is Highground an investor in Nessco?"
>
> "You eventually sold some shares in ISG to Highground, is that accurate, or sold a portion of the company to Highground? Was [the investment] above $5 million? Was it below 7 [million]?"

---

documents. (*See* ECF 119-8 at 264-285). MMR also repeatedly asked Mr. Huffman about non-relevant topics concerning Highground (unconnected to ISG), and ISG's lines of credit and bank relationships. *Id*.

[4] The January 2, 2025, subpoena issued to Highground was MMR's second attempt to obtain this information, as a prior subpoena served in 2022 seeking many of the same documents had been quashed by this Court. *See* Highground's Objections and Responses to Subpoena, dated January 16, 2025, attached hereto as Exhibit 3; *see also* Magistrate Order dated Sept. 29, 2022, at 7-10, ECF 19, Action No. 3:22-148-BAJ-RLB related to 22:267-BAJ-RLB, attached hereto as Exhibit 4.

5

Breeland Dep. 67:12; 303:6-8, 23, 25.[5]

MMR's misconduct during the Breeland deposition demonstrates that MMR is using discovery not as a means to obtain relevant information but as a tool for harassment.[6]

### C. Efforts to Prevent Disclosure of MMR Related Documents.

The only potentially legitimate basis for MMR seeking discovery from nonparties such as Highground, Nessco, and other third parties would be for the limited purpose of confirming that they do not possess any MMR documents. However, ISG has already taken extensive measures to identify and produce any and all MMR documents, and to ensure that no such materials are accessible to Nessco personnel. Given those efforts, MMR's continued pursuit of nonparty discovery serves no legitimate purpose.

In May 2022, the parties agreed to a Stipulated Preliminary Injunction (ECF 23) and Forensic Protocol (ECF 26, 45). The Forensic Protocol was the method agreed upon by the parties to identify and produce any information that MMR contended was confidential and/or a trade secret that may be in the possession of ISG. ISG has conducted a thorough and exhaustive review of its systems in compliance with the Forensic Protocol to ensure that any MMR-related materials were identified and produced. As part of this process, ISG interviewed every employee identified by MMR as subject to the protocol to determine whether they retained MMR documents. For

---

[5] Attached hereto as Exhibit 5 is a partially redacted copy of the transcript of Shawn Breeland's deposition. The deposition transcript is partially redacted to protect the identities and information of nonparties who are not connected to this action, including some individuals who were the subject of MMR's inappropriate questioning. To the extent that the Court would like an unredacted version of Shawn Breeland's deposition transcript, we can provide it.

[6] MMR has a history of utilizing non-relevant information to make invalid and prejudicial assumptions. Many non-relevant documents were produced in the Forensic Protocol that were irrelevant and confidential. This occurred because ISG agreed to the protocol in good faith and initially did not request an expensive and lengthy review of all the documents produced under the assumption that MMR was only looking for possible MMR documents. This assumption has been proven untrue.

those employees who reported potentially having MMR documents on personal devices or through personal accounts, ISG instructed them not to use or delete any such information. As for MMR documents that might be on company devices or accounts, ISG took extensive steps to ensure the integrity of company devices and accounts. (*See* ECF 130-1, at 4-5).

To leave no doubt that all relevant materials were captured, ISG implemented an exceptionally broad search protocol. Initially, ISG agreed to run more than sixty search terms across its systems, including overly broad terms that resulted in the production of a vast number of non-relevant documents. (*See* ECF 26, 45). When MMR sought to further expand custodians and search terms, ISG objected, and the Court intervened, finding many of MMR's terms to be overbroad and disproportionate to the needs of the case. (*See* ECF 65, 68, 79, 101). The search protocol was designed to capture any documents containing the term "MMR" anywhere in the document—regardless of context—ensuring that even non-relevant documents were produced simply due to the presence of MMR's name. Additionally, the search protocol included the names of the specific estimating tools and spreadsheets at issue, meaning that any ISG-created documents based in any way on MMR materials would have been captured and produced. The protocol left no room for any potential MMR documents to escape detection.

