UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MMR CONSTRUCTORS, INC.**                                            **CIVIL ACTION**

**VERSUS**                                                                         **NO. 22-267-BAJ-SDJ**

**JB GROUP OF LA, LLC, ET AL.**

## ORDER

Before the Court is Defendants' Motion to Compel. (R. Doc. 208). The motion is opposed. (R. Doc. 214).

**I.    Background**

MMR Constructors, Inc., commenced this action by filing a Complaint seeking damages and injunctive relief against JB Group of LA, LLC *d/b/a* Infrastructure Solutions Group and former MMR employee David Heroman. (R. Doc. 1). MMR alleges that ISG and certain employees stole MMR's trade secrets and confidential business information. MMR seeks relief under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq.*, the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq.*, the Louisiana Unfair Trade Practice Act, La R.S. 51:1401 *et seq.*, and various torts under Louisiana law. The district judge granted MMR's Motion for Temporary Restraining Order, which sought immediate injunctive relief prohibiting Defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information and set a preliminary injunction hearing. (R. Doc. 7; *see* R. Doc. 16).

After the parties identified the electronic accounts and devices at issue, the district judge entered a Stipulated Preliminary Injunction and required the parties to submit an agreed-upon forensic protocol. (R. Doc. 23).

Since the commencement of this action, MMR has named as Defendants four additional former MMR employees (in addition to Heroman) who departed for ISG: Kasey Kraft, Jason Yates, Michael Lowe, and Travis Dardenne. (R. Docs. 29, 53). Among other things, MMR alleges that these individual Defendants "accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor," and that ISG profited from these unlawful misappropriations and deceptive trade practices. (R. Doc. 53 at 25-27).

The Court has entered a Protective Order governing the exchange of confidential information. (R. Doc. 42). The Court has also approved a Forensic Protocol in this action for the purposes of discovering allegedly misappropriated information. (*See* R. Docs. 26, 45, 101). After various extensions, the Court set the deadline to complete non-expert discovery in this action on November 30, 2024. (R. Doc. 148).

On November 27, 2024, MMR filed a Motion to Amend Scheduling Order, which sought an extension of the discovery deadlines given various delays regarding the completion of depositions, delays resulting from the Special Master's efforts to negotiate the terms of the Remediation and Monitoring Protocol, and delays resulting from the enrollment of new counsel for ISG. (R. Doc. 206). After detailing these delays, MMR sought an extension of the discovery deadline given the outstanding depositions of various third-party entities and individuals, the depositions of individual Defendants (Kraft, Heroman, Dardene, Lowe, and Yates), and the Rule 30(b)(6) deposition of ISG and depositions of its employees Kevin Alexander, Shawn Breeland, and Laiton McCaughey. (R. Doc. 206-1 at 5). MMR's motion did **not** seek any specific extension

of the deadlines to file motions pertaining to outstanding written discovery after the November 30, 2024 deadline. Given these representations pertaining to the need to conduct additional **depositions**, the district judge granted the motion, reopening and continuing discovery without date. (R. Doc. 207).

On December 9, 2024, ISG, Yates, Dardenne, Heron, and Lowe (collectively, "Defendants") filed the instant Motion to Compel. (R. Doc. 208). Defendants seek an order compelling supplemental responses to various discovery requests, including ISG's First Set of Requests for Production served on July 29, 2022; ISG's Second Set of Requests for Production to MMR served on April 20, 2023; ISG's Third Set of Requests for Production to MMR served on September 18, 2023; ISG's Fourth Set of Requests for Production to MMR served on May 2, 2024; ISG's Fifth Set of Requests for Production to MMR served on May 17, 2024; ISG's Sixth Set of Requests for Production served on May 23, 2024; and Yates' First Set of Interrogatories to MMR served on September 18, 2023. (*See* R. Doc. 208 at 2; R. Doc. 208-2 at 2-3).

