## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

MMR CONSTRUCTORS, INC.                              CIVIL ACTION

VERSUS                                             NO. 22-267-BAJ-SDJ

JB GROUP OF LA, LLC, ET AL.

### ORDER

Before the Court is Plaintiff's Spoliation Motion (R. Doc. 219) and Motion to Compel Documents for MMR's Third Set of Requests for Production to ISG (R. Doc. 220). The Motions are opposed. (R. Doc. 229). MMR has filed a reply memorandum in support of its Spoliation Motion. (R. Doc. 243).

I.      **Background**

MMR Constructors, Inc. commenced this action by filing a Complaint seeking damages and injunctive relief against JB Group of LA, LLC *d/b/a* Infrastructure Solutions Group and former MMR employee David Heroman. (R. Doc. 1). MMR alleges that ISG and certain employees stole MMR's trade secrets and confidential business information. MMR seeks relief under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq*., the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq*., the Louisiana Unfair Trade Practice Act, La R.S. 51:1401 *et seq*., and various torts under Louisiana law. The district judge granted MMR's Motion for Temporary Restraining Order, which sought immediate injunctive relief prohibiting the defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information, and set a preliminary injunction hearing. (R. Doc. 7; *see* R. Doc. 16).

After the parties identified the electronic accounts and devices at issue, the district judge entered a Stipulated Preliminary Injunction and required the parties to submit an agreed-upon forensic protocol. (R. Doc. 23).

Since the commencement of this action, MMR has named as defendants four additional former MMR employees (in addition to Heroman) who departed for ISG: Kasey Kraft, Jason Yates, Michael Lowe, and Travis Dardenne. (R. Docs. 29, 53). Among other things, MMR alleges that these individual Defendants "accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor," and that ISG profited from these unlawful misappropriations and deceptive trade practices. (R. Doc. 53 at 25-27).

The Court has entered a Protective Order governing the exchange of confidential information. (R. Doc. 42). The Court has approved a Forensic Protocol in this action for the purposes of discovering allegedly misappropriated information. (*See* R. Docs. 26, 45, 101). After various extensions, the Court set the deadline to complete non-expert discovery in this action on November 30, 2024. (R. Doc. 148).

On November 27, 2024, MMR filed a Motion to Amend Scheduling Order, which sought an extension of the discovery deadlines given various delays regarding the completion of depositions, delays resulting from the Special Master's efforts to negotiate the terms of the Remediation and Monitoring Protocol, and delays resulting from the enrollment of new counsel for ISG. (R. Doc. 206). After detailing these delays, MMR sought an extension of the discovery deadline given the outstanding depositions of various third-party entities and individuals, the

depositions of individual defendants (Kraft, Heroman, Dardene, Lowe, and Yates), and the Rule 30(b)(6) deposition of ISG and depositions of its employees Kevin Alexander, Shawn Breeland, and Laiton McCaughey. (R. Doc. 206-1 at 5). MMR's motion did **not** seek any specific extension of the deadlines to file motions pertaining to outstanding written discovery after the November 30, 2024 deadline. Given these representations pertaining to the need to conduct additional **depositions**, the district judge granted the motion, reopening and continuing discovery without date. (R. Doc. 207).

On January 8, 2025, MMR filed its Spoliation Motion, which seeks a finding that ISG spoliated evidence and that an adverse inference should be imposed as a remedy. (R. Doc. 219). Specifically, MMR claims that Ben Huffman, a former MMR Project Controls Director who resigned to work for ISG on March 7, 2022, can no longer locate numerous external storage devices (*i.e.*, flash drives or external hard drives) identified by the forensic examiner. MMR seeks a ruling holding ISG responsible. In opposition, ISG argues that it was never in control of, and had no duty to preserve, these external storage devices, and that ISG did not intentionally destroy the external storage devices in bad faith. (R. Doc. 229 at 8-10). MMR has filed a reply memorandum to address these arguments. (R. Doc. 243).

On January 9, 2025, MMR filed its Motion to Compel, which seeks an order compelling ISG to produce electronically stored information responsive to MMR's Third Set of Requests for Production served on March 14, 2024. (R. Doc. 220). MMR's document requests seek the production of the ESI contained in certain folders identified through the forensic examination of ISG-issued computers used by Huffman. In opposition, ISG argues that its production of ESI should be limited to the ESI specifically identified by the search terms agreed upon by the parties,

and authorized by the Court, pursuant to the Forensic Protocol, as amended. (R. Doc. 229 at 10-13).

