UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MMR CONSTRUCTORS, INC.**                                **CIVIL ACTION**

**VERSUS**                                                 **NO. 22-267-BAJ-SDJ**

**JB GROUP OF LA, LLC, ET AL.**

**ORDER**

Before the Court is Plaintiff's Motion to Compel (R. Doc. 225). The motion is opposed (R. Doc. 233), and Plaintiff has filed a reply (R. Doc. 246).

**I.    Background**

MMR Constructors, Inc., commenced this action by filing a Complaint seeking damages and injunctive relief against JB Group of LA, LLC, *d/b/a* Infrastructure Solutions Group and former MMR employee David Heroman. (R. Doc. 1). MMR alleges that ISG and certain employees stole MMR's trade secrets and confidential business information. MMR seeks relief under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq.*, the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq.*, the Louisiana Unfair Trade Practice Act, La R.S. 51:1401 *et seq.*, and various torts under Louisiana law. The district judge granted MMR's Motion for Temporary Restraining Order, which sought immediate injunctive relief prohibiting the defendants from accessing, using, disclosing, or disseminating MMR's trade secrets and confidential business information, and set a preliminary injunction hearing. (R. Doc. 7; *see* R. Doc. 16).

After the parties identified the electronic accounts and devices at issue, the district judge entered a Stipulated Preliminary Injunction and required the parties to submit an agreed-upon forensic protocol. (R. Doc. 23).

Since the commencement of this action, MMR has named as defendants four additional former MMR employees (in addition to Heroman) who departed for ISG: Kasey Kraft, Jason Yates, Michael Lowe, and Travis Dardenne. (R. Docs. 29, 53). Among other things, MMR alleges that these individual Defendants "accessed, downloaded, uploaded, emailed and/or transmitted MMR's trade secrets and confidential business information and transferred such information to ISG with the specific and malicious intent to exploit and misappropriate MMR's customer base, business strategies, and pricing to unlawfully compete against MMR for the benefit of ISG, its direct competitor," and that ISG profited from these unlawful misappropriations and deceptive trade practices. (R. Doc. 53 at 25-27).

The Court has entered a Protective Order governing the exchange of confidential information. (R. Doc. 42). The Court has also approved a Forensic Protocol in this action for the purposes of discovering allegedly misappropriated information. (*See* R. Docs. 26, 45, 101). After various extensions, the Court set the deadline to complete non-expert discovery in this action on November 30, 2024. (R. Doc. 148).

On November 27, 2024, MMR filed a Motion to Amend Scheduling Order, which sought an extension of the discovery deadlines given various delays regarding the completion of depositions, delays resulting from the Special Master's efforts to negotiate the terms of the Remediation and Monitoring Protocol, and delays resulting from the enrollment of new counsel for ISG. (R. Doc. 206). After detailing these delays, MMR sought an extension of the discovery deadline given the outstanding depositions of various third-party entities and individuals, the depositions of individual defendants (Kraft, Heroman, Dardene, Lowe, and Yates), and the Rule 30(b)(6) deposition of ISG and depositions of its employees Kevin Alexander, Shawn Breeland, and Laiton McCaughey. (R. Doc. 206-1 at 5). MMR's motion did **not** seek any specific extension

of the deadlines to file motions pertaining to outstanding written discovery after the November 30, 2024 deadline. Given these representations pertaining to the need to conduct additional **depositions**, the district judge granted the motion, reopening and continuing discovery without date. (R. Doc. 207).

On January 14, 2025, Plaintiff filed the instant Motion to Compel. (R. Doc. 225). Plaintiff seeks an order compelling Defendant JB Group of LA, LLC, d/b/a Infrastructure Solutions Group to produce documents responsive to Plaintiff's Second Set of Requests for Production, which was related to damages discovery. This request was propounded on March 30, 2023 (R. Doc. 225-2), and ISG provided written responses on May 11, 2023 (R. Doc. 225-3).