As a result of these exhaustive efforts, ISG has imaged and searched more than thirty-five devices and accounts. This costly search included using 40 to 60 search terms (depending on the custodian) to locate any possible MMR document or derivative. Further, ISG agreed to remediate any documents that MMR has flagged regardless of ISG's belief regarding whether such documents are in fact MMR's or could be considered trade secrets under the law. ISG also prepared and delivered to MMR the full set of forensic reports specified in Section 5 of the Forensic Protocol, including Timeline Reports, USB Registry Reports, LNK File Analyses, Jump

7

List Analyses, and Shellbag Analyses. This process led to the production of over a million documents.

Additionally, ISG has taken extensive measures to ensure that no MMR documents are accessible to individuals now associated with Nessco. Mr. Breeland, who resigned as ISG's president on February 2, 2025, obtained a new cell phone and Apple iPad for Nessco business, neither of which has ever been connected to any ISG account or server, email, or system. Breeland Decl. ¶¶ 3, 6, 7. Mr. Breeland even switched cell phone carriers, canceling his service with AT&T and transferring his number to T Mobile. *Id.* ¶¶ 5-6. He has not used any storage devices containing ISG or MMR information on his Nessco devices and has not accessed his former ISG computer since leaving ISG. *Id.* ¶ 7.

Similarly, Defendant Michael Lowe, formerly a district manager at ISG, resigned from ISG on September 23, 2024, surrendering his ISG computer and email upon his departure. Lowe Decl. ¶¶ 3-4. He later obtained a new cell phone, which, along with his former ISG phone, has been preserved by the forensic examiner. *Id*. ¶¶ 5-6. In the summer of 2022, Mr. Lowe turned over a personal storage device from his MMR employment (which has remained in the possession of the forensic examiner), and it has never been returned to him. *Id*. ¶ 7. Since joining Nessco in November 2024, Mr. Lowe has used a computer issued to him by Viasat Inc. (Nessco's parent company at the time he was hired),[7] that has never been connected to any ISG server or system. *Id*. ¶¶ 9-11. Given these precautions, there is no basis for further discovery regarding Nessco, its employees, or its investors.

---

[7]  Lowe is currently employed by Viasat Inc. In December 2024, an investor completed a "carve-out" acquisition of Nessco from Viasat. The acquisition is under transitions services agreement to become a stand-alone company. Once the Nessco/Viasat transition is completed, Mike Lowe would become an employee of Nessco. *See* Lowe. Decl. ¶ 11; Breeland Decl. ¶ 12.

Lastly, upon investigation, ISG has identified two other former ISG employees who are now employed at Viasat Inc.—Aaron Campise and Bridget Murphy. Mr. Campise and Ms. Murphy have never worked for MMR. Mr. Campise has been employed at Viasat in an engineering supervisor position since October 2024, while Ms. Murphy has been employed there in an administrative and compliance role since November 2024. Neither Mr. Campise nor Ms. Murphy perform any estimating for Viasat, which is the only business function at issue in the case. Both individuals relinquished their ISG laptops and ISG emails upon resignation, and ISG has preserved those accounts and devices. Additionally, both have affirmed that they do not possess any MMR property, documents, or ISG derivatives. Given these facts, there is no basis for any further inquiry into their employment at Viasat.

### III.   ARGUMENT

The scope of discovery is limited to non-privileged information that is relevant to the claims or defenses and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A court has the authority to limit the frequency or extent of discovery when it determines that proposed discovery is not relevant or not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C). Further, a court may for good cause "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also* ECF 160 at 13-14 (precluding discovery into irrelevant information); *Sartin v. Exxon Mobil Corp.*, 2023 U.S. Dist. LEXIS 129892, at *27 (M.D. La. July 23, 2023) ("discovery directed at a litigant's current employer can be a tool for harassment and have a direct negative effect on the litigant's current employment.").

Good cause exists for a protective order to prevent a specific, credible, potential injury. *Blanchard & Co. v. Barrick Gold Corp.*, 2004 WL 737485, at *4-6 (E.D. La. April 5, 2004) (citing

9

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3rd Cir. 1994)).  Due to the potential for abuse of the liberal discovery standards in civil litigation, courts have "broad discretion" to decide "when a protective order is appropriate and what degrees of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  Accordingly, it is within the Court's discretion to limit the scope of discovery to certain matters.  Fed. R. Civ. P. 26(c).