Defendants argue that they are seeking supplemental production of documents with respect to four broad categories of documents and information: (1) "MMR's Internal Communications"; (2) "MMR's Use of Publicly Available Information"; (3) "MMR Disclosing it's Purported 'Trade Secrets'"; and (4) "MMR's Insufficient Effort to Protect Internal Information." (R. Doc. 208-1 at 2-11). Plaintiff and Defendants raise various representations regarding how discovery has been conducted in this action between the parties beyond the scope of the written discovery requests in dispute. (*See* R. Doc. 208-1 at 1-2; R. Doc. 214 at 1-6). The parties also dispute whether, and to what extent, there have been asymmetrically larger productions of documents by ISG in this action. (R. Doc. 214 at 19 n.11).

Defendants do not explain why they did not bring an appropriate Rule 37 motion with respect to these written discovery requests prior to the November 30, 2024 deadline to complete non-expert discovery, even though some discovery requests were served over two years earlier.[1] Defendants submit a declaration of ISG's counsel referencing discovery conferences held in April 18, 2023, May 27, 2023, and November 17, 2023, but this declaration provides no explanation why the discovery disputes raised in the instant motion were not diligently raised prior to any of the various **previous** deadlines to complete non-expert discovery in this action: July 7, 2023 (R. Doc. 35); November 30, 2023 (R. Doc. 80); and May 30, 2024 (R. Doc. 106). (*See* R. Doc. 208-2 at 3). Given that the district judge reopened discovery without limitation, however, the Court will address the merits of the instant motion. While the Court has set a **fourth extended deadline** to complete non-expert discovery by April 30, 2025 (R. Doc. 244), the Court will not entertain additional discovery motions pertaining to written discovery requests served prior to the previous discovery deadline of November 30, 2024.

Furthermore, the Court observes that Defendants have failed to fully comply with Local Rule 37 by quoting verbatim **each** written discovery request and response or objection at issue. *See* LR 37. In addition, Defendants argue that MMR's responses consist of "boilerplate objections" that are "evasive" by their very nature without once quoting or discussing any specific objections or responses. (*See* R. Doc. 208-1 at 10). Finally, rather than identify and quote all of the specific discovery requests at issue, Defendants provide "examples" with respect to each category of information at issue. The Court will limit its discussion to the actual discovery requests and responses in dispute that have been specifically raised and discussed in the instant Motion to

---

[1] In fact, MMR now represents that when it discussed a possible extension of the discovery deadline, ISG "took the position that no such extension was needed and that discovery should be considered complete." (R. Doc. 214 at 5).

4

Compel. The Court will not compel supplemental responses to document requests that have not been specifically addressed in briefing.

## II.     Law and Analysis

### A.     Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed to discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

5

A party must respond or object to a request for production within thirty days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.    Analysis**

**1.    MMR's Internal Communications**

Defendants first seek an order compelling MMR to produce its "internal communications" from the dates January 1, 2020, to April 23, 2022. (*See* R. Doc. 208-1 at 2-4). While Defendants only quote verbatim ISG's Request for Production No. 1 (Second Set), they also appear to seek supplemental responses to ISG's Request for Production No. 13 (First Set), ISG's Request for Production No. 14 (First Set), and ISG's Request for Production No. 1 (Sixth Set). (*See* R. Doc. 214 at 18-20).

The first set of discovery requests and responses concern communications between MMR's in-house counsel, Matt Welborn, and the Defendant Jason Yates:

> **ISG's Request for Production No. 1 (Second Set)**
> Provide a copy of all Documents reflecting, concerning, or relating to communications between Matt Welborn and Jason Yates referencing, concerning, or relating to ISG (including, but not limited to, communications in or about early 2021 relating to the contract from Jefferson Parish to ISG for the Causeway Lighting Project and contract from Boone Construction to ISG for the Baton Rouge Airport Lighting Project).

6

> **Response**
> MMR objects to this request because it is overbroad and because—apart from the parenthetical contained therein—it fails to identify the documents sought with reasonable particularity. MMR further objects to this request as requiring time and effort to respond that is not proportional to the needs of the case, particularly because Mr. Yates himself (and thus ISG) is in possession of any responsive communications. Subject to and without waiving this objection, MMR will search for communications between Mr. Yates and Mr. Welborn concerning ISG's involvement in the two referenced projects and will produce (if located) responsive documents on a rolling basis.