MMR does not explain why it did not bring an appropriate Rule 37 motion with respect to the foregoing written discovery requests prior to the November 30, 2024 deadline to complete non-expert discovery. MMR could have filed an appropriate motion seeking the production of documents prior to the **previous** deadline to complete non-expert discovery on May 30, 2024. (*See* R. Doc. 106). Given that the district judge reopened discovery without limitation, however, the Court will address the merits of the instant motion. While the Court has set a **fourth extended deadline** to complete non-expert discovery by April 30, 2025 (R. Doc. 244), the Court will not entertain additional discovery motions pertaining to written discovery requests served prior to the previous discovery deadline of November 30, 2024.

## II.    Law and Analysis

### A.    MMR's Spoliation Motion (R. Doc. 219)

#### 1.    Legal Standards

This Court has previously looked to the decision *Rimkus Consulting Group., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 610-20 (S.D. Tex. 2010), as setting the appropriate framework for analyzing requested sanctions regarding alleged spoliation. *See Valley View Rentals, LLC v. Colonial Pipeline Co.*, No. 11-00688, 2013 WL 12182682 (M.D. La. May 28, 2013); *Dixon v. Greyhound Lines, Inc.*, No. 13-179, 2014 WL 6087226 (M.D. La. Nov. 13, 2014).

"Spoliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus*, 688 F. Supp. 2d at 612. "It is well established that a party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the

evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Rimkus*, 688 F. Supp. at 615-16 (citing *Zubulake v. UBS Warburg LLC* (*Zubulake IV* ), 220 F.R.D. 212, 220 (S.D.N.Y. 2003)). "Generally, the duty to preserve arises when a party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *Rimkus*, 688 F. Supp. at 612 (quotation omitted).

A party must preserve materials that it reasonably knows or can foresee would be material to a legal or potential legal action. *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006).[1] The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent. It does not depend on a court order. *See Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2003). If a party intentionally destroys evidence, the court has the discretion to impose sanctions. Severe sanctions may include "granting default judgment, striking pleadings, or giving adverse inference instructions." *Equal Employment Opportunity Comm'n v. Resources for Human Development* (*RHD*), 843 F. Supp. 2d 670, 672 (E.D. La. 2012).

Typically, the court does not draw an inference of bad faith when the documents are destroyed under a routine policy. *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). However, bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents and had explanations of spoliation that were not credible. *See Tantivity Communications, Inc. v. Lucent Technologies*, 2005 WL 2860976 (E.D. Tex. Nov. 1, 2005). Either way, the law is clear that a party is "not entitled" to an

---

[1] A spoliation ruling is evidentiary in nature; and so, federal courts sitting in diversity typically apply federal law when considering the imposition of sanctions for spoliated evidence. *See King v. Ill. Central R.R.*, 337 F.3d 550, 557 (5th Cir. 2003).

adverse inference instruction or to have defenses struck from the pleadings *unless* it provides evidence that its adversary intentionally and in bad faith disposed of the evidence. *Rimkus*, 688 F. Supp. 2d at 614.

### 2.     Analysis of MMR's Spoliation Motion

MMR argues that the forensic examinations of Huffman's computing devices demonstrate that "Mr. Huffman plugged external storage devices containing MMR's information into this ISG-issued computer" as admitted by Huffman at his second deposition. (R. Doc. 219-1 at 1). MMR argues that ISG had a duty to preserve these external storage devices (and their contents) since service of the April 25, 2022 Verified Complaint (which referenced Huffman), the district judge's April 26, 2022 Temporary Restraining Order (R. Doc. 7), and the district judge's May 20, 2022 Preliminary Injunction (R. Doc. 23).  (R. Doc. 219-1 at 1-2).

At his first deposition taken on March 27, 2023, Huffman testified that he left external storage devices with MMR information in his desk drawers at MMR, that he was not aware of any external storage devices that he retained that contained MMR information, or that he used any such external storage devices while at ISG. (R. Doc. 119-7 at 25). MMR asserts that at the limited depositions of former MMR employees Yates (now ISG's CEO), Lowe, and Kraft, MMR first learned that these individuals had retained external storage devices used to transfer MMR information to ISG-issued computers. (R. Doc. 219-1) (citing R. Docs. 51-2, 51-3, 51-4). MMR then sought to take the limited second deposition of Huffman to question him about the use "external storage devices to misappropriate MMR's protected information" but ISG refused to allow the deposition to move forward and sought a stay of discovery. (R. Doc. 219 at 6) (citing R. Doc. 46).