MMR does not explain why it did not bring an appropriate Rule 37 motion with respect to these written discovery requests prior to the November 30, 2024 deadline to complete non-expert discovery, or why the discovery disputes raised in the instant motion were not diligently raised prior to any of the various **previous** deadlines to complete non-expert discovery in this action: July 7, 2023 (R. Doc. 35); November 30, 2023 (R. Doc. 80); and May 30, 2024 (R. Doc. 106). (*See* R. Doc. 208-2 at 3). Given that the district judge reopened discovery without limitation, however, the Court will address the merits of the instant motion. While the Court has set a **fourth extended deadline** to complete non-expert discovery by April 30, 2025 (R. Doc. 244), the Court will not entertain additional discovery motions pertaining to written discovery requests served prior to the previous discovery deadline of November 30, 2024, except to the extent necessary to enforce this Order.

## II.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense

and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within thirty days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and

for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**III.    Discussion**

MMR asserts a theory of damages requiring calculation of actual loss and unjust enrichment and seeks an order compelling ISG to produce financial documents that MMR asserts are necessary for its damages expert to fully assess and calculate damages. (R. Doc. 225-1 at 1-2).

The disputed requests are RFP Nos. 45, 46, 48, 50, 52, 53, 55, 56, 57, 60, and 61.[1] Each of these requests asks for data regarding ISG's revenue, customers, projects, sales forecasts, valuations, capital, and/or profit and loss statements. Notably, those requests specifying customers or projects narrow discovery to only those customers and projects with which former MMR employees had involvement. ISG objects to these requests as not relevant or likely to lead to discovery of admissible evidence; asserting that none of the former MMR employees had non-compete covenants; and arguing that ISG's work with the Department of Transportation is not relevant. (*See, e.g.,* R. Doc. 225-1 at 4, response to RFP 48). ISG also objects that the request seeks documents concerning individuals who are not party to this litigation, and that the production sought is overbroad and not proportionate to the needs of the case. (*See, e.g.,* R. Doc. 225-1 at 5, response to RFP 52).

Plaintiff MMR argues that all of these requests seek information relevant to MMR's claimed damages, and MMR asserts that ISG has made no showing that the disputed requests impose a burden on ISG that is disproportionate to the needs of this case. (R. Doc. 225-1 at 11). MMR asserts that the information is the kind that is regularly tracked and can be generated by industry standard accounting and project tracking software—and indeed some of the requests

---

[1] These requests and ISG's responses are provided in full in the Motion. The Court will briefly summarize here.

specify that they seek these types of generated reports. (*See, e.g.,* R. Doc. 225-2 at 3, RFP 46). Finally, MMR notes in its motion and at the video hearing held on April 2, 2025, that any concerns regarding production of company documents can be alleviated by the existing protective order's "attorneys' eyes only" designation. (R. Doc. 225-1 at 13 n.5).

In opposition, ISG asserts that MMR's requests have no connection to plausible damages calculations. (R. Doc. 233 at 1). ISG argues that "Requests Nos. 45, 46, and 48 demand all documents related to ISG's bids, customers, projects, transactions, revenues, and profit margins across all business operations, including those unrelated to MMR," but Nos. 45 and 46 specify that they are limited to those instances in which former MMR employees were involved.[2] ISG argues that these are not limiting in practice, because the CEO of ISG and its former Estimating Manager are former MMR employees and likely have involvement with every ISG customer and project.