ISG respectfully requests the Court exercise its broad discretion and prohibit further discovery into (1) ISG's valuation, whether sought from ISG, its employees, its investors, or other nonparties; (2) Nessco's business operations, its investors, and/or Mr. Breeland's and Mr. Lowe's employment there; and (3) Highground or any other current or prospective ISG investors.

### A. Valuation Documents Are Not Relevant to Any Claims or Defenses, Warranting A Protective Order.

MMR's continued pursuit of valuation-related discovery—whether from ISG, its investors, or unrelated third parties—is improper, unwarranted, and must be precluded.  ISG's valuation has no bearing on any legitimate damages calculation in this case.  As ISG has consistently maintained—including in its opposition to MMR's motion to compel (ECF 233)—no court has ever used a defendant's valuation as a measure of trade secret damages.  (*See* ECF 233 at 10-14).  Indeed, *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879-81 (5th Cir. 2013), MMR's primary motion to compel authority, makes it clear that the only valuation potentially relevant to damages is the valuation of the plaintiff, not the defendant.  Despite lacking any support for seeking ISG's valuation information, MMR has persisted in demanding documents and asking questions concerning ISG's valuation, including during Mr. Breeland's deposition, in clear disregard of the pre-deposition agreement on appropriate question topics.  *See* Ex. 1; Ex. 2, at 1.

In addition to the questions above (*see supra* at 5-6), MMR's improper focus on ISG's valuation continued when it probed investor-related materials, including ISG investor decks and

10

financial projections sent to a banker at Blue Sky Bank. Despite knowing that communications with the banker and ISG were exclusively related to investment matters, MMR asked: "Why were you sending [the banker] an investor deck and your ISG projection?" (Breeland Dep. 87:21-22). Similarly, MMR further questioned Breeland about Blue Sky as well as Vista Bank, which it knew were potential equity backers for ISG, asking: "So, Vista Bank, and you were trying to go through Blue Sky – Vista Bank is a new debt provider, and then Blue Sky was the potential [equity backer] with High Ground?" (Breeland Dep. 103:25-104:3). These questions, rather than addressing any alleged misappropriation of MMR's trade secrets, were directed at eliciting details about ISG's valuation, financing efforts, and investor relationships—topics that fall squarely outside the scope of permissible discovery. Notably, MMR failed to follow up with any questions connecting these inquiries to MMR or its claims, confirming that its true purpose was to obtain irrelevant financial information rather than pursue legitimate discovery.

Given this ongoing dispute, ISG seeks a protective order to preclude MMR from continuing to pursue valuation-related discovery from ISG, its employees, or any current or future investors.

### B. MMR's Efforts to Obtain Discovery from Nessco Warrants a Protective Order.

MMR's discovery efforts regarding Nessco have no legitimate basis and should be precluded. This Court has consistently emphasized that discovery must be confined to actual claims and defenses, not speculative or tangential matters. In *Caro v. Brown & Brown of Louisiana, LLC*, 2024 U.S. Dist. LEXIS 12450 (M.D. La. Jan. 24, 2024) (Bourgeois, M.J.), Magistrate Judge Bourgeois rejected discovery into an individual's decision to leave one company for another, holding that such inquiries were not relevant where they did not pertain to any claims in the case. Likewise, in this litigation, the Court has already found that the "underlying subjective reasons why former MMR employees left their employment at MMR has no bearing on whether

11

the former MMR employees misappropriated information or worked in concert with ISG to misappropriate information." (ECF 160 at 9). These principles apply with equal force here.