(R. Doc. 208-5 at 1-2).

At his deposition, Yates testified that in 2021 he had invested in ISG and he "actually brought a contract that has [Mr. Welborn's] comments, had him look at it on that job, which was Causeway or Boone or one of them." (R. Doc. 119-3 at 3). Defendants argue that correspondence between Yates and Welborn would prove "MMR's knowledge and consent to Yates' use of MMR files came about according to Yates because he started ISG while working at MMR with MMR's knowledge and consent." (R. Doc. 208-1 at 3). MMR represents that "there are no communications to produce that in any way suggest that Mr. Welborn was aware that Mr. Yates had used and was intending to launch ISG from the use of MMR's trade secrets," but it would nevertheless produce "the communication" between Yates and Mr. Welborn. (R. Doc. 214 at 20).

Having reviewed the arguments of the parties, the Court will limit the required production to email communications between Yates and Mr. Welborn that are related to the Causeway Lighting Project and Baton Rouge Airport Lighting Project discussed in the parenthetical of the request for production. Yates asserts in his Answer that "MMR supervisors, MMR co-workers, MMR stockholders, and MMR's corporate counsel were aware of Yate's involvement with ISG and on occasion assisted Yates with ISG-related business." (R. Doc. 75 at 8). Defendants have not, however, identified any other projects for which there may be responsive communications. Requiring MMR to review all of its internal communications between Yates and Mr. Welborn to

7

determine whether they concern ISG is disproportionate to the needs of this case.

The next set of discovery requests and responses concern communications between two senior MMR officials, Pepper Rutland and John Clouatre, with MMR employees broadly related to the allegations in this lawsuit:

> **ISG's Request for Production No. 13 (First Set)**
> Produce the Documents and Communications that John Clouatre exchanged with MMR employees that relate to Your allegations in the Lawsuit.
>
> **Response**
> MMR objects to this request to the extent it seeks documents protected by attorney-client privilege and/or work product doctrine. Further, MMR objects to this request as overbroad in not seeking specified allegations. Subject to and without waiving these objections, any communications that Mr. Clouatre would have exchanged with MMR employees would have been with counsel or at the direction of counsel in anticipation of, or to further, this litigation. However, MMR will conduct a search to determine whether there are relevant communications not protected by a privilege.

(R. Doc. 208-3 at 6).

> **ISG's Request for Production No. 14 (First Set)**
> Produce the Documents and Communications that James B. "Pepper" Rutland exchanged with MMR employees that relate to Your allegations in the Lawsuit.
>
> **Response**
> MMR objects to this request to the extent it seeks documents protected by attorney-client privilege and/or work product doctrine. Further, MMR objects to this request as overbroad in not seeking specified allegations. Subject to and without waiving these objections, any communications that Mr. Rutland would have exchanged with MMR employees would have been with counsel or at the direction of counsel in anticipation of, or to further, this litigation. However, MMR will conduct a search to determine whether there are relevant communications not protected by a privilege.

(R. Doc. 208-3 at 6-7). The Court will sustain MMR's objection to these document requests on the ground that they are not described with reasonable particularity. In short, it is unclear from the request what communications pertaining to this lawsuit that ISG is seeking. That said, MMR has agreed to conduct a search to local non-privileged responsive documents. Given this assertion, the

8

Court will require MMR to identify its efforts to locate non-privileged responsive documents and to produce any such documents.

Finally, without even identifying the specific document request (or set of document requests) at issue, Defendants appear to seek an order compelling compliance with Request for Production No. 1 (Sixth Set), again without addressing MMR's response and objections:

> **ISG's Request for Production No. 1 (Sixth Set)**
> Forensic copies of the cellphone and computers used by Kevin Alexander during his employment with MMR.
>
> **Response**
> MMR objects to this request because it seeks irrelevant information and is not proportional to the needs of the case. Forensic copies of the cellphone and computer that Kevin Alexander used during his employment with MMR would include every document and piece of information that is available on those devices, regardless of whether the documents and information had any connection to the claims and defenses in this case. Specifically, the only claims in this case relate to the misappropriation of MMR's protected information, but this request is not tailored in any way to those claims (or defenses to those claims). In fact, even for the devices that are subject to the Forensic Protocol that is geared toward discovering the *actual* misappropriated documents and information, forensic copies of the devices are not discoverable and have not been exchanged. Ultimately, this request does not seek relevant documents from these devices in a manner that is proportional to the needs of the case.
>
> MMR is withholding the creation and/or production of forensic copies of these devices.