Huffman's limited second deposition took place on February 8, 2024. (R. Doc. 119-8). At this second deposition, Huffman admitted that he lied in his first deposition regarding the external storage devices. (R. Doc. 119-8 at 25). Huffman testified that, consistent with the forensic report, he connected a SanDisk Ultra flash drive containing MMR information to his ISG-issued computer between March 7, 2022, and April 12, 2022, and that he was not informed by anyone to preserve the SanDisk Ultra flash drive. (R. Doc. 119-8 at 26). It further appears that Huffman testified that he was reviewing this MMR information at the same time he "was building ISG documents," though he does not expressly admit that he was using the MMR documents to create the ISG documents. (R. Doc. 119-8 at 27). Huffman further testified that he kept this particular SanDisk Ultra flash drive on his desk. (R. Doc. 119-8 at 26). Huffman could not recall when the SanDisk Ultra flash drive (or another USB Disk 3.0) identified on the forensic report went missing. (R. Doc. 119-8 at 27).

Given the foregoing, MMR argues that ISG had an obligation to preserve Huffman's external storage devices, ISG failed to preserve the external storage devices, the missing evidence is relevant to MMR's claims, and the Court should impose an adverse inference based on the spoliation of evidence. (R. Doc. 219-1 at 15-18).

In opposition, ISG states that Yates, as he testified at his deposition, informed all ISG employees (including Huffman) of the obligation to comply with the terms of the Preliminary Injunction, asked all ISG employees (including Huffman) whether they were in possession of any MMR information on their ISG and/or personal devices and accounts, and informed all ISG employees (including Huffman) not to use or delete any MMR information in their possession. (R. Doc. 229 at 2). ISG further represents that all employees who informed ISG that they may be in possession of MMR information were instructed not to use or delete the information and to retain

separate counsel. (R. Doc. 229 at 3). ISG represents that it first learned that Huffman retained an MMR "Timekeeping" document[2] that he brought to ISG at his first deposition on March 27, 2023, which resulted in a termination of the deposition to allow Huffman to retain separate counsel. (R. Doc. 229 at 4-5). ISG then states that it first learned at Huffman's second deposition on February 8, 2024, that, contrary to his statements in the first deposition, Huffman actually took an MMR external storage drive to ISG but had not seen the device in two years since he last used it on April 12, 2022. (R. Doc. 229 at 6).

ISG argues that MMR cannot meet its burden of establishing spoliation because (1) ISG was never in control of, and had no duty to preserve, Huffman's external storage devices, (2) ISG did not intentionally destroy any evidence, and (3) ISG did not act in bad faith. (R. Doc. 229 at 7-9). ISG asserts that it had no duty to preserve the Huffman's personal device considering that Huffman denied possession of any external storage devices containing MMR information and only revealed the existence of the devices over two years after he last used and knew the location of the device. Moreover, ISG points out that the last known use of the SanDisk Ultra flash drive discovered by the forensic examination (the central external drive discussed in MMR's motion) was on April 12, 2022, more than two weeks prior to the initiation of this lawsuit. ISG further states that it properly imaged Huffman's devices and accounts as required by the Forensic Protocol, and there is no allegation by MMR or evidence that ISG destroyed any evidence. Given the foregoing, ISG argues that MMR cannot establish that it acted in bad faith.

In reply, MMR points out that Huffman testified, at his first deposition, that he was not informed by anyone at ISG to preserve any MMR information that he had in his possession. (R.

---

[2] ISG asserts that the deposition of Rob Mason, an ex-MMR employee for Merit Electrical, revealed that Mr. Mason had originally brought this Timekeeping document to MMR from Merit Electrical. (R. Doc. 229 at 5).

Doc. 243 at 2-3).[3] MMR further notes that the forensic examination shows that Huffman used "15 external storage devices," including a "Seagate external hard drive, bearing serial number "NACA6N6" that was last used on an ISG-issued computer on December 12, 2022. (R. Doc. 243 at 3).[4] MMR otherwise argues that ISG intentionally destroyed the external storage devices or at least was "extremely and grossly reckless" in failing to preserve them. (R. Doc. 243at 4-5).