In arguing against the breadth of MMR's requested financial discovery, ISG assumes a specific method of calculating damages. First, it asserts that MMR's misappropriation claim is too speculative to warrant discovery, that MMR cannot establish actual loss in the form of clients or jobs lost to ISG, and so cannot show identifiable harm. (R. Doc. 233 at 6). It further argues that unjust enrichment damages require a link between the misappropriation and the benefit received, which MMR cannot show. (R. Doc. 233 at 7). ISG further argues that MMR's broad discovery fails to isolate enrichment *from the alleged trade secrets* from ISG's overall growth, and so the requests are overbroad. (R. Doc. 233 at 7-8). Based on these conclusions, ISG asserts that the calculation of damages and related discovery should be based on reasonable royalty[3] and that the

---

[2] "This request is limited by those projects in which any Former MMR Employee had any involvement." (R. Doc. 225-1 at 3, RFP 45); "Produce the Documents that demonstrate your revenue and gross profit margin by transaction and customer from 2020 to the present for each customer, and for each transaction for which any Former MMR Employee had direct or indirect involvement." (R. Doc. 225-1 at 3, RFP 46).

[3] "Under Fifth Circuit precedent, when actual loss or unjust enrichment is too speculative to calculate, the appropriate remedy is a reasonable royalty." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536-37 (5th Cir. 1974).

disputed requests "fail to align with the reasonable royalty method". (R. Doc. 233 at 9). Next, ISG asserts that there is no legal authority citing the use of a defendant's overall business valuation in calculating damages. Finally, ISG asserts that damages must be limited by a "head start period" of three months. (R. Doc. 233 at 14-16).

In reply, MMR asserts that every aspect of ISG's business was "infiltrated" with the misuse of MMR information, and so broad discovery is appropriate to determine damages. (R. Doc. 246 at 1). MMR further asserts that ISG has not shown that production would be burdensome. And finally, MMR asserts that ISG has put the cart before the horse in framing its objections to discovery around the reasonable royalty theory of damages. (R. Doc. 246 at 2). The Court agrees.

First, ISG's assertion that a relation to former MMR employees does not practically limit discovery falls flat—relation to former MMR employees is the subject of this litigation, and the Court cannot plausibly find that breadth alone makes discovery irrelevant. As to burden, the Court refers to the legal standard of Federal Rule 26(b) and (c), cited above. In its opposition to this motion to compel, ISG has rested on its relevance argument and has made practically no attempt to show that the requested production would be disproportionate, overly burdensome, expensive, or oppressive. Indeed, ISG's counsel represented at the oral motion hearing on April 2, 2025, that no attempt has been made to determine how much work would be required to produce responsive documents. Finally, ISG's relevance arguments rest entirely on its assumption of MMR's calculation of damages and its assumption of the proper means of calculating damages in this case. ISG asserts that unjust enrichment is too speculative—but recovery of unjust enrichment damages is not *inherently* too speculative:

> To recover damages under LUTSA, "a complainant must prove (a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation." [*Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)] (internal citations omitted) (citing LA. STAT. ANN. §§

> 51:1431, 1433). "A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." § 51:1433.

*Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 156–57 (5th Cir. 2018). And so, ISG must necessarily mean that unjust enrichment is too speculative *in this case*. But MMR has not yet had an opportunity to make its case for such a calculation. The Court must agree that this argument is premature.

"The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage." *Tate v. DG Louisiana LLC*, 653 F. Supp. 3d 316, 319–20 (E.D. La. 2023). At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quoting *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011)). If relevance is in doubt, the court should be permissive in allowing discovery. *Id.* (citing *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010)).

Here, ISG's financial information, as requested in the disputed requests for production, reasonably bears on the question of damages. ISG has not shown that its own theory of reasonable royalty is the only possible theory, and so it has not shown that the disputed requests cannot bear on an issue that may be raised. Furthermore, the question of the theory of damages is not one that is properly resolved at this stage of litigation. And so, the Court must overrule ISG's objections to the discovery requests.

### IV. Conclusion

For the reasons discussed above,

**IT IS ORDERED** that the Motion to Compel Documents Related to Damages (R. Doc. 225) is **GRANTED.** The parties shall bear their own costs. ISG shall provide supplemental

responses and productions within **14 days** of the date of this Order unless otherwise agreed upon by the parties.

Signed in Baton Rouge, Louisiana, on April 7, 2025.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**