In addition to the questions above (*see supra* at 5-6), MMR's questioning of Mr. Breeland concerning Nessco had no connection to ISG's alleged misappropriation of trade secrets but instead sought details about former ISG employees' career moves, Nessco's business operations, and its investors. *See, e.g.*, Breeland Dep. 72:21-22 ("What happened with the potential deal involving Nessco, Highground and ISG?"); *id.* 78:23-24 ("Mike Lowe has already left to go to Nessco, correct?"); *id.* 86:19-21 ("[W]as [the banker] someone that you-all contacted regarding Nessco – potential Nessco deal?"); *id.* 108:9 ("Are you going to sell your stake at ISG?"); *id.* 108:16-17 ("I want to know how you are going to divest [from ISG]?").

MMR's improper questioning also extended to MAG Capital Partners ("MAG"), the private equity firm that acquired Nessco's parent company in December 2024. *See, e.g.*, Breeland Dep. 66:6 ("MAG Capital Partners, who is that?"); *id.* 74:20-21 ("Have you sent any emails – have you exchanged any e-mails with MAG Capital Partners?"); *id.* 102:18-19 ("How did [MAG Capital Partners] identify you as a potential person to be CEO of Nessco?"); *see also id.* 66:6-67:11, 73:25-76:22, 85:25-86:12, 97:24-98:6; Breeland Decl. ¶ 12; Lowe Decl. ¶ 11. MAG has no connection to this case and no involvement in any of the claims at issue. The mere fact that a private equity firm acquired an international company where a few former ISG employees now work does not justify intrusive discovery into that firm's business dealings. Discovery into an unaffiliated third party, based purely on speculation that it may one day compete with MMR, is precisely the type of overreach that *Caro* and this Court's prior protective order for LSU prohibit. (*See* ECF 160).

12

MMR's entire justification for its improper discovery efforts is built on unfounded speculation. MMR has repeatedly suggested that Nessco is merely a continuation of ISG, referring to it as "ISG 2.0." (*See* ECF 234-2 at 2, 4-5). This claim is baseless. Nessco was founded in 1979 in the United Kingdom and has operated internationally for decades. Breeland Decl. at ¶ 4. It is not a newly created entity founded by former ISG employees, nor is it a direct competitor of MMR. Rather, Nessco primarily operates in international markets, further underscoring that it is not an extension of ISG or a significant competitor to MMR. Breeland Dep. 66:12-24. MMR's attempt to justify invasive discovery by relying on conjecture about Nessco's business activities is improper. *See Travelpass Group, LLC, Partner Fusion, Inc. and Reservation Counter, LLC v. Caesars Entertainment Corp., et al.*, 2021 WL 4032982, at *12 (E.D. Tex. May 11, 2021) (Rule 26 does not "tolerate discovery requests 'based on pure speculation or conjecture.'"); *see also In re All. Pharm. Securities Litig.*, 1995 WL 51189, at *1 (S.D.N.Y. Feb. 9, 1995) (costly discovery requests made to non-parties cannot be based on pure speculation or conjecture).

Even if Nessco were a competitor, MMR's discovery would still be improper because extensive precautions were taken to ensure that no ISG or MMR documents were transferred to Nessco. *See supra* at 6-9. Mr. Breeland and Mr. Lowe have implemented strict measures to ensure that their transition to Nessco did not involve the use of any ISG or MMR materials, including obtaining entirely new devices or exclusively using Nessco-issued computers. *See supra* at 8-9; *see also* Breeland Decl. ¶¶ 3-13; Lowe Decl. ¶¶ 3-12. These steps eliminate any reasonable concern that MMR materials could have been transferred to Nessco.

Given the extensive forensic review ISG has conducted, and the strict measures Mr. Breeland and Mr. Lowe have taken to separate their past employment from their current roles, MMR has no legitimate reason to pursue further discovery into Nessco or its investors.

### C. MMR's Conduct Regarding Highground <u>Warrant a Protective Order</u>

MMR has repeatedly attempted to obtain irrelevant discovery from Highground, despite this Court previously quashing a subpoena served on Highground in 2022 that sought much of the same information. Nevertheless, on January 2, 2025, MMR issued another subpoena duces tecum to Highground, demanding similar information. *See* Highground's Objections and Responses to Subpoena, dated January 16, 2025, Ex. 3; *see also* Ex. 4, Magistrate Order dated Sept. 29, 2022, at 7-10, ECF 19, Action No. 3:22-148-BAJ-RLB related to 22:267-BAJ-RLB.