(R. Doc. 208-10). The Court agrees with MMR that the request for complete "forensic copies" of electronic devices without any applicable search terms is beyond the scope of discovery. That said, MMR has agreed to produce "communications from the cellphone that MMR issued to Mr. Alexander that contain the term 'ISG' or were exchanged with Mr. Yates." (R. Doc. 214 at 18). The Court will not require any further production.

### 2. MMR's Use of Publicly Available Information

Defendants seek an order compelling MMR to produce documents "relating to any comparison or analysis of NECA unit rates used by MMR between January 1, 2020 and December

9

31, 2021," a narrowed version of the original Request for Production No. 5 (Second Set). (R. Doc. 208-1 at 5) (quoting R. Doc. 208-15)). Defendants represent that they seek this information based on testimony from three former MMR employees in support of ISG's motion to vacate the preliminary injunction, "who explained how the data MMR uses in its estimating process – the data upon which the injunction is based – is not proprietary and is actually based on public available data from a subscription service offered by the National Electrical Contracts Association ('NECA')." (R. Doc. 208-1 at 4).

The request for production, and response, at issue are as follows:

**ISG's Request for Production No. 5 (Second Set)**
Provide a copy of all Documents referencing, concerning, or relating to National Electrical Contractors Association ("NECA") unit rates and/or NECA labor rates.

**Response**
MMR objects to this request because it is overbroad, including in temporal scope, and because it fails to identify the documents sought with reasonable particularity and instead asks for any and all Documents that have ever mentioned NECA rates, no matter how tangential to the claims and defenses at issue in the above-captioned lawsuit. MMR further objects to this request as requiring time and effort to respond that is not proportional to the needs of the case. MMR currently has nearly 5,000 employees and has had several thousand employees since it
began. The burden for MMR to search through repositories relating to thousands of potential custodians, without any date limitation, outweighs the probative value of discovering documents that reference a trade association's rates.
MMR is withholding a search based on these objections.

(R. Doc. 208-4 at 3-4).

The Court will sustain MMR's objection to this document request, even as narrowed, on the ground that the information sought is not described with reasonable particularity. MMR represents, contrary to Defendants' assertions that ISG's estimating tools incorporate publicly available data offered by NECA, that "MMR's database is based on an accumulation of trial-and-error experience, lessons learned when installations take longer or are more efficient than the relied-upon labor units at bid time, and general know-how acquired over MMR's thirty years of

10

work within the E&I construction industry." (R. Doc. 214 at 12). Regardless, the Court will not require MMR to search its electronic databases for every reference to NECA's unit and labor rates, particularly given Defendant's failure to address the <u>specific</u> objections raised by MMR in its response.

### 3.     MMR's Disclosure of Trade Secrets

Defendants seek supplemental responses to discovery requests seeking information regarding MMR's possession and alleged misappropriation of competitor's confidential business information. (R. Doc. 208-1 at 5-8). Defendants argue that this information falls within the scope of discovery because "[o]ne of ISG's contentions in response to MMR's trade secret claim is that certain of MMR's alleged 'proprietary' documents, templates and date – in particular relating to pricing and bidding information – is actually shared among customers and competitors alike." (R. Doc. 208-1 at 5). While Defendants reference several written discovery requests made over the course of over two years,[2] the only discovery requests (without any reference to Plaintiff's responses or objections) specifically quoted in the motion are as follows.