Having considered the arguments of the parties, the Court concludes that MMR has not established the spoliation of Huffman's external storage devices.

As an initial matter, the record supports a finding that ISG had "control" over the external storage devices and a duty to preserve them. "For purposes of spoliation motions, courts deem evidence to be 'under a party's control when that party has the right, authority, or practical ability to obtain the [evidence] from a non-party to the action.'" *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 997 (N.D. Ohio 2016) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009)). These principles are derived from the meaning of "control" for the purposes of Rule 34 of the Federal Rules of Civil Procedure:

> The organization should consider the sources of information within its "possession, custody, and control" that are likely to include relevant, unique information. The most obvious of these sources are those that the organization physically has in its possession or custody--for example, the file cabinets of documents in its office, the emails that reside on its servers located in its corporate headquarters -- but also may include sources such as thumb drives, company furnished laptops, and PDAs used by employees for business purposes.

*The Sedona Conference Commentary on Legal Holds: The Trigger & the Process*, 11 Sedona Conf. J. 265, 279 (2010).

---

[3] It does not appear that this issue was explored further at Huffman's second deposition.
[4] MMR does not focus on this particular external storage device in its motion or otherwise establish that the external storage device contained any MMR information. MMR questioned Huffman about a Seagate external hard drive at his second deposition, but Huffman stated that he did not recognize it. (R. Doc. 119-8 at 27).

MMR argues that ISG, "a closely-held company with only a handful of management-level employees like Mr. Huffman — cannot try to distance itself from Mr. Huffman or separate Mr. Huffman's actions from its own" because everything Huffman did for ISG "was at the management level, on ISG computers, for ISG's benefit." (R. Doc. 243 at 2). Even more fundamentally, Huffman testified that he was "building ISG documents" during the timeframe of March through April of 2022 while he was "looking back or copying from MMR documents and databases" on the external storage devices plugged into this ISG-issued computer. (R. Doc. 119-8 at 27). MMR has also submitted documentation indicating that on March 8, 2022, Huffman sent Shawn Breeland (ISG's President) and Yates (ISG's CEO) an IXL document with "MMR Contractors Inc." on its header, calling it "the excel version of the BS report with sample data and all of the formulas." (R. Doc. 219-1 at 7). ISG has not explained to the Court where this MMR-derived document would have been derived if not from the external storage drives used by Huffman after he departed MMR. The document further demonstrates that Breeland and Yates were aware of Huffman's use of an MMR-derived document after the filing of this lawsuit.

Given the foregoing, the record supports a finding that the 15 external storage devices used by Huffman and plugged into ISG-issued computers contained (or may have contained) MMR information that ISG management was aware was being used to further ISG products. Under these circumstances, the Court concludes that ISG had "control" over the external storage devices used by Huffman. That certain ISG employees (including Huffman) retained separate counsel merely highlights the potential conflict of interest inherent in the representation of employees by corporate counsel. It does not necessarily support a finding that external storage devices (and materials on those external storage devices) used by an employee to further the interests of its employers is not within the "control" of the employer for the purposes of Rule 34 or a spoliation analysis.

The Court further concludes that ISG had a duty to preserve Huffman's external storage devices. The Fifth Circuit has recognized that "[a] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Because ISG should reasonably have anticipated litigation over MMR documents taken from MMR by its former employees, ISG had a duty to preserve such information.

That said, a party "alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020) (quoting *Catoire v. Caprock Telecommunications Corp.*, No. 01-3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002) (emphasis added). "It is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence." *Coastal* Bridge, 833 F. App'x at 574. "[A] party seeking sanctions is not entitled to an adverse inference instruction unless that party can show that its adversary intentionally and in bad faith disposed of the evidence." *Id.*

MMR has not submitted sufficient evidence to establish that ISG intentionally destroyed the external storage devices in bad faith. To be clear, the record suggests that ISG did not specifically instruct Huffman to retain external storage devices containing MMR information. ISG is correct that the primary external storage device referenced by MMR in its motion (the SanDisk Ultra flash drive) was last recorded plugged into Huffman's computers on April 12, 2022, more than two weeks prior to the initiation of this lawsuit. That said, there is at least one other external storage device used by Huffman (that neither he nor ISG can locate) that was plugged into an ISG-issued computer on July 29, 2022 (and, according to MMR, on a second ISG-issued computer on December 12, 2022). (R. Doc. 243 at 3; R. Doc. 155-3). Importantly, other than the conclusory

declaration of Yates, ISG has not submitted any written evidence in support of the assertion that Huffman was informed to preserve evidence. Indeed, Huffman specifically testified that he was never instructed by ISG to do so. (R. Doc. 119-8 at 26).