For numerous reasons described in the 2022 Court Order and repeated in Highground's objections, discovery from Highground is inappropriate and irrelevant. In its 2022 order, the Court quashed MMR's subpoena in part because it imposed an undue burden on Highground and required MMR to first demonstrate its efforts to obtain and identify the requested discovery from the actual parties in this litigation. *See* Ex. 4 at 10. Highground reiterated these same objections in response to MMR's latest subpoena, yet MMR has continued to ignore both the Court's prior ruling and Highground's objections.

In addition to the questions above (*see supra* at 5-6), instead of complying with the Court's directive to seek discovery from ISG or other named defendants in the first instance, MMR has attempted to circumvent these limitations by directing extensive questioning at Mr. Breeland regarding Highground's business, relationships, communications, and investments. MMR's questioning about Highground's potential connections to Nessco and MAG exemplifies its continued disregard for the Court's prior order and its intent to improperly obtain information from a nonparty that has already been shielded from undue discovery. *See, e.g.*, Breeland Dep. 66:25-67:2 ("Is there any relation between MAG Capital Partners and Highground Holdings?"); *id.*

14

128:20 ("Is Highground still involved with ISG?"); *id.* 338:1-4 ("Did you read this to be an instruction from Highground to tell the attorneys what to write about the litigation?").

MMR also inappropriately questioned Mr. Breeland about Chuck Ray, an ISG contractor focused on governance, diligence, and banking relationships, in an attempt to elicit investor-related information that directly violated counsel's pre-deposition agreement. *See, e.g.*, Breeland Dep. 67:20-21, 68:2-3 ("Do you recall . . . who is Chuck Ray . . . was he, like, a consultant at Highground?"); *id.* 69:15-16 ("Well, do you remember sharing Investor Decks with Highground, you and Chuck Ray?"); *id.* 306:16-18 ("And were you responsible for putting together [investor] presentations or was it Highground?"); *id.* 306:21-23 ("So, before [an investor presentation] would go out to a possible investor, Highground would have approved it?").

MMR's repeated efforts to obtain discovery from Highground—despite this Court's prior ruling and Highground's express objections—demonstrate a disregard for the Court's authority and the limits of permissible discovery. Given these tactics, a protective order is necessary to prevent MMR from continuing its efforts to seek discovery from Highground, either directly or indirectly.

## IV.  CONCLUSION

For the foregoing reasons, this Court should a protective Order precluding MMR from propounding discovery requests and asking questions during depositions regarding: (i) ISG's business valuations; (ii) ISG's investors, including but not limited to nonparty Highground Holdings LLC (iii) nonparty Nessco Group Holdings except for the limited purpose of confirming whether there are any MMR-related documents in Nessco's possession; and (iv) Nessco's nonparty employees and investors.

Dated: February 17, 2025

                                              Respectfully submitted,
                                              **DUNLAP FIORE LLC**

                                              /s/ Jennifer A. Fiore
                                              Jennifer A. Fiore (Bar # 28038)
                                              Erin G. Fonacier (Bar # 33861)
                                              6700 Jefferson Hwy, Building #2
                                              Baton Rouge, LA 70806
                                              Telephone: 225-282-0660
                                              Facsimile: 225-282-0680
                                              jfiore@dunlapfiore.com
                                              efonacier@dunlapfiore.com

                                              **SEIDEN LAW LLP**

                                              /s/ Michael T. Stolper
                                              Michael T. Stolper (Admitted Pro Hac Vice)
                                              Xintong Zhang (Admitted Pro Hac Vice)
                                              322 Eighth Avenue, Suite 1200
                                              New York, NY 10001
                                              Telephone: 212-337-3502
                                              mstolper@seidenlaw.com
                                              xzhang@seidenlaw.com

                                              *Attorneys for JB Group of LA, LLC d/b/a Infrastructure Solutions Group, Jason Yates, Travis Dardenne, David Heroman and Michael Lowe*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice to all counsel on this 17th day of February 2025.

                                        /s/ Jennifer A. Fiore
                                          Jennifer A. Fiore