First, Defendants seek supplemental responses with respect to competition information that MMR has in its possession:

---

[2] Defendants reference, without quoting or discussing the **particular** discovery requests and responses at issue: ISG's First Set of Requests for Production Nos.. 35, 41; ISG's Third Set of Requests for Production No. 15; ISG's Fourth Set of Requests for Production No. 21; ISG's Fifth Set of Requests for Production Nos. 1-6; Yates' Interrogatory No. 10; and ISG's Amended Interrogatories Nos. 5, 6, 9, 10. (*See* R. Docs. 208-1 at 7-8). To the extent Defendants seek relief with respect to these written discovery requests, that relief is denied given that Defendants failed to comply with Local Rule 37 and otherwise failed to even attempt to establish that MMR's objections and responses with respect to these discovery requests were insufficient. Furthermore, as discussed below, Defendants have not established that supplemental productions, in general, should be required with respect to MMR's alleged improper disclosure of its own trade secrets.

11

**ISG's Request for Production No. 14 (Second Set):**[3]
Provide a copy of all Documents reflecting or relating to the disclosure outside of MMR of any overhead top sheets, labor and material sheets, estimates, change logs, job analyses, contracts, change orders, s-curves, timekeeping documents, Quality Assurance/Quality Control manuals, employee handbooks, safety manuals, and/or customer proposals from the date when any of the Defendants commenced employment with MMR, through the present.

**Response**
MMR objects to this request for the same reasons that it objected to Amended Interrogatory Nos. 5-10. This request, though, is even broader and is not specifically tied to the documents that MMR has identified as its trade secrets and confidential business information. MMR explained when the broad categories of documents included in this request would be shared (if ever) within the context of a confidential business relationship. But this request would require MMR to produce every "contract," "estimate," "customer proposal," and "change order" that it ever provided to a customer since its inception in 1991. The expense and burden to undertake such a search to locate "all" responsive documents far outweighs the probative value associated with the documents that ISG and the other named defendants have misappropriated in this case. MMR is withholding a search for responsive documents based on these objections.

(R. Doc. 208-5 at 7-8).

**Yates' Interrogatory No. 10:**
Identify and describe in detail each instance in which MMR (including but not limited to Jason Templet, Vance Mitchell, Wayne Radley, John Clouatre, Mike Kee, and/or Pepper Rutland) possessed, used, and/or disclosed documents of a competitor of MMR (including, but not limited to, ISC Constructors) documents or information (including, but not limited to, to bid on any project or contract), including the Identity of the MMR individuals involved in such possession, use, and/or disclosure, the type of information possessed, used, and/or disclosed, and how.

**Answer:**
MMR objects to this request as not proportional to the needs of the case, as MMR [sic] there is no cause of action or allegation against MMR. Further, the defendants in this case continue to ask for information in discovery relating to some perceived issue with ISC Constructors, but MMR did not use, possess, or receive any documents of ISC Constructors.

(R. Doc. 208-7 at 6-7).

---

[3] Defendants incorrectly reference this Request for Production as part of ISG's Third Set of Requests for Production. (*See* R. Doc. 208-1 at 7 n. 30).

**ISG's Request for Production No. 34 (First Set):**
Provide a copy of all Documents reflecting or relating to the disclosure outside of MMR of any Greensheets.

**Response**
MMR objects to this request as being not proportional to the needs of the case. "MMR" is defined as "all present or former directors, owners, attorneys, employees, agents, accountants, contractors, consultants, successors, assigns, or representatives," and the request contains no limitation on the custodians or otherwise contain a reasonable limitation to the MMR's inquiry. Subject to and without waiving these objections, MMR does not disclose its Greensheets outside of MMR as a matter of course, and to the extent Defendants believe otherwise or have information suggesting otherwise, MMR will conduct an inquiry and supplement this response.

(R. Doc. 208-3 at 14).

**ISG's Amended Interrogatory No. 5 (Amended First Set):**
Identify all persons and/or entities, outside of MMR, with whom any MMR Officer, Manager, Project Manager, Salesperson, or Estimator (or anyone else with the knowledge of any such individual) have at any time shared or divulged information and/or Documents you identified in your response to Interrogatory No. 4.