But what matters in the end is that MMR has not establish that ISG intentionally destroyed the external storage devices at issue, much less destroyed them in bad faith. While the record supports a finding that ISG may have failed to properly place a litigation hold with respect to external storage devices, there is insufficient evidence to conclude that ISG directed the intentional destruction of the external storage devices or otherwise should be imputed with any intentional destruction of the external storage devices by Huffman. The Court is aware that intent may be determined through circumstantial evidence. See *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 517 (M.D. La. 2017) (quoting *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) ("Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors.") (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)). But while MMR may have demonstrated that ISG was negligent – or even grossly negligent – in failing to secure Huffman's external storage devices, it has failed to establish, through circumstantial evidence or otherwise, that ISG intentionally destroyed the external storage devices (such as pursuant to an internal document management protocol), much less that ISG destroyed them with the applicable culpable state of mind.

That said, there is no dispute that actual MMR information located on Huffman's external storage devices would meet the relevance requirement. As discussed further below, MMR has sought the production of ESI located in specific folders of ISG-issued computers accessed by Huffman during his employment with ISG. While the Court will not provide MMR an adverse

inference instruction, the circumstantial evidence presented by MMR supports a finding that the ESI sought below fall within the scope of discovery.

### B.    MMR's Motion to Compel (R. Doc. 220)

#### 1.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within thirty days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### 2.    Analysis of MMR's Motion to Compel

The documents requests at issue seek ESI located in specific folders of ISG-issued computers accessed by Huffman during his employment with ISG. Plaintiff seeks a production of ESI responsive to Request for Production Nos. 65-98 of MMR's Third Set of Requests for Production served March 14, 2024:

- Request for Production No. 65 (specific documents located by file paths);
- Request for Production No. 66 (contents of the "Timekeeping" folder);
- Request for Production No. 67 (contents of the "Forms" folder);
- Request for Production No. 68 (contents of the "Job Analysis" folder);
- Request for Production No. 69 (contents of the "Job Tracking Data (Master)" folder);
- Request for Production No. 70 (contents of the "Old" folder);
- Request for Production No. 71 (contents off the "ISG Timekeeping Reports" folder);
- Request for Production No. 72 (contents of the "Stuff" folder);
- Request for Production No. 73 (contents of the "VBA Tools" folder);
- Request for Production No. 74 (contents of the "Viewpoint" and/or "4 – Viewpoint" folders);
- Request for Production No. 75 (contents of the "Report Samples" folder);
- Request for Production No. 76 (contents of the "8 – Scheduling" and/or "Scheduling" folders);
- Request for Production No. 77 (contents of the "The Bible" and/or "1 – The Bible" folders);
- Request for Production No. 78 (contents of the "Source Data" folder);

14

- Request for Production No. 79 (contents of the "Codes" folder);
- Request for Production No. 80 (contents of the "Test Environment" folder);
- Request for Production No. 81 (contents of the "Crystal Reports" folder);
- Request for Production No. 82 (contents of the "51050069_Crystal_Reports_2011_SP12" folder);
- Request for Production No. 83 (contents of the "ISG Project Management – Documents" and/or "Project Management" folders);
- Request for Production No. 84 (contents of the "Timesheets" folder);
- Request for Production No. 85 (contents of the "Estimating Folder" folder);
- Request for Production No. 86 (contents of the "1-Proposals" folder);
- Request for Production No. 87 (contents of the "2_Proposal Requests" folder);
- Request for Production No. 88 (contents of the "Crystal Reports" and/or "5 – Crystal Reports" folder);
- Request for Production No. 89 (contents of the "New Estimating Tools" folder);
- Request for Production No. 90 (contents of the "Green Sheets" folder);
- Request for Production No. 91 (contents of the "Old Revs" folder);
- Request for Production No. 92 (contents of the "1 – Templates" folder);
- Request for Production No. 93 (contents of the "QC" and/or "E&I QC Manual 2014");
- Request for Production No. 94 (contents of the "2 – Documents" and/or "9 – Documents" folders);
- Request for Production No. 95 (contents of the "Old Job with No Proposal" folders);
- Request for Production No. 96 (contents of the "Input Form" folder);
- Request for Production No. 97 (contents of the "Master Files" folder); and
- Request for Production No. 98 (contents of the "DOT Tracker" folder);