**Answer:**
MMR incorporates its prior response to the original Interrogatory No. 5. This interrogatory, as amended, still requires time and expense to respond that is not proportional to the needs of the case. Forensic examinations have demonstrated that the Defendants misappropriated several thousand documents containing MMR's confidential information and trade secrets. Those documents are identified on remediation lists, as well as in response to Interrogatory Nos. 4 and 8, and these documents fall within general categories, including estimating tools, financial documents, customer information, customer contact lists, customer proposals, internal procedures and safety-related documents, and customer specific documents. The time and expense of trying to track down, without any date limitation, whether each individual file was shared with a person or entity outside of MMR far outweighs the probative value of such information.

Subject to and without waiving these objections, MMR states that its estimating tools, price build-ups, project tracking tools, and financial documents were not, to MMR's knowledge, shared with third parties and that, if any such document was ever shared with a third party, it was done within a confidential business relationship for MMR's benefit, not a third-party competitor's benefit or future use. Further, the customer proposals and customer-specific documents were, to MMR's knowledge, shared with the identified customers in the context of a confidential business relationship and expectations of privacy. These documents were shared exclusively for MMR's benefit and were not made public for the general public's consumption or use. The same is true for MMR's internal procedures and safety-related documents. In sum, if any misappropriated file was shared with a third-party in the ordinary course of MMR's business and with

>authorization, the legitimate business expectation would have been—and remains—that the information be used solely for the benefit of MMR's relationship with that third party.

(R. Doc. 208-4 at 1-2).

As an initial matter, MMR represents that this category of documents was resolved after MMR agreed to produce documents relating to ISC Constructors, the one competitor that ISG identified as having a former employee hired by MMR who was improperly in possession of its company data. (R. Doc. 214 at 13). MMR suggests that the category of documents was resolved when MMR produced documents demonstrating that MMR had investigated ISC Constructors' concerns and "adequately determined that the former employee was not in possession of such information." (R. Doc. 214 at 13). Among other things, MMR suggests that the discovery in this category is irrelevant because there is no counterclaim in this action asserting that MMR has misappropriated any competitor's information. (R. Doc. 213 at 14).

It is possible that MMR's own use of competitor information, including shared pricing and bidding information, could be relevant to determining whether the information and documents claimed by MMR to constitute "trade secrets" are, in fact, subject to such protection. That said, the Court sustains MMR's objections to the discovery requests based on proportionality and otherwise finds that MMR has met its obligations in responding to the interrogatories.

With respect to the foregoing requests for production, MMR has explained that it does not generally share its estimating tools (green sheets/oht sheets), job analysis program (with the exception of specific reports generated by the program), and timekeeping program (with the exception of specific timekeeping reports generated by the program) outside of its company. (R. Doc. 214 at 15-16). Furthermore, MMR represents that it does not generally share its employee handbook and Safety and QA/QC Manuals and Plans outside of its company. (R. Doc. 214 at 17). The Court agrees with MMR that the document requests, as drafted, seek a disproportionate production of documents outside of the

scope of discovery. In essence, Defendants are requesting MMR to review all of its documents and electronically store information to determine whether there are unidentified instances where MMR has disclosed its proprietary information outside of its company.

Other than the purported instance regarding ISC Constructors, which appears resolved, Defendants do not identify any specific instance in which MMR has improperly disclosed its own trade secrets. In support of its position, MMR submits the testimony of one of MMR's competitors providing that certain information is "industry knowledge" and that certain customers share the bids of other competitors. (R. Doc. 208-1 at 6). But the Court finds it disproportionate to the needs of this case to require MMR to review all of its documents and electronically stored information to determine whether, and to what extent, it has made such disclosures regarding information it does not, as a matter of course, disclose. It is sufficient, absent any tangible evidence of improper disclosures, that MMR has admitted that certain generated reports, as well as customer bids and proposals by their very nature, are produced to specific customers. (*See* R. Doc. 214 at 14-15).

### 4.     MMR's Effort to Protect Internal Information

Finally, Defendants seek supplemental responses and productions with respect to whether MMR took reasonable steps to protect its trade secrets. As with the previous written discovery requests at issue, Defendants fail to address any of the specific objections and responses made by MMR. The discovery requests and responses at issue are as follows.