(R. Doc. 220-2). In its April 12, 2024 responses to these requests, ISG raised various objections, including those based on relevance and proportionality, nevertheless stating that it would produce responsive ESI found in the folders (including timekeeping and estimating tools, timekeeping documents, MMR documents, "JA Analysis" related documents, "Bible" related documents, "BS report" related documents, Labor & Material Sheets, Overhead and Top Sheets) on a rolling basis. (R. Doc. 220-3).

MMR argues that the forensic examinations of Huffman's computing devices confirm that "he was using MMR's trade secrets to build replicas for ISG's use and benefit." (R. Doc. 220-1 at 1). MMR states that it requested the production of ESI in select "file names and folders" of

Huffman's imaged computers "because they comprised either MMR's protected information or the replicas of MMR's information that Mr. Huffman was developing." (R. Doc. 220-1 at 1-2). In opposing the Motion to Compel, ISG argues that, given the narrowed searched terms allowed for the purposes of Forensic Protocol, as modified, the current requests are disproportionate to the needs of this case, are unreasonably cumulative or duplicative, and the proposed discovery outweighs any perceived benefit. (R. Doc. 229 at 10-13).

Having considered the arguments of the parties, including those raised by the parties with respect to MMR's Motion for Spoliation, the Court will require ISG to produce the documents sought. The Court is aware of ISG's argument that they include over 90,000 files that may include "financial, proprietary, and non-relevant ISG material." (R. Doc. 229 at 12). The Court is also aware that the Forensic Protocol, and the Court's previous orders regarding the scope of searches, were designed to prevent wholesale reviews of large portions of ISG's data and information. But the Court last addressed the scope of the forensic review on September 22, 2023. (*See* R. Doc. 101). Huffman's limited second deposition, in which he admitted to lying in his first deposition regarding the external storage devices, took place on February 8, 2024. (R. Doc. 119-8).

The Court is also aware that various folder names are labeled with vague names that do not indicate or suggest that the contents relate to MMR. Furthermore, the Court is also aware that the contents of the folders will contain information that has already been searched and reviewed by ISG pursuant to the Forensic Protocol. That said, the Court is now aware that Huffman has admitted to lying at his first deposition regarding whether he had taken MMR information for use at ISG and various external storage devices that contained (or may have contained) MMR information. Huffman has not produced these external storage devices. ISG has not produced these external storage devices. While the evidence is insufficient to reach the conclusion that ISG

intentionally destroyed evidence in bad faith, the evidence regarding Huffman's use of MMR information on ISG-issued computers is overwhelming.

ISG responded to the various requests stating that it would produce relevant and responsive documents on a rolling basis. Discovery has been extended various times in this action and is coming to an end on April 30, 2025. Trial is set to commence in just a few months. That the file paths have non-descript names or pertain to areas of work that MMR does not perform does not support a finding, at this point in the litigation and given the record, that the ESI located within those file paths do not contain MMR information or ISG documents derived from MMR's estimating tools and databases.

In sum, the Court will require ISG to produce the ESI sought by MMR in its Motion to Compel. This production of ESI will not result in any significant burden or expenses given that Huffman's computers have already been imaged with a forensic report generated by ISG's own forensic examiner. To minimize any prejudice given the volume of ESI to be produced, the Court will allow ISG to designate the entire production as "CONFIDENTIAL-ATTORNEY'S EYES ONLY" as allowed pursuant to the Court's protective order governing the exchange of confidential information. (*See* R. Doc. 42 at 4-5). Removal of this designation, if appropriate, may be sought at a later date following a conference between the parties in an attempt to reach any appropriate agreement.

### III.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Spoliation Motion (R. Doc. 219) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Documents for MMR's Third Set of Requests for Production to ISG (R. Doc. 220) is **GRANTED**. ISG shall produce the

responsive ESI within **14 days** of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on April 7, 2025.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**