First, Defendants seek supplemental responses to written discovery pertaining to the departure of MMR employees and efforts to ensure that those employees did not take proprietary information. The documents requests and responses are as follows:

**ISG's Request for Production No. 19 (Fourth Set)** [4]
Documents or communications concerning any exit interview of the Former MMR Employees.

**Response**
MMR objects to this request as not proportional to the needs of the case. The definition of "Former MMR Employees" includes thirty-seven individuals (some of whom were never MMR employees), many of whom did not depart under suspicious circumstances. As MMR answered in response to Amended Interrogatory No. 13, MMR manages the exit process for departing employees on a case-by-case basis, by the departing employees' supervisors and/or managers, and varies across departments. Thus, MMR does not deploy a standard exit interview form, but instead entrusts supervisor and/or manager to handle the final communications with a departing employee. For instance, Ben Huffman testified in this case about the conversation he had with his supervisor after he notified MMR that he was resigning: the contents of this conversation were not documented but the participants to the conversation can provide testimony about what was discussed. However, under circumstances where MMR learns about suspicious pre-separation computing activity or knows that an employee is leaving to join a direct competitor, MMR has reminded such departing employees about their obligation to return company property and abide by post-employment contractual obligations (even though MMR's policies require them to do so without this additional notice), including those related to confidentiality and non-disclosure of information. Under those circumstances, MMR has also sent formal letters to departing employees, through counsel, and/or initiated legal proceedings to protect its rights. Some examples, in addition to the individual defendants (like David Heroman and Kasey Kasey) here, include Tyler Freeman, Michael Buchanan, Mitchell White, and James Jarwin. These individuals are not, however, listed in the definition of "MMR Former Employees."

      Subject to and without waiving these objections, MMR refers Defendants to the personnel files that it has produced in this case. If a document exists that summarized the contents of an exit interview, it would likely have been included in those files. MMR also refers Defendants to the testimony of Ben Huffman. Further, MMR will continue to search for documents that may have captured the contents of an exit interview with a named defendant.

(R. Doc. 208-8 at 14-15).

**Yates' Interrogatory No. 7**
Please Identify any employees who have left MMR's employment, from 2021 forward, by the employee position, employee name, and date, the stated reasons for leaving, and the individual's next employer(s) after MMR.

---

[4] Defendants incorrectly reference this Request for Production as part of ISG's Third Set of Requests for Production. (*See* R. Doc. 208-1 at 7 n. 38).

**Answer:**

MMR objects to this interrogatory as not proportional to the needs of the case. The names, position, termination date, and reason for leaving of individuals whose employment ended during a three-year period has no probative value, as it does not tend to prove or disprove any relevant facts in this case.

(R. Doc. 208-7 at 5).

**ISG's Amended Interrogatory No. 18**
Identify and Describe each instance in which MMR ensured that MMR information was deleted from any employee-owned device such as mobile phones, external hard drives, and/or other storage devices for any who left anytime after 2017.

**Answer:**
MMR incorporates its prior objections and response to the original Interrogatory No. 18. MMR further objects because the time period added to this interrogatory, as amended, is overbroad and therefore seeks irrelevant information. MMR further objects because this interrogatory, even as amended, continues to impose a burden that is not proportional to the needs of the case, particularly considering MMR has, at this time, over 4,700 employees, which gives insight into how many employees could be at issue over nearly a six-year period.

     Subject to and without waiving these objections, MMR states that it has policies in place against misusing its protected information, which includes prohibiting the disclosure and/or use of protected information—regardless of whether it resides on a personal device [or] MMR-issued device—for anything other than the benefit of MMR. Former employees are required to ensure that all MMR information in their possession is returned to MMR, which includes returning any external storage devices that they have used during their employment with MMR and that contains MMR information. Further, upon an employee's departure, MMR removes access to the email accounts from employee-owned cellphones, such that those employees can no longer access the emails or data that resides in those accounts, and MMR's IT personnel monitors "active accounts" against "inactive" personnel in MMR's HR platform to ensure that departing employees' access has been timely removed.

(R. Doc. 208-4 at 7).

With respect to Yates' Interrogatory No. 7, the Court sustains MMR's objections with respect to proportionality. Defendants have made no showing how or why the identification of all MMR departures since 2021 will result in the discovery of admissible evidence. And even if MMR were to identify any additional employees who departed, it is unclear how Defendants could use such information in this action to conduct any further discovery with respect to such employees.

Yates served this interrogatory on September 18, 2023. This issue could have been timely raised prior to the Court's previous discovery deadlines. Even if the Court was to require MMR to provide the information sought, MMR has not explained how the identification of additional former employees would lead to admissible evidence, particularly given the close of discovery is soon approaching. (*See* R. Doc. 244).

The Court will also sustain MMR's objections with respect to ISG's Amended Interrogatory No. 18. The interrogatory is overly broad to the extent it seeks information regarding all efforts made since 2017 to ensure that proprietary information was not removed from MMR by departing employees. MMR's response provides sufficient information with respect to its general policies regarding departing employees. It is disproportionate to the needs of this case to require MMR to describe in any detail the particular efforts made with respect to all departing employees since 2017.

Finally, the Court will require MMR to provide a supplemental production in response to Request for Production No. 19 to the extent documents or communications concerning exit interviews of any of the named individual defendants have not been produced. The original request seeks information regarding the exit interviews of "Former MMR Employees," which the response suggests includes thirty-seven individuals (some of whom were never MMR employees)." (R. Doc. 208-8 at 14).[5] MMR must conduct a diligent search for any responsive exit interview information with respect to individual defendants and produce such information. If no additional information is found after a diligent search, then MMR must inform the Defendants and identify the efforts made to locate additional responsive documents.

---

[5] Defendants do not submit a copy of the original request defining "Former MMR Employees" and make not attempt to provide a definition in support of their motion.

The two remaining discovery requests pertain to documents and information regarding MMR's engagement with an HR Firm to address MMR's policies relating to employee retention, with MMR providing identical objections to each request:

> **ISG's Request for Production No. 8 (Fifth Set)**
> The contract or engagement letter with the HR Firm, or documents reflecting the scope of the HR Firm' engagement.
>
> **ISG's Request for Production No. 9 (Fifth Set)**
> Any reports or documents reflecting the results of the HR Firm's engagement.
>
> **Response:**
> MMR objects to this request because it does not seek relevant information. The requested documents have zero relevance here, as there is no *claim* or *defense* in this case that in any way relates to a purported "outside firm that MMR retained after January 1, 2020 to advise on employee retention related issues." This is a theft-of-information case that has *nothing* to do with a purported outside consultant on employee retention. Further, MMR did hire such an outside consultant.

(R. Doc. 208-9 at 10-11).

It appears that the foregoing response mistakenly states that MMR **did** hire an outside HR consulting firm. MMR now represents that its counsel has explained to defense counsel that "MMR **did not** hire any 'HR Firm'" and that any assistances regarding its employment policies would have been through its own employment attorneys, and, therefore, attorney-client privileged. (R. Doc. 214 at 8) (emphasis added).

MMR shall clarify its response by identifying whether any contract or engagement with an HR Firm was made. But even if such a contract or engagement was made, the Court finds the information sought to be irrelevant to the claims and defenses in this litigation. Whether MMR hired an outside consulting firm with respect to its human resources practices is not at issue in this litigation. At most, Defendants would be entitled to the production of MMR's policies pertaining to exit interviews, whether drafted in consultation with an outside firm or not.

In response to Request for Production No. 19, MMR has stated it does not deploy a standard exit interview form. To the extent MMR has withheld specific written policies pertaining to exist interviews, however, it must produce this information in response to Request for Production No. 19.

### III. Conclusion

For the foregoing reasons,

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel (R. Doc. 208) is **GRANTED IN PART and DENIED IN PART** as discussed in the body of this Order. The parties shall bear their own costs. MMR shall provide supplemental responses and productions within **14 days** of the date of this Order unless otherwise agreed upon by the parties.

Signed in Baton Rouge, Louisiana, on April 7, 2025.

*[signature: Scott Johnson]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**